UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISA INGRAM ET. AL.,

        Plaintiff,

           v.

\COUNTY OF WAYNE,

        Defendant.

_____/

Case No. 20-10288

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO ABSTAIN, STAY, DISMISS, AND FOR SUMMARY JUDGMENT [18, 19, 20]; GRANTING DEFENDANT'S MOTION TO ADJOURN [23]; AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY [30]**

On February 4, 2020, Plaintiffs Melisa Ingram and Robert Reeves commenced this civil rights putative class action against Defendant Wayne County challenging their vehicle seizure and civil forfeiture practices. Specifically, Plaintiffs allege that the Wayne County Prosecutor's Office operates under a series of policies and practices which allow it to impound cars, and any personal property they contain, which have been seized by the Wayne County Sheriff's Department, Detroit Police Department or Michigan State Police, without judicial oversight or proof of a crime.

On May 11, 2020, Plaintiffs filed an Amended Complaint [12] adding Plaintiff Stephanie Wilson. Plaintiff's Amended Complaint [12] alleges the following claims: Fourth Amendment Unreasonable Seizure and Retention (Count I); Eighth

Amendment Excessive Fines and Forfeitures (Count II); Fourteenth Amendment Lack of Protections for Innocent Owners (Count III); Fourteenth Amendment Lack of Prompt, Post-Seizure Hearing (Count IV); Fourteenth Amendment Arbitrary and Irrational Fines and Fees (Count V); Fourteenth Amendment Lack of Adequate Notice to Property Owners (Count VI); Ingram and Wilson's Claim for Damages (Count VII); Wilson's Claim for Return of Property (Count VIII); and Reeves's Claim for Damages (Count IX).

On July 1, 2020, Defendant filed three motions to dismiss, each corresponding to a different Plaintiff: Motion to Abstain on the Claims Asserted by Plaintiff Stephanie Wilson [18]; Motion to Abstain or Stay, or in the Alternative, Motion to Dismiss the Claims Asserted by Plaintiff Robert Reeves [19]; and Motion to Dismiss, or in the alternative, Motion for Summary Judgment on the Claims Asserted by Plaintiff Melisa Ingram [20]. Plaintiffs filed a joint Response [29] on August 5, 2020. Defendants filed three Replies [34] [35] [36] on August 19, 2020. The Court held a hearing on the motions on November 5, 2020.

For the reasons stated below, the Court **GRANTS** Defendant's Motion to Abstain on the Claims Asserted by Plaintiff Stephanie Wilson [18], **GRANTS in part and DENIES in part** Defendant's Motion to Abstain or Stay, or in the Alternative, Motion to Dismiss the Claims Asserted by Plaintiff Robert Reeves [19], **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss, or in the

alternative, Motion for Summary Judgment on the Claims Asserted by Plaintiff Melisa Ingram [20], and **DENIES as moot** Plaintiffs' Motion for Leave to Conduct Discovery [30].

## FACTUAL BACKGROUND

As alleged by Plaintiff, "Wayne County has an official policy of unreasonably seizing cars and other property, without probable cause to believe that the property is connected to a crime." (Am. Compl. ¶ 3). The Wayne County Sheriff Department ("WCSD"), Detroit Police Department ("DPD"), and Michigan State Police ("MSP") seize these cars via the Vehicle Seizure Unity and Asset Forfeiture Unit at the direction of the Wayne County Prosecutor's Office ("WCPO"). (*Id.* ¶¶ 4-5). Plaintiffs allege that their cars were seized even when neither they, as owners, nor the drivers of the vehicles were arrested at the time of seizure, simply because their cars were present in an area known for crime. (*Id.* ¶¶ 6-7).

Each of Plaintiffs' property was seized under one of Michigan's forfeiture statutes: Nuisance Abatement (MCL § 600.3801 *et seq.*), Controlled Substances Act (MCL § 333.7521 *et seq.*), Omnibus Forfeiture Act (MCL § 600.4701 *et seq.*). Forfeiture proceedings under the Omnibus Forfeiture Act follow a criminal conviction. (ECF No. 12-6). However, under the Nuisance Abatement and Controlled Substances Statutes, forfeiture proceedings will only begin if an owner

contests his or her car's seizure within 20 or 30 days (depending on the applicable law). (Am. Compl. ¶ 10); (ECF No. 12-2). Otherwise, the property is automatically forfeited. (*Id.* ¶ 11).

Plaintiffs allege that owners who contest seizure must choose between one of three options: 1) abandon their property, 2) pay a redemption fee to retrieve their vehicle, or 3) wait for the Wayne County Prosecutor's Office to initiate civil forfeiture proceedings, which takes six or more months to start. (*Id.* ¶¶ 13-14). Before their case can be heard by a judge, owners are compelled to attend four or more pre-trial conferences alone with the prosecutors. (*Id.* ¶¶ 15-17). Plaintiffs allege that at these conferences, prosecutors "attempt to persuade him or her to pay the redemption fee, towing costs, and storage fees, pointing out that storage fees accrue daily." (*Id.* ¶ 15).

Redemption fees are standardized, regardless of the reasons for seizure. (*Id.* ¶ 9). The fee is $900 for an owner's first seizure, $1800 for the second seizure, and $2700 for the third—not including towing and storage fees. (*Id.* ¶¶ 8-9). If an owner misses just one conference, the property is automatically forfeited. (*Id.* ¶ 18). Plaintiffs allege that they have "no means of pursuing an interim judicial hearing for the return of property." (*Id.* ¶ 23). Plaintiffs further allege that although the Omnibus Forfeiture Act allows owners to initiate an interim hearing, the County has a policy and practice to "(a) not inform the property owner of the specific crime on which

seizure is based; (b) not inform the property owner of the availability of an interim hearing; and (c) not comply with its attendant obligation to release property within 35 days of seizure or obtain a judicial warrant for continued impoundment." (*Id.* ¶ 24). Collectively, Plaintiffs claim these allegations amount to systemic violations of the Fourth, Eighth, and Fourteenth Amendments and seek damages, as well as declaratory and injunctive relief. (*Id.* ¶ 2). The Court will discuss each Plaintiff's individual claims below.

## LEGAL STANDARD

Defendant moves to dismiss Plaintiffs Wilson and Reeves for lack of subject matters pursuant to Fed. R. Civ. P. 12(b)(1). "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). A Rule 12(b)(1) challenge to subject matter jurisdiction takes the form of either a facial or factual attack. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Defendant here makes a facial attack, which questions the sufficiency of the pleadings. *Id*. Accordingly, the Court takes Plaintiff's factual allegations as true. *Id*.

Defendant also moves to dismiss Plaintiff Reeves and Ingram's claims against it for failing to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, [plaintiffs] must allege 'enough facts to

state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "assume the veracity of [the plaintiffs'] well-pleaded factual allegations and determine whether the [plaintiffs are] entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must construe the complaint in the light most favorable to the Plaintiffs and draw all reasonable inferences in their favor. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012).

In the alternative, Defendant asks the Court to grant it summary judgment on Plaintiff Ingram's claims. Summary judgment is appropriate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the Court views all the facts in the light most favorable to

the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

**ANALYSIS**

**A. Defendant's Motion to Abstain on the Claims Asserted by Plaintiff Stephanie Wilson [18]**

   **a. Factual Background**

Plaintiff Stephanie Wilson had two of her vehicles seized under Michigan's Controlled Substance Act, MCL 333.7521 *et seq*., as part of Operation Push-Off, a joint task force of the WCPD, DPD, and WCSD. (Am. Compl. ¶¶ 107, 125). The Act authorizes the forfeiture of property involved in the "1) the sale, receipt, or transportation or the intended sale, receipt, or transportation of narcotics; OR 2) the facilitation of a violation of the State's drug laws." (ECF No. 12-5); (ECF No. 12-4). Both seizures occurred while Plaintiff was giving a ride to the father of her child, Malcolm Smith. (Am. Compl. ¶¶ 97-98, 117-19). Mr. Smith has a drug addiction; Ms. Wilson does not and has never aided Mr. Smith's drug use. (*Id.* ¶¶ 95-96).

