UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MELISA INGRAM, ROBERT REEVES, STEPHANIE WILSON,**

Plaintiffs,

v.

**COUNTY OF WAYNE,**

Defendant.
______________________________/

**HONORABLE ARTHUR J. TARNOW**

**No. 20-10288**

**MOTION HEARING**

**Thursday, November 5, 2020**

Appearances:

FOR THE PLAINTIFFS: WESLEY HOTOT, ESQ.
BARTON W. MORRIS, JR. ESQ.
KIRY THOMAS WEST, ESQ.

FOR THE DEFENDANT: DAVIDDE A. STELLA, ESQ.

\- - -

*To obtain a certified transcript, contact:*
*Lawrence R. Przybysz, MA, CSR, RPR, RMR, CRR*
*Official Federal Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 124*
*Detroit, Michigan 48226*
*(313)414-4460. Lawrence_Przybysz@mied.uscourts.gov*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

**I N D E X**

\- - -

MOTION HEARING....................................P. 3

Detroit, Michigan

Thursday, November 5, 2020

10:48 a.m.

\- - -

**THE COURT CLERK:** *Now calling the case of Ingram et al. versus Wayne County, 20-10288. Will counsel please make your appearances for the record?*

**MR. HOTTOT:** Wesley Hottot for the plaintiffs, your Honor.

**MR. WEST:** Kirby Thomas West and Barton Morris for the plaintiffs.

**MR. STELLA:** Davidde Stella on behalf of Wayne County.

**THE COURT:** Anyone else?

**MR. STELLA:** Your Honor, we had some client representatives who were going to be here. I'm not sure if they are having problems logging on or something but we can proceed. They might join in a second though.

**THE COURT:** Well, okay. This is a motion hearing so it's open to the public.

**THE COURT CLERK:** We have a couple people in the waiting room. They are still watching it via webinar. Would you like them to be promoted to panelists so we can see and from them.

**THE COURT:** No. They are like in the audience. As

long as they can see and hear us, that is the important thing.

**THE COURT CLERK:** Right.

**MR. STELLA:** Your Honor, I would like to point out that the people from Wayne County, the client representatives are Mr. Charles Davis who is the head of the Asset Forfeiture Unit, the Wayne County Prosecutor's Office, and Ms. Sinna Hogden (ph) who is the Assistant Prosecuting Attorney assigned to the Wayne County Circuit case civil case against Stephanie Wilson.

**THE COURT:** Are they here now at least by audio?

**MR. STELLA:** I believe so. I just got an e-mail saying they are here but not on video.

**THE COURT:** Here but not what?

**MR. STELLA:** They are here but they are in the audience.

**THE COURT:** Okay. And I am glad they are here because before we get into the legal part of the arguments let me ask both sides if you have had any discussions to expedite because one or more of the claims include the delays which I think could be addressed without a lawsuit or as part of the lawsuit and would mitigate any future disputes. In other words, if the county prevails and says -- and I agree that they can take in very limited circumstances, the actions they are taking in terms of seizing property without a hearing, it would seem to me that if the hearing were timely as opposed to I

think in one of these cases it was both where there was a huge delay -- have there been any discussions along those lines, Mr. Stella?

**MR. STELLA:** Well, in terms of the asset -- the civil asset forfeiture cases, I guess at issue in this case is actually three separate Michigan laws at issue. So it's difficult to address. And they have different requirements so it's difficult to address all of them at the same time. But normally under Michigan law the Michigan law requires that any civil case for forfeiture be filed what is under the statute called promptly. So Michigan courts have basically determined that promptly, you know, is synonymous with due process. So the idea is longstanding due process law about how quickly a post-seizure hearing has to be provided.

The Wayne County Prosecutor's Office has been endeavoring on its own without this lawsuit to speed up the time it takes to file those cases. In the past it may have taken up to 30 or 60 days. In extraordinary cases it took longer if the cases were harder to get the information together. But the Wayne County Prosecutor's Office is getting these cases down in a matter of weeks and not a matter of months. So I think that the goal post is about 14 days to get any civil forfeiture complaint filed. That is the goal. And my understanding is during the pandemic it slowed down everywhere but that's the best plan.

**THE COURT:** These cases are pre-pandemic, are they not?

**MR. STELLA:** Yes, but there is no claim in this case that the cases were not filed fast enough.

**THE COURT:** Okay. Do the plaintiffs have a response to that?

**MR. HOTTOT:** Yes, your Honor. There absolutely is a claim that these cases were --

**THE COURT:** Just lean into your microphone.

**MR. HOTTOT:** I hope that's better. Your Honor, we absolutely are challenging the speed with which the county filed civil forfeiture actions. It's baked into Count Four of our Amended Complaint, the entitlement to a prompt post-seizure hearing. My clients experienced a minimum of the six month wait before any proceedings commenced. We have allegations to the affect --

**THE COURT:** Okay. Stop. My question I think recognizes that. And the question is, if the county -- if one of the results of this lawsuit is that the county convinces you and the other plaintiffs that they have rectified and eliminated this delay, would that resolve some of your counts?

**MR. HOTTOT:** Yes, your Honor, and we made --

**THE COURT:** You could have been the first attorney to answer a yes or no question with one word. I cut you off because you did answer it yes. Then the question becomes, have

you and the defense talked about what Mr. Stella calls the goal or goal posts, whatever he called it, of two weeks. Would that satisfy you?

**MR. HOTTOT:** Yes your Honor, it would.

**THE COURT:** Go on. You will get a chance to talk. I can see your frustration. One of the advantages of Zoom for my old eyes is I get to see facial expressions much better than I would in court. So, Mr. Stella, what can you do to at least resolve this part of the lawsuit?

**MR. STELLA:** Your Honor, real quick, nobody in this case waited six months, neither Melisa Ingram nor Stephanie Wilson. Stephanie Wilson's case was filed in about three months from July to October and Ingram was filed faster than that.

**THE COURT:** Be that as it may, this is not a fact-finding thing, but you are advocating in here what you disagree with. I'm trying to resolve it and hear what both of you seem to agree with, which is that two weeks would resolve that part of the case. Whether it applies to any of these particular plaintiffs is another question which we don't have to address. If Mr. Hottot for his client says two weeks is reasonable and you for your client say that is what you are trying to do, if, Mr. Stella, your client agrees and can do it -- and I think part of the problem is a resource problem. No Government agency, especially in the time of the disease, is

properly or adequately funded. By adequate, I mean getting all the money that they need or perceive that they need. But am I right, Mr. Stella, that your client is comfortable with two weeks?

**MR. STELLA:** Okay. Let me clarify one thing about the weeks. It's not two weeks from the seizure. It's two weeks -- well, we allow claimants about 20 days to file. First of all, under forfeiture laws you have to file a notice that you are going to contest it. So the Controlled Substances Act provides 20 days to make a claim and then in nuisance abatement cases there is no statutory time line but the Wayne County Prosecutor gives about 30 days to contest the nuisance abatement case or matter. So the idea is that it would be -- the goal would be 14 days after the initial period. But, again, the problem is it's hard to commit to a hard and fast 14 day rule because some cases are more complicated than others and require more investigation. So many matters are open and shut. The evidence is pretty clear.

**THE COURT:** What is the time line for the open and shut cases?

**MR. STELLA:** Again --

**THE COURT:** No, no. This is a data question. And if you don't know, I understand you are not prepared because you didn't anticipate the question. But do you know what you've now described as open and shut cases, what the average time of

for resolution by your client?

**MR. STELLA:** In terms of how quickly we can file, your Honor, or how quickly the cases take?

**THE COURT:** I'm asking -- you made two categories -- the easy cases and the complex cases. And you called the easy cases open and shut cases. Do you have any data that tells us what the time line is in those cases?

**MR. STELLA:** To file a case, your Honor? Or for the Wayne County Circuit Court to get done with the case and enter a judgment?

