**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MELISA INGRAM, STEPHANIE WILSON, and ROBERT REEVES,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF WAYNE,<br><br>Defendant. | No. 5:20-cv-10288-JEL-EAS<br><br>District Judge Judith E. Levy<br><br>Magistrate Judge Elizabeth A. Stafford<br><br>**Oral Argument Requested** |

**PLAINTIFFS' AMENDED[1] MOTION FOR CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), Plaintiffs respectfully request that this Court enter an order certifying the following class (the "**Class**") for the resolution of Count IV of the Amended Complaint, *see* ECF No. 12, PageID.285–91:

> All persons who own a vehicle that, after February 5, 2018, was or will be seized and impounded without a prior judicial determination of forfeiture and referred to the Wayne County Prosecutor's Office to pursue forfeiture.

Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (c)(5), Plaintiffs respectfully request that this Court in its order also certify the following sub-class

[1] Plaintiffs first moved for class certification in July 2020. ECF No. 21. That motion was held in abeyance, ECF No. 46, and the parties then agreed on deadlines for Plaintiffs' amended motion for class certification, ECF Nos. 76, 82, 102.

(the "**Innocent Owner Subclass**") for the resolution of Count V, *see* ECF No. 12, PageID.291–92:

> All persons who own a vehicle that, after February 5, 2018, was or will be seized and impounded without a prior judicial determination of forfeiture and referred to the Wayne County Prosecutor's Office to pursue forfeiture, when Wayne County has no basis to allege that those persons consented to or participated in the acts giving rise to the seizure and impoundment.

If the Court does not certify the Class or Innocent Owner Subclass as proposed, Plaintiffs alternatively request that the Court modify the class definitions or limit certification to those issues it deems appropriate. *See* Fed. R. Civ. P. 23(c)(1)(B), (4)–(5).[2]

Plaintiffs further request that the Court designate Plaintiffs as class representatives for the Class and appoint undersigned counsel as class counsel. *See* Fed. R. Civ. P. 23(c)(1)(A)–(B), (g). For the Innocent Owner Subclass, Plaintiffs request that the Court designate Melisa Ingram as class representative.

On December 16, 2024, counsel for Plaintiffs explained in writing the nature of this motion and its legal basis to counsel for Wayne County but were unable to obtain concurrence.

---

[2] For the avoidance of doubt, Plaintiffs reserve the right to object to and appeal any modified or limited class definition.

The arguments and authorities in support of this motion are set out in the attached brief.

Dated: December 23, 2024

Respectfully submitted,

*/s/ Michael B. Soyfer*

Barton Morris Jr. (P54701)
LAW OFFICES OF BARTON MORRIS
801 West Beaver Road, Suite 600
Troy, Michigan 48084
(248) 541-2600
barton@bartonmorris.com

Michael B. Soyfer
(N.Y. Bar 5488580; D.C. Bar 230366)
Kirby Thomas West
(Pa. Bar 321371)
Christian Lansinger
(Md. Bar 221290007)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Viginia 22203
(703) 682-9320
msoyfer@ij.org
kwest@ij.org
clansinger@ij.org

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MELISA INGRAM, STEPHANIE WILSON, and ROBERT REEVES, | No. 5:20-cv-10288-JEL-EAS |
| Plaintiffs, | District Judge Judith E. Levy |
| v. | Magistrate Judge Elizabeth A. Stafford |
| COUNTY OF WAYNE, | **Oral Argument Requested** |
| Defendant. | |

**BRIEF IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

Table of Authorities .......... iii

Controlling or Most Appropriate Authority .......... vi

Statement of Issues .......... vii

Introduction .......... 1

Factual Background .......... 1

A. Stage 1: Wayne County and police departments that it works with have seized cars, often without probable cause or criminal charges. .......... 1

B. Stage 2: Wayne County has kept cars impounded indefinitely unless their owners paid coercive "redemption fees." .......... 2

C. Stage 3: Wayne County has delayed forfeiture proceedings to coerce car owners into settling or giving up. .......... 4

D. Plaintiffs all experienced this unconstitutional process. .......... 6

Procedural History .......... 11

Argument .......... 12

I. Plaintiffs meet Rule 23(a)'s requirements. .......... 13

A. The Class and Innocent Owner Subclass are sufficiently numerous. .......... 13

B. The Class and Innocent Owner Subclass pose common questions. .......... 15

C. Plaintiffs' claims and experiences are typical. .......... 19

D. Plaintiffs and their counsel are adequate. .......... 21

II. Plaintiffs satisfy Rule 23(b)(2) because they challenge policies and practices that have applied generally to the class. .......... 23

Conclusion .......... 25

## TABLE OF AUTHORITIES

### Cases

*Adamson v. Bowen*, 855 F.2d 668 (10th Cir. 1988)....24

*Blankenship v. Sec'y of HEW*, 587 F.2d 329 (6th Cir. 1978)....10

*Calloway v. Caraco Pharm. Labs.*, 287 F.R.D. 402 (E.D. Mich. 2012)....13

*Carter v. Arkema, Inc.*, 2018 WL 1613787 (W.D. Ky. Apr. 3, 2018)....15

*Chimenti v. Wetzel*, 2018 WL 2388665 (E.D. Pa. May 24, 2018)....21

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)....12

*Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016)....13

*Cremeans v. Taczak*, 2023 WL 5206437 (6th Cir. Aug. 14, 2023)....17

*Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977)....15

*Culley v. Marshall*, 601 U.S. 377 (2024)....11, 16, 17, 23

*D.D. ex rel. B.N. v. Mich. Dep't of Health & Hum. Servs.*, 639 F. Supp. 3d 750 (E.D. Mich. 2022)....13

*Dearduff v. Washington*, 330 F.R.D. 452 (E.D. Mich. 2019)....15

*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022).... 23, 25

*Dowdy-El v. Caruso*, 2012 WL 6642793 (E.D. Mich. Aug. 15, 2012)....18

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)....15

*FBI v. Fikre*, 601 U.S. 234 (2024)....12

*Fuentes v. Shevin*, 407 U.S. 67 (1972).... 16, 17

*Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588 (E.D. Mich. 1996)....19

*Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012)....24

*Halabicky v. Univ. of Mich.*,
2009 WL 912629 (E.D. Mich. Mar. 30, 2009) .......................................... 13, 14

