# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Melisa Bell, Stephanie Wilson, and
Robert Reeves,

|                          |                                    |
|--------------------------|------------------------------------|
|                          | Case No. 20-10288                  |
| Plaintiffs,              |                                    |
|                          | Judith E. Levy                     |
| v.                       | United States District Judge       |
|                          |                                    |
| County of Wayne,         | Mag. Judge Elizabeth A. Stafford   |
| Defendant.               |                                    |

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE CLAIMS OF PLAINTIFF ROBERT REEVES [100]

Before the Court is Defendant County of Wayne's Motion to Dismiss the Claims of Plaintiff Robert Reeves for Lack of Subject Matter Jurisdiction and/or for Judgment on the Pleadings ("Second Motion to Dismiss"). (ECF No. 100.) On May 11, 2020, Plaintiffs Melisa Bell,[1] Stephanie Wilson, and Robert Reeves ("Plaintiffs") filed an amended class action complaint against Defendant, alleging that Wayne County's

---

[1] Since the case was filed, Plaintiff Melisa Ingram married and changed her name to "Melisa Bell." (ECF No. 107.) The case caption has been updated accordingly. (*Id.*)

policies and practices related to civil forfeiture are unconstitutional. (ECF No. 12.) On August 30, 2024, Defendant filed the Second Motion to Dismiss. (ECF No. 100.) Plaintiffs responded (ECF No. 103) and Defendant replied. (ECF No. 104.) The Court held a hearing on the Second Motion to Dismiss on December 12, 2024. (*See* ECF No. 101.) For the reasons set forth below, Defendant's Second Motion to Dismiss is denied.

### I.    Background

Plaintiffs filed their amended complaint in May 2020. (ECF No. 12.) Defendant has since filed various motions to address each named Plaintiff's claims, but since the motion pending before the Court only applies to Reeves, the Court focuses on the history of his claims. (*See* ECF No. 100.)

In "early 2019," Reeves purchased a 1991 Chevrolet Camaro. (ECF No. 12, PageID.255.) That July,

> a man with whom [Reeves] sometimes works asked him to visit a job site where he was clearing rubbish. The man had a skid-steer loader [that police believed was stolen] at the site and wanted to know if [Reeves] knew how to operate it. [Reeves] demonstrated how to use the equipment and the two men planned to meet the next day to begin their work.

2

(*Id.* at PageID.255–256.) After Reeves left the site, police officers detained him and seized his car, two cell phones, and $2,280 in cash. (*Id.* at PageID.256.) He was not arrested for alleged theft of the skid-steer loader at the time of his detention and seizure or while his car remained impounded. (ECF No. 103, PageID.1536.) On July 26, 2019, Reeves received a Notice of Seizure and Intent to Forfeit, which stated that his property was subject to forfeiture under the Omnibus Forfeiture Act (the "OFA"). (ECF No. 12-6.) For more than six months afterwards, Reeves attempted to call numbers listed on the notice dozens of times to obtain his car after it had been impounded. (ECF No. 12, PageID.257.) He eventually "hired an attorney, but employees of the Vehicle Seizure Unit and Wayne County Prosecutor's Office refused to speak with his attorney." (*Id.*)

Reeves filed the original complaint in this action in February 2020. (*Id.*) "The day after [Reeves] filed this case, the Wayne County Prosecutor's Office wrote to a state taskforce—the Western Wayne Criminal Investigation Forfeiture Unit—instructing it to release [Reeves]' property." (*Id.* at PageID.257–258 (citing ECF No. 9-2).) His property was released shortly thereafter. (ECF No. 103, PageID.1536.) In

3

May 2020, Reeves was arrested (ECF No. 12, PageID.259) "for possession of stolen property and released on bond. A state court dismissed the charges for lack of probable cause. Prosecutors then refiled charges. The state court again dismissed the charges." *Ingram v. Wayne Cnty.*, 81 F.4th 603, 620 (6th Cir. 2023). Reeves asserts that these arrests were in retaliation and an attempt to stall this lawsuit. (ECF No. 103, PageID.1527; ECF No. 12, PageID.259.)

### A.    First Motion to Dismiss

On July 1, 2020, Defendant filed its Motion to Abstain or Stay, or in the Alternative, Motion to Dismiss the Claims Asserted by Plaintiff Robert Reeves ("First Motion to Dismiss"). (ECF No. 19.) On September 30, 2021, presiding Judge Arthur J. Tarnow declined to abstain or stay the case but dismissed most counts asserted by Reeves. (ECF No. 54.) The counts that survived were Count IV, which alleges Fourteenth Amendment due process violations, and Count IX, which alleges damages for those violations. (*See id.* at PageID.991–998.) Defendant filed a motion for reconsideration. (ECF No. 55.) The case was reassigned to Judge George Caram Steeh, who denied the motion for reconsideration. (ECF No. 70.)