The first seizure occurred in January 2019. (*Id.* ¶ 97). Wilson went to pick up Smith from a gas station and as soon as he entered the car, Detroit police officers ordered them both to exit. (*Id.* ¶¶ 98-99). Plaintiff claims that the officers gave no explanation for the stop and made no arrests. (*Id.* ¶¶ 100-04). She also claims that

no drugs, guns, or cash were found at the scene. (*Id.* ¶¶ 101-03). Nevertheless, Plaintiff's car was seized for violating the Controlled Substance Act. (*Id.* ¶¶ 105-07). The police gave her a Notice of Seizure at the scene, which stated that in order to claim interest in her vehicle, she must contact the WCPO "after 3 business days but no longer than twenty (20) days of receiving this notice." (ECF No. 12-4). Plaintiff attempted to contact the Vehicle Seizure Unit the next day but could not speak with anyone, because it was not within the allotted time frame. (Am. Compl. ¶ 109). Plaintiff then went to contest the seizure in person but was turned away, because her paperwork could not be found. (*Id.* ¶¶ 111-12). She went again two weeks later but was told that it was too late to contest the seizure. (*Id.* ¶ 113). Wilson had to abandon her vehicle. (*Id.* ¶ 114).

A few months later, Plaintiff bought a 2006 Saturn Ion and again went to pick up Mr. Smith from a gas station on the west side of Detroit. (*Id.* ¶¶ 116-17). Shortly after Mr. Smith entered the car, Detroit police pulled Plaintiff over. (*Id.* ¶ 119). The officers found five empty syringes in Mr. Smith's pockets, which he was allowed to keep. (*Id.* ¶¶ 120, 129). They found no drugs, guns, or cash and made no arrests. (*Id.* ¶¶ 121-23, 128). Nevertheless, the officers once again seized Wilson's car for violating the Controlled Substance Act. (*Id.* ¶¶ 127, 131). During the seizure, an officer told Wilson that she was "in the wrong neighborhood" and "shouldn't be [t]here." (*Id.* ¶ 126). Since this was Plaintiff's second seizure, she faced a $1800

redemption fee plus towing and storage fees in order to retrieve her vehicle and belongings. (*Id.* ¶ 136).

Plaintiff was told that she would have a judicial hearing July 10, 2019, but it was never set. (*Id.* ¶ 138). Instead, the prosecutor's office did not file a forfeiture complaint until October and ordered Wilson to appear at a pre-trial conference in November with only the prosecutor. She claims that prosecutors "pressured her to pay the redemption fee and warned that it could be up to four months before she had a judicial hearing." (*Id.* ¶ 144). At the second conference in February 2020, Wilson told prosecutors that she could not afford to pay the redemption fee. (*Id.* ¶ 145). She alleges that in response, "[p]rosecutors asked how much she could come up with, offering to waive towing and storage fees if she could come back with a reasonable amount of money." (*Id.*). Wilson continued to insist on appearing at a judicial hearing, but prosecutors obtained court orders instead requiring her to attend two more pre-trial conferences without a judge. (*Id.* ¶¶ 146-47).

On April 29, 2021, the Wayne County Circuit Court granted Plaintiff's Motion for Summary Disposition in her forfeiture case. (ECF No. 50). On May 6, 2021, the County informed the Court that WCPO would seek reconsideration of this decision. (ECF No. 51). The state court denied WCPO's Motion for reconsideration and Motion to Stay Judgment. (ECF No. 52). The Court accordingly ordered the release of Plaintiff's car, which she has been since been able to retrieve. (*Id.*). The

County states that the WCPO will be appealing the state court decision. (ECF No. 53).

### b. Discussion

In light of Wilson's on-going forfeiture proceeding in state court, Defendant moves the Court to abstain from adjudicating her claims under *Younger*. *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (state court proceedings "remain[] pending until a litigant has exhausted his state appellate remedies."). The Court holds that abstention here is appropriate in regard to the proceedings against Wilson's Saturn Ion.

The doctrine of abstention under *Younger* dictates that federal courts are forbidden from staying, enjoining, or deciding a matter pending in state court proceedings except under special circumstances. *Younger v. Harris*, 401 U.S. 37, 41 (1971). Courts look to three factors to determine if *Younger* abstention is warranted: "(1) whether the underlying proceedings constitute an ongoing state judicial proceeding, (2) whether the proceedings implicate important state interests, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Tindall v. Wayne County Friend of the Court,* 269 F.3d 533, 538 (6th Cir. 2001). Only the third factor is in dispute here.

Arguing that she does not have an adequate opportunity in the state court to raise her constitutional challenges, Wilson objects to abstention under U.S. Supreme

Court cases *Fuentes v. Shevin* and *Gerstein v. Pugh*, and Sixth Circuit Court of Appeals case, *Habich v. City of Dearborn*. 407 U.S. 67 (1972); 420 U.S. 103 (1975); 331 F.3d 524 (6th Cir. 2003). The Court, however, finds that under *Loch v. Watkins* and *Tennessee v. Gibbons*, Wilson has an adequate opportunity to raise her constitutional challenges in her state court forfeiture proceeding. 337 F.3d 574 (6th Cir. 2003); 698 F. App'x 307 (6th Cir. 2017).

   *Fuentes* is a canonical procedural due process rights case which held that notice and opportunity to be heard should be provided at a meaningful time. *Fuentes v. Shevin*, 407 U.S. 67 (1972). The Court additionally stated that, because the plaintiff in *Fuentes* only challenged the pre-judgment seizure of her property rather than an injunction of the state court proceedings themselves, the *Younger* abstention did not apply to her case. *Id.* at n.3. Plaintiff argues that her constitutional challenge to Wayne County's seizure of her car is analogous to *Fuentes*. However, the Supreme Court's carving of a limited exception in *Fuentes* contradicts Plaintiff's logic: where "the seizure has been directly necessary to secure an important governmental or general public interest," the Court allows "outright seizure without opportunity for a prior hearing." *Id.* at 91. Therefore, because seizing property that is suspected to be used in the course of a crime is an important government interest, Wilson's case falls squarely within this narrow exception to the *Fuentes* holding. *Loch,* 337 F.3d at 579 ("The state's interest in these forfeiture proceedings is likely

to be as great as its interest in its criminal law proceedings." (quoting *Postscript Enterprises, Inc. v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989))).

Plaintiff also attempts to escape abstention under *Gerstein v. Pugh* and *Habich v. City of Dearborn*. 420 U.S. 103, 105 (1975); 331 F.3d 524 (6th Cir. 2003). Respectively, these cases assert that *Younger* abstention does not apply when plaintiff's claims against the state court proceedings could not be raised in their defense and were "collateral" in nature. *Gerstein*, 420 U.S. at n.9; *Habich*, 331 F.3d at 530 (6th Cir. 2003). In *Gerstein*, the Court recognized that the district court's "injunction was not directed at the state prosecutions . . . but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution," such that an "order to hold preliminary hearings could not prejudice the conduct of the trial on the merits." *Gerstein*, 420 U.S. at n.9. Similarly, in *Habich*, when a property owner brought a § 1983 action against a city for padlocking her home without a hearing, the court found that "the issues in Habich's federal suit could neither be proven as part of the state case-in-chief nor raised as an affirmative defense." *Habich*, 331 F.3d at 531.

Plaintiff claims that like the plaintiffs in *Gerstein* and *Habich*, she can only bring her federal claims before the state court if she filed a separate lawsuit seeking affirmative relief, not within the proceedings themselves. These cases would be

conclusively persuasive for Wilson but for Sixth Circuit precedent which hold the contrary.