**THE COURT:** I'm talking about the initial review by the Prosecutor. When does the material get released?

**MR. STELLA:** Well, I mean, I think -- I don't know the exact answer to the question. But I would say that, you know, given this -- an open and shut -- an easy case, not an easy case, a case that does not involve complex facts can probably be filed in the 14 day time line. But, again, we can't hold ourselves to that because all sorts of issues can arise. But that is the goal. And then in cases that require more complex, economic crimes --

**THE COURT:** Stop, stop. You've answered the question. Basically you don't have that information at your fingertips. I would like to hear Mr. Hottot's response, and this is a chance for you, Mr. Hottot, to tell me what you were going to tell me with the yes or no answers.

**MR. HOTTOT:** Thank you, your Honor. Well, for purposes of today's hearing, of course, we are limited to the allegations in the complaint. And the allegations in the complaint -- I'm looking at paragraph 14 -- say that owners are made to wait six months or more before County Prosecutors initiate civil forfeiture proceedings. There are specific allegations about each of our clients and their five separate experiences with the forfeiture process. And I think what is going on here is that we are talking passed each other about the relevant time frame.

Mr. Stella seems to be saying that perhaps two weeks from the time that an owner contests the forfeiture they can initiate a civil forfeiture case in Wayne County. But then he says we can't promise to do so and that some cases are going to be more complicated than others. If they could commit as we proposed back in June to filing those forfeiture cases within 30 days in all circumstances, then we would be able to settle that claim. They have expressed no interest in discussing that despite us reaching out to them as the Court directed, and I think at this stage of the litigation, we are not going to be able to make any settlement progress, as I understand my friend's position, unless and until the Court denies their motions to dismiss.

**THE COURT:** Okay. Which might be a good segue-way to get into the reason you are here, and that is to argue the

motions. But, and, again Mr. Hottot, it's addressed to you. If I agree in part with the defendants, and I am saying or dismiss or whatever I do, and I am not going to decide the merits today but I am going to ask a lot of questions as I am doing now, if you have one or two of the plaintiffs remaining, does that in any way limit the scope of this litigation? In other words, if you only had one, could not that one ask for class certification?

**MR. HOTTOT:** Yes, your Honor.

**THE COURT:** And the follow-up question is, if they -- again, a hypothetical -- if that one person -- you've asked for two classes to be certified, is that correct?

**MR. HOTTOT:** A class and a subclass, your Honor, yes.

**THE COURT:** So that person would be able to represent both classes?

**MR. HOTTOT:** Yes, your Honor. There might be some limitations depending on who is dismissed and our ability to litigate under one or more of those Michigan forfeiture statutes that Mr. Stella was mentioning. But the policies and procedures used by the vehicle seizure unit are the same regardless of those statutes. So, I am not prepared to say what that outcome would be.

**THE COURT:** That's okay. Another question, again, to you. In Counts Two through Eight, do they implicate the Michigan Omnibus Forfeiture Act?

**MR. HOTTOT:** Yes, your Honor, to the extent that what we are challenging here are the policies and practices of the Wayne County Prosecutor's Office, we are not challenging the constitutionality of the statutes in all applications as my friend seems to believe. We are challenging how the county uses those statutes to abuse people's constitutional rights.

**THE COURT:** Okay. Now, the State Police are not defendants in this case?

**MR. HOTTOT:** That's correct, your Honor.

**THE COURT:** Should they be?

**MR. HOTTOT:** No, your Honor.

**THE COURT:** Because?

**MR. HOTTOT:** The State Police did not take any of the actions that we are challenging. We are challenging what the Prosecuting Attorney Office does from the time the property is seized until the time they initiate civil forfeiture proceedings. In many cases that is a minimum of six months. In some cases it's been years. Stephanie Wilson has a pending forfeiture case right now. She hasn't been in front of a judge in the 16 months since her property was seized. We are challenging that window between the seizure -- if we imagine the Michigan polices seizing something. We are not challenging their actions. We are challenging what the Prosecutors do to impound vehicles for months or even years before they initiate civil forfeiture actions.

**THE COURT:** All right. Mr. Stella, response?

**MR. STELLA:** Your Honor, we don't impound anything. Local law enforcement does. So to the extent they are trying to say the Wayne County Prosecutor assumes possession of the property ending a civil forfeiture matter is not true. For example, in Robert Reeve's case, when the Michigan State Police seized the vehicle under the Omnibus Forfeiture Act, Wayne County had nothing to do with that. It was not a law enforcement operation. We had no prior knowledge. When the Michigan State Police seized the vehicle, the Michigan State Police puts it on its own impound. The Wayne County Prosecutor's Office does not have an impact. The Wayne County Sheriff's Office does, but the Prosecutor's Office does not.

**THE COURT:** Who sets the hearing to go to court? What does the Wayne County Prosecutor's Office do in your description of the various roles people play?

**MR. STELLA:** Okay. The problem, your Honor -- we have to start somewhere. So three separate forfeiture actions and we proceed in three separate ways. And sometimes the cases are radically different. So with Mr. Reeves, we start there. This is a super straightforward issue is that under the Omnibus Forfeiture Act cases are connected to the results of criminal cases. So the idea is that a local Government cannot forfeit property unless they secure a conviction -- unless the Prosecutor can secure a conviction. So in Mr. Reeves' case,

the Michigan State Police made their decision to seize the vehicle. The Michigan State Police then puts the vehicle on its own lot. In this case it was Stadium Tolling which is who the State Police contract with. And so under the Omnibus Forfeiture Act now the clock starts running. So within 28 days of the seizure, a criminal case must be initiated. And if a criminal case is not initiated within 28 days, the Michigan State Police have to give that property back.

And so, and what the Omnibus Forfeiture Act does is, it's different from the other civil assets forfeiture cases, is that it gives you two opportunities to challenge the seizure before your criminal case even starts. So within -- you can file a motion in an Omnibus Forfeiture Act case to get a probable cause determination in front of the Wayne County Circuit Court. So can you file a motion and within 28 days the state court has to hear it and the law enforcement has to come in and justify the seizure. And then a second avenue where if you can show hardship, regardless of whether the seizure was proper or not, you can get a seven day hearing in Wayne County Circuit Court and get your car back if you need it for transportation, work, or for your family. The idea is that under the Omnibus Forfeiture Act the State Police get the car -- let's say that criminal case -- well, in Reeves' case the criminal case was not an issue. So what would normally happen with Mr. Reeves is that the case would be filed within the time period. The State

Police would continue to hold onto the vehicle. If there is a conviction, only following a conviction, but the Prosecutor is then appointed as the attorney. The Michigan State Police says, hey, we got our conviction. Good job. Now we want to forfeit the property that was used in the commission of the crime. So after the criminal case is over, the Wayne County Prosecutor acts as an attorney to then forfeit it under the Omnibus Forfeiture Act. And at the end of the day the statute don't give the property to the Prosecutor at the end of the day. The property is forfeited to the local law enforcement agency. So any -- so even if we take a car as an issue, a car has been sold, the local law enforcement agency, if you are the Michigan State Police, would get the lion's share of the value and the Prosecutor only gets part of it to reimburse for the expenses incurred in the lawsuit.

I mean, if we walk through it, an allegation that the Wayne County Prosecutor abuses people or violates people's rights in the context of that statute is absolutely unsupported and certainly didn't occur in Robert Reeves' case. So, your Honor, it's difficult for us to talk in generalities with all these laws because they operate completely different and they have different state laws --

**THE COURT:** I'm going to stop you now and ask Mr. Hottot to respond to Reeves and we will get to the other two. Mr. Hottot?

**MR. HOTTOT:** Well, your Honor, I would ask the Court to look at paragraph 164 of our complaint as well as the exhibit to the original complaint, ECF number nine-two. This is the Wayne County Prosecuting Attorney's Office directing the Michigan State Police to release Mr. Reeves' car from impound. As we have alleged elsewhere in the complaints, they control whether those cars stay in impound or whether they come out of impound. That is why they ordered the Michigan State Police to release it the day after we filed our original complaint. We have alleged elsewhere --

**THE COURT:** I am going to stop you there. Mr. Stella, first of all, do you agree that is what happened in this case?

**MR. STELLA:** Well, I agree with the characterization of how this works, right? So when a law enforcement agency like the State Police seize a vehicle, it is in their possession.