*Hamann v. Charter Twp. of Van Buren*,
2021 WL 5312638 (E.D. Mich. Nov. 15, 2021) ................................................5

*Hill v. Snyder*, 308 F. Supp. 3d 893 (E.D. Mich. 2018) .........................................19

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ........................................20

*In re Flint Water Cases*, 499 F. Supp. 3d 399 (E.D. Mich. 2021) ............. 18, 22, 23

*In re Forfeiture of 2006 Saturn Ion*,
2024 WL 3503577 (Mich. July 22, 2024) ....................................................9, 23

*In re Forfeiture of One 1983 Cadillac*,
439 N.W.2d 346 (Mich. App. 1989) ..........................................................5, 17

*In re Whirlpool Front-Loading Washer Prods.*,
722 F.3d 838 (6th Cir. 2013)........................................................................ 15, 19

*Ingram v. Wayne Cnty.*, 81 F.4th 603 (6th Cir. 2023)..................................... passim

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019)........................................................13

*Mata-Cuellar v. Tenn. Dep't of Safety*,
2010 WL 3732172 (M.D. Tenn. Sept. 20, 2010)..........................................25

*NILI 2011, LLC v. City of Warren*,
2017 WL 2242360 (E.D. Mich. May 23, 2017) ...............................................19

*NorCal Tea Party Patriots v. IRS*,
2016 WL 223680 (S.D. Ohio Jan. 19, 2016)....................................................15

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007)..........................................................................................12

*Pickett v. City of Cleveland*,
2023 WL 6383757 (N.D. Ohio Sept. 30, 2023) ...............................................25

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007)............................................................... 13, 15, 18

*Ryder v. Beaumont Health*,
2018 WL 11176492 (E.D. Mich. Nov. 2, 2018) ..........19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ..........12

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ..........12

*United States v. $8,850*, 461 U.S. 555 (1983) ..........16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......... 21, 25

*West Virginia v. EPA*, 597 U.S. 697 (2022) ..........12

**Statutes**

M.C.L. § 600.3815 ..........5

M.C.L. § 600.4707(4) ..........5

**Rules**

Federal Rule of Civil Procedure 23 .......... passim

**Treatises**

William B. Rubenstein, *Newberg & Rubenstein on Class Actions*, Westlaw
(6th ed. Nov. 2024 update) .......... passim

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Plaintiffs rely upon *Culley v. Marshall*, 601 U.S. 377 (2024); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007); *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012); and *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022).

## STATEMENT OF ISSUES

Since February 5, 2018, Wayne County or law enforcement agencies working with it have seized thousands of cars to pursue civil forfeiture, depriving owners of their cars without a court judgment and regardless of innocence. Pursuant to standard policies and operating procedures, Wayne County has then refused to release cars to their owners unless the owners paid steep "redemption fees" that have netted Wayne County millions of dollars in revenue. Most owners have either relinquished ownership or paid. The small number who have demanded their day in court have been forced to live without their cars for months while Wayne County has delayed initiating forfeiture proceedings. Even after that, they have typically waited nearly a year for their cases to be resolved, while Wayne County has forced many to attend one extrajudicial "settlement conference" after another.

The issues are:

1. Based on these facts, is class certification appropriate under Federal Rules of Civil Procedure 23(a) and (b)(2) for a class of persons whose cars were seized and impounded after February 5, 2018, without a prior judicial determination of forfeiture and referred to the Wayne County Prosecutor's Office to pursue forfeiture?

2. Based on these facts, is class certification appropriate under Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(5) for a subclass of persons whose

cars were seized and impounded after February 5, 2018, without a prior judicial determination of forfeiture and referred to the Wayne County Prosecutor's Office to pursue forfeiture, when Wayne County had no basis to allege that those persons consented to or participated in the acts giving rise to the seizure and impoundment?

## INTRODUCTION

This case checks off all the boxes to proceed as a Rule 23(b)(2) class. *Numerosity?* Since 2018 alone, Wayne County's challenged policies have led to the seizure and impoundment of thousands of cars and yielded millions in redemption fees. *Commonality?* Under those policies, Wayne County can seize and ransom cars, then delay forfeiture proceedings. *Typicality?* Plaintiffs had their cars seized and held pursuant to the same policies and practices that applied to the rest of the class. *Adequacy?* Plaintiffs and counsel have vigorously litigated this case for five years, committing significant resources and achieving commensurate results. *Uniformity of action and relief?* Plaintiffs seek uniform injunctive and declaratory relief to end generally applicable practices and policies. This is a classic Rule 23(b)(2) case.

## FACTUAL BACKGROUND

Wayne County's forfeiture racket has exploited delay to extract fees and forfeit cars without court oversight. This process has unfolded in three stages: (i) the seizure stage; (ii) the Vehicle Seizure Unit stage; and (iii) the forfeiture stage.

### A. Stage 1: Wayne County and police departments that it works with have seized cars, often without probable cause or criminal charges.

The forfeiture process starts when the Sheriff's Office[3] or another agency seizes a car without prior judicial process. *See* Ex. 16 at -917. Wayne County's Rule

[3] In this brief, the "**Sheriff's Office**" and "**Prosecutor's Office**" refer exclusively to the Wayne County Sheriff's and Prosecutor's Offices.

30(b)(6) designee admitted it often "seize[d] vehicles for forfeiture because they're in areas known for drug dealing" or "for prostitution activity." Ex. 1 at 74:16–23. It also seized cars when the driver simply used drugs inside the car or used it as transportation to buy drugs. *See id.* at 74:20–75:11, 82:10–21. This was part of a decades-old program to deter drug buyers from coming to Detroit. *See id.* at 37:12–38:5, 96:17–19. Wayne County has not required that anyone be convicted, charged, or even arrested after a seizure. *See id.* at 26:10–25; 38:17–22, 41:21–22, 91:9–12.

After seizing a car, an officer would hand the owner a form from the Prosecutor's Office, entitled "Notice of Seizure and Intent to Forfeit." *See* Ex. 2. The form advises the owner to contact the Prosecutor's Office—*not* the seizing agency, *see* Ex. 3 at -633 (§ 3.01-1 to -2)—after three business days, *see, e.g.*, ECF No. 12, PageID.301, 303, 305, 307; Ex. 2. So, Wayne County's policy has been to prevent owners from getting their cars back for at least three days. *See, e.g.*, ECF No. 21-3, PageID.662 (¶ 18). Regardless of the seizing agency, all further communications about a seizure would run through the Prosecutor's Office. Ex. 4 at 55:19–56:8.