4

The Sixth Circuit heard an interlocutory appeal concerning Count IV, in which Plaintiffs, including Reeves, alleged that Defendant's failure to provide prompt post-seizure hearings violated the Due Process Clause of the Fourteenth Amendment. (ECF No. 61.) On August 31, 2023, the Sixth Circuit affirmed the district court's September 2021 decision and held that "Wayne County was required to provide a prompt post-seizure hearing for plaintiffs' personal vehicles." *Ingram*, 81 F.4th at 620. However, the Supreme Court reversed the Sixth Circuit in May of 2024 by stating that "[t]he Constitution requires a timely forfeiture hearing; the Constitution does not also require a separate preliminary hearing." *Culley v. Marshall*, 601 U.S. 377, 381 (2024). This case was reassigned to the undersigned in August 2024.

### B.    Second Motion to Dismiss

Over four years after the First Motion to Dismiss, Defendant filed the Second Motion to Dismiss, arguing that (1) Reeves lacks standing, and thus the court lacks subject matter jurisdiction; (2) his due process claim fails after *Culley*; and (3) he failed to properly invoke state remedies before filing his lawsuit. (ECF No. 100.) In their response, Plaintiffs assert that Reeves has standing and that *Culley* does not preclude two of

Reeves' allegations that Defendant's policies and practices violate due process. (ECF No. 103, PageID.1516–1517, 1521 ("This Court still must evaluate whether the County's 'delay in commencing forfeiture proceedings' and its 'policy of holding months of pre-trial conferences with a prosecutor, absent judicial oversight' to 'wrongfully pressure[] [property owners] into settling their forfeiture actions,' violated Plaintiffs' due process rights." (quoting ECF 54, PageID.1011).)

## II. Legal Standards

### A. Standing Under Rule 12(b)(1)

The Supreme Court has set forth that "Article III of the Constitution confines the federal judicial power to 'Cases' and 'Controversies.' Under Article III, a case or controversy can exist only if a plaintiff has standing to sue—a bedrock constitutional requirement that this Court has applied to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023) (collecting cases).

Challenges to standing are properly decided under Federal Rule of Civil Procedure 12(b)(1). *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two

varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

As relevant here, "[a] factual attack challenges the factual existence of subject matter jurisdiction," and "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The plaintiff is not required to submit evidence outside of the initial pleading. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (finding that "both parties *are free to supplement the record* by affidavits" (emphasis added)).

In a factual attack, the "plaintiff carries the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Johnson v. Hartwell*, No. 18-10424, 2018 WL 3997817, at *2 (E.D. Mich. Aug. 21, 2018). A complaint's allegations are not presumed to be true. *3D Sys., Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 804 (E.D. Mich. 2008). However, the Court can still use the allegations in the complaint and its exhibits as evidence. *See, e.g., Kendall v. DeLong*, No. 20-5573, 2020 WL

7

9813548, at *2 (6th Cir. Dec. 1, 2020); *Inv. Realty Servs., LLC v. City of Garden City*, No. 19-10198, 2019 WL 4017142, at *4 (E.D. Mich. Aug. 26, 2019); *Blaszak v. United States*, No. 21-1093, 2022 WL 2541723, at *3 (W.D. Mich. June 10, 2022).

## B.    Due Process Under Rule 12(b)(6) or 12(c)

Whether the final two arguments in Defendant's Second Motion to Dismiss are construed as a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), the same legal standard applies: "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The allegations must be "sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"To prevail on a procedural due-process claim, [a plaintiff] must show: (1) it had a constitutionally protected interest, (2) it was deprived of that interest, and (3) the state did not afford it adequate procedures." *Golf Vill. N., LLC v. City of Powell*, 42 F.4th 593, 598 (6th Cir. 2022).

## III.  Analysis

As set forth below, Reeves has established standing, and he has a viable Fourteenth Amendment claim after *Culley*. Additionally, Reeves did not have adequate statutory remedies.

### A.    Reeves Has Standing

Defendant asserts that Reeves lacks standing. When a plaintiff seeks to establish standing, "the 'irreducible constitutional minimum' . . . consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, traceability is the only disputed element of standing.[2] "At the pleading stage, the

---

[2] Defendant acknowledges that the injury in this case is the alleged delay in commencing civil forfeiture proceedings, which would have provided Reeves with the

plaintiff's burden of alleging that their injury is fairly traceable to the defendant's challenged conduct is relatively modest." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (cleaned up). "Any harm flowing from the defendant's conduct, even indirectly, is said to be fairly traceable." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 592 (6th Cir. 2022) (cleaned up). The plaintiff must show "the asserted injury was the consequence of the defendants' actions." *Warth v. Seldin*, 422 U.S. 490, 505 (1975).