In *Loch v. Watkins*, the Court of Appeals was presented with an almost identical legal question: does the *Younger* abstention apply when a plaintiff brings constitutional claims in federal court parallel to state court forfeiture proceedings against their vehicle, which was seized pursuant to Michigan's Controlled Substances Act, MCL 333.7521. 337 F.3d 574 (6th Cir. 2003). The court answered yes. *Id*. at 579. Like Wilson, Loch's car was seized as part of Wayne County's Operation Push Off program in connection with a suspected controlled substance violation that Loch himself was not involved in. *Id*. at 577. Then, "[t]wenty days after the seizure of the vehicle . . . but before the forfeiture hearing in state court, Loch filed a complaint in federal district court." *Loch*, 337 F.3d at 577. And like Wilson, Loch sought declaratory and injunctive relief against Wayne County alleging, *inter alia*, due process violations for "depriv[ing] individuals of forfeiture hearings and extort[ing] settlements from owners." *Id*. However, because (1) Loch's "state court proceeding was pending at the time the federal complaint was filed," (2) forfeiture proceedings, which are "quasi-criminal in nature" implicate important state interests, and (3), "there was no impediment to Loch's raising the constitutional issues of this case in the state proceedings", abstention was appropriate. *Id*. at 578-79.

The Sixth Circuit again followed this precedent *State of Tennessee v. Gibbons*, 698 F. App'x 307 (6th Cir. 2017). In *Gibbons*, the court abstained from plaintiff's claims that the seizure of his vehicle was unconstitutional when the forfeiture hearing was still pending, and plaintiff had an "an adequate opportunity to assert his constitutional claims in Tennessee state court once the forfeiture process [was] through." *Id.* at 309.

Wilson's case is not materially distinguishable from this precedent. Further, Plaintiff has not presented any evidence that she cannot raise her constitutional claims in state court. *See Loch v. Watkins*, No. 00-CV-70478-DT, 2001 WL 558230, at *4 (E.D. Mich. Mar. 31, 2001), *aff'd*, 337 F.3d 574 (6th Cir. 2003) (finding that plaintiff had an adequate opportunity to constitutionally challenge forfeiture procedures in Wayne County Circuit Court and Michigan appellate courts when there was "no showing that the rules and procedures established in Michigan bar[red] Plaintiff from presenting her constitutional claims before the Michigan courts."). In fact, Wilson's Answer in state court already raises several constitutional challenges. (ECF No. 18-16).

Moreover, raising and prevailing on such claims in civil forfeiture cases in Michigan courts is not uncommon. For example, in *City of Grand Rapids v. 2000 GMC Denali & Contents*, the Michigan Court of Appeals held that requiring bond before a forfeiture hearing denied claimants of a significant property interest and

violated due process. 892 N.W.2d 388, 400 (Mich. Ct. App. 2016); *c.f. State ex rel. Patterson v. Weaver*, 74 Mich. App. 462, 463 (1977) (considering the merits of, although ultimately rejecting, claims that "confiscation of an innocent owner's property amount[ed] to an unconstitutional taking without just compensation.").

Further, in *State ex rel. Wayne Cty. Prosecutor v. Gladstone*, claimant's building was padlocked pursuant to Michigan's Nuisance Abatement statute, which, in part, seeks to curb prostitution. 64 Mich. App. 55, 57-58 (1975). On appeal, one of the building's vendees, Maritza Adams, claimed that the statute violated due process by failing to provide proper notice and opportunity to be heard for people with property interests in a padlocked building. *Id.* The Michigan Court of Appeals held that the procedure used to notify Adams was inadequate under Michigan law. *Id.* at 59. Accordingly, the Court granted relief and states that the Wayne County Prosecutor "may not, consistent with due process, proceed to lock up a defendant's property without first diligently trying to give that defendant actual notice of the proceedings and an opportunity to be heard. We do not pass on the constitutionality of the statute." *Id.* at 60.

The Court therefore finds that Wilson similarly has an adequate opportunity to raise her constitutional claims in state court and *Younger* abstention is appropriate in regard to the on-going proceedings against her Saturn Ion. Defendant's Motion to

Abstain on the Claims Asserted by Plaintiff Stephanie Wilson [18] is therefore granted.

The Court notes that Wilson's claims regarding her Chevy may still be raised here, because that car was abandoned, and the state forfeiture proceedings against have completed. Thus, there is no pending state court proceeding to trigger abstention.

### B. Defendant's Motion to Abstain or Stay, or in the Alternative, Motion to Dismiss the Claims Asserted by Plaintiff Robert Reeves [19]

#### a. Factual Background

In July 2019, Plaintiff Robert Reeves' car and two cellphones and $2,280 in cash were seized at a gas station after he left work on a construction site. (Am. Compl. ¶¶ 152-56). Police claimed that one of the pieces of equipment Reeves operated at the site, a skid steer, was stolen from Home Depot. (*Id.*). Reeves believed that his co-worker had rented the equipment from Home Depot based on rental paperwork he had seen. (*Id.*). Reeves was detained in a police car and a local jail for several hours and let go. (*Id.* ¶ 155). No one was arrested for stealing the skid steer. (*Id.* ¶ 157). Reeves' property was seized under the Omnibus Forfeiture Act ("OFA"). The seizure notice he received stated that a "civil forfeiture matter may follow the criminal proceeding which will require further process of which you will be notified." (ECF No. 12-6). However, after more than six months, no forfeiture action was filed against Reeves' property and he had no opportunity to contest the seizure.

(Am. Compl. ¶ 161). He repeatedly called the County's number on the notice to no avail, even after hiring an attorney. (*Id.* ¶¶ 161-62). The day after he filed his original complaint in the Court, the WCPO directed the relief of this property. (*Id.* ¶¶ 163-64). After paying a $100 fee to a private towing company, Reeves received his car on February 20, 2020. (*Id.* ¶¶ 167-68). His cell phones have not been returned. (*Id.* ¶ 229).

On March 12, 2020 a warrant was issued for Reeves' arrest and despite attempting to turn himself in on March 23rd, he was not taken into custody until May 8th. (*Id.* ¶¶ 176-78). He was charged with possession of stolen property and release on bond. (*Id.* ¶ 181). Since the filing of his Amended Complaint, Reeves' state criminal charges were dismissed on February 8, 2021 and reinstated on March 3, 2021. (ECF No. 47); (ECF No. 48). Reeves seeks $3,676 in compensatory damages and an injunction ordering restitution payment based on the retrieval fee and towing and storage damage done to his vehicle. (Am. Compl. ¶ 32).

### b. Discussion

#### i. Abstention

Defendant moves the Court to abstain from adjudicating Reeves's claims under *Younger*. The Court disagrees, because Reeves's on-going state criminal proceeding does not provide him with an adequate opportunity to raise his constitutional claims regarding his vehicle's forfeiture.

First, Reeves's case is similar to *Gerstein*. In *Gerstein*, the Court did not abstain from hearing plaintiff's claims, because "the legality of pretrial detention without a judicial hearing . . . could not be raised in defense of the criminal prosecution." *Gerstein*, 420 U.S. at n.9. Similar, in *J. P. v. DeSanti*, the Sixth Circuit Court found that a juvenile defendant's challenge of the juvenile court's use of social histories was "collateral" to the on-going juvenile proceedings, because it could not be raised in any pending proceedings and adjudication of Plaintiff's claim would not "interfere in any manner with ongoing juvenile court proceedings." 653 F.2d 1080, 1085 (6th Cir. 1981). Here, Reeves' claims challenge the constitutionality of his car's seizure in connection with forfeiture proceedings which have already completed, and these claims cannot be raised in defense of his criminal prosecution for receiving stolen property. Furthermore, unlike Wilson, Reeves' case is not bound to the precedent set in *Loch*, because Reeves's forfeiture proceedings completed (unlike the pending proceedings at issue in *Loch*) and his car was seized under the Omnibus Forfeiture Act (rather than under the Controlled Substances Act, as in *Loch*).

Moreover, Defendant seeks abstention based on a misinterpretation of Reeves's claims—whether Michigan State Police had probable cause to arrest and seize his vehicle. However, as articulated by Reeves, his claims do not challenge his arrest, nor are they limited to whether there existed probable cause for the seizure.

Instead, Reeves's complaint "challenges the County's seizure policies and practice from the time property is taken off the street until the time the County begins to litigate a forfeiture case in state court," including excessive fines and lack of prompt post-seizure hearing, *inter alia*. (ECF No. 29, PageID.818); (ECF No. 12). *Younger* abstention is not appropriate.

In the alternative, Defendant argues the Court should use its inherent authority to stay the case pending the conclusion of Reeves' criminal proceedings. Courts consider the following factors for a stay using inherent authority:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007). All but one of these factors weigh against staying the case.