**THE COURT:** No, no, no. That is a yes or no question. Did this happen in this case where the Prosecutor -- forget the timing -- whether it happened the day after the lawsuit was filed or any time other events happened -- did the Wayne County Prosecutor in this case, in Mr. Reeves' case, instruct the State Police to release the car?

**MR. STELLA:** Yes.

**THE COURT:** Yes or no?

**MR. STELLA:** Yes, we advised them. We can't order them. We advised them.

**THE COURT:** I used the word instruct. I didn't use the word order.

**MR. STELLA:** There is a lot of legal weight to the word.

**THE COURT:** I don't need a lecture on definitions. The answer to the question is, the Prosecutor, through the usual procedures, informed the police that they could release the car and the car was released. The question is, can that decision by the Prosecutor to make that recommendation, if you will, be made within -- the plaintiffs are asking for 30 days. I was suggesting two weeks. But can it be made within thirty days?

**MR. STELLA:** Well, your Honor, under the Omnibus Forfeiture Act --

**THE COURT:** Yes or no?

**MR. STELLA:** No. It cannot because the statute doesn't operate that way, your Honor.

**THE COURT:** I'm not asking how the statute operates. I am asking, at some point you've acknowledged that the Prosecutor exercises discretion on the question of release, the impoundment or not release the impoundment. You also indicated that your goal is to have that decision in two weeks or whatever. I am asking can you recommend to your client that

that decision be made within 30 days of the seizure of the car. And that recommendation would be to the police agency that seized the car, whether it's the State Police or the city police or the Sheriff or whoever the police agency is. We are focusing, or at least I am focusing on the Prosecutor's role in this case. And I am hearing -- and correct me if I'm wrong, Mr. Hottot, but I am hearing the plaintiff saying, to settle this part of the lawsuit he could recommend to his clients that they accept the agreement that your client, the Prosecutor, will make their recommendation within thirty days. Can you make that recommendation to your client?

**MR. HOTTOT:** I believe you are asking Mr. Stella, your Honor. Am I right?

**THE COURT:** I know. I'm saying -- well, before I ask him, I am asking if I've said anything that is wrong in terms of what you said so far?

**MR. HOTTOT:** No, your Honor. You are correct.

**THE COURT:** Okay. Got a no out of you. All right. Mr. Stella, what is your response?

**MR. STELLA:** Your Honor, if we are talking about Omnibus Forfeiture as opposed to the other ones, I cannot make that recommendation. State law already says that if you are not charged within 28 days the property is automatically returned. We don't see -- there is no need to have the Prosecutor agree to do something different because it's a 20

day window anyway. If we are talking about other things --

**THE COURT:** Excuse me. If you are not prosecuting within 28 days, that's great. That is a class of people who will have their decision made within the 30 days, correct?

**MR. STELLA:** Correct.

**THE COURT:** Okay. We are talking about where there is -- and maybe you would define them as the complex cases -- where the decision is not made to prosecute or not to prosecute within the 28 days. Can you recommend that your client, within 30 days, will inform the police agency to release the car or not release the car. In other words, make that discretionary call. I don't care what the statute requires. I am trying to resolve a dispute under the statute and I am waiting for your response.

**MR. STELLA:** Okay. Your Honor, I am sorry. I don't mean -- I'm not trying to be problematic. I'm just trying to distinguish the way the different statues work. Are you saying that under the Omnibus Forfeiture Act which means criminal prosecution has to be filed within 28 days, you are saying you also want the Wayne County Prosecutor to make a decision within 30 days of that 28 day window or 30 days running concurrently with what the statute requires?

**THE COURT:** Let me change my question. Can you assure the plaintiffs that that decision whether to prosecute or not under the statute will be made within 28 days?

**MR. STELLA:** Yes. That is under the state law requirement of the statute.

**THE COURT:** What happens if what is alleged in these cases or one or more of these cases, where that decision is not made within 28 days?

**MR. STELLA:** The property has to be returned. And --

**THE COURT:** Was it returned in these cases?

**MR. STELLA:** It was not. It was not any conscious decision -- the Wayne County Prosecutor has no interest in holding on -- we have no pecuniary interest to have any car sit on a low law enforcement lot. It doesn't affect us. We don't want it to happen. And, in fact, you know, it's just Michigan State Police running up the bill for themselves. In Reeves' case, Reeves involved more of an economic crime. And, unfortunately, they took -- it took past the 28 days to get the local law enforcement -- you know, there was a bunch of things happened. Michigan State Police Task Force assigned to the case were disbanded during the middle of all of this and a lot of officers were assigned to other agencies.

**THE COURT:** What you are doing is confirming my speculation which is that it's a resource problem. That is not an excuse under the statute. I am asking, can you tell your client, and can your client agree that they will make that decision within 28 days with the understanding if they don't, that property will be released because that is what the statute

contemplates.

**MR. STELLA:** Your Honor --

**THE COURT:** Wait, wait. From what Mr. Hottot says that would satisfy his client or his potential clients for that part of the lawsuit. And if you are relying on the statute and the statute says that decision has to be made within 28 days, I am not going to modify the statute. As people often criticize Judges for legislating, I'm not going to legislate. I am going to ask that that statute be enforced. And I am asking you if you can instruct your client that it is not a legal justification to say that we don't have the wherewithal to do -- we, being the state and the county and the Prosecutor's Office, to make that evaluation within 28 days. And, therefore, we can keep the cars, using the car as an example.

**MR. STELLA:** Your Honor, one last thing I forgot to mention. The statute also allows the Prosecutor to the move for extension.

**THE COURT:** Was that done here?

**MR. STELLA:** No.

**THE COURT:** So --

**MR. STELLA:** I'm just saying I wanted to mention it.

**THE COURT:** You are just reinforcing what I started out speculating is that the Prosecutor is overworked and understaffed. That is not a justification for not following the law. Sure, they can ask for an extension and who would

rule on that extension?

**MR. STELLA:** Wayne County Circuit Court.

**THE COURT:** Okay. And you would have a court involvement in that decision. That is the way the legislature set it up. I'm asking for about the sixth time, can you recommend to your client to follow the law?

**MR. STELLA:** Yes. I will definitely talk to the client about what can be done to ensure that no cases fall outside the cracks.

**THE COURT:** As lawyers often say when they disagree with what I am saying, with all due respect, Mr. Hottot asked you to do that after the last conference that we had, to try and settle what part of the case that you can settle. And you both are in agreement on this point. It's like I should have gone to dental school. It's like pulling teeth to get you to agree to what you started out by agreeing to in the beginning, that you stated it as a goal. Now you are stating it -- and it's interesting. I got it wrong twice. I said 14 days and then I said 30 days, but the statute says 28 days. And you are saying you will follow the statute. I am saying that will resolve that part of the case if you can agree to a Consent Order as to that portion of the case and we don't have to get into class actions at least on that part. We might have to on the damages and other parts. But does that make this easier for you, Mr. Stella?

**MR. STELLA:** I mean, it does, but, you know, I would -- I mean, I don't see -- I mean, contrary to the allegations in the complaint we don't see that this deadline is blown in a lot of cases. And Reeves is kind of an unusual case. If we had a permanent federal Court Order for oversight over this compliance with the deadline --

**THE COURT:** Do you need a federal Court Order because in the majority of cases you are doing it right, is what you are telling me. But in some cases, including Mr. Hottot, one or more of his clients, you didn't do it right. You didn't follow the statute.

**MR. STELLA:** But, your Honor, we have a remedy in state court. You can go to Wayne County Circuit Court and gets a remedy already, a judicial remedy if this deadline is blown.

**THE COURT:** But they shouldn't have to be going to the Circuit Court unless the Prosecutor has good cause to ask for an extension. But that wasn't done in the first case we have been talking about. There has been no request to go to the court. There has been no court review. And I am giving the Prosecutor the benefit of your position which is, it wasn't done maliciously. It was done as a result of not being funded, not having the resources either at the police end or the Prosecutor's end. But you are all part of the state action.