### B. Stage 2: Wayne County has kept cars impounded indefinitely unless their owners paid coercive "redemption fees."

The Prosecutor's Office picked up where the seizing agency left off. It operated a "Vehicle Seizure Unit" with a "window" at the courthouse to deal with car owners. The Prosecutor's Office has given agencies three business days to submit seizure paperwork, Ex. 3 at -633 (§ 3.01-1 to -2), but they "[n]ot infrequently" have

taken longer, *see* Ex. 5 at 168:22–24; *cf.* ECF No. 21-3, PageID.662 ("Four days after the seizure," the Vehicle Seizure Unit "could not find [Wilson's] paperwork").[4]

Once the Vehicle Seizure Unit had the paperwork, its clerical employees would give claimants three options: redeem, relinquish title, or contest. Ex. 3 at -633 (§ 3.02); Ex. 4 at 52:13–23, 58:2–5. No others were available, even for claimants who were not in the car when it was seized. *See* Ex. 4 at 58:6–7, 68:19–24, 69:3–10. If the claimant wanted their car back immediately, the only option was to "redeem" by paying a fee. *See* Ex. 5 at 31:4–7, 31:10–12, 178:3–5, 180:9–11; Ex. 4 at 58:25–59:5; Ex. 6 at 50:18–51:1. The Prosecutor's Office set the fee amounts "in conjunction with agreement with the police agencies across Wayne County." Ex. 5 at 181:6–16. They ranged from $900 to $2,700 and were "**NON-NEGOTIABLE**." Ex. 3 at -634 (§ 3.06, .06-1). Since 2018, Wayne County has collected over $3 million in fees based on *just* the Sheriff's Office's seizures. *See* Ex. 7 at 4–5.

Still, since 2018, hundreds of claimants have relinquished title. Most seized cars were "basically just scrap" and "probably not worth $900." Ex. 1 at 70:23–71:6. Some claimants have gotten lost in the process. They have had just 20 or 30 days to pick one of the three options, reduced by the three business days Wayne County has demanded they wait. The Vehicle Seizure Unit was only open for limited hours at

---

[4] The Asset Forfeiture Unit's department manager testified that these policies have been consistent over time, *see* Ex. 4 at 7:22–8:3, 18:4–25, 76:13–18, and that she expects her subordinates to follow them, *id.* at 38:21–39:2.

times when many people were at work. Ex. 3 at -630 (§ 1.00).[5] For instance, Stephanie Wilson and her father took time off work to visit the Vehicle Seizure Unit only to be told the paperwork was missing; when she found time to come back two weeks later, she was told it was too late. ECF No. 21-3, PageID.662 (¶¶ 19–22). If there is other property in the car and the claimant cannot pay, the only way to get it back quickly has been to relinquish. Ex. 3 at -637 (§ 3.08); Ex. 4 at 73:18–22.

If a claimant contested, a clerk would tell them to wait for a lawsuit to be filed "within 4 months from the date of seizure." Ex. 4 at 66:10–15. In the meantime, Wayne County's policy has been to continue to hold the car. *See* Ex. 1 at 103:12–21; Ex. 4 at 110:19–111:11; 130:22–131:3. If too many claimants contest, the Vehicle Seizure Unit's policy manual has provided for the responsible employee to "receive additional training in interviewing claimants." Ex. 3 at -636 (§ 3.07-1(7)).[6]

### C. Stage 3: Wayne County has delayed forfeiture proceedings to coerce car owners into settling or giving up.

Not many claimants have gotten this far. Most paid or gave up. So, despite the thousands of cars seized and millions of dollars in fees collected, the Prosecutor's Office has filed just 138 forfeiture cases for cars since 2018. *See* Ex. 7 at 4–6.

Even then, most claimants have had no way to get their cars back quickly.

---

[5] These hours often fluctuated due to a lack of staff. *See* Ex. 6 at 99:1–14.

[6] Some owners who were not in the car at seizure may sometimes have been able to speak to a prosecutor when they contested. *See* Ex. 3 at -637 (§ 3.07-1(6)).

Michigan forfeiture laws require Wayne County to file "promptly," which typically means within "days." *In re Forfeiture of One 1983 Cadillac*, 439 N.W.2d 346, 349 (Mich. App. 1989).[7] But Wayne County's policy has let it take up to *four months*, *see* Ex. 3 at -636 (§ 3.07-1(7)),[8] and its practice has often been to wait much longer. Its produced data shows that, between 2017 and 2020, Wayne County took 119 days on average to file a case after the date of seizure. *See* Ex. 8.[9] All the while, claimants have had to live without their cars. *See* Ex. 1 at 103:12–24; Ex. 4 at 110:19–111:11.

Even the filing of a case has not gotten claimants their day in court. Wayne County has routinely delayed through serial motions for mandatory "pre-trial conferences," where no judge has been present and prosecutors have pressured claimants to pay. *See* ECF No. 21-3, PageID.666–67 (¶¶ 43–48); Ex. 5 at 154:24–155:1; Ex. 11 at 50:19–24, 53:4–13; Ex. 12. In the 236 forfeiture cases Wayne County filed between 2017 and 2020, *see* Ex. 10, there were two or more settlement

---

[7] *Cf.* M.C.L. § 600.3815(3) (90 days); *id.* § 600.4707(4) (56 days).

[8] *See also Hamann v. Charter Twp. of Van Buren*, 2021 WL 5312638, at *10 (E.D. Mich. Nov. 15, 2021) (Wayne County prosecutor testified "that his office 'tried to stick within four months'").

[9] Wayne County responded to an interrogatory asking for, among other things, information regarding its filing timelines by producing a list of 236 docket numbers. *See* Ex. 9 at 2–3; Ex. 10. So, Plaintiffs compiled the information themselves, as explained in the declaration attached to the exhibit.

This average time to filing was calculated by filtering to entries with a "Date of Seizure," subtracting that from the "Date Filed," and calculating an average in Microsoft Excel. Plaintiffs will convert this summary into admissible form by trial. *See Fuller v. Mich. Dep't of Transp.*, 580 F. App'x 416, 426 (6th Cir. 2014).

conferences in 82 (roughly 35 percent), *see* Ex. 8. It took the court an additional 112 days on average to close those cases, compared to all 236 cases. *See id.*[10]

### D. Plaintiffs all experienced this unconstitutional process.

***Melisa Ingram.*** Start with Melisa. A Wayne County Sheriff's Deputy called her ex-boyfriend "a nuisance to everything"—including Melisa. Ex. 13 at 172:8–11, 173:1–3. "[H]e put Melisa in jail, beat her up," and "it took a lot for Melisa and Edland to separate." *Id.* at 173:3–12. It was "a bad situation." *Id.* at 170:1.