Courts are "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). However, "that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). "In the nebulous land of 'fairly traceable,' where causation means more than speculative but less than but-for, the allegation that a defendant's conduct was a motivating factor in the third party's injurious actions

---

opportunity to pursue the return of his car in a judicial proceeding. (ECF No. 104, PageID.1546.)

satisfies the requisite standard." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015).

The County contends that Reeves cannot satisfy the traceability element of standing because the Michigan State Police, not the County, seized his vehicle, held his vehicle, and potentially caused damage to it. (ECF No. 100, PageID.1454.) Reeves agrees that the state police seized the vehicle but argues that this fact does not impact his allegation that "the County was responsible for unreasonably delaying his opportunity to pursue the return of his car in a judicial proceeding." (ECF No. 103, PageID.1516–1517.) Defendant contends, however, that it could not have been responsible for a delay because it was "not statutorily authorized . . . to file a civil forfeiture case until a criminal conviction had been obtained." (ECF No. 104, PageID.1546.) But, as set forth below, Defendant plays a key role in securing a criminal conviction, and indeed, no criminal case was filed and there was no criminal conviction related to the seizure of the car secured against Reeves while his car was impounded, or after. (*See id.*)

Defendant's arguments regarding traceability fail. Reeves has met his "relatively modest" burden for traceability. *Buchholz*, 946 F.3d at 866.

11

At this stage, Reeves has sufficiently established that the alleged injury—a delay in forfeiture proceedings—flowed from Defendant's failure to timely initiate a civil forfeiture proceeding. Even if the Michigan State Police had possession of the car, the delay in judicial proceedings arose from both Defendant and the Michigan State Police's conduct. The OFA's requirement for a criminal conviction before initiating civil forfeiture proceedings also does not bar standing, because the County was a cause of both the delay in the judicial proceedings related to the forfeiture, and the decision not to pursue a criminal conviction during the relevant time period. Moreover, as discussed below, because the County did not initiate a criminal proceeding, Reeves could not file an action to retrieve his property through other statutory means.

When an injury is caused by cooperation or by the influence one party exerts on another—especially with respect to a relationship between government actors—that meets the requirements of traceability. *See Parsons*, 801 F.3d at 714 ("[T]he fact that a defendant was one of multiple contributors to a plaintiff's injuries does not defeat causation."); *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) (explaining that there is more likely to be compulsion in the context of

12

intergovernmental cooperation between law enforcement agencies); *Bennett*, 520 U.S. at 168–71 (holding that there is traceability when one government agency's opinion has a coercive effect on another government agency's conduct that impacts a plaintiff). An injury can be traceable to a government actor even when that actor "did not direct [] third-party law enforcement entities" to cause an injury but instead "motivate[d] harmful conduct." *Parsons*, 801 F.3d at 714. When a government actor provides a "theoretically . . . advisory" opinion that, in fact, has a "powerful coercive effect" on another government actor's treatment of a plaintiff, that is also sufficient under the traceability standard. *Bennett*, 520 U.S. at 169. The Sixth Circuit has held that when a city does not enforce a law, enabling a third party to injure a plaintiff, that is sufficient for traceability with respect to the city. *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (failing to enforce ordinances regarding third-party protestors at a synagogue foreseeably caused congregants emotional distress).

The OFA is the Michigan statute relevant to this civil forfeiture. It provides:

> If property subject to forfeiture under this chapter has a total value of less than $100,000.00, within 28 days after the

13

conviction of a person of a crime, the state or local unit of
government seeking forfeiture of the property shall give notice
of the seizure of the property or, if a lien has been filed, the
filing of the lien, and the intent to begin proceedings to forfeit
and dispose of the property according to this chapter to each
of the persons to whom notice is required to be given[.]

Mich. Comp Laws § 600.4707(1). Seized personal property must be
returned "within 7 days" if "[a] warrant is not issued against a person for
the commission of a crime within 28 days after the property is seized."
*Id.* at § 600.4706(1). Before that time period expires, a prosecutor from
"the local unit of government where the property is seized or located may
petition the court ex parte for not more than an additional 28 days to
complete its investigation and issue charges or return the property," a
request which Michigan state courts analyze under a "good cause"
standard. *Id.* at § 600.4706(2). Prosecutors are the government actors
responsible for bringing a civil forfeiture action. *Id.* at § 600.4706(4) ("The
attorney general, the prosecuting attorney, or the city or township
attorney shall institute a civil action for forfeiture . . ."); *see also Novak v.
Federspiel*, 649 F. Supp. 3d 562, 574 (E.D. Mich. 2023) ("Defendant[, a
county sheriff in Michigan,] correctly responds that it may not initiate

14

forfeiture proceedings, because forfeiture proceedings are initiated by the County Prosecutor." (cleaned up)).