First, as discussed above, the issues in Reeves's criminal case do not sufficiently overlap with his civil case, because here Reeves is not challenging his arrest and his constitutional claims attack Wayne County's post-seizure policies and practices, not just the seizure itself. Second, Reeves's private interests do not favor a stay, because Defendant's concern regarding Reeves's Fifth Amendment right against self-incrimination is misplaced; Reeves himself, not the pendency of this case, controls whether he exercises or waives this right. *See Berghuis v. Thompkins*,

560 U.S. 370, 380-87 (2010). Third, the County's concerns about discovery in this case compromising their criminal investigation are too general and speculative to justify a stay. Fourth, proceeding with both cases does not weigh against the interests of the courts, because the cases are distinct enough to not be duplicative. And fifth, the public interest favors this Court adjudicating Reeves's constitutional challenges to Wayne County's systemic practices. Therefore, the Court need not stay this case pending Reeves's criminal proceedings in state court.

### ii.  Failure to state a claim

#### 1.  Count I

The Court finds that Mr. Reeves has failed to sufficiently allege a plausible Fourth Amendment violation. As argued by Defendant, Mr. Reeves cannot claim that law enforcement had no probable cause to seize his vehicle when the law enforcement who seized his car—the Michigan State Police—are not defendants in this case. (ECF No. 12-6). Although Plaintiff retorts that the Wayne County Prosecutor's Office instructed a Michigan state police taskforce to release Mr. Reeve's property (Compl. ¶ 164), he has failed to allege that MSP seized Mr. Reeve's vehicle at Wayne County's direction or that the County's custom, policy, or practice was conceivably a "moving force" behind the seizure—as required for *Monell* liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) ("municipal policy must be 'the moving force of the constitutional violation'")

(quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981))). Consequentially, under circuit law, Mr. Reeves cannot allege the unlawful retention of his property, when he has failed to sufficiently allege that the initial seizure was also unlawful. *Fox v. Van Oosterum*, 176 F.3d 342, 350-52 (6th Cir. 1999) (declining to uphold a challenge to retaining property in the absence of a challenge to the initial seizure).

Moreover, the facts of Mr. Reeves' seizure fail to align with the allegations enumerated under Count I of the Complaint. Count I alleges that (1) the seizure of Plaintiffs' cars lacked probable cause that the property was connected to a crime committed by the owner and (2) the County has a policy and practice of seizing cars based on its proximity to crime committed by people other than the driver and owner. (Am. Compl. ¶¶ 263, 267-68). In contrast, it is undisputed that Mr. Reeves (1) was suspected of committing and subsequently charged with a crime and (2) owned the vehicle and was present at the time of seizure—facts that differ starkly from Wilson and Ingram's circumstances. (*Id.* ¶¶ 153-57, 176). The Complaint also claims that the County unreasonably retains cars under condition of paying accruing fees. (*Id.* ¶¶ 263-64, 266). However, although Mr. Reeves paid a $100 fee to a private towing to retrieve his vehicle, he does not allege paying, or even being asked to pay, a redemption fee to the County for its retrieval. (*Id.* ¶¶ 164-69, 226). In fact, it was returned to him under no alleged conditions. (*Id.* ¶ 164). In these respects, the facts of Mr. Reeves's case align with neither Ingram and Wilson's nor with the Fourth

Amendment violation allegations in the Complaint. Mr. Reeves's Fourth Amendment claim is therefore dismissed.

### 2. Counts II-VI

The County argues that Counts II-VI do not apply to Reeves, because they concern the Nuisance Abatement and Controlled Substances statutes as opposed to the Omnibus Forfeiture Act ("OFA"), under which Reeves' car was seized. Reeves failed to address these concerns in his response, and, except for Count IV, the Court finds the County's arguments to be persuasive. The OFA is fundamentally dislike the Nuisance Abatement and Controlled Substances statutes in that forfeiture proceedings under the OFA are dictated by a criminal conviction, rather than just an arrest or investigation. The Act itself states that "within 28 days after the conviction of a person of a crime the state or local unit of government seeking forfeiture of the property shall give notice of the seizure of the property . . . and the intent to begin proceedings to forfeit." MCL 600.4707. Inherent in this prerequisite is a finding of guilt and an opportunity for the defendant to show innocence. Furthermore, the Act additionally provides a hearing for anyone who claims to not have knowledge of the crime in question in order to challenge their property's seizure. MCL 600.4705. At such a hearing, the Government would have to establish that it has probable cause to believe that the property is subject to forfeiture, the defendant had knowledge of

the crimes, and if contested, the property was legally seized. *Id.* This hearing must take place within 28 days of the defendant filing a motion. *Id.*

Due to the nature of the Act and the circumstances of Reeves' seizure and arrest, several of his claims are not plausible allegations of constitutional violations. First, because of the Act's embedded protections for innocent owners, Count III (Fourteenth Amendment lack of protection for innocent owners) does not apply to Reeves. Second, Counts II and V (excessive fines and fees under the Eighth and Fourteenth Amendments, respectively) do not apply to Reeves, because he did not settle a forfeiture action and pay a redemption fine for his car's return—he retrieved his vehicle before his criminal case, let alone his forfeiture case, began by pay a towing fee to a private towing company—not the County. Reeves has also not sufficiently alleged a Fourteenth Amendment lack of notice claim (Count VI), because it is undisputed that he received notice of his car's seizure. (Am. Compl. ¶¶ 159-61); (ECF No. 12-6). He has, however, sufficiently alleged a Fourteenth Amendment Due Process violation for the County's failure to provide a prompt post-seizure hearing. The merits of this claim are expounded on in the Court's discussion of Plaintiff Ingram. Retention of Count IV also allows Reeves' damages claim (Count IX) to survive dismissal. All other claims are dismissed.

### C. Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment on the Claims Asserted by Plaintiff Melisa Ingram [20]

### a. Factual Background

Plaintiff Melisa Ingram's 2017 Ford Fusion was twice seized by Wayne County Sheriffs. She was not present for either occurrence. In November 2018, Ingram loaned her car to her then boyfriend, Edland Turner. (Am. Compl. ¶ 49). Upon suspicion that Turner attempted to solicit a prostitute while driving the car, Wayne County Sheriff deputies seized it but made no arrests. (*Id.* ¶¶ 50-51). Turner was given a Notice of Seizure, which he later gave to Ingram. (*Id.* ¶ 55). Ingram claims she was never mailed a notice of her car's seizure. (*Id.* ¶ 56). According to the notice, her car was seized under Michigan's Nuisance Abatement Statute. (*Id.* ¶ 58). Following instructions on the notice, Ingram went to the Vehicle Seizure Unit of the WCPO to retrieve her vehicle. (*Id.* ¶ 59). When she was told that she would have to wait at least four months before her case would be heard by a judge, Ingram opted for paying the $900 redemption fee plus $455 in towing and storage fees for her car's was release. (*Id.* ¶¶ 63-64).

In June 2019, Ingram again loaned her vehicle to Mr. Turner, who was again pulled over by sheriffs. (*Id.* ¶ 66). This time, police claim he was stopped because the house where he had just attended a barbeque was allegedly connected to drugs or prostitution. (*Id.* ¶ 67). Ingram's car was seized and neither Turner nor the homeowners were arrested. (*Id.* ¶¶ 68-70). Once again, Mr. Turner was given a notice at the time of seizure and Ingram was not mailed a notice. (*Id.* ¶¶ 72-73).

Since this was the second seizure of her vehicle, Ingram faced a $1800 redemption fee. (*Id.* ¶ 75). At the time, Ingram had begun bankruptcy proceedings in federal court. (*Id.* ¶ 78). Instead of redeeming her vehicle, she surrendered her interest in it to Ford Motor Credit, the lien holder. (*Id.*). Despite this, WCPO initiated forfeiture proceedings against the car, which named Ingram as the owner and compelled her to attend pre-trial conferences with prosecutors. (*Id.* ¶¶ 81-82, 84). After seven months of attempting to correct the mistake and retrieve her personal property from the car, Prosecutors agreed that Ford Motor Credit was the proper claimant. (*Id.* ¶¶ 88-89). In January 2020, the forfeiture action was dismissed without prejudice and Ingram was allowed to retrieve her belongings from her car. (*Id.* ¶ 90).