And if the Prosecutor is able to do their part in making their decision within the statutory time limit or asking for an

extension, that would satisfy Mr. Hottot as to that part of this case. True, Mr. Hottot? And, by the way, am I pronouncing your name right? I like my pronunciation and you might want to change your pronunciation. How is the correct pronunciation.

**MR. HOTTOT:** We and my family say Hottot, your Honor.

**THE COURT:** I still like my version better.

**MR. HOTTOT:** We can go with it.

**THE COURT:** No, you don't have to go with it. That is why Judges wear robes. Do you know why Judges wear robes?

**MR. HOTTOT:** To ensure the majesty of the court, your Honor.

**THE COURT:** Excuse me. No. Because it hides the swelling from the attorneys kissing our bottoms. And it also makes it more sanitary. I thought I invented that but I was at a conference and a stranger slash Judge from Florida made the same comment. So it must be six out there in the ether, the reason. But, anyway, I will do better. How about if I just refer to you as plaintiff counsel?

**MR. HOTTOT:** Yes, your Honor. You can call me whatever you want.

**THE COURT:** He said obsequiously. All right. Mr. Stella you had a couple of seconds to think about what your response is going to be on this point. And don't tell me you don't want big brother, federal court overseeing your client's

actions. The fact of the matter, the reality is sometimes Consent Orders result in funding adequately because you can go to the commissioners or the legislature and say the big bad Federal Court has ordered us to do this or would order us to do this if we hadn't agreed to do it. And we can only do it if we were properly funded. Does that make sense to you, Mr. Stella?

**MR. STELLA:** Your Honor, it does. But, you know, agreeing to the Consent Judgment, and I understand, I appreciate your Honor's attempting to work this out, but I mean, you know, it's attorney fees we would have to pay if they win. There is other ways to do this where everybody can get what they want without having any --

**THE COURT:** Make a suggestion. Tell me another way to do this. And the longer it takes to, quote, do this, the larger the potential attorney fees are going to be. I mean, that is why early intervention -- I asked you guys to try and settle this well before the legal work. And, my goodness, I got a request from the forestry department to stop with all the paper that has been used in this case, the trees. Fortunately, they got it before the fires. But make your suggestion, Mr. Stella.

**MR. STELLA:** Your Honor, I will talk to the client about it.

**THE COURT:** I understand that. You said there are other ways to do it. My job is to listen. I will listen to --

**MR. STELLA:** I think that the issues -- I understand that we might think this is the time and place to solve these things, but we have a state court who for decades have dealt with these everyday, you know. And there is an established process for when things go wrong. You know, if 28 days passes, you know, and the person ask go to Wayne County Circuit Court and call them up, schedule a hearing, get in there, get their property back. Or they can call the Prosecutor's Office and say it's been 28 days. Where is my property? Here you go. Sorry. We inadvertently didn't see this deadline. It's already a judicial infrastructure to deal with it and there is also real worlds ways to deal with it, too, that don't require --

**THE COURT:** All those things have been available before this lawsuit was filed, correct?

**MR. STELLA:** Yes, but Mr. Reeves didn't -- Mr. Reeves never contacted -- he had a lawyer. He still has a lawyer. He has been represented continuously. He never challenged the seizure. He had a chance to do it. He never did it. His attorney never called -- his attorney is well known to us. He never called us or asked us to say, hey, what is going on with the car? And it's like, there is a kind of a process that exists already, and this happens all the time and everyday in Wayne County Circuit Court where problems are like -- people have to bring problems to the court and the court solves them.

And in Reeves's case, what he actually complains about your Honor, Reeves -- the complaint doesn't say anything -- this is not a claim that is in the complaint. It's not. Reeves's claim was that his property was seized without probable cause by the Michigan State Police. That is his legal claim. And crafting a solution as to why the 28 days went by and his property was not returned is not the focus of his claims.

**THE COURT:** Excuse me. It's not 28 days why the property was not returned. It's 28 days why the decision was not made whether the property was going to be --

**MR. STELLA:** Yes. Like I said, I mean --

**THE COURT:** The legislator -- you almost start talking like a professor. You are describing the system the way it was meant to be, that is, ideally within 28 days a decision would be made. It's clear it's not just Mr. Reeves who is complaining. There are two other plaintiffs. And there is a potential class of people. All of that can be eliminated if the Prosecutor would make the decision within 28 days. And you, on behalf of the Prosecutor, have already told us, told me, that is your goal.

I am not sure why we are spending all these minutes, all these days of the lawsuit if you and the plaintiffs agree that they would be happy with a decision being made within 28 days. They may have other claims. They may have other challenges in

a particular case. But that is a starting point. And I understand, again, getting back to the academic point of why should the Federal Courts intervene and get involved? What is the harm of the Federal Court approving a Consent Order where both sides agree to what is being consented to? Other than what I'll call a red herring or I guess I would call it a bogie person -- the federal courts stomping on the poor old states. You can't be stomped on if you are in agreement to. You can't complaint about Federal Court action where you are in agreement to it. Does that make sense to both of you.

**MR. HOTTOT:** Yes, your Honor.

**MR. STELLA:** Yes, your Honor.

**THE COURT:** Okay. Should we adjourn the rest of this hearing until we get a resolution of that? Maybe two weeks? How many days would you need, Mr. Stella, to confer with your client?

**MR. STELLA:** Okay. Your Honor, I wanted to ask a question. Two weeks is fine but I wanted to ask a question --

**THE COURT:** You may.

**MR. STELLA:** Would that resolve Robert Reeve's case all together or --

**THE COURT:** That is a fair question. Plaintiff attorney? Does it resolve Mr. Reeves' case or not?

**MR. HOTOT:** Well, it would with respect to prospective declaratory and injunctive relief on Count Four.

**THE COURT:** Okay. Does that answer your question?

**MR. STELLA:** Reeves does not have a claim on under Count Four. He only has a claim under Count One. Michigan State Police, lack of probable cause to seize the car. That is the only claim in the complaint that involved the Omnibus --

**THE COURT:** Stop, stop. No, no. I think that is a fair point, Mr. Stella. what is your response?

**MR. HOTTOT:** Your Honor, we have specific allegations -- I think plaintiffs are in control of their claims. And if the Court looks at our allegations under Count Four, one of the things we say is -- this is paragraph 295 to 296 -- that Michigan law provides for an interim hearing within 28 days. We acknowledge that, under the Omnibus Forfeiture Statute. Now, under the other statutes it doesn't provide for this 28 days. So whether or not we are getting into that I am not sure. But in 296 we say that where those interim hearing procedures are available, the county has a policy and practice of not informing people of the specific crime for which the property was seized.

Now that is critical because that defines whether or not you have a right to the hearing. If you don't know, as Mr. Reeves didn't, why your property is seized, you don't know you have a right to go into court within 28 days. They have a right -- they also, we say in paragraph 296, that they don't inform property owners of the availability of that interim

hearing and that they do not comply with their attendant obligations to release property within 35 days of seizure or to get a judicial warrant. So Reeves' claims absolutely implicate Count Four. And, if his case, nothing happened with his property for six months from the time seizure. And Mr. Stella is making many factual assertions at a time when the Court is bound by the allegations in the complaint.

For example, paragraphs 161 and 162 say that Robert and his attorney called the county dozens of times during the seizure and asked them what was going on. So the fact that he says that we didn't contact them, that is something that has to be sorted out in discovery.

**MR. STELLA:** Your Honor, I need to respond to this. First of all, in Mr. Reeves's case, the Michigan State Police gave Mr. Reeves a notice of seizure and explained exactly what was happening to him and what statute it was seized under. So the idea that Mr. Reeves is the dumbfounded about what was happening is ridiculous. He was also in Michigan State Police custody where he spoke to the officers a little bit before claiming a Fifth Amendment privilege, I think. Michigan State Police certainly informed him what was happening and certainly gave him a written notice of what was being seized, a receipt. So that is not true. It's not true that people don't know why things are happening. Of course, we just act as the attorney at the end at the end of the criminal prosecution is over. So

I guess a complaint can allege whatever you want. At a certain point, we have to show facts. We don't need to have discovery.