Still, Melisa initially trusted Edland. After he lost his job, she let him use her car to look for a new one. ECF No. 21-2, PageID.647 (¶ 4). Without her knowledge, he used it to pick up prostitutes. *Id.*, PageID.648 (¶ 6). (When she later pressed him, he denied it. *Id.*, PageID.648 (¶ 10).) Wayne County seized the car under the Nuisance Abatement statute. ECF No. 12-2, PageID.301. But Edland was never arrested or charged. ECF No. 21-2, PageID.648 (¶ 7). Everything about this seizure was consistent with Wayne County's policies. Ex. 14 at 57:3–13, 58:2–7.

Melisa went to the Vehicle Seizure Unit, where the clerks told her the only way to get her car back quickly was to pay a $900 redemption fee. ECF No. 21-2, PageID.649–50 (¶¶ 16–20). They pressured her to pay, warning it would take four

---

[10] These numbers were calculated by filtering to entries with a "Date of Seizure," subtracting that from the "Date Closed," and calculating an average in Microsoft Excel for (i) all cases and (ii) cases where the number in the "Settlement Conferences" column is greater than one. Plaintiffs will convert these summaries into admissible form by trial. *See Fuller*, 580 F. App'x at 426.

months to get into court. *Id.*, PageID.649 (¶¶ 17–19). Unable to live without a car, she folded and paid the fee, plus towing and storage. *Id.*, PageID.649–50 (¶¶ 20–21).

Although she did not know whom to believe, Melisa made Edland promise not to use her car to do anything illegal ever again. *Id.*, PageID.650 (¶ 23). But, as she later came to appreciate, he was untrustworthy. He borrowed her car again in June 2019, supposedly to go to a barbeque. *Id.*, PageID.650 (¶ 24). Once again, Wayne County seized the car. *Id.*, PageID.650, 652 (¶¶ 24, 28–29). Once again, Edland was never arrested or charged. *Id.*, PageID.651 (¶ 27).

This time, Melisa could not afford the even larger $1,800 redemption fee. *Id.*, PageID.652–53 (¶¶ 32–35). So, she waited nearly four months for Wayne County to file a forfeiture case. *See* Ex. 11 at 55:13–19. In the meantime, she surrendered her car in bankruptcy proceedings. ECF No. 21-2, PageID.653, 655–56 (¶¶ 36–37, 50). Still, Wayne County forced her to attend a "pre-trial conference" but refused to speak with her because she had filed an answer. *Id.*, PageID.654 (¶¶ 42–44). Months later, her attorney finally persuaded Wayne County to dismiss the case and let Melisa get her belongings from the car. *Id.*, PageID.654–55 (¶¶ 45–48).[11]

***Stephanie Wilson.*** Stephanie is a single mother of a chronically ill child. ECF No. 21-3, PageID.659, 662–63 (¶¶ 4, 23). In 2019, her son's father, Malcolm, was a

[11] The Court dismissed claims based on this seizure but held it gave Melisa standing to pursue prospective relief. *See* ECF No. 54, PageID.1002–04.

homeless heroin addict. *Id.*, PageID.660 (¶¶ 6, 9). Stephanie took pity on him and occasionally gave him rides to his mother's house. *Id.*, PageID.660 (¶¶ 7–8).

In January 2019, Stephanie agreed to drive Malcolm to his mother's. *Id.*, PageID.660 (¶ 10). She picked him up at a gas station, where officers immediately surrounded her car and ordered them out. *Id.*, PageID.660–61 (¶¶ 10–12). They found no drugs, guns, cash, or paraphernalia. *Id.*, PageID.661 (¶¶ 12–13); Ex. 13 at 111:22–112:9. No one was arrested. ECF No. 21-3, PageID.661 (¶ 14). They seized her car anyway and told her to call the Vehicle Seizure Unit. *Id.*, PageID.661 (¶ 15).

She called the next day, but the clerks told her to wait three business days. *Id.*, PageID.662 (¶ 18). Four days later, her father took off work, and they went to the Vehicle Seizure Unit. *Id.*, PageID.662 (¶ 19). But the Vehicle Seizure Unit *still* did not have her paperwork. *Id.*, PageID.662 (¶ 20). When she came back two weeks later, they told her it was too late. *Id.*, PageID.662 (¶ 21). Unaware of other options, she reluctantly agreed to relinquish the car. *Id.*, PageID.662 (¶ 22). After more than a month, she found a 2006 Saturn Ion she could afford. *Id.*, PageID.662–63 (¶ 23).

In June 2019, Malcolm again asked for a ride. *Id.*, PageID.663 (¶ 24). Moments after Stephanie picked him up, they were pulled over. *Id.*, PageID.663 (¶ 26). The officer who seized her car in January arrived and admonished her for driving in a bad neighborhood. *Id.*, PageID.664 (¶ 31). Police found empty syringes on Malcolm (an unsurprising item for a heroin addict to carry)—but no drugs. *Id.*,

PageID.663 (¶¶ 28–29). In fact, they never bothered to test the syringes. *See In re Forfeiture of 2006 Saturn Ion*, 2024 WL 3503577, at *1 (Mich. July 22, 2024). They seized the car anyway. *Id.*, PageID.664–65 (¶¶ 32–33).

Determined to navigate the process successfully this time, Stephanie contested. *Id.*, PageID.665 (¶ 39). Wayne County did not file a complaint until nearly four months later—despite Stephanie's repeated calls to the office. *Id.*, PageID.666 (¶ 43). Even then, prosecutors got a routine order—and then a second—compelling Stephanie to attend a pre-trial conference. *Id.*, PageID.666–67 (¶¶ 43, 46). At those conferences (and in follow-up calls), prosecutors pressured Stephanie to pay the redemption fee. *Id.*, PageID.666–67 (¶¶ 43–48). Indeed, the prosecutor's own notes reflect that she pressured Stephanie to pay by threatening to seek a default judgment since Stephanie—then pro se—had not filed an answer. *See* Ex. 15 at -976.