The evidence Reeves provides establishes that Defendant had a determinative, causal impact on the delayed process that unfolded after his property was seized. Defendant's conduct "was a motivating factor" with respect to Reeves' alleged injury. *Parsons*, 801 F.3d at 714.

Defendant knew about the seizure and was also the prosecutor. Defendant's counsel acknowledged at the hearing on this motion that Defendant monitors and makes records of seizures and was aware of the seizure of Reeves' property. (ECF No. 110, PageID.2312–2313 ("[T]hey monitor it, right. So the prosecutor's office does have, quote, a record of the matter, right. They have an understanding that the state police made this seizure, is holding the vehicle.").) The notice sent to Reeves after the seizure states that he may call the Wayne County Prosecutor's Office "Asset Forfeiture Unit" and informs him that he may be contacted by the Asset Forfeiture Unit "or an officer of the seizing agency" regarding the seizure of his property. (ECF No. 12-6, PageID.309; *see also* ECF No. 104-1, PageID.1551 (a Wayne County Prosecutor discussing the relevant form).) Defendant was the prosecuting agency cooperating with the

15

Michigan State Police with respect to this seizure, as Defendant's counsel acknowledged at the hearing. (ECF No. 110, PageID.2310.)

The OFA recognizes the role of prosecutors including those in the Wayne County Prosecutor's Office in civil forfeiture proceedings. In addition to naming prosecutors as the ones who bring civil forfeiture actions, as set forth above, it provides that "the prosecuting attorney . . . where the property is seized or located" may seek more time for investigation if a warrant is not timely issued. Mich. Comp Laws § 600.4706(2). Although Defendant was monitoring the situation and, as set forth below, they were cooperating with and able to motivate the Michigan State Police's conduct, they did not secure a warrant or an extension of time to secure a warrant under the OFA. Insofar as the lack of a criminal conviction prevented the initiation of civil forfeiture proceedings regarding Reeves' property, that is traceable, at least in part, to the County's role in not securing a warrant or an extension of time to do so, thereby delaying the return of his property.

The record reveals that Defendant issued instructions to the Michigan State Police about the release of seized property, demonstrating their "determinative" impact on the Michigan State Police

16

and, in turn, on the process that unfolded here. *Bennett*, 520 U.S. at 169. That undermines Defendant's insistence that it had no control over the seized vehicle or the relevant delays. (ECF No. 104, PageID.1547.) In a letter to the Michigan State Police, Defendant directed them to "[p]lease have [Reeves'] property released from seizure/hold . . . and notify the owner[] to obtain their vehicles." (ECF No. 106-18, PageID.1815.) It added, "the seized property should be returned/released at this time." (*Id.*) Shortly after the County sent this letter, Reeves' car was released. (ECF No. 12, PageID.258.) Defendant insists that the "letter was merely advisory and sent as a courtesy." (ECF No. 104, PageID.1543; *see also* ECF No. 104-1, PageID.1551.) During oral argument, Defendant admitted that these types of letters are "routine" to "close the loop" on the County's side when a case remains open in its administrative database, and a civil forfeiture proceeding has not been initiated. (ECF No. 110, PageID.2354 ("[Wayne County] prosecutors routinely send letters out to advise the seizing agencies of, you know, the office's opinion that the property should be released.")) The Michigan State Police take these letters seriously enough to request corrected copies from the County when they find inaccuracies or typos. (*See* ECF No. 106-18.) Before

17

Defendant sent the letter, Reeves alleges that he contacted the County Prosecutor's Office dozens of times. (ECF No. 12, PageID.257.) Only after Defendant sent the letter did the Michigan State Police release the vehicle. (*Id.*) Despite Defendant's ability to motivate the Michigan State Police through advisory letters directing them to release Reeves' property and obviate the need for any further proceedings, they did not send such a letter for over six months while his property was impounded. (ECF No. 12, PageID.266.)

Defendant argues that the injury was not traceable to them because they were "not even statutorily authorized to file a civil forfeiture case in state court until a predicate criminal conviction had occurred." (ECF No. 100, PageID.1462.) But Defendant participated in the delay of any process related to the pursuit a criminal conviction against Reeves. In this case, Defendant was monitoring this seizure as part of their cooperation with the Michigan State Police since August 2019. (ECF No. 110, PageID.2313 ("They monitor it for purposes of omnibus forfeiture."); *id.* at PageID.2346.) Despite the provisions of the OFA outlining prosecutors' role in civil forfeitures and their role as a prosecuting agency, they did not coordinate with the Michigan State Police to timely

18

secure a warrant, they did not seek more time to secure a warrant after 28 days elapsed, and they did not advise the Michigan State Police about what they describe as the "strict timing requirements for when criminal cases must be initiated after a seizure" until more than six months elapsed. (ECF No. 100, PageID.1461.)