### b. Analysis

#### i. Standing

Defendant first argues that Ingram does not have standing to seek injunctive and declaratory relief, because her civil forfeiture case has already been dismissed. "Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction." *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) (internal citation omitted). "[P]laintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). Standing contains three elements. First, a plaintiff has standing when they

have suffered an "injury in fact" which is "concrete and particularized" and "actual and imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the challenged conduct such that the injury is "fairly traceable" to the defendant. *Id*. Third, it must be "likely" that the injury will be "redressed by a favorable decision." *Id.* at 561. Although Plaintiff's injury — the seizure and retention of her vehicle — occurred in the past, Plaintiff as sufficiently shown a likelihood that she will be injured in the future.

Plaintiffs have standing when a "threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). For example, in *O'Shea v. Littleton*, the U.S. Supreme Court found that plaintiffs who claimed they were subject to discriminatory enforcement of criminal law did not have standing, because the Court assumed "that [the plaintiffs would] conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct." 414 U.S. 488, 497 (1974).

Similarly, in *City of Los Angeles v. Lyons*, Plaintiff claimed he had standing, because he could be placed in a stranglehold again by police during a minor traffic violation. 461 U.S. 95, 107-08 (1983). However, the Court did not "agree that the odds that Lyons would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever are sufficient

to make out a federal case for equitable relief." *Lyons*, 461 U.S. at 108 (internal citation and quotation omitted). The Court also noted that plaintiff "made no showing that he is realistically threatened by a repetition of his experience," especially considering that five months between the stranglehold and the filing of the complaint elapsed without another "unfortunate encounter." *Id*. at 108-09.

However, the same cannot be said of Plaintiff Ingram. As alleged, Ingram's car was seized and subject to forfeiture proceedings not once, but twice, within a seven-month span. And unlike *O'Shea*, where the Court could "assume" that plaintiffs would simply follow the law and "avoid prosecution," 414 U.S. at 497, here, Ingram's car was seized due to no fault of her own, and in fact, she was not present during either seizure. It appears that the seizure of Ingram's car is largely out of her control. *See Floyd v. City of New York*, 283 F.R.D. 153, 170 (S.D.N.Y. 2012) (finding that plaintiff's "risk of future injury d[id] not depend on his being arrested for unlawful conduct and so he cannot avoid that injury by following the law.").

Plaintiff's case is like that of plaintiffs in *Floyd v. City of New York*. In *Floyd*, plaintiffs challenged New York's police officer's systemic stop-and-frisk practices. *Id.* The Defendants in that case argued that plaintiffs' claims for injunctive relief were too speculative. The Court, however, found that, because (1) the risk of injury could not be avoided by following the law, (2) plaintiffs alleged widespread and systemic unconstitutional stops, and (3) two out of the four plaintiffs had each been

stopped more than once — standing existed. *Id.* at 169-70. Correspondingly, (1) Ingram in the past has not and realistically in the future cannot prevent seizure by merely following the law, (2) Plaintiff alleged systemic vehicle forfeiture practices by Wayne County, and (3) two out of three Plaintiffs—Ingram and Wilson—have had the vehicle seized and retained twice. *See* (Am. Compl. ¶¶ 186-203). Under these facts, Ingram has fulfilled the elements of standing and shown that she is "realistically threatened by a repetition of [her] experience." *Lyons*, 461 U.S. at 109.

### ii.  Dismissal

Defendant argues for dismissal, or in the alternative summary judgment, of Counts I, II, IV, V, VII, and VIII. The Court finds that at this stage, it is premature to decide the merits of Plaintiff's claims under the summary judgment standard and will apply the Fed. R. Civ. P 12(b)(6) standard instead.

### 1.  Count I

Defendant first claims that Ingram's 2019 seizure is barred by the doctrine of res judicata. The Court agrees. "The doctrine of res judicata bars subsequent causes of action when a court of competent jurisdiction already has rendered a final decision on the merits involving the same parties and claims in a prior action." *Consolidation Coal Co. v. Maynes*, 739 F.3d 323, 327 (6th Cir. 2014). Here, the parties stipulated to an order of dismissal of the County's nuisance abatement case with prejudice. (ECF No. 20-21). Both state and federal law dictates that such a dismissal constitutes

a final judgment on the merits for purposes of res judicata. *Limbach v. Oakland Cty. Bd. of Cty. Rd. Comm'rs*, 226 Mich. App. 389, 395-96 (1997) ("This Court has held that a voluntary dismissal with prejudice acts as an adjudication on the merits for res judicata purposes." (citing *Brownridge v. Michigan Mutual Ins. Co.*, 115 Mich. App. 745, 748 (1982))); *see also White v. Mortg. Elec. Registration Sys., Inc.*, No. 07-10074, 2008 WL 4725161, at *2 (E.D. Mich. Oct. 24, 2008) ("there was a stipulated order of dismissal with prejudice, which is a resolution on the merits*."); see also State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc*., No. 2:16-CV-13040, 2019 WL 7593842, at *5 (E.D. Mich. Oct. 9, 2019) (finding the same). Additionally, Plaintiff could have, and in fact did, challenge whether probable cause for the seizure existed in response to the County's Complaint. (ECF No. 20-17). Ingram's challenge to the seizure of her vehicle in 2019 is therefore barred. However, Ingram's challenge to her vehicle's seizure in 2018 may proceed.

Regarding the 2018 seizure, Defendant claims that Plaintiff's settlement agreement waives any claim challenging this seizure. However, the language of the agreement does not lend itself to this conclusion. It states that Ingram waives her right to contest the abatement of the vehicle under MCL 600.3801 *et seq*. and "precludes any action *in this case* regarding the vehicle," including direct appeals, as cited by Defendant. (ECF No. 20-8) (emphasis added); *See Lewis v. Wayne County Prosecutor's Office*, No. 322935, 2016 Mich. App. LEXIS 816 (Mich. Ct.

App. Apr. 26, 2016). However, it does not state that Ingram in foreclosed from constitutionally challenging her car's seizure in federal court. *See Habich*, 331 F.3d at 531 (allowing a § 1983 case to collaterally attack state proceedings).

Defendant additionally contends that Count I should be dismissed, arguing probable cause existed for the seizure, because the officers observed Ingram's ex-boyfriend, Turner, engaged in prostitution related activities while driving the car. This again reflects a misunderstanding of Plaintiff's claims. Plaintiff does not contest whether the officers had probable cause as it relates to Turner's activities, but rather Plaintiff alleges that that the County's seizure of the car without probable cause that it is connected to a crime committed by Ingram, the owner, amounts to a Fourth Amendment violation, which she has plausibly alleged. Furthermore, even if the County had probable cause at the time of the seizure, Ingram argues that the County did not have probable cause to continue its seizure and retention of the vehicle while the filing of forfeiture proceedings was unreasonably delayed and, in the meantime, the vehicle's release was conditioned on payment of a redemption fee.

Finally, Defendant challenges this continued detention theory of Fourth Amendment liability. It argues that under *Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999) and *Langston v. Charter Township of Redford*, 623 F. App'x 749 (6th Cir. 2015), retention of property after the initial seizure is complete does not implicate the Fourth Amendment. This, however, is a misreading of *Fox* and *Langston*. Both

cases involve a Fourth Amendment challenge to the retention of property after a lawful seizure. Mr. Fox challenged the retention of his license following a lawful seizure; Mr. Langston challenged the retention of money following a search and seizure incident to a lawful arrest. *Fox*, 176 F.3d at 349; *Langston*, 623 F. App'x at 760. Both cases conclude that each plaintiff may not challenge the Government's retention of their property for one clear reason: they had not also challenged the initial seizure that lead to the unlawful retention. *Fox*, 176 F.3d at 350-51; *Langston*, 623 F. App'x at 760-61. The Court in *Fox* explains that "the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property," therefore, "[i]f Fox was complaining about both an illegal initial seizure of the license and an illegal refusal to return it, he would have a Fourth Amendment claim." *Fox*, 176 F.3d at 350-52. Here, Ingram's Fourth Amendment claim complains about both an illegal initial seizure of the vehicle and an illegal refusal to return it without paying a redemption fee. *Fox* and *Langston* do not pose an obstacle to Ingram's claim, rather, they endorse it.