**THE COURT:** Do you disagree with the proposition that I am bound by the allegations, at least six on a 12(B)(6) motion?

**MR. STELLA:** Well, for Mr. Reeves, your Honor, we move to abstain first because, of course, Younger could say that the criminal prosecution requires abstention for all claims. And then to the extent he does, you know, the only other claim he had was that the Michigan State Police seized my vehicle without probable cause, believed I was in a scheme to steel stuff from Home Depot, so our argument is that on 12(B)(6) that was a stated claim against the prosecutor. We didn't make the decision to seize or impound.

**THE COURT:** Today what is the status of the criminal prosecution?

**MR. STELLA:** Your Honor, so 36th District Court had suspended many preliminary exams for people not in custody because of the pandemic and the risk to people involved. But the preliminary examination is now scheduled for February 2021 and I think Mr. Morris is the attorney.

**MR. MORRIS:** That's correct. The state criminal proceedings have been delayed when it comes to hearings that are -- that require testimony. And so they just have been delaying the preliminary examination and we don't know whether

it's going move forward in February.

**THE COURT:** Have they had any preliminary examinations in 36th District Court, Mr. Morris?

**MR. MORRIS:** I believe so. I think for in custody people. People in custody.

**THE COURT:** So would you advise your client to go into custody so he could get his preliminary exam?

**MR. MORRIS:** No, your Honor.

**THE COURT:** All right.

**MR. STELLA:** Your Honor, to get back -- to finish the point -- so in this case the plaintiff's allegations and what they want can't be from a moving target. And we agreed to what was argued and what was alleged. And so, I mean, the complaint is long. These forfeiture statutes are complicated. I guess we can whine and weave and make the case into something else. But the claims that were actually brought are when the Michigan State Police seized this property without probable cause.

**THE COURT:** What about the other two plaintiffs, Mr. Stella?

**MR. STELLA:** Okay. So if you want to the shift gears to the other two, we can -- again, they are different statutes. And we are happy to talk about them. It might make sense since we are on an abstention track to talk about Stephanie Wilson's case if you would like or any way you would like to do it, your Honor.

**THE COURT:** I'm thinking. What do you suggest, Mr. Hottot?

**MR. HOTTOT:** Well, your Honor, I think that we should look at the allegations in the complaint with respect to the 12(B)(6) and the abstention motions. The 6th Circuit in Lock versus Watkins, a case cited in our response brief, points out that abstention decisions are also made based on the allegations in the complaint. And while the allegations admittedly are long and somewhat complicated for a typical case that is because this program has so many constitutional problems with it. And it's the county's burden at this stage to persuade the Court that these allegations are not plausible and could not possibly lead to relief even if the Court is skeptical that we would prevail on the merits. I don't think it's appropriate for the county to attach a bunch of exhibits and testimony and to make a bunch up factual assertions in this context when the plaintiffs have had no opportunity to test those assertions. And they are, indeed, counter to our own experiences.

**THE COURT:** So are you suggesting that I allow discovery before I decide abstention?

**MR. HOTTOT:** No, your Honor.

**THE COURT:** Or are you suggesting that in deciding abstention I should ignore the exhibits and the factual disputes and rely purely on the pleadings?

**MR. HOTTOT:** The latter, your Honor.

**THE COURT:** Okay.

**MR. HOTTOT:** As circuit law commands.

**MR. STELLA:** That's not true. That is not the case. Plaintiff cannot allege --

**THE COURT:** Wait, wait. Mr. Stella, listen to the questions very clearly. The plaintiff attorney was asked if that is their position. You can't say that it's not their position. You can say their position is not your position or you don't agree with their position. but one of our problems, and this is a societal problem, we are not listening to each other. And it makes my job a little bit harder and it makes my out of court life a little bit more difficult when I listen to one side say X and the other side not saying anything relevant to X but going off on Y. And they just go right passed each other and nothing gets resolved if you don't listen.

And I am just thinking how to proceed. As I indicated earlier, I am not going to decide on abstention or the rest of the motions today. But, so far, this conversation has been very helpful to me. And it would be more helpful if I didn't have to ask the questions several times to get you guys talking to each other and listening to each other.

**MR. HOTTOT:** May I make a suggestion, your Honor?

**THE COURT:** Sure.

**MR. HOTTOT:** We are prepared to walk through each

count of the complaint and to address Mr. Stella's arguments. Now, it's the county's motion. If you would rather hear from them first I would understand that. But if you would like, I can walk through each Count and explain why the Court has jurisdiction, why the claims are plausible, and why we should proceed.

**THE COURT:** Do you have a problem with that, Mr. Stella? First, let my preface and give you a chance to think about it before you answer. Preface it with this. What the plaintiff is assuming, not quite as accurate as it should be in this case, is that I am prepared. I am reasonably prepared but -- and I have the advantage of very good briefing on both sides.

So now my question, Mr. Stella, are you comfortable, first of all, knowing that you will have a chance to reply to what the plaintiff says orally, and, two, I have an understanding of the basis of your motion so that it would be meaningful to me to listen to the plaintiff's response to your motion. But if you want to go first, you can, but -- and I know that is -- I presume that is the way you prepared that you would go first, but I am asking, are you comfortable with the suggestion of the plaintiff going first?

**MR. STELLA:** I would, your Honor. I would, to answer your question, but I have qualifications to that. The complaint is sprawling and makes a lot of allegations that have

nothing do with the three plaintiffs -- the invisible people who I don't know whose controversy it is, I think we can only litigate the case brought by the people who brought it and we deal with their circumstances and not make allegations like we wait six months -- these allegations don't connect to actually somebody who is in the case and has no relevance to whether any of them state a claim. So I think the better solution, if the the plaintiff wants to go first, let's talk about each individual plaintiff, what their Count is and how it applies to their situation. That is a lot better structure.

**THE COURT:** Stop, stop, stop. If you are looking at your screen, plaintiff attorney has a tell. He's going up and down with his head so he's agreeing with you. So you can stop before he changes his mind. And you can go ahead now and make your response, keeping in mind what Mr. Stella has said. Go ahead.

**MR. HOTTOT:** Thank you, your Honor. From our perspective, the county's three motions to dismiss tangle the issues. But this decision is ultimately easy. Plaintiffs Melisa Ingram, Stephanie Wilson and Robert Reeves are repeat victims of Wayne County seizure and forfeiture practices. Their Amended Complaint makes some 300 detailed allegations that call into question the constitutionality of those practices on behalf of themselves and on behalf of the putative class, what Mr. Stella is describing as the people that aren't

present right now. Several of those allegations are uncontested. Wayne County admits, for example, and this is a quote from their dismissal brief, for almost 30 years Detroit area law enforcement agencies have worked with the Wayne County Prosecutor's Office to target areas of the county where crime is rampant. Those are the county's words, page ID 480 in ECF number 20. We already know for a fact that the Wayne County Prosecutor's Office operates a Vehicle Seizure Unit with formal policies filed by the county in another case that confirm many of plaintiff's allegations about its seizure and impoundment practices. The Court can see that as an exhibit to our class certification motion, ECF number 217. It's also, of course, most relevantly for our purposes alleged in the complaint paragraphs five to 24 and 188 to 203.

And where there is a dispute of fact, it cannot be resolved on a motion to dismiss. We need to get to the bottom of what these practices really are. And when we do, we might be able to settle dimensions of this case if what Mr. Stella is telling us bears out.

So let's go count by count in the complaint. Count One, the unreasonable seizure and unreasonable detention of vehicles can be found the complaint, paragraphs 263 to 269. This applies to all plaintiffs. It's backward and forward looking relief that is requested. Damages for unreasonable seizure and unreasonable detention of five vehicles, two each for Melisa,

two each for Stephanie and one for Robert.

**THE COURT:** I'm going to interrupt. If you don't have any idea, and Mr. Stella, you can answer this when it's your turn. Where the 900-dollar figure came from, is that part of the statute or --

**MR. HOTTOT:** Your Honor, it's written policy and practice that the Court can see of the county, that the Court can see at ECF 217. There is no question that that redemption fee structure is the county's invention. It's not required by the statute.