The tide turned when Stephanie found a lawyer. Even crediting the officer's (false) account that Stephanie drove Malcolm to buy drugs, the trial court held that there was no probable cause based on an alleged "hand-to-hand transaction alone." *Saturn Ion*, 2024 WL 3503577, at *2. The Michigan Supreme Court affirmed, holding that Stephanie's car was not forfeitable because, even crediting the officer's account, it was never used to transport *drugs* for sale or receipt. *See id.* at *6.

***Robert Reeves.*** Robert's experience shows just how much Wayne County will fight to defend its forfeiture scheme. Robert spent thousands of dollars improving

his 1991 Chevrolet Camaro. Ex. 21 ¶ 3. In July 2019, an on-and-off acquaintance, Javone Williams, asked Robert if he knew how to operate a skid steer. *Id.* ¶ 4. Robert worked in construction, so he did. *Id.* ¶¶ 2, 5. He drove to meet Williams and, after that, to a gas station, where officers surrounded him. *Id.* ¶¶ 5–6. They told him Williams had stolen the skid steer, but Robert had no idea because Williams had rental paperwork from Home Depot. *Id.* ¶¶ 6–7. Still, police seized Robert's car, cash, and cellphones. *Id.* ¶ 8. After, they handed Robert a "Notice of Seizure and Intent to Forfeit" that told him he was "not required to do anything further" to contest the seizure, but that he could call the Prosecutor's Office "to further discuss the property seizure and civil forfeiture matter." *Id.* ¶¶ 9–10; ECF No. 19-2, PageID.455.

Robert called repeatedly, but either could not get through or could not get answers. Ex. 21 ¶¶ 11–12. He hired an attorney, but the attorney also struggled. *Id.* ¶¶ 13–17. For over six months, Wayne County neither filed a forfeiture case nor returned his property, *id.* ¶¶ 17–22—even though it had received all the paperwork it needed to open a forfeiture matter by August 2019, *see* Ex. 4 at 108:4–21.

Out of options, Robert filed this case. *See* ECF No. 1. The *next day*, Wayne County directed the Michigan State Police to return his property. *See* Ex. 17 at -279.[12] Then, to stall this case, *see* ECF No. 19, PageID.423, Wayne County

[12] That post-filing development did not moot his claims for prospective relief. *See Blankenship v. Sec'y of HEW*, 587 F.2d 329, 333 (6th Cir. 1978) (government's

retaliated by charging Robert with a crime. The state court initially denied a warrant application and then twice dismissed the charges. Ex. 21 ¶¶ 24–29.

## **PROCEDURAL HISTORY**

Plaintiffs filed this case in February 2020. ECF Nos. 1, 12. Wayne County then filed dispositive motions. *See* ECF No. 54, PageID.977. In short, the Court let Robert's Fourteenth Amendment claims and Melisa's and Stephanie's Fourth and Fourteenth Amendment claims proceed (except claims based on Melisa's second seizure). ECF No. 54, PageID.998, 1004–07, 1010, 1018–20. The Court also held that Melisa had standing for prospective relief because "Plaintiff[s] alleged systemic vehicle forfeiture practices" and "two out of three Plaintiffs . . . had the[ir] vehicle[s] seized and retained twice." ECF No. 54, PageID.1003.

The Sixth Circuit granted leave to appeal, in part. *Ingram v. Wayne Cnty.*, 81 F.4th 603, 610, 622 (6th Cir. 2023), *abrogated by Culley v. Marshall*, 601 U.S. 377 (2024). It held that due process requires a post-seizure hearing within two weeks. *Id.* at 606. After remand, the Supreme Court abrogated that decision. *See Culley*, 601 U.S. at 384. So, Plaintiffs proceeded on their remaining theories that Wayne County has violated: (i) the Fourth Amendment by seizing and impounding cars without probable cause; (ii) due process by seizing and impounding cars without prior notice

---

granting of requested hearings after filing of class action did not moot named plaintiffs' claims challenging delays in holding hearings).

and a hearing; (iii) due process by delaying the initiation and resolution of forfeiture proceedings; and (iv) due process by conditioning the return of vehicles on payment of redemption fees without regard to the owner's innocence. *See* ECF No. 12, PageID.281–82, 286–89, 291–92 (¶¶ 263–68, 289–94, 297–99, 301–02, 312–18).

Discovery ended on November 22, 2024. ECF No. 102, PageID.1500.[13]

## ARGUMENT

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) . . . , and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). This "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.*

The class and sub-class meet both conditions. They check off each of the Rule

[13] Wayne County "suspended" its forfeiture program "until further notice," pending the outcome of this litigation. Ex. 23 at -080. But Wayne County has never suggested (much less met its "formidable burden" to prove) that its "voluntary cessation" moots the claims for prospective relief. *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Nor could it. For one thing, a suspension "by its terms is not permanent." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). For another, the suspension is embodied in letters and an informal policy manual that can be changed unilaterally at any time. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768–70 (6th Cir. 2019). Lastly, Wayne County continues to "vigorously defend[] the constitutionality" of its policies and practices, "and nowhere suggests that if this litigation is resolved in its favor it will not resume" them. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Courts "do not dismiss a [claim] as moot in such circumstances." *West Virginia v. EPA*, 597 U.S. 697, 720 (2022).

23(a) criteria and can move forward under Rule 23(b)(2). Plaintiffs explain below.

## I. Plaintiffs meet Rule 23(a)'s requirements.

Rule 23(a) requires four things: "numerosity, commonality, typicality, and adequacy" of representation. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 617 (6th Cir. 2007).[14] Plaintiffs clear each hurdle.

### A. The Class and Innocent Owner Subclass are sufficiently numerous.

A "class of 40 or more" is presumably numerous enough. 1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 3:12, Westlaw (6th ed. Nov. 2024 update). Classes in "the hundreds or thousands" are "obvious." *Halabicky v. Univ. of Mich.*, 2009 WL 912629, at *9 (E.D. Mich. Mar. 30, 2009) (citation omitted). The number need not be "exact," and the Court can estimate based on "general knowledge and common sense." *D.D. ex rel. B.N. v. Mich. Dep't of Health & Hum. Servs.*, 639 F. Supp. 3d 750, 755 (E.D. Mich. 2022) (citation omitted). In cases seeking prospective relief, the Court can also consider "future class members." *Calloway v. Caraco Pharm. Labs.*, 287 F.R.D. 402, 406 (E.D. Mich. 2012) (citation omitted); *see also J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("counting [future] class members, much less joining them" is impractical (citation omitted)).