Failure to act can be a basis for traceability. *See Gerber*, 14 F.4th at 505. The impact of Defendant's failure to act is clear. As set forth above, its letter motivated the release of Reeves' property, and prior to the release of Reeves' property Defendant took no action to pursue a criminal conviction despite knowing that the requirements for pursuing a criminal case were being ignored. The Sixth Circuit has recognized that the information and opinions shared between law enforcement actors differs from other relationships when it comes to traceability. *See Turaani*, 988 F.3d at 317. Specifically, such intergovernmental relationships are capable of motivating or compelling conduct even when one government actor is not issuing direct orders to another government actor. *Id*. The Michigan State Police seized and held Reeves' property, but their routine intergovernmental cooperation reveals Defendant's control and influence over the delayed forfeiture process that Reeves alleges caused his injury.

19

Defendant's failure to act to pursue a criminal conviction was a "motivating factor" with respect to the delays in that process. *Parsons*, 801 F.3d at 714. The alleged harm is therefore traceable to Defendant's "determinative . . . effect" on the Michigan State Police with respect to the delayed judicial proceeding regarding Reeves' seized property. *Bennett*, 520 U.S. at 169.

Plaintiff has sufficiently alleged that Defendant had a determinative role in whether the car was released, and the delay in proceedings without releasing the vehicle is traceable to Defendant. Since the Defendant only disputes the traceability element of standing, and Reeves has established the remaining two prongs, the Court has subject matter jurisdiction over this case.

## B.   Reeves' Count IV Partially Survives *Culley*

The Court denies Defendant's argument for dismissal based on *Culley* undermining Count IV. Count IV encompasses a viable legal theory that not only survives but was reaffirmed as a cause of action in *Culley*: whether Defendant violated Reeves' due process rights by unreasonably delaying his civil forfeiture proceedings. Under the relevant standard to determine whether the delay was unreasonable, the

20

Court finds that Reeves has pled sufficient factual matter to render the claim plausible. Reeves may therefore advance his claim that the alleged delay of over six months violated his due process rights.

### i.   *Lack of prompt post-seizure hearing theory*

Defendant argues that Count IV does not survive after the intervening Supreme Court decision in *Culley*. (ECF No. 100, PageID.1456.) On August 31, 2023, the Sixth Circuit Court of Appeals held that Plaintiff Reeves' due process rights were violated when he did not receive a "prompt post-seizure hearing." *See Ingram*, 81 F.4th at 620. However, on May 9, 2024, the Supreme Court reversed this decision, holding that "[i]n civil forfeiture cases, the Due Process Clause requires a timely forfeiture hearing, but does not require a separate preliminary hearing." *Culley*, 601 U.S. at 393. In response, Plaintiff recognizes that after *Culley*, "due process does not require a preliminary post-seizure hearing in forfeiture cases." (ECF No. 103, PageID.1514.) Therefore, Reeves cannot claim that a lack of a preliminary post-seizure hearing in his forfeiture case violated his due process rights.

However, as Reeves explains, "Count IV encompasses multiple legal theories." (*See id.*) He contends that the County's practices of

21

delaying civil forfeiture proceedings violated his due process rights.[3] (*Id.* at PageID.1521 (citing ECF No. 54, PageID.1011).) At this stage, Reeves has sufficiently stated a claim that the delay in civil forfeiture proceedings violated his due process rights, so the Court denies the Second Motion to Dismiss on this basis.[4]

### ii.   Unreasonable delay theory

*Culley* reaffirmed that forfeiture claimants may bring a due process cause of action for unreasonable delays in their forfeiture proceedings. *Culley*, 601 U.S. at 386 (quoting *United States v. $8,850*, 461 U.S. 555,

---

[3] Plaintiffs also assert that "holding months of pre-trial conferences with prosecutors without judicial oversight" constitutes a violation. (*Id.* at PageID.1521.) Reeves does not allege that he participated in a pre-trial conference, so he may not rely on this legal theory to support his due process claim.

[4] The title of Count IV in the amended complaint is "Fourteenth Amendment to the U.S. Constitution—Lack of Prompt, Post-Seizure Hearing." (ECF No. 12, PageID.285.) However, "the label which a plaintiff applies to his pleading does not determine the nature of the cause of action." *United States v. Louisville & N. R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955). The question is whether Reeves pleads facts that support "at least one viable theory" rather than whether he "expressly plead legal theories" in the amended complaint. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). The amended complaint asserts that over "more than six months, no forfeiture complaint was filed against Robert's vehicle (and other property), and he was given no opportunity to contest the seizure." (ECF No. 12, PageID.256–257.) Under Count IV, it is alleged that "[t]he county routinely delays six months after the initial seizure, or longer, before commencing forfeiture proceedings." (ECF No. 12, PageID.286.) The label for Count IV does not prevent Reeves from presenting his legal theory regarding an unreasonable delay of forfeiture proceedings.