Plaintiff further points to another line of cases — *United States v. Place*, 462 U.S. 696, 709 (1983) and *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) — as credible support for her claim. In *Place*, upon suspicion that he was transporting narcotics, police officers seized and held Mr. Place's luggage for 90 minutes while waiting for a search warrant to be issued. Upon review, the U.S. Supreme Court

found that "[t]he length of the detention of respondent's luggage alone preclude[d] the conclusion that the seizure was reasonable in the absence of probable cause," and that "the 90-minute detention of respondent's luggage is sufficient to render the seizure unreasonable." *Place*, 462 U.S. at 709-10. Relying on *Place*, the Ninth Circuit held that a city's seizure and 30-day detention of a vehicle, even after the registered owner, who was not driving/present at the time of seizure, offered to pay for its release, "constituted a seizure that required compliance with the Fourth Amendment," because "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force" and "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." Brewster, 859 F.3d at 1197. *See Ordonez v. Stanley*, 495 F. Supp. 3d 855, 861 (C.D. Cal. 2020) (holding under Brewster that Plaintiff sufficiently alleged a Fourth Amendment violation "arising from the continued impoundment of her vehicle."). Here, Plaintiff has similarly sufficiently alleged that both the initial seizure and the continued detention of the vehicle, despite the owner's absence from the alleged crime scene, lacked probable cause in violation of the Fourth Amendment.

Defendant's Motion [20] is denied in part and granted in part in on this claim. Plaintiff may procced with her claim regard the seizure of her car in 2018, however, the seizure of her in 2019 is barred by res judicata.

### 2.  Count II – Eight Amendment Excessive Fines and Fees

Plaintiff's second count alleges that Wayne County's policy and practice of charging a redemption fee violates the Excessive Fines Clause of the Eight Amendment, which states that no "excessive fines [shall be] imposed." U.S. CONST. amend. VIII. Incorporated by the Fourteenth Amendment's Due Process Clause, the Excessive Fines Clause is enforceable against the States, including in civil *in rem* forfeitures. *Timbs v. Indiana*, 139 S. Ct. 682, 687, 691 (2019). Protection against excessive fines proscribe their use for objectives beyond "the penal goals of retribution and deterrence," such as for "a source of revenue." *Id.* at 689 (quoting *Harmelin* v. *Michigan*, 501 U.S. 957, 979, n. 9 (1991). Ingram claims that demanding owners to pay a fine to retrieve their vehicle, which was seized for a crime committed by another person is per se disproportionate punishment and excessive. (Am. Compl. ¶¶ 275-76).

The County erroneously argues that Ingram's claim challenges Michigan's nuisance statute and the Michigan and U.S. Supreme Court cases that uphold it. The nuisance abatement statute, under which Ingram's vehicle was seized, states that "knowledge" of the nuisance "is not required" for forfeiture. MCL 600.3815 (2). This lack of an innocence defense was held as constitutional in *People v. Bennis,* 527 N.W.2d 483, 494 (MICH. 1994), and *Bennis v. Michigan*, 516 U.S. 442 (1996). In *Bennis*, a woman's car was seized under Michigan's nuisance statute after her husband used it to engage in sexual activity with a prostitute. 516 U.S. 442**.** She

challenged the seizure, claiming that she was unaware of her husband's crime. *Id.* at 444. The Court, however, found that she was not entitled to an innocent owner's defense following "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Id.* at 446.

The County believes that Plaintiff wishes to challenge this holding. This is misguided. *Bennis'* holding is limited to an innocence defense in a forfeiture action, but here, Plaintiff challenges Wayne County's practice of charging a $900-$2700 redemption fee to innocent owners *before* the forfeiture action has even begun. (ECF No. 12-2). Furthermore, the Supreme Court in *Bennis* "did not squarely address the constitutionality of the Michigan nuisance abatement statutes as applied by the Detroit police department and Wayne County prosecutor's office to automobiles in the various precise circumstances" alleged in Ingram's Complaint. *Ross v. Duggan*, 402 F.3d 575, 582 (6th Cir. 2004). The County's redemption fees and fines practice is neither dictated by statute nor affirmed as constitutional by the *Bennis* cases—it is solely a creature of Wayne County policy.

Defendant also argues that its redemption fee and fines are constitutional under *Ross v. Duggan*. 402 F.3d 575. In *Ross*, Detroit based defendants in a forfeiture action under the nuisance statute claimed that the $900-$2,000 fines and fees for the

release of their vehicles were excessive and disproportionate to their committed offenses. *Id.* at 588. *Ross* held that civil fines and fees not exceeding $2000 were not "grossly disproportionate to the gravity of the deterred and/or punished offenses," including solicitation of prostitution. *Id.* at 588-89 ("'[a] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportionate to the gravity of a defendant's offense.'" (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Plaintiff attempts to distinguish her case from *Ross* by arguing that while the claimants in *Ross* were accused of various sex offenses, Ingram was never suspected of, let alone even arrested for, an offense that led to her car's seizure. *Id.* at 578. Plaintiff argues that her innocence renders the fine per se grossly disproportionate. However, *Ross* seems to implicitly reject this innocence argument. For the proposition that a fine not exceeding $2,000 is not grossly disproportionate to the gravity of the offenses, *Ross* cites the U.S. Supreme Court in *Bennis* as lending support that deterrence and punishment even validated the forfeiture of an "innocent co-owner's" interest in her vehicle. *Id.* at 589. The Court reads this language as preempting Plaintiff's innocence argument against fines. Therefore, under precedent that fines under $2,000 to release impounded vehicles are not unconstitutionally excessive, Count II is dismissed.

### 3. Count IV – Fourteenth Amendment Lack of Prompt, Post-Seizure Hearing

Count IV of Plaintiff's Complaint alleges that the County's six month or more delay in commencing forfeiture proceedings and lack of a prompt, post-seizure hearing violates the Due Process Clause of the Fourteenth Amendment. (Am. Compl. ¶¶ 286-309). Ingram further alleges that the County's policy of holding months of pre-trial conferences with a prosecutor, absent judicial oversight, wrongfully pressured her and similarly situated individuals into settling their forfeiture actions and deprived them of their due process rights. (*Id.*).

Defendant once again argues that Plaintiff is challenging Michigan's Nuisance Abatement statute, which does not provide for such a hearing, rather than the County's custom or policy not to commence one. However, Plaintiff has made clear that she is challenging Defendant's custom of delaying forfeiture proceedings and requiring claimant's appearance at pre-trial conferences before they have the opportunity to challenge their car's detention in front of a judicial officer. (Am. Compl. ¶¶ 291-92). This is a custom that the County has full control over.

Turning to the merits of Plaintiff's claim, the right that she claims was violated—the right to have a prompt post-seizure hearing—remains an open question in the Sixth Circuit. Several circuits have ruled in favor of this right (*Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002); *Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), *vacated as moot*, *Alvarez v. Smith*, 558 U.S. 87 (2009)), while other circuits have declined to do so. *Serrano v. Customs & Border*

*Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488 (5th Cir. 2020), *cert. denied.*, 209 L. Ed. 2d 546 (Apr. 19, 2021); *Booker v. City of St. Paul*, 762 F.3d 730 (8th Cir. 2014); *Gonzales v. Rivkind*, 858 F.2d 657 (11th Cir. 1988). To date, the Sixth Circuit has yet to weigh in. It has, however, recently left an open door for recognition of this right.

In *Nichols v Wayne County*, Plaintiff filed a § 1983 *Monell* putative class action alleging a due process violation when Wayne County failed to provide an intervening hearing after his car's seizure, but before a forfeiture hearing to challenge the detention of his car. 822 F. App'x 445, 446-47 (6th Cir. 2020). Plaintiff claimed that the County failed to institute prompt forfeiture proceedings and ultimately held his car for three years. *Id.* The district court dismissed Nichols' claim to a post-seizure hearing to challenge his car's detention prior to forfeiture proceedings. *Id.* at 448. It held that the deprivation of such a hearing did not violate due process. *Id.* The Sixth Circuit affirmed the dismissal but on different grounds. *Id.* at 450-51. The court found that Nichols failed to allege that a municipal policy or custom was the moving force behind the violation, as opposed to just one lone prosecutor. *Id.* It went so far as to state that a quickly filed forfeiture hearing could satisfy due process, but stopped short of answering the question "how quick would be quick enough?" due to Plaintiff's failure to attribute a constitutional violation to the municipality. *Id.* at 451.