**THE COURT:** Thank you. Go on.

**MR. HOTTOT:** So just to highlight what is at issue here, Stephanie Wilson's 2006 Saturn Ion, the car she bought after the county seized her previous car, has been in the county's possession since June 24 of 2019. That is 16 months.

In Robert Reeves's case, the property, his property was seized in July of 2019 and returned six months later after the county directed the Michigan State Police to do so. We specifically allege a policy and practice that doesn't just apply to our plaintiffs but to everybody in the county. It would apply to you or I driving through Wayne County, your Honor. A policy or practice of retaining property without probable cause once it's been seized. The relevant factual allegations are at paragraphs 3, 27, 28, 237 and 244. The legal allegations that tie all those together into a cause of

action under the Fourth Amendment are at paragraph 263.

Count Two, excessive fines and forfeitures. This is the Amended Complaint, paragraphs 273 to 76. This applies only to Melisa and Stephanie because Robert had no opportunity to redeem his property. Melisa paid, and this is paragraph 63, $1,355 to get her property back, the 900-dollar redemption fee plus towing and storage. At least 45 of those dollars are the result of the county's across the board policy that they will not talk with the property owner for three days after a seizure.

Stephanie was told that she would have to pay more than a thousand dollars to get her Chevy Malibu back. So, instead, she spent that thousand dollars on a Saturn Ion that is now still in the county's possession. She is entitled to that money ultimately.

Count Three --

**THE COURT:** What happened to the Chevy Malibu?

**MR. HOTTOT:** She abandoned it, your Honor. I'm told she would have to wait a minimum of six months to get into court or have to pay more than a thousand dollars.

**THE COURT:** After the abandonment, do you have any idea what the county did with the money or whoever or what the State Police did or whatever the police agency was?

**MR. HOTTOT:** I can't say for sure, your Honor. But what I do know is that it's not been adjudicated by a court.

There is no judgment of forfeiture in those circumstances. The county is effectively acting as an administrative forfeiting agency.

**THE COURT:** What I'm asking is, was the car sold? I don't care if they were pursuant to court order or not.

**MR. HOTTOT:** I see. I don't know in they sold it or not, your Honor. I believe that is the standard practice.

**THE COURT:** The reason I ask that, the Sixth Circuit has decided in the case involving evictions, mortgages and where there is a sale, it might be a due process problem, not giving the excess to the property owner. It may or may not be relevant to this case.

**MR. HOTTOT:** I saw that decision, your Honor. Moving on to --

**THE COURT:** I saw it and read the head notes. How's that?

**MR. HOTTOT:** That's good. Count Three addresses innocent owner protections. This is paragraphs 208 to 84 of our Amended Complaint. This again applies to Melisa and Stephanie. It does not apply to Robert Reeves. It's backward and forward looking. Backward in the sense that we are seeking a dollar nominal damages. It's forward looking in that the county must provide, regardless of state law, a means for third party owners to obtain a prompt -- to obtain prompt return of their property. That has to involve a neutral magistrate. It

can't be just the decision of the county prosecutors.

This takes us to Count Four, the prompt post-seizure hearing required by procedural due process. This is the Amended Complaint, paragraphs 288 to 308. This again applies to all plaintiffs, specifically Robert, paragraph 294 to 96, makes allegations that he is entitled to a post-seizure hearing. It's backward and forward looking. Backward in the sense that we are seeking a dollar in nominal damages and forward looking in the sense that this Court should ultimately, if the facts bear themselves out as alleged, enjoin the county to provide some sort of process within a reason time of seizure where people can challenge the probable cause to hold the property. At a minimum here, your Honor, as the Court is aware, the Sixth Circuit is continuing to look at this issue in the Nichols (ph) case. That case -- not only is there a petition for rehearing on bond there but the Court has called for a response. The County filed its response yesterday, I believe, and --

**THE COURT:** Who is representing the plaintiffs in that case?

**MR. HOTTOT:** An appellate lawyer from Minneapolis.

**THE COURT:** No appellate lawyers in Michigan?

**MR. HOTTOT:** Well, your Honor --

**THE COURT:** That is my background. I'm trying to protect my former competitors.

**MR. HOTTOT:** Mr. Sabarin (ph) specializes in forfeiture and that's why. So, you know, the Court should, at a minimum, wait for the Nichols' decision to shake out. It could be the court denies the petition for rehearing on bond. But even then as we've explained in our response to the county's supplemental brief about Nichols, it really -- the majority really is a municipal liability decision. It's not a prompt post-hearing decision. And for that reason the claim would survive even if the panel had not survived in Nichols.

Count Five, irrational fines and fees. This is a substantive due process challenge to the fee structure that the county uses, the 900 for a first seizure, 1800, 2700, under which guilty and innocent people alike can redeem their property.

Now, the Supreme Court in several instances has said that utterly irrational fee structures violate substantive due process and will ultimately have to decide whether or not this fee structure is arbitrary or whether it has some sort of basis, in fact.

Count six -- and I'm almost done here, your Honor -- is our challenge to the lack of adequate notice under procedural due process. This is in the Amended Complaint of 324 to 27. It applies to all plaintiffs. And it's based on the county's policy and practice of not providing notice to the property owner but rather, in cases of vehicle seizure, but rather

providing notice there on the side of the road to whoever happens to be driving. Melisa, for example, figured out what happened to her car a few days after --

**THE COURT:** Can you refer to your clients by their last name, please?

**MR. HOTTOT:** Sure, your Honor. Happily. Ms. Ingram, for example, figured out what had happened to her car a few days later leading to additional storage costs when she agreed to pay. this is, I think, the easiest dimension of this case. I think the county should be complying with the state law that requires it to serve property owners.

And then Count Seven, Eight, and Nine can be talked about collectively because they are individual claims for damages based on --

**THE COURT:** Before you get to Seven, Eight, and Nine, you just said you think the county should be able to agree to this. Have you suggested that to the county?

**MR. HOTTOT:** Yes, your Honor.

**THE COURT:** Similar to the conversation we had most of this morning?

**MR. HOTTOT:** Yes, your Honor, in writing at the beginning of June of this year.

**THE COURT:** Mr. Stella, you can address that in writing after the hearing is over. Or have you already? Have you agreed to it or objected to it or responded to it? Go on.

**MR. STELLA:** Your Honor, notice provisions under Michigan law are different in each one of these three statutes and we complied with state law and notice provisions. So state law requires to us provide a third party property owner notice. It is provided. That's not an issue and it's not an issue for anybody in this case.

Melisa Ingram's car was seized under the nuance abatement statute. That is, again, one of the three laws. And the Michigan -- and Michigan determines that that notice in a nuisance case is satisfied by adjoining people in the civil complaint. That is what Michigan has determined to be sufficient funds. And to the extent that that law might be unconstitutional because it doesn't give people a right of notice, that is not our policy. That cannot be attributed to us. So nobody has a notice problem in this case. Nobody. Melisa Ingram --

**THE COURT:** Stop. Stop. You responded. Let's hear the rest of plaintiff's arguments.

**MR. HOTTOT:** Sure. Of course, your Honor, defects in state law do not relieve the county of its constitutional responsibilities. Bill of Rights protections apply with equal force to state local governments. If Michigan does not require due process all the same the county must provide due process.

We have made specific allegations to that effect for each of the constitutional rights that we invoke. They are

paragraphs 260, 272, 280, 284, 300. I could go on.

Returning to the individual claims for damages, these are Seven, Eight, and Nine. These are tied to specific constitutional violations mentioned earlier in the Complaint. Melisa and Stephanie in Count Seven. Seek return of redemption fees and the expenses incurred. That is paragraph 330 of the complaint. Stephanie in Count Eight individually seeks return of her property. That is paragraph 332 to 35. And this, by the way, I think is the only dimension of our complaint that could arguably be subject to abstention principles given that they've initiated a civil forfeiture action. But we would be fine with stipulating to the court holding on to that or even dismissing it without prejudice until that case is resolved.