Here, the Class numbers in the thousands, so numerosity is "obvious."

[14] Plaintiffs' proposed classes need not be "ascertainable." *See Cole v. City of Memphis*, 839 F.3d 530, 541–42 (6th Cir. 2016). That is, the definitions need not be "sufficiently definite" to determine "[t]he precise identity of each class member." *Id.*

*Halabicky*, 2009 WL 912629, at *9. The Sheriff's Office alone has seized nearly 6,000 cars since 2018. *See* Ex. 7 at 5. Over 600 owners have lost their cars because Wayne County ran out the clock, and thousands have collectively paid over $3 million in redemption fees. *See id.* at 5, 7.[15] Even considering just those who have contested, the class would number 138, *see id.* at 6—triple the usual threshold, *see* 1 Rubenstein, *supra* § 3:12. More broadly, Wayne County's Vehicle Seizure Unit data for 2017 to 2020 alone runs nearly 5,000 lines. Ex. 5 at 217:11–16, 219:12–16.

The prospect of future class members drives home the point. For obvious reasons, the difficulties in counting and joining future class members cut in favor of certification. 1 Rubenstein, *supra* § 3:15. That Wayne County suspended its forfeiture program does not change things. Just as this moratorium does not moot Plaintiffs' claims, *see* footnote 13 above, so it does not detract from the need for class-wide relief. The prospect that Wayne County will target hundreds of car owners in the future is no less real today than it was when Plaintiffs their first motion for class certification in July 2020, ECF No. 21—after which Wayne County seized over 2,000 cars, collected over $1.3 million in redemption fees, and filed over 30 forfeiture cases, *see* Ex. 7 at 5–6. That spotlights the need for class-wide relief.

The same holds for the Innocent Owner Subclass. Although the exact number

---

[15] For context, this number divided by the highest fee amount ($2,700) equals about 1,133. Divided it by the lowest fee amount ($900), it equals 3,400.

is unknown, they were numerous enough for Wayne County to adopt written policies for them. *See* Ex. 3 at -631, -636–37 (§§ 2.03-2, 3.07-2). "[C]ommon sense" dictates it would not have done so to deal with sporadic events. *Cf. Dearduff v. Washington*, 330 F.R.D. 452, 473 (E.D. Mich. 2019) ("in a prison population of 37,000" class was "undoubtedly hundreds"). Anyway, courts often relax numerosity for subclasses within larger classes. *See Carter v. Arkema, Inc.*, 2018 WL 1613787, at *7 (W.D. Ky. Apr. 3, 2018); *NorCal Tea Party Patriots v. IRS*, 2016 WL 223680, at *6 (S.D. Ohio Jan. 19, 2016). And because the sub-class, like the Class, includes future claimants, that tips the scale in favor of numerosity. *See Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1030 (6th Cir. 1977) (appropriate to consider prospective class members).

### B. The Class and Innocent Owner Subclass pose common questions.

Commonality requires just one common legal or factual question. *Powers*, 501 F.3d at 619. It "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Front-Loading Washer Prods.*, 722 F.3d 838, 852 (6th Cir. 2013). The "interests and claims of the various plaintiffs need not be identical," *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998), so "questions peculiar to each individual member" can "remain after the common questions . . . have been resolved," *Powers*, 501 F.3d at 619 (citation omitted). Cases challenging "a single course of wrongful conduct" (like a "regular practice") are "particularly well-suited to class certification." *Id.*

The Class comprises owners whose cars have been or will be seized, impounded, and referred to the Prosecutor's Office without a prior judicial order of forfeiture. What do all these people have in common? Their cars were, by definition, seized without process. *See* Background § A. That prompts the common question, "how is it that, in civil forfeiture, the government may confiscate property first and provide process later?" *Culley*, 601 U.S. at 397 (Gorsuch, J., concurring). After all, "absent an 'extraordinary situation,'" due process usually requires "a *prior* judicial determination that the seizure is justified." *United States v. $8,850*, 461 U.S. 555, 563 (1983). And, given the Supreme Court's recent focus on history, do founding-era policy rationales in the discrete areas of admiralty and revenue transfer to cars, especially when the government has personal jurisdiction over the owner? *See Culley*, 601 U.S. at 397–99; *Ingram*, 81 F.4th at 628 & n.4 (Thapar, J., concurring).

Due process does not just require *a* hearing; it requires a hearing "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). This is where the common legal and factual issues of coercion and delay enter the picture. *See* Background §§ B–C. After all, Wayne County has only been able to coerce payment of fees because it has threatened and then followed through on its promise of delay, leveraging the indefinite impoundment of cars. *See Ingram*, 81 F. 4th at 622 (Thapar, J., concurring); Background §§ B–C. Absent the ability to seize and indefinitely impound cars pending an ultimate forfeiture hearing, Wayne

County would have no such leverage, and its incentive would be to file immediately since an "automobile is a wasting asset." *1983 Cadillac*, 439 N.W.2d at 349.

Instead, its incentive has been to delay initiating and prosecuting forfeiture cases. Plaintiffs have offered evidence that delay is a common practice, across numerous people and cases. So, the existence of such a policy and practice is yet another common factual question. That, in turn, leads to yet another common legal question: whether those delays violate the right to be heard at a "meaningful time." *Fuentes*, 407 U.S. at 80. After all, every justice in *Culley* agreed that claimants can still sue over delays in forfeiture proceedings. *See* 601 U.S. at 386, 389; *id.* at 400–01 (Gorsuch, J., concurring); *id.* at 414 & n.4 (Sotomayor, J., concurring). The Sixth Circuit has applied the same standard to delays in *initiating* proceedings, as well. *Cremeans v. Taczak*, 2023 WL 5206437, at *3 (6th Cir. Aug. 14, 2023), *cert. denied,* 144 S. Ct. 1032 (2024). And both the Sixth Circuit and some Supreme Court justices have suggested that the test for timely initiation is *more* stringent. *See Culley*, 601 U.S. at 400–01 (Gorsuch, J., concurring); *Ingram*, 81 F.4th at 614–15. So, the common questions are whether Wayne County's policy of delay and threatened delay (i) exists and (ii) violates the class members' due process rights.