562–563 (1983)) ("The Court concluded that a post-seizure delay 'may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time.'") According to *Culley*, the proper test to determine whether the delay violated due process is the four-factor speedy-trial test laid out in *Barker v. Wingo*. *Id.* at 386; *see also \$8,850*, 461 U.S. at 564 ("The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay [between the seizure and the initiation of the forfeiture trial] here violated the due process right to be heard at a meaningful time."). Defendant argues that it did not cause the alleged delay, and thus the *Barker* test does not apply. (ECF No. 104, PageID.1547.) As set forth above, however, Reeves' allegation that Defendant caused the delay may go forward, so it is proper to analyze whether Plaintiff plead sufficient factual matter to make his due process violation plausible. *Iqbal*, 556 U.S. at 677. Because Plaintiff satisfies the *Barker* test at the motion to dismiss stage when taking all of Plaintiff's well-pleaded factual allegations as true, the Court will allow Reeves to advance his claim that the alleged delay violated his due process rights.

Under *Barker v. Wingo*, the Court determines whether the civil forfeiture hearing is timely by evaluating the following: (1) the length of the delay; (2) the reason for the delay; (3) whether the property owner asserted his rights; and (4) whether the delay was prejudicial. 407 U.S. 514, 530 (1972). First, the Supreme Court and Sixth Circuit indicate that the length of delay weighs in Reeves' favor, although it is not dispositive. Delays as long as ten months, eighteen months, and twenty-nine months weigh in favor of the property owner. *See Bush v. Banks*, 181 F.3d 100, 1999 WL 313883, at *3 (6th Cir. 1999) (unpublished table decision) (finding a ten-month delay "is of sufficient length to compel an inquiry into the remaining factors"); *$8,850*, 461 U.S. at 569 (finding "18 months . . . is undoubtably a significant burden"); *United States v. 35555 Little Mack*, 211 F.3d 1271 (6th Cir. 2000) (noting the government conceded that a twenty-nine month delay "is sufficient to trigger scrutiny of the remaining factors").[5] But the Sixth Circuit has also indicated that a five-and-a-half-month delay is sufficient. *Cremeans v. Taczak*, No. 22-3730, 2023 WL 5206437, at *5 (6th Cir. Aug 14, 2023) (citing approvingly an

---

[5] However, in *Bush*, *$8,850*, and, *35555 Little Mack*, the other three *Barker* factors outweighed the first factor, and the Court found no violation of due process rights under the *Barker* test.

Ohio Supreme Court case that applied the *Barker* factors and found "a five-and-a-half-month delay in initiating forfeiture proceedings with no credible justification is unlawful, even without the exercise of diligence or suffering of prejudice.") Here, Plaintiff alleges that he waited over six months, and the County still had not initiated a civil forfeiture proceeding. (ECF No. 12, PageID.266.) Therefore, the Court finds that this factor weighs in favor of Reeves.

Second, the Court finds that the reason for the delay weighs in favor of Reeves. As the Court has already explained, Defendant's failure to initiate criminal or civil forfeiture proceedings caused the delay. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," especially when intended "to gain some tactical advantage [] or to harass [an individual]." *Barker*, 407 U.S. at 531 & n.32 (citations omitted). Plaintiff alleges that the delay was to prevent him from retrieving his car and to maximize revenue, since the owner pays a redemption fee, towing fee, and storage expenses to regain possession of his car. (ECF No. 12, PageID.234.) At least one Sixth Circuit Judge agrees. *See Ingram*, 81 F.4th at 623 ("[T]he County's scheme is simply a money-making venture—one most often

25

used to extort money from those who can least afford it.") (Thapar, J., concurring). Defendant also provides no justification for the delay. In cases with similar lengths of delay where the second factor weighed in favor of the government, the pending criminal proceeding was considered a compelling reason for a delay. *Bush*, 1999 WL 313883, at *3; *35555 Little Mack*, 211 F.3d at 1271; *$8,850*, 461 U.S. at 567. But here there was no criminal proceeding initiated against Reeves while his car remained impounded. (ECF No. 103, PageID.1536.) Moreover, Defendant cannot plausibly argue that the delay was justified under the OFA because it "was not even statutorily authorized to file a civil forfeiture case in state court until a predicate criminal conviction had occurred." (ECF No. 100, PageID.1462.) As set forth above, Defendant participated in the delay that related to the pursuit of a criminal conviction against Reeves. In fact, Defendant and the Michigan State Police did not pursue this investigation and ignored the statutory requirements of the OFA until well after the car had been released. *See Ingram*, 81 F.4th at 609. Thus, the second factor weighs in favor of the Reeves.