However, as previously outlined, Plaintiffs' allegations are attributable to the County's operations, not rogue prosecutors. In declining to the constitutional question before it in *Nichols*—whether failure to provide a prompt post-seizure hearing before forfeiture proceedings violates due process—the Court of Appeals left open a door for Plaintiffs' claim to survive dismissal.

The *Mathews v. Eldridge* factors dictate whether a particular procedure is required in order to satisfy due process. 424 U.S. 319, 334–35 (1976).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Under the first factor, the Court must consider the private interest affected by the official action. Here, seizing and retaining Plaintiffs' cars during the pendency of their forfeiture proceedings deprives them of a recognized property interest in their car. Then Court of Appeals for the Second Circuit Judge Sotomayer noted in *Krimstock v. Kelly* that "[t]he particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood. An 'individual has an important interest in the possession of his [or her] motor vehicle,' which is 'often his [or her] most valuable possession. 306 F.3d 40, 61 (2d Cir. 2002) (quoting *Lee v. Thornton*, 538 F.2d 27, 31 (2d Cir. 1976)).

This interest is especially important in a heavily car dependent city like Detroit, in which public transportation options are limited and many rely on their vehicles to travel anywhere. See *Smith*, 524 F.3d at 838 ("Our society is, for good or not, highly dependent on the automobile. The hardship posed by the loss of one's means of transportation, even in a city like Chicago, with a well-developed mass transportation system, is hard to calculate."); *see also Krimstock,* 306 F.3d at 62 ("motor vehicle use is often found among those for whom mass transportation is inadequate."); *see also* (Am. Compl. ¶ 108 (noting that Plaintiff Wilson "took the bus for the first time in her life" after her car was seized)).

*Krimstock* also stated that other considerations affect the importance of Plaintiffs' interest in having use of their cars, such as the length of deprivation. *Krimstock,* 306 F.3d at 61-62. Here, Reeves was deprived of his car for seven months, while upon Plaintiff Ingram's second seizure she was forced to abandon her car after six months due to bankruptcy. (Am. Compl. ¶ 66, 90). These are long periods to be without a vehicle. The demonstrated and potential length of deprivation "increases the weight of an owner's interest in possessing the vehicle." *Krimstock,* 306 F.3d at 61.

Furthermore, in *Krimstock*, the New York forfeiture law required the City to start a forfeiture action twenty-five days after a claim is made for a vehicle, whereas here Plaintiff Ingram was told after her first seizure that she would have to wait at

least four months before her case would be heard by a judge. *Id.* at 54; (Am. Compl. ¶ 63-64). Therefore, the private interest is weightier here. *See Nichols* 822 F. App'x at 465 (Moore. J., dissenting) (noting the same, because under Michigan's Identity Theft Protection Act, there is no specific deadline "to bring a forfeiture action.").

Under the second factor, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The deprivation in question is the County's retention of Plaintiffs' vehicles post-seizure and pre-forfeiture judgment. The Court concurs with *Krimstock* that here "[n]either the arresting officer's unreviewed probable cause determination nor a court's ruling in the distant future on the merits of the City's forfeiture claim can fully protect against an erroneous deprivation of a claimant's possessory interest as his or her vehicle stands idle in a police lot for months or years." *Krimstock*, 306 F.3d at 62. However, the Second Circuit in *Krimstock* then concluded that this factor weighed in the Government's favor, because a police officer's trained assessment of driver intoxication in DWI cases reduced the risk of erroneous seizure and retention. *Id.* The same cannot be said here.

Plaintiff Reeves' car was seized due to an alleged theft for which he was not arrested for till eight months after the seizure. (Am. Compl. ¶¶ 157, 181). Plaintiff Ingram's car was first seized due to an alleged solicitation of a prostitute and then

for being parked outside of a home with an unspecified "connect[ion] to drugs or prostitution." (*Id.* ¶¶ 50-51, 67). Unlike a DWI investigation, probable cause for neither crimes can be reliably and accurately determined by a trained police officer's assessment or the use of a computerized tool at the time of seizure, such as a breathalyzer. There is no account that a police officer witnessed Reeves steal property from Home Depot. And in Plaintiff Ingram's case, there is no account that any drugs or contraband were found at the scene, let alone that no arrest was made. Furthermore, the forfeiture statutes in question authorize the seizure for a broad range of property such as proceeds or instrumentalities of crime and property used for lewdness, gambling, or "used to facilitate armed violence." MICH. COMP. LAWS § 600.4702(1); § 600.3801(1). These probable cause determinations are considerably more complex than simply measuring a driver's blood alcohol content at a traffic stop. *Nichols*, 822 F. App'x at 466 (finding the same for determining a suspect's intent to defraud under MITPA) (dissent). These circumstances point to a high risk of erroneous deprivation, especially for innocent owners who are not present at the time of seizure.

In addition, as recognized in *Krimstock*, a post-seizure hearing later cannot remedy the harm of the property's erroneous deprivation in the meantime.

> [T]he availability of a postseizure hearing may be no recompense for losses caused by erroneous seizure. Given the congested civil dockets in

federal courts, a claimant may not receive an adversary hearing until many months after the seizure. And even if the ultimate judicial decision is that the claimant was an innocent owner, or that the Government lacked probable cause, this determination, coming months after the seizure, "would not cure the temporary deprivation that an earlier hearing might have prevented."

*Krimstock*, 306 F.3d at 63-64 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 56 (1993). "[A]n owner cannot recover the lost use of a vehicle by prevailing in a forfeiture proceeding. The loss is felt in the owner's inability to use a vehicle that continues to depreciate in value as it stands idle in the police lot." *Id.* at 64. The role of a post-seizure detention hearing would be of significant value here. This factor therefore also weighs in Plaintiffs' favor.

Under the third factor, the Court considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335. The County fails to argue what, if any, interest it has in retaining cars post-seizure and pre-forfeiture judgment. However, in the absence of the Government's articulated interests, the Court considers two prominent arguments for post-seizure and pre-judgment forfeiture: 1) the need to prevent the vehicles from being used in future criminal acts, and 2) the burden on judicial and prosecutorial resources in holding prompt detention hearings after each seizure. Neither reason overcomes an individual's property interest in their car while awaiting forfeiture proceedings.

First, unlike a DWI, neither of the alleged crimes for which Plaintiffs' cars were seized are tied to or dependent on the use of a vehicle. Therefore, there is no reason to conclude that removing access to the vehicle would prevent the use of drugs, solicitation of prostitutes, or otherwise committing crimes unrelated to cars.

Second, the Court recognizes that requiring a prompt hearing and releasing a car which is subject to forfeiture would place an additional administrative burden on the County and allows for the possibility that the vehicle could be sold or destroyed before the forfeiture hearing. However, "[t]he need to prevent forfeitable property from being sold or destroyed during the pendency of proceedings does not necessarily justify continued retention of all vehicles when other means of accomplishing those goals are available. A bond is in some respects a superior form of security because it entails no storage costs or costs of sale." *Krimstock*, 306 F.3d at 65. Furthermore, in regard to the County's burden of providing a prompt administrative hearing—the Court recognizes that "due process always imposes some burden on a governing entity," however, this burden alone cannot outweigh the value of upholding individuals' rights under the Constitution. *Smith*, 524 F.3d at 838.

Therefore, although this factor weighs slightly in the County's favor, on balance, an individual's significant private interest in their vehicle and the high risk of error in the current system lead the Court to conclude that a post-seizure and pre-

forfeiture judgment hearing is required due process.[1] Count IV of Plaintiffs'
Amended Complaint plausibly alleges a Fourteenth Amendment Due Process
violation and survives dismissal.