Count Nine is Robert's claim for vehicle damage. That is paragraphs 172 to 337 and Exhibit G. Now Seven, Eight, and Nine are frankly not the most pressing matters in the case. We think we will ultimately get to them. But for us it is the policy and practice that the county's prosecuting attorney applies to any vehicle that comes within its possession that we are challenging. On behalf of these clients and the class, what we would ask the Court to do is deny these three motions to dismiss, 18, 19, and 20, and order the county to respond to our motion for class certification, number 21. That's all I have, your Honor.

**THE COURT:** That's all?

**MR. HOTTOT:** Well --

**THE COURT:** No, stop. Another rule. You can leave the court argument with -- for both of you. Count to five before you answer a question to see if it's a serious question, to see if you really know the answer, and if -- we are all brought up from Sesame Street on to quickly respond to everything. Game shows, who hits the buzzer first and so on. But by counting to five silently, you are doing several things, one of which is you are giving the impression that you are taking the question seriously. Even if you think you know the answer it gives you time to reflect on it and that's the most important thing, to take the time to reflect. Your initial answer might have been right but it also might have been different than the question was asking.

All right, Mr. Stella. Here is your chance to respond. I would use word briefly but both of you used the word brief to describe tones. For the court reporter who already knows, that's t-o-n-e-s. Go on, Mr. Stella.

**MR. STELLA:** Okay, your Honor. Now, I think that the best to go -- the best way to go about this and the most easiest way to resolve it is to go one by one, the individual plaintiffs, understand what their facts are, understand what exactly they are claiming and this case becomes really easy. We don't have to reach hypothetical questions that may or may not apply to other people. We deal with real plaintiffs and

real claims, claims that apply to them. And, you know, we spent a significant amount of time briefing this, breaking down what Counts apply to who, what the complaint is actually alleging, what are the facts actually that apply. As an attorney, I cannot -- I have to have a real case. I need to have real people and real people facts and real people legal issues. So the way we went about our briefing is that --

**THE COURT:** Let me interject without counting to five. I did count to three. You are an attorney and if you were in private practice you would on your card and you may have it on your card now, your business card, attorney and counselor. And what you have just said is exactly right in terms of answering a complaint and being in court. But it ignores your role as counselor to your client. And whether or not a plaintiff here is representative of a particular problem is important to me in trying to answer your motion and decide your motion. But what is important to your client is if you see something that, in the practice and policies in this area that may not have been properly raised or may not have been represented by the plaintiffs but is a problem, would it not be a good counsel to your client, hey, let's avoid this in the future so that when a plaintiff attorney or any attorney finds this problem, it won't be there because we have already corrected it to comply with due process. Does that make sense to you, Mr. Stella?

**MR. STELLA:** Yes, it does, your Honor. I do this with every case. Whether we win or lose a case, I always advise the client.

**THE COURT:** And you don't have to wait until you win or lose the case. You can do it in anticipation. And it may prevent cases from being filed in the future or it may resolve part of this case. If you can agree that this particular defect as pointed out by the plaintiff should be corrected, even though it's your position that it didn't happen to any of these three plaintiffs. Go on with your argument, please.

**MR. STELLA:** Thank you, your Honor. I really appreciate that sentiment and I do consider that to be a central part of what I do and what all attorneys do.

So let's start with Reeves. We have talked about him a little bit. Robert Reeves was a subject of investigation by the Michigan State Police into people renting and then reselling Home Depot heavy equipment. The Michigan State Police had a long running investigation. And according to the Michigan State Police -- I have no first hand knowledge -- they kind of observed Mr. Reeves red handed participating in the scheme. Mr. Reeves was taken into custody. The Michigan State Police seized the car and the money he had on him, the car that he used to transport himself to the crime scene or where the equipment was being modified. So Home Depot has radio transmitters and heavy equipment and plaintiff and his

associates were -- Mr. Reeves was observed removing it because the plan was to resell it.

So what happens is the Michigan State Police take the car and his cash, give him a receipt, tell him what is going on. Michigan law provided Mr. Reeves two avenues to get the car back. Immediately he pursued neither of them, even though he was represented by an attorney. And, unfortunately, if his case, due to facts that are not entirely within Wayne County's control, the Michigan State Police Task Force was disbanded for administrative reasons. The case took a long time to develop because they had to go back together. And the Prosecutor missed the deadline of the 28 days and did not return or seek an extension. And we admit that. We did not know that we had blown the deadline until the case was filed. So as soon as somebody told us that something was a problem we solved it immediately.

And so Mr. Reeves has his car and cash back, yet he is still facing criminal charges. The criminal case was filed back in March. He has been arraigned. There were several conference in 36D about this case and the preliminary examination was scheduled for February.

So the argument on Reeves is 100 percent open and shut because Mrs. Reeves only brings two claims. The two things he claims in the complaint. Divorce it from the invisible people. He said the Michigan State Police didn't have probable cause to

take his car and he says that while his car sat in Michigan State Police storage, it got damaged. So we don't need to go into the facts to resolve this stuff. A criminal case is public record. It can be seen on 12(b)(6). We are allowed to bring in evidence in other proceedings like this. To the extent that Mr. Reeves' only claim is probable cause, didn't see the Michigan State Police who did it, were not responsible for it, and to the extent that he claims that his vehicle was damaged, it was on the Michigan State toll lot. We have nothing do with that. We offered to give Mr. Reeves the contact number of the Michigan State Police to make a claim against them. No, it's Wayne County's fault. So if we deal just in his facts in this situation and the two claims he brings, extension is appropriate. The criminal proceeding involves the same facts --

**THE COURT:** Go on. You don't have to say it again.

**MR. STELLA:** The Fourth Amendment argument, etc. etc. And, you know, the Michigan State Police could have easily, as your Honor pointed out -- if you are claiming that Michigan State Police officers in their individual capacity violated the Fourth Amendment, you need to sue them. The Prosecutor is not responsible for the acts --

**THE COURT:** Okay. Go to your next point, please.

**MR. STELLA:** So extension is an open and shut issue, and the damage to his car is properly against people who

actually hold his car, not us. Stephanie Wilson, we have not talked a lot about her, your Honor. She was -- the statute that applies to Stephanie Wilson is the Controlled Substances Forfeiture Act. On two separate occasions Wayne County -- you are mooted your Honor.

**THE COURT:** Okay.

**MR. STELLA:** So Wilson real quickly, her car was -- her vehicle was seized on two occasions, both in suspicion of vehicle being used to transport illegal narcotics. Before the first case even got going, she decided to do abandon it. No case was filed in the first case because she abandoned it. And contrary to what Mr. Hottot was saying, Michigan law says abandonment of a vehicle is a conclusive determination. So it's not Wayne County's sole discretion about this. Michigan law says it's an automatic presumption that if you do not -- if you abandon property under a civil forfeiture statute that it's deemed forfeited and there is no collateral -- we are only talking about the second case.

Your Honor, about eight months before Stephanie Wilson joined this case, we already filed a civil asset forfeiture case against the property. That case should have been over by now. But as we explained in our brief, it was not a Prosecutor who spent time -- first of all, it's a state court case. We don't control the state course case. We don't tell the state court what to do. We don't tell the state court when to have

conferences. We are a litigant. We are a plaintiff. Wilson is the defendant. We are equal litigants in the case. So an allegation that Wayne County somehow controls Wayne County Circuit Court is not true and there is no evidence of such.

So it's pretty clear in a case of abstention, your Honor, there are two Circuit cases 100 percent on point, that where a person can raise defenses in a civil forfeiture in state court that abstention under Younger -- Lock verdict Lockmans (ph), 2003, and Tennessee versus Gibbons which is 2017.

**THE COURT:** Are they both published opinions?

**MR. STELLA:** Lock is published and Tennessee is unpublished. But Lock is 100 percent on point. It came out of Michigan. It came out of Detroit. Made the same thing. Had a civil forfeiture case filed, ran to Federal Court to collaterally it. The Sixth Circuit said everything you can bring to Federal Court can be brought to state court first. I mean, Mrs. Wilson doesn't even respond to the case in her brief. You know, she doesn't even mention it. The case is absolutely controlling. And it warrants abstention.