So too for the Innocent Owner Subclass. Does Wayne County coerce redemption fees without regard to innocence? Plaintiffs have offered evidence that it does—everything about the seizure and impoundment of Melisa's car, for

example, was consistent with Wayne County's policies and practices. Ex. 14 at 57:3–13, 58:2–7. And its Vehicle Seizure Unit policy manual directs employees to offer the same three options, regardless of innocence. Ex. 3 at -633 (§ 3.02); Ex. 4 at 68:19–24, 69:3–10. That evidence implicates a common legal question: does it violate due process to use impoundment and threatened delay to coerce innocent owners into paying redemption fees? *See* ECF No. 54, PageID.1020.

The answers to all of these questions must be the same for every Class and Subclass member because they turn on generally applicable policies and practices. There is "a single factual theory of wrongdoing . . . based on the single legal claim that the . . . practice[s] violated class members' due process rights." *Powers*, 501 F.3d at 619. "There would not and could not be different factual[ and legal] findings in separate cases," *In re Flint Water Cases*, 499 F. Supp. 3d 399, 422 (E.D. Mich. 2021) (Levy, J.), because "[t]he dispositive facts and law are the same as to each class member," *Powers*, 501 F.3d at 619. And the entire "premise of this litigation" is that these policies and practices violate due process, so answering the common questions "will advance the litigation." *Flint Water*, 499 F. Supp. 3d at 421–22.

To be sure, "each individual member of the class has a unique situation and has been affected in diverse ways." *Dowdy-El v. Caruso*, 2012 WL 6642793, at *4 (E.D. Mich. Aug. 15, 2012) (citation omitted), *R. & R. adopted,* 2012 WL 6642763 (E.D. Mich. Dec. 20, 2012). Their cars were seized under different circumstances,

they had different experiences at the Vehicle Seizure Unit, and they waited different amounts of time. But commonality "requires only that a putative class share either the injury or the immediate threat of being subject to the injury." *Hill v. Snyder*, 308 F. Supp. 3d 893, 914 (E.D. Mich.), *aff'd,* 900 F.3d 260 (6th Cir. 2018). "Regardless of individual factors," *id.*, all owners were subject to the same "general practice[s]" or "'polic[ies],' which [a]re 'the focus of the litigation'" and request for class-wide relief. *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 597 (E.D. Mich. 1996).

**C. Plaintiffs' claims and experiences are typical.**

"[T]he test for typicality is not demanding." *NILI 2011, LLC v. City of Warren*, 2017 WL 2242360, at *7 (E.D. Mich. May 23, 2017). Typicality ensures the named plaintiff will "advocate the interests of the class members" just "by pursuing their own interests." *Whirlpool*, 722 F.3d at 852–53. All it requires is claims that stem from the same "practice[] or course of conduct that gives rise to the claims of other class members" and are "based on the same legal theory." 1 Rubenstein, *supra*, § 3:29. Typicality does not mean identity. *See Ryder v. Beaumont Health*, 2018 WL 11176492, at *5 (E.D. Mich. Nov. 2, 2018). A representative's claim is "typical even though 'the evidence . . . varies from other class members, some class members would be subject to different defenses, and the members may have suffered varying levels of injury.'" *NILI*, 2017 WL 2242360, at *6 (citation omitted).

Melisa's, Robert's, and Stephanie's claims are typical of the class. All three of

their cars were seized and impounded without prior process. *See* Background § D. All three had to wait at least three business days (and Robert even longer) before Wayne County would speak to them. *See id.* §§ A–B, D. Melisa and Stephanie were, like everyone else, threatened with a four-month delay if they did not pay the redemption fee. *See id.* §§ B, D. Stephanie, like hundreds of others, lost her first car because the Vehicle Seizure Unit ran out the clock. *See id.*§ D; Ex. 7 at 5. Melisa, like thousands of others, paid a redemption fee she could barely afford. *See* Background §§ B, D. When Melisa, Stephanie, and Robert tried to contest, they had to wait months for Wayne County to act, consistent with its policy of delay. *See id.* §§ B–D. Stephanie continued to wait as Wayne County tried to intimidate her into settling during two pre-trial conferences. *See id.* §§ C–D.

In short, Plaintiffs' claims and injuries "arise[] from the same . . . practice[s]" and policies "that give[] rise to the claims of other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted). More concretely, Melisa's, Stephanie's, and Robert's cars were all seized without process and impounded indefinitely, while Wayne County delayed filing and prosecuting forfeiture proceedings. *See* Background § D. That is exactly what has happened to the thousands of people whose cars were seized without process and who have had to live without them as Wayne County delayed—unless they paid the hefty redemption fees Wayne County has demanded to speed up the return of their cars.

*See id.* §§ A–C. Plaintiffs' legal claims, meanwhile, are "based on the same legal theory." 1 Rubenstein, *supra*, § 3:29. All three allege that the policies and practices that injured them and the class violate due process by denying *pre*-seizure process and illegitimately delaying *post*-seizure process. *See* Argument § I(B) above.

And Melisa's claims are typical of the Innocent Owner Subclass. Melisa faced these policies even though she was not in her car when it was seized and even though Wayne County never had any reason to suspect her of wrongdoing. *See* Background § D. As with other innocent owners, it ignored her innocence and told her to pay if she wanted her car back. *See* Background §§ B, D. Melisa alleges that these actions violated due process—the very same claim advanced on behalf of the Subclass.

Plaintiffs "claims share the same essential characteristics as the claims of the class [and subclass] at large." 1 Rubenstein, *supra*, § 3.29. Their individual damages claims do not change the analysis, since they "arise from the same policy and practice as the class's claim for injunctive [and declaratory] relief." *Chimenti v. Wetzel*, 2018 WL 2388665, at *7 (E.D. Pa. May 24, 2018). Accordingly, Plaintiffs' claims are typical.

**D. Plaintiffs and their counsel are adequate.**

Adequacy focuses on "competency of class counsel and conflicts of interest." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (citation omitted). This requires only "a simple demonstration of facts in the motion for class certification,"

the "truth of" which is "generally presume[d]." 1 Rubenstein, *supra*, § 3:55.