The third factor, which is whether the property owner asserted his rights, also weighs in Reeves' favor. In a civil forfeiture case, the Court

analyzes the property owner's "diligence in seeking return of the [property]." *Whitfield v. Muskingum Cnty.*, No. 23-1448, 2024 WL 4227040, at *10 (S.D. Ohio Sept. 18, 2024). This can include communications with the Prosecutor's Office to return the property. *Id.* Here, Reeves attempted to assert his rights by calling on his own and then by hiring an attorney to inquire about retrieving his car "dozens of times." (ECF No. 12, PageID.257.) Defendant argues in another portion of its motion that Reeves did not assert his rights because he did not use available state remedies. (ECF No. 100, PageID.1461–1462.) Although failure to use state remedies could weigh in favor of the Government, *$8,850*, 461 U.S. at 569, this argument does not apply here, where, as discussed below, Reeves had no adequate and applicable state remedies. Moreover, at least one court has found that failing to pursue remedies under state law "[did] not negate the fact that he diligently sought the return of his property" in other ways. *Whitfield*, 2024 WL 4227040, at *10 (finding that the third factor weighed in favor of the property owner when he repeatedly emailed the prosecutor's office to seek release of his property). As a result, the Court finds that the third factor supports Reeves.

27

The final factor is neutral with respect to Reeves' claim. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *$8,850*, 461 U.S. at 569. Where "no forfeiture proceedings were initiated . . . the delay could not interfere with Plaintiffs' ability to defend against a forfeiture." *Whitfield*, 2024 WL 4227040, at *11. Thus, the Court does not weigh this factor for or against Plaintiff.

At this stage, when taking all of Plaintiff's well-pleaded factual allegations as true, the Court finds that at least three of the four *Barker* factors weigh in favor of Reeves, and he has thus pled sufficient facts to render his due process claim in Count IV plausible. Therefore, the Court allows Reeves to advance his claim that the alleged delay violated his due process rights, and Defendant's arguments for dismissal based on *Culley* fail.

### C.   Reeves Lacked Adequate Statutory Procedures

To make his procedural due process claim under 42 U.S.C. § 1983, Reeves must show "(1) [he] had a constitutionally protected interest, (2) [he] was deprived of that interest, and (3) the state did not afford [him]

28

adequate procedures." *Golf Vill. N.*, 42 F.4th 593 at 598. Defendant only disputes whether Plaintiff satisfies the third prong. (ECF No. 100, PageID.1459.) Defendant claims that there were two adequate processes available to Reeves. The Court disagrees. None of the processes described by Defendant allow Reeves to remedy the delay in the initiation of civil forfeiture proceedings. (*Id.* at PageID.1459.) The state remedies Defendant cites were inapplicable or inadequate under these facts.

### i.     *Mich. Comp. Laws 600.4705(4)*

Defendant contends that Mich. Comp. Laws 600.4705(4) provides an adequate procedure. Yet the statute's text clearly and unambiguously applies only when forfeiture proceedings have already been initiated.

As the Michigan Supreme Court has set forth, to interpret a statute, the Court must start

> by examining the language of the statute itself, as this is the most reliable evidence of that intent. *If the language of a statute is clear and unambiguous, we presume that the Legislature intended the meaning clearly expressed. Accordingly, the statute must be enforced as written and no further judicial construction is permitted.* To the extent possible, *effect should be given to every phrase, clause, and word in the statute*, and no word should be treated as surplusage or rendered nugatory.

*Gardner v. Dep't of Treasury*, 498 Mich. 1, 6 (2015) (emphasis added). Here, Section 600.4705(4) states in relevant part that "[i]f a motor vehicle is seized under section 4703, the owner of the vehicle may move *the court having jurisdiction over the forfeiture proceedings* to require the seizing agency to file a lien against the vehicle and to return the vehicle to the owner." Mich. Comp. Laws § 600.4705(4) (emphasis added). Under the OFA, then, the property owner can only move a court that "ha[s] jurisdiction over the forfeiture proceedings." In contrast, when there are no forfeiture proceedings in the court, a property owner cannot move that court to return property. Because no forfeiture proceedings had been initiated against him, Reeves could not move a court to return his property under Mich. Comp. Laws § 600.4705(4), and this state procedure was inadequate.

If the Court were to accept Defendant's interpretation and allow a property owner without forfeiture proceedings to move the state court to return his property under Section 600.4705(4), the Court would erroneously treat the words "over the forfeiture proceedings" as surplusage or render them meaningless. The plain meaning of the text and Michigan rules of statutory interpretation undermine Defendant's

argument that Reeves could have used Section 600.4705(4) to obtain his property.