### 4. Count V – Fourteenth Amendment Arbitrary and Irrational Fines and Fees

Plaintiff alleges in Count V that the County's "seize and ransom" policy
irrationally requires innocent people to pay fines and fees based on the actions of
others. (Compl. ¶ 311). Additionally, the County irrationally decides whether to
release vehicle based on payment of fees, regardless of the seriousness of the offense
or concern for public safety. (*Id.* ¶¶ 313-15). To succeed on this substantive due
process claim, Plaintiff must allege "(1) a constitutionally protected property or
liberty interest exists, and (2) the constitutionally protected interest has been
deprived through arbitrary and capricious action." *Paterek v. Vill. of Armada,
Michigan*, 801 F.3d 630, 648 (6th Cir. 2015) (quoting *Braun v. Ann Arbor Charter
Twp.,* 519 F.3d 564, 573 (6th Cir. 2008). "Where government action does not deprive
a plaintiff of a particular constitutional guarantee or shock the conscience, that action
survives the scythe of substantive due process so long as it is rationally related to a

---

[1] The Court also concurs with the Second Circuit's analysis of *United States v. $8,850,* 461 U.S.
555 (1983), which presents a distinguishable legal question from the one at hand. *Krimstock*, 306
F.3d at 51-54, 68 ("plaintiffs' claim does not concern the speed with which civil forfeiture
proceedings themselves are instituted or conducted.").

legitimate state interest." *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997).

Here, Plaintiff has shown that her property interest in her vehicle was, at least in part, deprived on condition of paying of fines and fess unrelated to the Government's purported interest in deterring and punishing crime. (Compl. ¶ 311-21).

Defendant argues that individuals are under no obligation to agree to its settlement offers and that its enforcement of the nuisance abatement law promotes the legitimate public interest of protecting the community from prostitution related crimes. However, Plaintiff argues that she and others similarly situated must consider the government's settlement offers under coercive circumstances that force innocent owners to choose between gaining access to their cars now or waiting months of forfeiture proceedings, during which they have no innocence defense. Under these facts, Plaintiff has sufficiently alleged a fine and fees scheme that shocks the conscience. *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) ("Executive action shocks the conscience when it is "arbitrary, or conscience shocking, in a constitutional sense.") (quoting *Handy–Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012))). Plaintiff has therefore sufficiently alleged this Fourteenth Amendment claim.

### 5.  Count VI – Fourteenth Amendment Lack of Adequate Notice to Property Owners

Plaintiff's notice claim alleges that the County routinely fails to adequately notify car owners whose vehicle is seized while someone else is driving it. (Compl. ¶¶ 324-25). Although Michigan law instructs that the notice of seizure must be given to the owner of a vehicle within 28 days of seizure, Ingram states she never received this notice from the County but was notified of the seizure by Mr. Turner instead. MCL 600.4704 (1)(b); (Compl. ¶¶ 55-56).

"Due process does not require that a property owner receive actual notice before the government may take his property. Rather, we have stated that due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (internal citation omitted). The County argues that, because Ingram received actual notice of the seizure, which is more than our law requires, due process is satisfied.

The weight of binding and persuasive case law confirms Defendant's contention. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (denying procedural due process claim, because claimant "received *actual* notice of the filing, which "more than satisfied [claimant's] due process rights"); *United States v. McGovney*, 270 F. App'x 386, 387 (6th Cir. 2008) ("the defendant in this case had

actual notice almost two months prior to his sentencing hearing-at the very latest-in compliance with the requirements of procedural due process."); *Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020) ("If an individual did not receive *procedurally* adequate notice but was notified *in fact* that the government intended to deprive the individual of property or a liberty interest, no claim under procedural due process will lie."); *Cahoo v. Fast Enterprises LLC*, No. 17-10657, 2020 WL 7624613, at *16 (E.D. Mich. Dec. 22, 2020); *Allen v. Cuddie*, No. 2:19-CV-10518, 2020 WL 4331538, at *7 (E.D. Mich. June 24, 2020), *report and recommendation adopted*, No. 19-10518, 2020 WL 4284053 (E.D. Mich. July 27, 2020).

Additionally, "[s]ince an individual with actual notice would be given the opportunity to contest the government action at issue, she would not be able to demonstrate that a 'substantially different outcome' would have resulted with proper notice, and thus would fail the prejudice requirement." *Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020) (quoting *Graham v. Mukasey*, 519 F.3d 546, 549-50 (6th Cir. 2008)). Therefore, because Ingram received actual notice of her vehicle's seizure and does not allege prejudice as a result of the County's failure to notify her of the seizure, her procedural due process claim is dismissed.

### 6. Count VIII - Damages

Defendant finally argues that Ingram's claim for damages for her first seizure should be dismissed, because she signed a voluntary settlement with the County. However, as the Court articulated in its analysis of Count I, her agreement with the County does not foreclose her from seeking and obtaining relief from this Court. *Supra* pg. **31**. Plaintiff's claim for damages stands.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendant's Motions to Abstain, Stay, Dismiss, and for Summary Judgment [18, 19, 20]; **GRANTS** Defendant's Motion to Adjourn [23]; and **DENIES** Plaintiffs' Motion for Leave to Conduct Discovery [30]. The Court **GRANTS** Defendant's Motion to Abstain on the Claims Asserted by Plaintiff Stephanie Wilson [18], **GRANTS in part and DENIES in part** Defendant's Motion to Abstain or Stay, or in the Alternative, Motion to Dismiss the Claims Asserted by Plaintiff Robert Reeves [19], and **DENIES** Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment on the Claims Asserted by Plaintiff Melisa Ingram [20]. This order has the affect of dismissing Plaintiff Wilson's claims regarding the seizure of her Saturn Ion and dismissing all counts asserted by Plaintiff Reeves, except for Counts IV and IX.

Considering that this case presents a putative class action with a pending Motion for Class Certification, the Court finds it proper to make two caveats to its

holdings, for the sake of promoting efficiency for both the judiciary and the litigants alike. Under 28 U.S.C. § 1292(b):

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

The Court finds that this case warrants such a certification its holdings on Counts II and IV. First, under Count II, Plaintiff characterizes the *Ross* holding as a pre-*Timbs* decision. Although the Court does not read *Timbs* as impacting *Ross*' conclusion regarding excessive fines, the Court finds that there is substantial ground for difference of opinion in this regard, warranting a certification for an interlocutory appeal under 28 U.S.C. § 1292(b). Second, considering that the Sixth Circuit had yet to rule on whether a prompt post-seizure, pre-forfeiture judgment hearing is required under the Fourteenth Amendment Due Process clause, the Court's finding of such a requirement under Count IV also warrants certification for an interlocutory appeal.

**IT IS ORDERED** Defendant's Motion to Abstain on the Claims Asserted by Plaintiff Stephanie Wilson [18] is **GRANTED.**

**IT IS FURTHER ORDERED** that Granting in part and Denying in part Defendant's Motion to Abstain or Stay, or in the Alternative, Motion to Dismiss

the Claims Asserted by Plaintiff Robert Reeves [19] is **GRANTED in part** and

**DENIED in part**.

      **IT IS FURTHER ORDERED** Defendant's Motion to Dismiss, or in the

alternative, Motion for Summary Judgment on the Claims Asserted by Plaintiff

Melisa Ingram [20] is **GRANTED in part** and **DENIED in part.**

      **IT IS FURTHER ORDERED** that the parties may seek an interlocutory

appeal under 28 U.S.C. § 1292(b) of the Court's rulings on Counts II and IV.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Certify Class or

For Leave to Conduct Class Discovery [21] is **ADJOURNED** pending

interlocutory appeal.

      **IT IS FURTHER ORDERED** that Defendant's Motion to Adjourn

Plaintiffs' Motion to Certify Class [23] is **GRANTED**.

      **IT IS FURTHER ORDERED** that Defendant's Motion to Strike [28] is

**GRANTED**.

      **IT IS FURTHER ORDERED** that Plaintiffs' Motion For Leave to Conduct

Discovery on Counts I and VII [30] is **DENIED as moot**.

      **SO ORDERED.**


                              s/Arthur J. Tarnow
                              Arthur J. Tarnow
Dated: September 30, 2021        Senior United States District Judge