So Ms. Homan (ph) who is the the attorney for the prosecutor is in the audience here and Mr. Morris, the attorney for Ms. Wilson in the state court case. The state court case is proceeding. Ms. Wilson has filed an answer with a robust amount of defenses. Mr. Morris has requested discovery in that case which is now ongoing. We just gave our initial

disclosures to Mr. Morris. As of yesterday he has not given us initial disclosure. If Mr. Morris to that depositions in that case, sounds like we are all in the state court proceeding. And Ms. Wilson, is there is anything left to resolve Ms. Wilson can return to Federal Court. But to the extent she has state or federal law defenses those can be asserted before in the Wayne County Circuit Court. And in fact, they have been asserted in the Wayne County Circuit Court.

So, you know, contrary to anything else that might be said we are not admitting that any legal claim Mrs. Wilson has has merit or states a claim or any of that. Extensions have a separate initial issue that is just black and white and Sixth Circuit controls that. If Ms. Wilson, when this case is over and there is some room for her to say, you know, if she wins the case or whatever, or she was anything left she an return to Federal Court and file another lawsuit. But to the extent that the issues --

**THE COURT:** Go to your next point, please.

**MR. STELLA:** Next, finally, Ingram, Melisa Ingram has the most number of claims that apply to her as opposed to other two. And I don't know if I am going to be able to say this stuff better than I briefed it. We spent a significant amount of time on it. Is that Ms. Ingram had -- so, sorry to stop and start again. Wilson is Controlled Substances Forfeiture Act. And now we are to Ms. Ingram with the nuisance abatement

statute. So it's a third different type law that we are dealing with. So Michigan nuisance abatement allows the Government or even a private citizen to file a civil lawsuit to abate a nuisance. And a civil lawsuit in state court governed by the Michigan State rules, 100 percent a regular case that can be defended. So Michigan law defines one of the types of nuisance as prostitution and have been traditionally applied for decades in the metro area, to enforce -- for anti-prostitution purposes.

Ms. Ingram's boyfriend admittedly on two separate occasions was caught in activities involved with prostitution by deputies from the Wayne County Sheriff's Department. There appears to be -- Ms. Ingram was not there when he was caught. She was borrowing his car. And so, again, Ms. Ingram can't say what happened because she wasn't there. So in both cases her boyfriend ends up admitted be to engaging in prostitution and because of the visual observations of the deputies plus the statements by her boyfriend the vehicles were impounded on two separate occasions under the nuisance abatement statute.

So in the first matter, Ms. Ingram decided to settle the matter before a case was filed. Now you may have heard a little bit, your Honor, about this redemption program. Okay. Redemption program is kind of a misnomer. It is a Settlement Agreement of a civil case that is planned to be filed in a matter. So Michigan State law does not give any -- under

nuisance abatement -- does not provide any avenue for a claimant to get their property back before the filing of a civil lawsuit. There is no obligation of any local Government to settle or do anything other than pursue the case.

So to the extent that this Settlement Agreement program exists, it is a voluntary thing on behalf of the county. And if plaintiff, Ms. Ingram thinks this is oppressive, under state law, Wayne County could just eliminate the program. We don't have to settle anything. Fine. You don't get your car back. You don't get your property back. You have to litigate this in court. That is what the state law says is the process for this.

So to me, the complaints -- of course in Ross versus Duggan, your Honor, the 2004 Sixth Circuit case, the same challenge was brought to the settlement program and the Sixth Circuit upheld it against all constitutional error. So we are already done with that, with whether the $900 is some kind of oppressive amount given the severity of the offense plus the risk of the person going to lose the entire value of the property in a civil case. So I don't understand.

We don't have to operate and state law does not compel us to do it. And if we're going to get a bunch of arguments that it's unconstitutional, we will stop doing it. And is that a better outcome for people? I don't know.

So moving on with Ingram. So what happens is that Ms.

Ingram after the second seizure of her car, she declares bankruptcy. And in bankruptcy she completely -- she relinquishes control of her car to her creditor which is Ford Motor Credit. So while the bankruptcy proceeding was going on, Wayne County -- you know, Ms. Ingram does not want to settle the second case and Wayne County files a nuisance batement action in Wayne County Circuit Court. So the civil case is filed. Plaintiffs have already given up title of the vehicle to a creditor. Eventually this gets sorted out and the parties -- the case gets dismissed with prejudice with the idea that the car goes to For Motor Credit and that was the end of it. Ms. Ingram made no claims in the case, no defenses, no argument that there was no probable cause, no constitutional notice argument. She defended a case yet did not raise any defense through the state action. It gets dismissed with prejudice. Now we have to think about the res judicata effect, the fact that there was a case pending. Her defenses were at issue and she decides that I'm not going to raise them and I am going to give up my car to Ford Motor Credit.

In a way, I'm not quite sure what this is about. The time line -- if the time line is that the car is seized, the plaintiff declares bankruptcy, plaintiff already indicates she is going give up in Chapter 13 her car, right, which means that whether or not the civil suit existed, she doesn't have her car. Whether it goes Ford Motor credit or a state court enters

a judgment of forfeiture she still doesn't have the car. So, again, from ten thousand feet, a civil asset forfeiture case -- the nuisance abatement case alters the time line that she had already given up her car. Okay. So I'm going to try to get through this as quickly as I can. I think this has been going on long.

**THE COURT:** But these are all in your brief, correct?

**MR. STELLA:** Yes, they are.

**THE COURT:** So you don't have to go through them at all.

**MR. STELLA:** We don't.

**THE COURT:** Thank you. Mr. Hottot, brief response.

**MR. HOTTOT:** Yes. This will be objectively brief. I just want to address a couple of the cases and characterizations that Mr. Stella made. If it is true that the court has to abstain from Ms. Wilson's second seizure, that does not mean that she cannot litigate damages and seek perspective and declaratory injunctive relief based on injuries from her first seizure. The same is true Ms. Ingram.

So we have tried in our response to walk through each of these counts and plaintiffs and explain how this case survives even if the Court agrees with everything Mr. Stella is saying.

Just two quick points about the cases your Honor. The Lock case was about a pending forfeiture action, and, yes, the Sixth Circuit said that you should abstain in such a

circumstance. If that were true here with respect to Ms. Wilson we would still have to be litigating over the first forfeiture or the first seizure case.

With respect to Ross versus Duggan, I would ask the Court to look at Mobley versus City of Detroit. It's in our response brief. 938 F2nd, 669. And there the district court looked at Ross and held that it was not applicable in a situation where the property owners weren't arrested in conjunction with the seizure. So Mobely, as you may know, was about the mass seizure of cars based on an art museum in Detroit failed to get a banquet permit. And the Court looked at that. This is similar to the circumstances of my client where the owners of the vehicles with the exception of Mr. Reeves are not even alleged to have done anything wrong. Merely their vehicle somehow is connected to someone else's criminality.

The Ninth Circuit similarly looked at that issue in the Pimentel (ph) case that we cite in our response brief on page 20. And in Pimentel, the Ninth Circuit allowed a challenge to go forward to the City of Los Angeles' $63 late fee late for parking tickets even though those parking tickets have been adjudicated because they are separate issues. Abstention does not apply in circumstances where the plaintiff in Federal Court could not have litigated the issues below. And in a state civil forfeiture action against an individual's property or in a criminal action as is Robert's case there is of course no

opportunity to bring this kind of comprehensive challenge to the seizure impoundment practices that Wayne County admits it has. So we are appropriately in Federal Court. We ask the Court to deny these three motion to dismiss.

**THE COURT:** Thank you. The court will take it under advisement. And hopefully within, because of its complexity, maybe 60 days we will have an opinion for you. Thank you. It's been very helpful hearing both your views and we are in recess.

\- - -

**C E R T I F I C A T I O N**

I, Lawrence R. Przybysz, official court reporter for the United States District Court, Eastern District of Michigan, Southern Division, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript has been prepared by me or under my direction.

s/Lawrence R. Przybysz
Official Court Reporter

Date: 14 July 2022

\- - -