***Plaintiffs are adequate.*** Plaintiffs share common interests with the class and have demonstrated their commitment to obtaining class-wide relief. Collectively, they responded to 165 document requests and 33 interrogatories. All three sat for in-person depositions, answering probing (sometimes very personal) questions. Wayne County retaliated against Robert, yet he stayed on the case. *See, e.g.*, *Ingram*, 81 F.4th at 609. All three understand their roles as class representatives. *See, e.g.*, Ex. 19 at 12:1–8, 39:5–40:19; Ex. 20 at 80:2–81:23; Ex. 21 ¶¶ 30–34. And all three have a personal stake in the prospective relief sought because they are suing to stop a defendant and program that has violated their rights repeatedly. *See* ECF No. 54, PageID.1003; ECF No. 70, PageID.1166; Ex. 21 ¶¶ 24–29. As such, they have "common interests with unnamed members of the class" and "will vigorously prosecute the interests of the class." *See Flint Water*, 499 F. Supp. 3d at 423.

***Counsel are adequate.*** Counsel's adequacy turns on (i) work investigating the claims; (ii) class action, complex litigation, and subject matter experience; (iii) knowledge of the law; and (iv) resources. Fed. R. Civ. P. 23(g)(1)(A). Counsel did substantial work to identify and investigate claims. Ex. 22 ¶ 8. Counsel and their firm have experience litigating class actions and complex cases. *Id.* ¶¶ 3–7. Indeed, the Institute for Justice is a leading authority on civil forfeiture. *Id.* ¶¶ 3, 11. And it has, and will continue to, commit significant resources to this case. *Id.* ¶¶ 9–10.

The past five years of litigation demonstrate as much. Counsel substantially defeated motions to dismiss. *See* ECF Nos. 54, 70. They won in the Sixth Circuit. *See Ingram*, 81 F.4th at 606. They won Stephanie's civil forfeiture case at the Michigan Supreme Court. *Saturn Ion*, 2024 WL 3503577, at *6. Despite the setback in *Culley*, the amicus brief the Institute for Justice filed on Stephanie's behalf was cited in the concurrence and dissent (representing five justices). *See* 601 U.S. at 396 (Gorsuch, J., concurring); *id.* at 405, 407–08 (Sotomayor, J., dissenting). On remand here, counsel took extensive discovery, shouldering the burden of voluminous document review. In other words, counsel's performance shows "that they will . . . vigorously prosecute the interests of the class." *Flint Water*, 499 F. Supp. 3d at 423.

**II. Plaintiffs satisfy Rule 23(b)(2) because they challenge policies and practices that have applied generally to the class.**

A Rule 23(b)(2) "class must sue over a uniform action or inaction by the defendant, and it must request a uniform injunction or declaratory judgment." *Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022), *vacated as moot,* 144 S. Ct. 481 (2023). "These requirements are tailor-made for civil-rights cases seeking to stop a general policy or practice." *Id.* Classes that meet these uniformity requirements have an "innate cohesion" that excuses them from the requirements for other types of classes. 2 Rubenstein, *supra*, § 4:26. That "cohesion" means Rule 23(b)(2) certification is appropriate even if the class is "unascertainable or amorphous," *id.*, and even if "some class members have not been injured by the challenged practice," *Gooch v.*

*Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (citation omitted).

***Wayne County's policies and practices have applied generally to the Class and Subclass.*** As detailed, Wayne County has had policies and practices of (i) seizing and impounding cars for forfeiture without prior process; (ii) refusing to release cars unless the owner agrees to pay a redemption fee; (iii) delaying initiation of forfeiture proceedings; (iv) delaying forfeiture proceedings through serial requests for "pre-trial conferences"; and (v) disregarding innocence. *See* Background §§ A–C.

Those are "generally applicable to the class as a whole," even if not every class member has experienced them in the same way. *See Gooch*, 672 F.3d at 428. "That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a" challenge to "a common policy." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). What matters "is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." *Gooch*, 672 F.3d at 428 (citation omitted). Wayne County's policies and practices have applied to every car owner—even those who were innocent (like Melisa) and even those whose cars were seized by other entities (like Robert's). *See* Background §§ A–D. Even if those policies and practices did not *injure* every class member, it only matters that they *applied* to them *See Gooch*, 672 F.3d at 428–29.

***Plaintiffs seek a uniform injunction and declaration.*** Plaintiffs seek a

declaration that the policies and practices described above violate due process and an injunction barring Wayne County from: (i) seizing and indefinitely impounding cars to pursue forfeiture, without prior notice and a hearing; (ii) refusing to release cars prior to a judgment of forfeiture unless the owners agree to pay redemption fees; (iii) coercing owners into paying redemption fees by advising them that they will wait months for Wayne County to initiate forfeiture proceedings; (iv) delaying initiation of forfeiture proceedings beyond 14 days after seizure; (v) unilaterally requesting mandatory pre-trial conferences; and (iv) for the Innocent Owner Subclass, engaging in these practices to coerce payment of redemption fees when Wayne County has no reason to suspect the Subclass member of wrongdoing.

Such an "indivisible injunction" would "benefit[] all [the] members at once," *Dukes*, 564 U.S. at 362–63, by "enjoin[ing] the allegedly illegal policies[] 'root and branch.'" *Doster*, 54 F.4th at 439.[16] And that signals that Plaintiffs satisfy Rule 23(b)(2)'s second requirement. *See id.* at 439–40.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion.

---

[16] *See also Pickett v. City of Cleveland*, 2023 WL 6383757, at *10 (N.D. Ohio Sept. 30, 2023) (certifying class "seek[ing] an injunction and declaratory judgment—that Defendant's policies and practices violate Due Process"); *Mata-Cuellar v. Tenn. Dep't of Safety*, 2010 WL 3732172, at *7 (M.D. Tenn. Sept. 20, 2010) (certifying class because "a single injunctive remedy" would stop "a 'widespread' and 'pervasive pattern'").

Dated: December 23, 2024

Respectfully submitted,

*/s/ Michael B. Soyfer*
Michael Soyfer
(N.Y. Bar 5488580; D.C. Bar 230366)
Kirby Thomas West
(Pa. Bar 321371)
Christian Lansinger
(Md. Bar 221290007)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Viginia 22203
(703) 682-9320
msoyfer@ij.org
kwest@ij.org
clansinger@ij.org

Barton Morris Jr. (P54701)
LAW OFFICES OF BARTON MORRIS
801 West Beaver Road, Suite 600
Troy, Michigan 48084
(248) 541-2600
barton@bartonmorris.com