> ii.   Mich. Comp. Laws *600.4705(1)*

In the alternative, the County suggests that Reeves could have used the process under Section 600.4705(1). This is a closer question because Section 600.4705(1) states the following:

> "[A property owner] may move *the court having jurisdiction to return the property* . . . on the grounds that the property was illegally seized, that the property is not subject to forfeiture under this chapter, or that the person has an ownership or security interest in the property and did not have prior knowledge of, or consent to the commission of, the crime."

Mich. Comp. Laws § 600.4705(1) (emphasis added).

The Court addressed this issue when denying the motion for reconsideration filed by Defendant regarding its First Motion to Dismiss. Defendant had argued that "the OFA's 28-day and 7-day provisions provide adequate due process in the case of vehicle seizures." *Ingram v. Cnty. of Wayne*, No. 20-10288, 2022 WL 2079866, at *6 (E.D. Mich. June 9, 2022). The Court held that "the 7-day and 28-day hearings provide an avenue to seek the return of a vehicle *during the pendency of a state court criminal and civil proceeding*. . . . However, it is not clear that the 7-day

31

or 28-day hearings were an available avenue of relief to Reeves where no forfeiture proceedings have commenced." *Id.* (emphasis added). In addition, the Sixth Circuit held that the OFA "do[es] not protect plaintiffs from the deprivation of their properties while they await [a forfeiture] hearing." *Ingram*, 81 F.4th at 607.

Defendant highlights the difference between Section 4705(4), which states that the property owner may move "the court having jurisdiction *over the forfeiture proceedings*," and Section 4705(1), which says the property owner may move "the court *having jurisdiction to return the property*." Defendant argues that Section 4705(1)'s language shows that Reeves could use this state remedy to seek the return of his car, because the court in the district that seized the property has the jurisdiction to return the property. (ECF No. 110, PageID.2315 (stating Reeves could have moved the 36th District Court to return the property despite the lack of forfeiture proceeding because it was "the district court where the property was seized").)

Defendant cites a recent opinion in the Eastern District of Michigan, *Novak v. Federspiel*, which held that even when there was no initiation of a civil forfeiture case, the plaintiffs could have sought "post-

deprivation process through [Section] 4705(1)" in the state district court. (ECF No. 104, PageID.1546–1547 (citing *Novak v. Federspiel*, 728 F. Supp. 3d 552, 571 (E.D. Mich. 2024).)

The Court declines to apply *Novak* to dismiss Plaintiff's case at this stage. *Novak* specifically cites an interpretation of Section 4705(1) that states that "any interested party can file a motion seeking the return of property under the OFA *while an underlying criminal case is pending*." *Novak*, 728 F. Supp. 3d at 572 (citing Thomas A. Ginster, *The Victim's Rights—Omnibus Forfeiture Law*, MICH. BAR J. 1304, 1306 (1994) (emphasis added)). *Novak* partly turned on the fact that the plaintiffs had an underlying criminal case and "had over *six months* to file for an § 600.4705(1) hearing between learning about the seizure of the firearms and [the] criminal dismissal." *Id.* at 573 (emphasis in original). Here, Reeves was not arrested until *after* his property was returned, so there was never an underlying criminal case. Without the underlying criminal case, it is not clear that there was any court having jurisdiction to return the property under Section 4705(1).

Reeves has demonstrated that Sections 4705(1) and (4) were inapplicable or inadequate to address his constitutionally protected

interest in a timely forfeiture proceeding because there was no underlying civil forfeiture or criminal proceeding. The Court therefore denies the Second Motion to Dismiss on the basis that he had adequate state remedies.

## IV. Conclusion

When car owners like Reeves have their property seized, they have a constitutional right to a timely forfeiture hearing. *See Culley*, 601 U.S. at 386. But in Wayne County, Plaintiff alleges that he entered a twilight zone where his car was impounded for many months without the County taking any action to initiate a civil forfeiture proceeding or provide him with an opportunity to pursue the return of his property. (ECF No. 103, PageID.1517.) Reeves has sufficiently alleged standing through his alleged injury from the delay in proceedings; his Count IV claim survives *Culley*; and there was no adequate process to move the County to initiate a civil forfeiture proceeding or otherwise initiate a judicial process to retrieve his property.

For the reasons set forth above, the Court DENIES the Second Motion to Dismiss.

IT IS SO ORDERED.

34

Dated: March 13, 2025                    s/Judith E. Levy
       Ann Arbor, Michigan              JUDITH E. LEVY
                                         United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2025.

                                         s/William Barkholz
                                         WILLIAM BARKHOLZ
                                         Case Manager