**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MELISA BELL, et al.

Plaintiffs,

vs.

COUNTY OF WAYNE,

Defendant.

Case No. 20-10288

Hon. Judith E. Levy

Mag. Judge Elizabeth A. Stafford

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Wayne County files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 because no genuine issue of material fact for trial exists. In support of its Motion, Wayne County relies upon the following Brief in Support.

In accordance with Local Rule 7.1(d), Wayne County's counsel contacted counsel for Plaintiffs Melisa Bell, Stephanie Wilson, and Robert Reeves (collectively "Plaintiffs"), explained the nature of the Motion and its legal basis, and requested concurrence in the relief sought. Plaintiffs' counsel declined to concur and indicated Plaintiffs would oppose the motion.

WHEREFORE, Wayne County requests that this Court grant its Motion and enter an Order: (1) dismissing with prejudice Plaintiffs' claims against it; and (2) granting such other relief in its favor, and against Plaintiffs, as is just and proper.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Dated: April 2, 2025

Respectfully submitted,
**DYKEMA GOSSETT PLLC**

By: */s/ Nasseem S. Ramin*

Theodore W. Seitz (P60320)
Nasseem S. Ramin (P73513)
*Attorneys for Defendant*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800
tseitz@dykema.com
nramin@dykema.com

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MELISA BELL, et al.

Plaintiffs,

vs.

COUNTY OF WAYNE,

Defendant.

Case No. 20-10288

Hon. Judith E. Levy

Mag. Judge Elizabeth A. Stafford

---

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

STATEMENT OF ISSUES PRESENTED ........ viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........ x

INTRODUCTION ........ 1

STATEMENT OF MATERIAL FACTS ........ 3

STANDARD OF DECISION ........ 14

ARGUMENT ........ 15

I. WILSON IS ESTOPPED FROM CHALLENGING THE SEIZURE OF THE MALIBU AND ALSO LACKS STANDING TO DO SO. ........ 16

II. RES JUDICATA PRECLUDES WILSON'S CHALLENGE TO THE SEIZURE OF THE ION. ........ 19

III. THE COURT SHOULD DISMISS WILSON'S EIGHTH AMENDMENT CLAIM (COUNT II) AND HER DUE PROCESS CLAIM REGARDING LACK OF NOTICE (COUNT VI). ........ 22

IV. THERE IS NO GENUINE ISSUE OF MATERIAL FACT RELATING TO PLAINTIFFS' FOURTH AMENDMENT CLAIM (COUNT I – BELL AND WILSON). ........ 23

A. The Fourth Amendment Does Not Protect an Individual's Interest in Regaining Possession of Property. ........ 23

B. There Is No Genuine Issue of Material Fact That WCSO Reasonably Seized Plaintiffs' Cars ........ 24

C. Wayne County Did Not Improperly Hold Plaintiffs' Vehicles. ........ 28

V. THERE IS NO GENUINE ISSUE OF MATERIAL FACT RELATING TO PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS (COUNTS III AND IV). ........ 33

A. Lack of Protections for Innocent Owners (Count III – Wilson and Bell) ........ 34

B. Lack of Prompt, Post-Seizure Hearing (Count IV – all Plaintiffs) ........ 39

1. Reeves Had Numerous State-Law Remedies He Failed to Invoke. ........ 41


DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

2. Even if Reeves Could Establish an Underlying Constitutional Violation, He Cannot Establish a "Custom, Practice, or Policy" of Failing to Initiate Timely Criminal Proceedings in OFA Cases. ....................................................47

3. The Eleventh Amendment Bars Reeves' Claims. .....................49

VI. THERE IS NO GENUINE ISSUE OF MATERIAL FACT RELATING TO PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM (COUNT V – WILSON AND BELL). ........................................................52

VII. PLAINTIFFS LACK STANDING TO SEEK PROSPECTIVE RELIEF. ..........................................................................................57

CONCLUSION AND RELIEF REQUESTED ....................................................60


DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Adair v. State*,
680 N.W.2d 386 (Mich. 2004)....................20

*Albright v. Oliver*,
510 U.S. 266 (1994)....................54

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)....................59

*Arrington-Bey v. City of Bedford Heights*,
858 F.3d 988 (6th Cir. 2017)....................38

*Autrey v. Stair*,
512 F. App'x 572 (6th Cir. 2013)....................26

*Barker v. Wingo*,
407 U.S. 514 (1972)....................*passim*

*Bennis v. State of Michigan*,
516 U.S. 442 (1996)....................*passim*

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002)....................21, 60

*Bohler v. City of Fairview*,
830 F. App'x 465 (6th Cir. 2020)....................41

*Bowles v. Sabree*,
2024 U.S. App. LEXIS 8879 (6th Cir. Apr. 10, 2024)....................51, 52

*Brotherton v. Cleveland*,
173 F.3d 552 (6th Cir. 1999)....................34, 35, 49, 52

*Buchholz v. Tanick*.
946 F.3d 855 (6th Cir. 2020)....................58

*Cady v. Arenac County*,
574 F.3d 334 (6th Cir. 2009)....................50, 51, 52


DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................................................................................59

*Cleveland Branch NAACP v. City of Parma*,
263 F.3d 513 (6th Cir. 2001) ...........................................................................18

*Culley v. Marshall*,
601 U.S. 377 (2024)........................................................................*passim*

*Dart v. Dart*,
597 N.W.2d 847 (Mich. 1999)...........................................................................20

*Desandre v. County of Oscoda*,
2022 U.S. Dist. LEXIS 198059 (E.D. Mich. Oct. 31, 2022)..............................51

*Dickerson v. Marquette Prison Warden*,
298 N.W.2d 841 (Mich. App. 1980)....................................................................21

*Doe v. Claiborne County*,
103 F.3d 495 (6th Cir. 1996) ......................................................1, 16, 27

*Emswiler v. CSX Transp., Inc.*,
691 F.3d 782 (6th Cir. 2012) ...........................................................................14

*Fahey v. Waterford Twp Police Dep't*,
2020 Mich. App. LEXIS 2982 (Apr. 23, 2020).................................................17

*Fox v. Van Oosterum*,
176 F.3d 342 (6th Cir. 1999) ..............................................24, 26, 28, 41

*Gavitt v. Ionia County*,
67 F. Supp. 3d 838 (E.D. Mich. 2014) ..............................................................51

*Golf Vill. North, LLC v. City of Powell*,
42 F.4th 593 (6th Cir. 2022) ...................................................3, 33, 34

*Graham ex rel. Estate of Graham v. County of Washtenaw*,
358 F.3d 377 (6th Cir. 2004) ...........................................................................17

*Hagans v. Franklin County Sheriff's Office*,
695 F.3d 505 (6th Cir. 2012) ...........................................................................38

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

*Hall v. Meisner*,
2022 U.S. App. LEXIS 28585 (6th Cir. Oct. 13, 2022) ....................................21

*Hampton v. Hobbs*,
106 F.3d 1281 (6th Cir. 1997) ........................................................................53

*Handy-Clay v. City of Memphis*,
695 F.3d 531 (6th Cir. 2012) ..........................................................................53

*Hollins v. City of Detroit Police Dep't*,
571 N.W.2d 729 (Mich. App. 1997)...............................................................17

*Hooks v. Hooks*,
771 F.2d 935 (6th Cir. 1985) ..........................................................................15

*In re 2000 GMC Denali & Contents*,
892 N.W.2d 388 (Mich. App. 2016)...............................................................21

*In re Forfeiture of 2006 Saturn Ion*,
2022 WL 879527 (Mich. App.) ..............................................................12, 13

*In re Forfeiture of 2006 Saturn Ion*,
2024 WL 3503577 ...........................................................................................27

*In Re Return of Forfeited Goods*,
550 N.W.2d 782 (Mich. 1996)........................................................................17

*Ingram v. Wayne Cnty*,
81 F.4th 603 (6th Cir. 2023) ............................................................................15

*Kaley v. United States*,
571 U.S. 320 (2014)..........................................................................................25

*Kerchen v. University of Michigan*,
100 F.4th 751 (6th Cir. 2024) ..........................................................................49

*Krishna Krupa, Inc. v. City of Ferndale*,
2018 Mich. App. LEXIS 3016 (Aug. 14, 2018) ..............................................31

*Krueger v. Eastpoint*,
452 F. Supp. 3d 679 (E.D. Mich. 2020) ..........................................................24


DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

*Lamb v. Wallace*,
2017 U.S. App. LEXIS 16591 (6th Cir. July 13, 2017) ....................................50

*Langston v. Charter Twp. of Redford*,
623 F. App'x 749 (6th Cir. 2015) ........................................................................17

*LG Sciences, LLC v. Putz*,
511 F. App'x 516 (6th Cir. 2013) ........................................................................21

*Lillard v. Shelby County Board of Education*,
76 F.3d 716 (6th Cir. 1996) ................................................................................52

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...........................................................................................15

*Matthews v. DEA*,
629 F. App'x 723 (6th Cir. 2015) ........................................................................18

*McMorris v. Carlos Lopez & Assocs.*,
995 F.3d 295 (2d Cir. 2021) ................................................................................57

*McNeil v. Cmty. Prob. Servs., LLC*,
945 F.3d 991 (6th Cir. 2019) ..............................................................................51

*Migra v. Warren City Sch. Dist. Bd.*,
465 U.S. 75 (1984)......................................................................................17, 20

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978).............................................................................................16

*Mosley v. Kohl's Dep't Stores, Inc.*,
942 F.3d 752 (6th Cir. 2019) ..............................................................................57

*Murthy v. Missouri*,
603 U.S. 43 (2024)...............................................................................................57

*Novak v. Federspiel*,
728 F. Supp. 3d 552 (E.D. Mich. 2024) ..........................................43, 45, 46

*People v. Bennis*,
527 N.W.2d 483 (Mich. 1994)..............................................................................31

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

*Red Zone 12 LLC v. City of Columbus*,
758 F. App'x. 508 (6th Cir. 2019) ........................................................................52

*Ross v. Duggan*,
402 F.3d 575 (6th Cir. 2004) ........................................................................*passim*

*Shandor v. City of Eastpointe, MI*,
2021 U.S. App. LEXIS 30977 (6th Cir. Oct. 13, 2021) .....................................36

*Stampone v. Michigan Supreme Court*,
2024 U.S. App. LEXIS 17857 (6th Cir. July 17, 2024) .....................................50

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009)........................................................................................57

*Thaddeus-X v. Blatter*,
175 F.3d 378 (6th Cir. 1999) ..........................................................................53

*Turner v. City of Taylor*,
412 F.3d 629 (6th Cir. 2005) ..........................................................................48

*United States v. Abernathy*,
843 F.3d 243 (6th Cir. 2016) ..........................................................................25

*Vicory v. Walton*,
721 F.2d 1062 (6th Cir. 1983) ........................................................................33

*Wayne County v. City of Detroit*,
590 N.W.2d 619 (Mich. App. 1998)................................................................21

*Yates v. United States*,
523 F. App'x 322 (6th Cir. 2013) ....................................................................18

**RULES**

Fed. R. Civ. P.12 ..........................................................................................47, 58

Fed. R. Civ. P. 56 ..............................................................................................16

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ........................................................................................*passim*

Eighth Amendment .....................................................................2, 23, 32, 54



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Eleventh Amendment................................................................................*passim*

Fourteenth Amendment ..............................................................................53

**STATUTES**

19 U.S.C. § 1609(b) ..................................................................................19

42 U.S.C. § 1983.........................................................................................*passim*

MCL 333.7521(1)(f) ...................................................................................*passim*

MCL 333.7521a(1)....................................................................................10, 60

MCL 333.7523(1)(c)......................................................................................6

MCL 333.7523(1)(d)....................................................................................18

MCL 600.3801. ..........................................................................................4, 32

MCL 600.3815(2) ......................................................................................33, 36

MCL 600.4703(5) ......................................................................................13, 43

MCL 600.4705 ...........................................................................................43

MCL 600.4706 ...........................................................................................14, 45

MCL 600.4707(3) .......................................................................................47

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## STATEMENT OF ISSUES PRESENTED

Whether this Court should grant Defendant Wayne County's Motion for Summary Judgement as a rational trier of fact could not find for Plaintiffs on this record, where:

1. Plaintiff Wilson is estopped from pursuing any claims related to the seizure and forfeiture of her Chevrolet Malibu because she abandoned the vehicle;

2. Res judicata precludes Wilson's challenge to the seizure of her Saturn Ion, where she asserted, in state court forfeiture proceedings, identical constitutional claims to the one she raises here;

3. The Court should dismiss Wilson's Eighth Amendment claim and her due process claim regarding lack of notice where the Court earlier dismissed these claims as to Bell based on the same legal theories;

4. The Wayne County Sheriff's Office had probable cause to seize Wilson and Bell's cars, there is no Fourth Amendment interest in regaining possession of property, there was no delay or other improper holding of Wilson or Bell's cars, and Plaintiffs cannot establish the requisite pattern of past unconstitutional seizures to sustain a municipal liability claim under this theory;

5. Bell did not avail herself of the nuisance abatement statute's innocent owner defense and in fact waived it by settling, while Wilson in the first instance waived the defense and in the second instance pursued it, thus there can be no procedural due process violation based on an innocent owner defense;

6. There was no unreasonable delay as to any Plaintiffs' forfeiture hearing and, as to Reeves, Wayne County was not involved in or responsible for any delay of the predicate criminal proceedings that precede forfeiture; moreover, Reeves had numerous state-law remedies he failed to invoke and there is nothing in the record to support a pattern or practice of delay on the part of Wayne County;

7. The Eleventh Amendment bars Reeves' claims where Wayne County was acting as an arm of the State of Michigan in prosecuting civil forfeiture;

8. Plaintiffs have not established government action that shocks the conscience, nor any pattern or practice of same, which is required to prevail on their substantive due process claim; and

9. Plaintiffs lack standing to seek prospective injunctive relief where they have not established any concrete threat of imminent harm.

| | |
|---|---|
| Wayne County answers: | Yes |
| Plaintiffs would answer: | No |
| This Court should answer: | Yes |

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Defendant relies on Fed. R. Civ. P. 56; *Culley v. Marshall*, 601 U.S. 377 (2024); *Bennis v. State of Michigan*, 516 U.S. 442 (1996); *Migra v. Warren City Sch. Dist. Bd*., 465 U.S. 75 (1984); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Golf Vill. North, LLC v. City of Powell*, 42 F.4th 593 (6th Cir. 2022); *Ross v. Duggan*, 402 F.3d 575 (6th Cir. 2004); *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996); and the additional authorities cited in its Brief in Support.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## INTRODUCTION

Wayne County is entitled to summary judgment because there is no genuine issue of material fact for trial. This lawsuit arises out of enforcement of three different Michigan civil forfeiture laws. Three individual plaintiffs – Melisa Bell, Stephanie Wilson, and Robert Reeves – seek redress for purported federal constitutional violations based on a myriad of legal theories that are contrary to Supreme Court and Sixth Circuit precedent. Plaintiffs' municipal liability claims under 42 USC § 1983 first require that they establish that a constitutional violation occurred. Plaintiffs cannot do so. And even if they could, Section 1983 claims also require that Plaintiffs establish that Wayne County is responsible for that violation by providing evidence of a "clear and consistent" pattern of prior constitutional violations, that it had "actual" or "constructive" notice of these prior proven unconstitutional incidents, and that its custom, policy, or practice was the "moving force" behind the violation. *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996). Even if they could establish underlying constitutional violations, Plaintiffs cannot establish the required elements of a municipal liability claim.

As explained in this Motion, Plaintiffs' claims fail as a matter of law and Wayne County further submits that they cannot meet their burden of proffering evidence that creates a genuine issue of material fact for trial, where:

***First***, Wilson is estopped from pursuing any claims related to the seizure and

forfeiture of her Chevrolet Malibu because she abandoned the vehicle when she failed to timely contest the seizure pursuant to Michigan's Controlled Substances Act; ***Second***, res judicata precludes Wilson's challenge to the seizure of her Saturn Ion, where she asserted, in state court forfeiture proceedings, identical constitutional claims to the one she raises here. Wilson eventually prevailed in state court and cannot now relitigate the seizure of the Ion; ***Third***, the Court must dismiss Wilson's Eighth Amendment claim and her due process claim regarding lack of notice, where the Court earlier dismissed these claims as to Bell based on the same legal theories and because Wilson did not ever pay anything to Wayne County and thus could not have incurred an unconstitutionally excessive fine and because Wilson admittedly personally received notices of seizure of her vehicles;

***Fourth***, the Wayne County Sheriff's Office had probable cause to seize Wilson and Bell's cars, there is no Fourth Amendment interest in regaining possession of property, there was no delay or other improper holding of Wilson or Bell's cars, and Plaintiffs cannot establish the requisite pattern of past unconstitutional seizures to sustain a municipal liability claim under this theory; ***Fifth***, Bell did not avail herself of the nuisance abatement statute's innocent owner defense and in fact waived it by settling, while Wilson in the first instance waived the defense and in the second instance pursued it, thus there can be no procedural due process violation based on an innocent owner defense because plaintiffs cannot

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

"complain about due process when [they] didn't use the more-than-adequate procedures already available[.]" *Golf Vill. North, LLC v. City of Powell*, 42 F.4th 593, 600 (6th Cir. 2022);

***Sixth***, there was no unreasonable delay as to any Plaintiffs' forfeiture hearing and, as to Reeves, Wayne County was not involved in or responsible for any delay of the predicate criminal proceedings that precede forfeiture; moreover, Reeves had numerous state-law remedies he failed to invoke and there is nothing in the record to support a pattern or practice of delay on the part of Wayne County; ***Seventh***, the Eleventh Amendment bars Reeves' claims where Wayne County was acting as an arm of the State of Michigan in prosecuting civil forfeiture;

***Eighth***, Plaintiffs have not established government action that shocks the conscience, nor any pattern or practice of same, which is required to prevail on their substantive due process claim; and ***Ninth***, and finally, Plaintiffs lack standing to seek prospective injunctive relief where they have not established any concrete threat of imminent harm. Summary judgment is therefore appropriate.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## STATEMENT OF MATERIAL FACTS

**Vehicle Seizure and Forfeiture in Wayne County**. Launched by a grant from the Department of Justice in 1990, law enforcement agencies within Wayne County created a program ("Campaign Push Off") to help eradicate illegal narcotics and human trafficking. (PageID.1935). As part of this effort, these agencies invoke

Michigan State forfeiture laws to deter this rampant activity within Wayne County. *Id.* The purpose of these programs is deterrence (R.114, Wayne County Dep. Trans., Berri 37-38, Tanner 85, 95), cars are only stopped when there is probable cause (R.114, Berri 74), cars are seized only if criminal or nuisance activity is established during a stop (R.114, Rivers 62-63), and, after a police agency seizes property used in connection with prostitution or narcotics, that agency may[1] forward a request to the Wayne County Prosecutor's Office ("WCPO") to evaluate whether a lawsuit for abatement or forfeiture should be filed. *See, e.g.*, MCL 600.3801 et seq. (nuisance abatement) and MCL 333.7521 et seq. (narcotics). The Omnibus Forfeiture Act ("OFA"), MCL 600.4701 et seq., contains its own detailed procedures for seizing and forfeiting property used in connection with crimes.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

All three statutes either expressly or via case law authorize warrantless seizure of vehicles used in connection with certain criminal activity. The Supreme Court and the Sixth Circuit have rejected prior constitutional challenges to Michigan's forfeiture laws. *See Bennis v. State of Michigan*, 516 U.S. 442 (1996) (rejecting all constitutional challenges to Michigan's nuisance abatement statute premised on a lack of a complete innocent owner defense); *Ross v. Duggan*, 402 F.3d 575 (6th Cir. 2004) (holding that nuisance abatement law satisfies Due Process and settlements

[1] Police agencies may also refer potential civil forfeiture matters to the State or to City attorneys (R.114, Davis 26).

offered did not offend the Eighth Amendment's "excessive fines" prohibition).

Michigan state law, not Wayne County enactments, establish the authority to seize, the required state court processes, and a claimant's rights and defenses. (R.114, Berri 153, Davis 13). The Wayne County Sheriff's Office ("WCSO") is but one of many law enforcement agencies operating in Wayne County and is not the only one involved in vehicle seizure or forfeiture. (R.114, Berri 50, Davis 30). For its part, over the years, the WCSO has responded to countless citizen complaints of prostitution and drug-related activity, setting up surveillance and sting operations to protect the community. (R.114, Berri 154, Tanner 29, 33, Rivers 38). In addition to abating prostitution and drug dealing, Wayne County's efforts have led to the clearing of drug houses in neighborhoods and discovery of criminal activity including illegal firearms, narcotics operations, human trafficking and underage prostitution rings, and rape. (R.114, Berri 155, Rivers 176, Tanner 100, Moody 57).

When agencies refer matters for forfeiture to the WCPO, owners or claimants can choose to settle a contemplated state court civil forfeiture case, contest forfeiture, or abandon the car. (R.114, Davis 170). WCPO's Vehicle Seizure Unit ("VSU") operates as a "pre-claim" "administrative unit" for certain straightforward matters involving vehicles seized for nuisance abatement and drug asset forfeiture, offering claimants the option to settle a contemplated or pending state court civil forfeiture action. (R.114, Davis 30-31). *See also* PageID.367 ("The owner may contest the

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

seizure, or if agreeable by the WCPO, enter into a settlement agreement to reclaim the vehicle with the [VSU]"). Settlement amounts are $900 for a first offense and $1,800 for a second offense. (PageID.523-25). This settlement schedule has not changed in over three decades. (R.114, Davis 181, 209, 213). As in any civil case, claimants are under no obligation to accept an offered settlement, are not "pressured" to accept it, and are free to proceed with adjudication of the matter. (R.114, Davis 170-171, Moody 86 ("it's all in their lap whether or not they want to continue to pursue or not pursue or settle"), Hamdan 109, Puckett 133-134). A claimant's statutory obligations for challenging are not onerous; for example, for Drug Asset Forfeiture (before 2019 amendments), any type of signed writing could be submitted to contest forfeiture. MCL 333.7523(1)(c).

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

If forfeiture is contested, a prosecutor reviews the facts of the case, defenses, and equitable issues, including "innocent ownership," – i.e., whether there are facts to support a claim that the owner of the vehicle did not know about or consent to the underlying crime or nuisance. (R.114, Davis 70-71). In deciding "whether or not to file a forfeiture complaint," the WCPO acknowledges that it is "very important that that [it] file[s] these cases as quickly as possible…and certainly well within the deadlines provided by each of the different statues that are out there." *Id.* at 77-78. *See also* R.114, Moody 25. Forfeiture complaints are filed "as soon as we can," (R.114, Moody 111) and almost always within "90 days" of seizure (R.114, Davis

78). But because every case presents unique circumstances, there can be a number of reasons that influence the precise timing of the filing of a forfeiture complaint in contested matters, including, for example, additional research or investigation, or if a claimant requests additional time. (R.114, Davis 75-77, 80 and Hamdan 67, 71).

**Plaintiff Melisa Bell**. In November 2018 and June 2019, the WCSO seized Bell's Ford Fusion pursuant to Michigan's Nuisance Abatement Act. On both occasions, Bell's then-boyfriend, Edland Turner, borrowed her car with her consent and was caught – sometimes literally with his pants down – engaging in prostitution-related activities. (PageID.507, 548). *See also* R.114, Tanner 48 ("I mean, I remember, yeah, because it's not common that I get someone with their pants pulled down to their ankles and a blanket covering them"). Bell previously "was not sure whom to believe about [Turner's] behavior," despite his having been repeatedly caught engaging with prostitutes and confessing that "he knows he should stop but he can't nor does he want to because he likes being out with prostitutes." *Compare* FAC ¶ 65, *with* PageID.507.[2] Rather, Bell did not ask Turner – her live-in boyfriend who picked up prostitutes in her car, got her car seized, but did not help get the car back – questions about his run-ins with the law, rationalizing that "[i]t wasn't my business. I wasn't concerned with it." (Ex. A at 85). *See also id.* at 28 (noting that

[2] Prior to the incidences leading to the seizures of Bell's car, Turner was stopped on multiple occasions; each time, Turner admitted that the passengers in his car were prostitutes and he often admitted to using crack. *See, e.g.*, R.109-3,PageID.2286-87.



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Bell "never got an explanation" from Turner regarding his solicitation of prostitutes). Bell now concedes that Turner was "a nuisance to everything." (PageID.1618).

To resolve the first incident, Bell visited VSU, did not ask VSU staff if she could have a hearing or speak with a judge, and conceded that she "was never told" that "it would be months before [she] could see a judge." *Compare* Ex. A at 22, *with* FAC ¶ 62.[3] Bell voluntarily agreed to a settlement that included a $900 settlement offer, waived any challenge to the seizure, acknowledged that subsequent seizures would result in increased settlement fees, and received her car back. *See* PageID.527 and Ex. A at 27. There is nothing in the record to indicate that Bell told anyone at VSU or the WCPO generally that she was an "innocent owner."

**Plaintiff Stephanie Wilson**. Stephanie Wilson's cars also were seized on two occasions, first in January 2019 and again in June 2019. As to the first seizure, when asked why Malcom Smith, her passenger, was in Detroit "in the first place," Wilson admitted "[t]hat's where he would go to get drugs right around where he was at, in abandoned houses." (Ex. B, Wilson 1/26/21 Trans. at 11). Indeed, the police report and officer testimony indicate that officers were surveilling a known drug house in response to citizen complaints and:

[3] Bell later claimed to recall that someone "told her it would be, at least, four months" before her case would be before a judge. (Ex. A at 111). Bell's initial testimony comports with that of multiple WCPO witnesses, who confirmed that its staff did not, and would not, tell claimants that it would take months for a hearing in a contested forfeiture. (R.114, Davis 224-225, Puckett 133-134, Moody 73).



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

- Smith was observed approaching, entering, and then quickly leaving the known drug house;
- Wilson and Smith were observed in her Chevy Malibu without seatbelts;
- Smith confessed to having used heroin for several years and that he just purchased and used heroin;
- Wilson admitted that she drove Smith to the drug house because "[Smith] was getting sick without [heroin];" and
- Wilson was allowed to remove personal items from the car before it was impounded.

(PageID.365 and R.114, Rivers 97-111). It is undisputed that the one-page Notice of Seizure, which Wilson admits receiving and reviewing, states as follows: "**Failure to file a written notice of claim of interest within 20 days shall result in your loss of ownership of the vehicle and it being forfeited and disposed of according to law."** (Ex. C, Wilson 4/18/24 Trans. at 21 and PageID.367, emphasis in original). Thus, at that time, Michigan law only required that Wilson submit a signed writing to challenge the seizure. (PageID.367). Wilson did not do so[4] and instead abandoned the vehicle, which was administratively forfeited. (PageID.1620).[5]

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

---

[4] Despite clear language in the Notice, that owners "may contest the seizure" (PageID.367), Wilson provided inconsistent testimony on this issue. She first testified that despite receiving the form, she "did not know" she could contest (Ex. B at 19), but later testified VSU staff told her it "wasn't an option." (Ex. C at 25).

Multiple Wayne County witnesses, however, confirmed that VSU staff did not and would not make such representations (R. 114, Davis 170-171, Puckett 133-134) and also that there was no quota (imposed or implied) for seizures, settlements, or lawsuits (so no incentive for staff to make statements contrary to law). (R.114 , Berri 36, Rivers 33-34, Tanner 87, Davis 36-37, Hamdan 109, Puckett 132).

[5] In August 2019, the Michigan Legislature amended the Controlled Substances Act, which now requires a predicate criminal conviction to seek forfeiture of property

As to the second seizure, Wilson again picked up Smith – who she admits vomited upon getting in her car – in Detroit (Ex. B at 15), where officers again were surveilling a known drug house in response to citizen complaints:

- Smith was observed participating in what appeared to be a hand-to-hand drug transaction outside the known drug house while seated in Wilson's car;
- Wilson was observed failing to use a turn signal while driving her Saturn Ion;
- Smith again confessed to being a heroin user for "several years," and that, again, he had just purchased and used heroin;
- Wilson admitted that she drove Smith to the known drug house because "he was getting sick without [heroin] and I bring him down here once a day;"
- Officers recovered five syringes from under the passenger seat, which Smith "stated he uses for heroin;" and
- Wilson was allowed to remove personal items from the car before it was impounded.

(PageID.373 and R.114, Rivers 136-50). An officer at the scene remembered this seizure years later because of how upset Wilson was: "[S]he thought she was helping [him] out by getting dope and she didn't want him dope sick, so she thought buying–taking him to get dope was okay because she thought she was helping him." (R.114, Tanner 93-94). WCSO seized the car because Wilson again "facilitated the transportation for narcotics…[i]t's illegal to buy narcotics. You can't buy narcotics. You can't transport somebody to buy narcotics so they can use []." *Id.* at 94-95.

Wilson admits that she told WCPO that she was "interested in trying to

---

worth $50,000 or less. *See* Mich. Comp. Laws § 333.7521a(1). Thus, the circumstances of this vehicle seizure could not be repeated today.



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

redeem the vehicle," and she indicated that she was "going to try to get some money together so that [she] could pay the redemption fee[,] and that she was "just waiting on trying to get the money together[.]" (Ex. B at 21-22). After accommodating Wilson's repeated requests so that she could "get the money together," the WCPO in October 2019 filed a civil forfeiture complaint in state court pursuant to the Controlled Substances Act because the statutory deadline to do so was approaching. *See* PageID.1621 and R.114, Hamdan 68. Even so, because Wilson still indicated repeatedly that she intended to settle, to provide her more time, the state court ordered pretrial conferences to facilitate settlement. (R.114, Hamdan 67-71). Wilson has long admitted that, even during formal forfeiture proceedings, she represented that she "was going to try to come up with whatever I could" to redeem the car. (Ex. B at 22-23) (confirming Wilson told WCPO that was "waiting on a settlement check," "applied for a loan," and "might be able to get some help from [her] parents."). *See also* Ex. C at 49; R.114, Hamdan 67-71; Page ID.2298; PageID.1803 (memorializing multiple calls and voicemails between WCPO and Wilson).

Eventually, however, instead of settling, Wilson joined this lawsuit and also decided to challenge the state court forfeiture proceedings, during which she pursued defenses identical to the constitutional claims she raises here. *See, e.g.*, PageID.418-421. The state trial court ultimately granted summary judgment in Wilson's favor, but the Michigan Court of Appeals reversed, finding that "a reasonable factfinder



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

could infer that [Wilson] used her vehicle to transport…heroin after Smith purchased it." *In re Forfeiture of 2006 Saturn Ion*, 2022 WL 879527, *3 (Mich. App.). The Michigan Supreme Court reversed because while "a reasonable factfinder might…conclude that [she] did indeed drive…to buy drugs[,]" "that Smith bought drugs via a hand-to-hand transaction," and that "[the] vehicle transported drugs down the road," "the evidence presented demonstrated that the drugs were for Smith's personal use," and therefore "there could be no further purpose of sale or receipt." 2024 Mich. LEXIS 1395, *18 (Mich. 2024). The Michigan Supreme Court thus held only that Section 7521(1)(d) was not broad enough to encompass Wilson's vehicle, but it did not reach the question of whether Section 7521(1)(f) separately justified forfeiture. *Compare id*. *19, *with id*. *22 (dissent would have held vehicle subject to forfeiture under Section 7521(1)(f), as it "is plainly applicable.")

**Plaintiff Robert Reeves**. In July 2019, a Michigan State Police ("MSP") Task Force invoked the OFA and seized Reeves' vehicle and other personal property in connection with a criminal investigation. (PageID.455). The MSP, as the seizing agency, maintained custody and control of Reeves' vehicle. *See* MCL 600.4703(5); R.114, Davis at 106-07, Ex. D, Menna Decl. ¶¶ 7-9. The WCPO had nothing to do with the seizure or the underlying criminal investigation. The WCPO does not monitor a seizing agency's compliance with its own statutory obligations or deadlines – and has no legal obligation to do so. (Ex. E, Davis Decl. ¶ 5). As such,

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

the WCPO did not monitor whether the MSP complied with its statutory obligations to timely submit a warrant request to secure criminal charges against Reeves *Id.* At no time until right before this case was filed did Reeves or the attorney he had retained as of September 2019 bring the MSP's failure to the attention of the WCPO. (Ex. E ¶ 8). Reeves cannot say whether his attorney ever contacted the MSP to demand the return of his car. (Ex. F at 34, Reeves Transcript).

Even so, once it came to the attention of the WCPO that the MSP had neither secured criminal charges in the statutory time period and had not fulfilled its obligation to release Reeves' vehicle, it sent a courtesy letter advising that it was the WCPO's opinion that MSP had failed to comply with its statutory duties and thus the MSP should release Reeves' car (PageID.469). Reeves alleges that WCPO "directed" the MSP to release his car in response to this lawsuit, but the WCPO actually sent the advisory letter just days after an inquiry from Reeves' counsel (the sole inquiry 142 days after submitting his appearance). *See* PageID.2296 and Ex. E ¶ 18. Such letters are routine and sent only as a courtesy. (R.114, Davis 122). The MSP "makes its own decisions regarding the proper course of action in forfeiture matters," and is under no legal obligation to heed any advice" offered by the WCPO. (Ex. D ¶¶ 12-13). *See also* Ex. E ¶ 9.

**Complaint and Procedural Posture**. Bell and Reeves filed this lawsuit in February 2020, adding Wilson in May 2020. In September 2021, the Court ruled on

Wayne County's pre-answer motions (R.54). An interlocutory appeal followed on Count IV as to whether Due Process requires a post-seizure, pre-forfeiture hearing. The Sixth Circuit held that Wayne County is required to provide an interim hearing within 14 days of seizure. *Ingram v. Wayne Cnty*, 81 F.4th 603 (6th Cir. 2023). The Supreme Court completely abrogated the Sixth Circuit's ruling in *Culley v. Marshall*, 601 U.S. 377, 381 (2024) ("The Constitution requires a timely forfeiture hearing; the Constitution does not also require a separate preliminary hearing.").

Plaintiffs' Amended Motion for Class Certification is fully briefed, and Defendant now moves for summary judgment. This Court suggested via a Text-Only Order on January 8, 2025, that the following Counts remain at issue:

> (1) Plaintiff Wilson's claims regarding her Chevy for Counts I, II, III, IV, V, VI, VII, and VIII[6]; (2) Plaintiff Reeves' claims for Counts IV and IX; and (3) Plaintiff [Bell's] claim regarding the seizure of her car in 2018 only for Count I and both seizures for Counts III, IV, V, and VII.[7]

## STANDARD OF DECISION

Summary judgment is appropriate "where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Emswiler v.*

[6] Wayne County understands that Plaintiffs agree that Wilson's claim for return of the Ion, in Count VIII, is moot because she already has possession of the vehicle.

[7] This Court already held: "[Bell] may procced [sic] with her claim regard[ing] the seizure of her car in 2018, however, the seizure of her [car] in 2019 is barred by res judicata." (R.54, PageID.1007). This Motion therefore does not address the merits of any claims relating to Bell's second seizure, which have been dismissed. *See also* R.70, PageID.1163 ("[Bell] is barred from further challenging the 2019 seizure.").



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

*CSX Transp., Inc.*, 691 F.3d 782, 788 (6th Cir. 2012), *citing* Fed. R. Civ. P. 56. The moving party bears the initial burden of showing the absence of a genuine dispute as to at least one essential element of the other party's claims. *Id.* If the opposing party claims that a fact is genuinely disputed, that party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). And when the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot rest upon mere allegations in its pleadings but must set forth competent evidence showing that there is a genuine issue of material fact for trial. *Hooks v. Hooks*, 771 F.2d 935, 945 (6th Cir. 1985) (internal citations and quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## ARGUMENT

Plaintiffs are pursuing municipal liability claims against Wayne County under 42 U.S.C. § 1983,[8] which first require that they establish "(1) that a constitutional

[8] Plaintiffs chose not to sue any Wayne County employee in his or her individual capacity. Although the MSP was the seizing agency that sought eventual civil forfeiture, Reeves chose not to sue it or any of its employees.

violation occurred; and (2) that Wayne County 'is responsible for that violation.'" *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004), *quoting Doe*, 103 F.3d at 505-06. With respect to the second element, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, because there is no "vicarious liability" under § 1983, to establish that Wayne County should be held liable for the alleged constitutional violations committed by its employees, Plaintiffs must establish, *inter alia*, a "clear and consistent" pattern of prior similar constitutional violations, that it had "actual" or "constructive" notice of these prior unconstitutional incidents and ignored them, and that its custom, policy, or practice was the "moving force" behind the violation. *Doe*, 103 F.3d at 508.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## I. **Wilson Is Estopped From Challenging the Seizure of the Malibu and Also Lacks Standing to Do So**.

Wilson cannot pursue any claims related to the Malibu (the first seizure) because she waived her right to contest the seizure/forfeiture when she abandoned the vehicle. The one-page Notice of Seizure, which Wilson admits receiving and reading (Ex. B at 21), includes the applicable dates and timeframes during which she was required to act if she wished to contest forfeiture of the Malibu (PageID.367). Michigan law expressly states that abandonment or failure to file a claim is a

conclusive resolution of the propriety of a seizure and forfeiture. *See* MCL 333.7523(1)(d).[9] And Michigan courts have consistently held that this provision bars the re-opening and/or re-litigation of any issue that could have been raised in a state court civil case, other than a lack of notice of the seizure and/or intent to forfeit. *See In Re Return of Forfeited Goods*, 550 N.W.2d 782, 784-85 (Mich. 1996) (holding that the court does not have the authority to reopen or reconsider the propriety of a seizure if a claimant does not invoke his or her right to challenge it); *Hollins v. City of Detroit Police Dep't*, 571 N.W.2d 729, 732 (Mich. App. 1997); *Fahey v. Waterford Twp Police Dep't*, 2020 Mich. App. LEXIS 2982, *8 (Apr. 23, 2020).

Thus, an administrative forfeiture following the failure to assert a claim is a conclusive resolution of the seizure/forfeiture matter and is equivalent to a final judgment entitled to res judicata. Michigan courts are precluded from adjudicating collateral challenges to a seizure or a forfeiture (other than a lack of notice) following a voluntary statutory abandonment and administrative forfeiture to the police agency. Under res judicata principles, federal courts are required to respect the finality that the state courts provide to the matter. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Both federal[10] and Michigan law consider the

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

[9] The Sixth Circuit has previously held that there is no facial constitutional deficiency in the Michigan statute's 20-day limitations period. *See Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 758 (6th Cir. 2015).

[10] Federal civil forfeiture law operates the same way as the Drug Asset Forfeiture statute and similarly bars collateral challenges after administrative forfeiture. Once

failure to invoke the right to a judicial determination a conclusive resolution of all claims and defenses that could have been raised, so there is no genuine issue of material fact with respect to the seizure of the Malibu. Wilson admittedly abandoned that car, leading to administrative forfeiture to the seizing police agency, which is a conclusive and final resolution of the propriety of the seizure and forfeiture. Under federal law of res judicata, she cannot collaterally attack that resolution now.

Finally, Wilson lacks Article III standing to challenge some assumed event that purportedly may have occurred if she had contested the seizure and forfeiture because, as to the Malibu, any claim that her due process rights were violated regarding the seizure or that her ability to assert an innocent owner defense regarding the forfeiture is purely hypothetical because she waived them and/or chose not to pursue them. *See, e.g.*, *Cleveland Branch NAACP v. City of Parma*, 263 F.3d 513, 523 (6th Cir. 2001) (noting that Article III's standing requirements require actual injury, not one that is "conjectural or hypothetical").

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

---

a federal administrative forfeiture has been declared, a claimant may not then collaterally litigate any claims or defenses that could have been raised in those proceedings, other than a Due Process claim based upon lack of actual notice of the seizure and/or intent for the United States to forfeit. *See, e.g.*, *Yates v. United States*, 523 F. App'x 322, 323 (6th Cir. 2013) (recognizing that federal courts lack jurisdiction to review collateral challenges to a federal forfeiture if an otherwise valid administrative forfeiture has been declared, other than lack of notice of the proceedings); *Matthews v. DEA*, 629 F. App'x 723, 726 (6th Cir. 2015) (same); 19 U.S.C. § 1609(b) ("[A] declaration of forfeiture . . . shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States").

**II. Res Judicata Precludes Wilson's Challenge To The Seizure of the Ion.**

Because state court forfeiture proceedings against the Ion were pending when Plaintiffs filed this action, this Court stayed adjudication of Wilson's claims until those proceedings were resolved. In state court, Wilson raised several affirmative defenses, including ones identical to the constitutional claims she raises here. *See, e.g.*, PageID.418-421 (asserting lack of "probable cause for the initial seizure or the county's continued impoundment;" Wayne County "unreasonably delayed the initiation of forfeiture proceedings" and "failed to promptly file a complaint for forfeiture; Wayne County sought to "extract an unconstitutional fee from her;" Wilson is "an innocent owner;" and that Wayne County violated procedural and substantive due process). The state court granted summary judgment in Wilson's favor and as outlined above, the Michigan Supreme Court eventually held that a specific provision of the Controlled Substances Act was not sufficiently broad to encompass the Ion for purposes of civil forfeiture, without determining whether another provision might separately justify forfeiture. 2024 Mich. LEXIS 1395, *19.

Wilson now is precluded by res judicata from challenging the seizure of the Ion. Under Michigan law, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Wayne County v. City of Detroit*, 590 N.W.2d

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

619, 620-21 (Mich. App. 1998). The doctrine bars a second, subsequent action when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. *Dart v. Dart*, 597 N.W.2d 847, 850 (Mich. 1999).

Michigan courts apply the doctrine broadly to bar "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). And the Supreme Court has confirmed that, where a party can raise federal issues in state court litigation (as Wilson did here), then res judicata bars the subsequent litigation of those issues in federal court. *See, e.g.*, *Migra v. Warren City Sch. Dist. Bd*., 465 U.S. 75, 84-85 (1984) (holding that even though a § 1983 claim was not litigated in state court, it could have been, thus the state court judgment precluded adjudication of such claims in federal court).

All requirements for the application of res judicata are met. The first action was decided on the merits (in Wilson's favor, no less). Wilson had an opportunity to raise, and actually raised, the same constitutional concerns that she does here: Wilson in fact raised every argument in state court that she makes in this case (PageID.418-421). Both actions involve the same parties or their privies: Wilson and Wayne County. Under the same circumstances presented here, courts have refused to permit collateral litigation of claims and defenses, including constitutional claims, that

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

should have been resolved in a prior civil forfeiture case. *See, e.g., Blakely v. U.S.*, 276 F.3d 853, 866 (6th Cir. 2002) (dismissing claims on the basis that a prior judgment in a civil forfeiture foreclosed litigating claims that could have been asserted in that proceeding – including the legality of the seizure); *LG Sciences v. Putz*, 511 F. App'x 516, 518 (6th Cir. 2013) (holding that a final judgement in a prior civil forfeiture case foreclosed assertion of claims in a collateral proceeding). *See also Hall v. Meisner*, 2022 U.S. App. LEXIS 28585, *5 (6th Cir. Oct. 13, 2022) (affirming that federal constitutional claims were barred where plaintiffs already sued Oakland County "on claims arising from the very same occurrence that they seek to relitigate here.").

Finally, case law originating from state court forfeiture proceedings themselves confirms that Michigan's state courts can and do decide federal constitutional challenges to both forfeiture law itself as well as unconstitutional delays in bringing a case in the first place. *See, e.g., Dickerson v. Marquette Prison Warden*, 298 N.W.2d 841, 843 (Mich. App. 1980) (recognizing that Michigan state courts have concurrent jurisdiction over federal claims and defenses); *In re 2000 GMC Denali & Contents*, 892 N.W.2d 388, 400 (Mich. App. 2016) (holding that the now-former bond requirement in the Drug Asset Forfeiture statute was unconstitutional under Due Process as applied to indigent claimants). Here, there is no question that Michigan state courts can adequately protect Wilson's rights with

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

respect to seizure and forfeiture of the Ion: Wilson raised both statutory and constitutional defenses (R.18-16, PageID.415-22) and the Michigan Supreme Court ultimately sided with her, albeit on a narrow issue. Wilson cannot now reassert claims or issues that could have been (and to an extent, were) brought, addressed, and fully adjudicated by Michigan's state courts. This Court should dismiss Wilson's claims related to the Ion as barred by res judicata.

## III. <u>The Court Should Dismiss Wilson's Eighth Amendment Claim (Count II) and her Due Process Claim Regarding Lack of Notice (Count VI)</u>.

This Court's earlier dismissals of Counts II and VI as to Bell require dismissal of these claims as to Wilson, too. In Count II, Bell and Wilson allege that Wayne County's practice of settling with claimants constitutes a "seize and ransom" policy that amounts to unconstitutionally excessive fines in violation of the Eighth Amendment. (R.12, PageID.2583). In dismissing Count II as to Bell, this Court recognized that settlement amounts to redeem a vehicle up to $2,000 did not offend the Eighth Amendment either for the drivers or the actual owners of vehicles, even where innocent ownership may be at issue. (R.54, PageID.1009-10, *citing Ross*, 402 F.3d at 588-89). Moreover, Wilson is without Article III standing to pursue such a claim because she did not ever pay anything to Wayne County for return of a vehicle: she abandoned the Malibu and contested forfeiture of the Ion.

In Count VI, Plaintiffs allege that Wayne County provides inadequate notice to owners whose cars are seized when "someone else is driving." (R.12,

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

PageID.293). To the extent Plaintiffs maintain that this claim somehow includes Wilson – even though she was driving and thus present at the time of the seizures, and admittedly personally received Notices of Seizure[11] – this Court already dismissed Count VI as to Bell because due process is satisfied when an owner "received actual notice of the seizure[.]" (R.54, PageID.1021). The same result is required here: because the Court already dismissed Counts II and VI as to Bell and the same rationale applies to Wilson, Wayne County respectfully requests judgment in its favor and dismissal of these Counts in their entirety.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## IV. There Is No Genuine Issue Of Material Fact Relating To Plaintiffs' Fourth Amendment Claim (Count I – Bell And Wilson).

In Count I, Bell and Wilson assert that Wayne County's policies or customs violated their Fourth Amendment right to be free from unreasonable seizures by causing their cars: (1) to be seized without probable cause; and (2) to be kept without timely hearings unless they paid redemption, towing, and storage fees.

### A. The Fourth Amendment Does Not Protect an Individual's Interest in Regaining Possession of Property.

This Court should reject Plaintiffs' theory of Fourth Amendment liability, beginning with the claim that Wayne County unlawfully "retained" their cars after their initial seizures. "The Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of

---

[11] Ex. C at 21, 44.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

property." *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999). Stated differently, "[o]nce that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id.* This Court also has previously and specifically relied on *Fox* to reject this "continued retention" theory. In *Krueger v. Eastpoint*, this Court recognized that "the Fourth Amendment does not protect the return of property *already seized*. 452 F. Supp. 3d 679, 686 (E.D. Mich. 2020) (emphasis in original). Once a seizure is completed, any remedies lay with procedural Due Process, not the Fourth Amendment. *See, e.g.*, *Culley*, 601 U.S. at 384 ("When States seize and seek civil forfeiture of personal property, due process requires a *timely* post-seizure forfeiture hearing.") (emphasis in original). The same rationale applies here, so that even if Wayne County had unlawfully seized Plaintiffs' vehicles, any Fourth Amendment claim stemming from "continued retention" of the cars fails as a matter of law.[12]

**B. There Is No Genuine Issue of Material Fact That WCSO Reasonably Seized Plaintiffs' Cars**.

The Fourth Amendment claims asserted by Bell and Willson still fail even if Wayne County's "continued retention" of their vehicles implicates Fourth Amendment interests. As this Court explained with respect to Reeves, a plaintiff

[12] At the outset of this case, the Court disagreed with this reading of *Fox*, at least as to Bell's Fourth Amendment claim (R.54), but Wayne County respectfully disagrees and asks the Court to rule on the issue with respect to Wilson so Wayne County may, at the very least, preserve it for appeal.

cannot challenge a municipality's retention of a vehicle under the Fourth Amendment unless he or she can show that the municipality unreasonably seized the vehicle in the first instance. *See* PageID.996 ("Reeves cannot allege the unlawful retention of his property, when he has failed to sufficiently allege that the initial seizure was also unlawful."). Bell and Wilson cannot establish that a Wayne County employee unreasonably seized their cars and, even if they could, also cannot establish a custom, policy, or practice of seizing vehicles without probable cause.

Again, the municipal liability claim Plaintiffs are pursuing requires: (1) an underlying constitutional violation (here, seizure of Plaintiffs' vehicles without probable cause); and (2) a showing that Wayne County had a custom, practice, or policy of seizing cars without probable cause by demonstrating past incidents of similar unconstitutional behavior, knowledge, and acquiescence. Probable cause is "not a high bar," and is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Kaley v. United States*, 571 U.S. 320, 338 (2014); *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016).

First, there is no genuine issue of material fact that there was probable cause for the seizure of Bell's vehicle in November 2018. Bell now agrees that Turner was "a nuisance to everything" and admits that he "used [her car] to pick up prostitutes." (PageID.1618). And nothing in the record disputes Officer Sherri Tanner's sworn testimony that, on the date of the first seizure (the only one still at issue), she

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

observed Turner and a woman she believed, from prior experience, to be a prostitute "parked in front of a dope location." (R.114, Tanner 47). While conducting an investigatory stop, Tanner observed that the woman "was naked from the waist down, pants around her ankles." *Id.* at 48. There also is nothing in the record to dispute that Turner admitted to officers that he was "feeling up" his female companion, whom he knew to be a prostitute, and that he knew he should stop, "but he can't nor does he want to[] because he likes being out with prostitutes." (PageID.507). *See also* Ex. A at 17 (confirming Bell has no information or reason to dispute the information in the police report, including Turner's admissions). Even under the Court's interpretation of *Fox*, it follows that Bell cannot maintain a Fourth Amendment claim based on "an illegal refusal" to return her car where there is no genuine issue of material fact that there was probable cause for the seizure itself.

Second, as explained above, Wilson is estopped from challenging the seizure of the Malibu, which she abandoned, and also cannot relitigate probable cause for the seizure of Ion. Thus, Wilson further is estopped from denying facts showing officers had probable cause to seize the Ion. In § 1983 actions, federal courts "must 'give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Autrey v. Stair*, 512 F. App'x 572, 577-78 (6th Cir. 2013), *quoting Haring v. Prosise*, 462 U.S. 306, 313 (1983). And "Michigan courts will apply collateral estoppel when: '(1) a question of fact essential

to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties . . . had a full [and fair] opportunity to litigate the issue; and (3) there [is] mutuality of estoppel.'" *Id*. at 577-78 (alterations in original), *quoting Monat v. State Farm Ins. Co*., 677 N.W.2d 843, 845-46 (Mich. 2004).

The Michigan Supreme Court held that a reasonable jury could find that officers saw Smith buy drugs while sitting in the Ion with Wilson and then saw Wilson drive away with Smith and the drugs in the car. *In re Forfeiture of 2006 Saturn Ion*, 2024 WL 3503577, at *6. These facts are more than sufficient for a reasonable officer to conclude that the Ion was "used or intended to be used to facilitate any violation of" Michigan's drug laws, Mich. Comp. Laws. § 333.7521(1)(f), and therefore that the vehicle was forfeitable. *See In re Forfeiture of 2006 Saturn Ion*, 2024 WL 3503577, at *8 (Viviano, J., dissenting). It follows that officers had probable cause to seize the Ion as a matter of law.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Third, even if Bell or Wilson could establish that WCSO deputies seized their vehicles without probable cause, they cannot show a "clear and consistent" pattern of the WCSO seizing vehicles without probable cause, let alone that Wayne County had "actual" or "constructive" notice of such prior unconstitutional incidents. *Doe*, 103 F.3d at 508. *See also* R.114, Berri at 74 and PageID.2433 (WCPO materials reminding area law enforcement engaging in vehicle seizure that they "[n]eed probable cause to seize property"). Officers also confirmed that vehicles are seized

only if criminal or nuisance activity is established during a stop:

> **A**: We could get a citizens complaint due to drug trafficking in that area, we would go to that area, set up surveillance, we would observe someone go into the house, and after that we would stop that person and get intel from there.
>
> **Q**: And if you saw someone leaving a dope house, you could then impound their car?
>
> **A**: Depending on what their statements were, yes.
>
> **Q**: Okay, what statements would allow you to impound the car?
>
> **A**: That they went there and bought crack.

(R.114, Tanner at 29). *See also* R.114, Rivers at 62-63. Even if there were no probable cause, Bell and Wilson can point to no evidence that establishes that there was a prior pattern of vehicle seizures lacking probable cause, that Wayne County was aware of these constitutional violations, and took no action in response. Therefore, there is no genuine issue of material fact that the WCSO: (1) seized Bell and Wilson's vehicles with probable cause; and (2) did not engage in a "clear and consistent" pattern of seizing vehicles without probable cause.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

### C. Wayne County Did Not Improperly Hold Plaintiffs' Vehicles.

Bell and Wilson also cannot establish a Wayne County policy of untimely delay, which, for the purposes of municipal liability, require Bell and Wilson to establish first that they suffered Fourth Amendment violations but also that such violations are the result of a custom, practice, or policy of Wayne County of seizing vehicles without probable cause or violating a "continuing detention principle."

There is no genuine issue of material fact regarding the time Wayne County actually held Plaintiffs' vehicles and Plaintiffs further cannot establish the requisite pattern of past unconstitutional delays to sustain a municipal liability claim.

First, when seizing agencies refer matters for forfeiture to the WCPO, claimants can choose to settle a contemplated or pending state court civil forfeiture action (R.114 – Davis 30-31). The settlement fee schedule has not changed in over three decades, and claimants – like any civil litigant – are free to reject settlement and present their defenses. *Id.* at 181, 209, 213. For example, as to the Ion, Wilson asserts that Wayne County delayed forfeiture proceedings by forcing her to attend pretrial conferences at which they "pressured" her to settle. But Wilson admitted at two depositions that she repeatedly told the WCPO that she actively wanted, and was trying, to settle – both before and after the filing of the forfeiture complaint. (Ex. B at 21-25 and Ex. C at 49). *See also* R.114, Hamdan at 67, 71; Page ID.2298 (describing pretrial conferences and settlement discussions between WCPO and Wilson); PageID.1803 (noting multiple calls and voicemails between WCPO and Wilson). Indeed, the state court orders multiple pretrial conferences only when there is reason to do so; the WCPO Forfeiture Unit's principal prosecuting attorney confirms that multiple conferences generally occur when "parties [] agreed to adjourn…or the other party had not shown up, and we wanted to give them an extra chance….[i]f they did not want to attend the pretrial conference, we would not ask

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

for one." (R.114, Davis 160). Thus, the delay Wilson claims she suffered is actually the result of her own representations that she intended to settle rather than contest. When she changed her mind and joined this lawsuit instead, she blamed the "delay," which she manufactured, on Wayne County.

Bell, on the other hand, did not actually experience any delay. Instead, she chose to resolve the first seizure of her vehicle by settling the contemplated forfeiture action. On December 6, 2018, just over two weeks after the seizure, Bell voluntarily entered into a written settlement agreement with the WCPO to resolve the contemplated state court case for $900, and the vehicle was returned. (PageID.527). To the extent Bell maintains that Wayne County's settlement procedure itself is unconstitutional, the Sixth Circuit has already upheld the constitutionality of this voluntary settlement arrangement. *See Ross*, 402 F.3d at 588-89 (holding that redemption fees up to $2,000 in prostitution cases under Michigan's nuisance abatement statute did not offend the Eighth Amendment).

Second, the Court previously held that Bell could proceed on a legal theory that Wayne County violated her Fourth Amendment rights because the Nuisance Abatement statute[13] did not provide her an absolute "innocent owner" defense. (R.70, PageID.1167). As an initial matter, "[i]t is well established that nuisance

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

[13] Innocent ownership, however, is an express and complete defense under the Controlled Substances Act (Mich. Comp. Laws § 333.7521(1)(f)). *See also* Section V(A), *infra*. Wilson, therefore, cannot pursue this theory.

abatement, as a means to promote public health, safety, and welfare, is a valid goal of municipal police power. The nuisance abatement statutes are designed to eliminate the use of property in connection with the conduct proscribed in MCL 600.3801 to protect the community." *Krishna Krupa, Inc. v. City of Ferndale*, 2018 Mich. App. LEXIS 3016, *16 (Aug. 14, 2018) (citations omitted). The Sixth Circuit has expressly recognized, in the context of Michigan's nuisance statute, the legitimate purpose of nuisance abatement where:

> Solicitation of prostitution, lewdness, public indecency, and other sexual vice crimes of the types material to the subject litigation may impact adversely the health, safety, welfare, and morals of the affected neighborhood and the larger community. Those lascivious and irresponsible activities offend law-abiding citizens; degrade the moral fiber of their participants as well as society; rend bonds of marriage and family; transmit dreaded social diseases including AIDS, syphilis, and other often-incurable degenerative and/or deadly venereal diseases; attract and facilitate the abuse of, and trafficking in, dangerous controlled substances; and incite other violent felonies including common street crimes.

*Ross*, 402 F.3d at 589. And per statute (i.e., not Wayne County policy), a "lack of knowledge" of the nuisance by an owner of the property is not a complete defense to a nuisance abatement action. *See* MCL 600.3815(2) ("[P]roof of knowledge of the existence of the nuisance on the part of 1 or more of the defendants is not required"). The Michigan Supreme Court, however, recognizes that "innocent owners" are free not only to challenge the legality of the seizure/forfeiture but also to argue to the state court to consider an "innocence" or "lack of knowledge" defense when fashioning an appropriate remedy to remedy the nuisance. *See People v. Bennis*, 527

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

N.W.2d 483, 495 (Mich. 1994).

In *Bennis*, a woman's car was seized under the nuisance statute after her husband used it to engage in sexual activity with a prostitute. *Bennis v. Michigan*, 516 U.S. 442 (1996). She challenged the seizure, claiming that she was unaware of her husband's crime. The Supreme Court, however, found that she was not entitled to an innocent owner's defense following "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Id*. at 446. This Court recognized *Bennis'* holding that lack of an innocence defense is constitutional (R.54, PageID.1008), but opined that, "here, [Bell] challenges Wayne County's practice of charging a $900-$2700 redemption fee to innocent owners before the forfeiture action has even begun." *Id.* at 1009.

The record now before the Court, however, establishes that Wayne County does not actually have a policy of "charging" anyone – innocent owners or otherwise – anything. Rather, as in any civil case, claimants – innocent owners or otherwise – are free to reject pre-litigation settlement and proceed with adjudication of the matter, including through assertion of an innocent owner defense supported by evidence. Moreover, there is nothing in the record indicating that Bell actually told anyone at VSU or elsewhere in the WCPO that she purportedly was an "innocent owner." Had she done so, WCPO would have considered any evidence she provided

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

to determine whether forfeiture should be declined (and thus her vehicle released). (R.114, Davis 70, 122-23, Moody 76, 103). Bell instead asks the Court to punish Wayne County for a hypothetical failure to consider an innocent owner defense that she never presented or pursued. But Bell chose to settle and did not invoke her right to a judicial determination regarding innocent ownership. Finally, as with Wilson's waiver regarding the Malibu, Bell's waiver of an innocent owner (or any) defense via settlement means she lacks Article III standing to seek relief based on a hypothetical harm.

Because the Fourth Amendment does not protect an interest in regaining possession of property and because there is no genuine issue of material fact that that Bell and Wilson's cars were reasonably seized or that Wayne County did not improperly hold their vehicles, Wayne County is entitled to judgment on Count I.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## V. **There Is No Genuine Issue of Material Fact Relating to Plaintiffs' Procedural Due Process Claims (Counts III and IV)**.

Counts III and IV assert procedural Due Process violations. "To prevail on a procedural due-process claim, [a plaintiff] must show: (1) it had a constitutionally protected interest, (2) it was deprived of that interest, and (3) the state did not afford it adequate procedures." *Golf Vill.*, 42 F.4th at 598. A procedural Due Process claim under § 1983 requires that a "plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1065 (6th Cir. 1983). Plaintiffs are not permitted to ignore available state law remedies and

then "complain about due process when [they] didn't use the more-than-adequate procedures already available[.]" *Golf Vill.*, 42 F.4th at 600 (citation omitted). Thus, to succeed on a procedural Due Process claim, Plaintiffs must establish that the procedures in Michigan's three civil forfeiture statutes and other remedies permitted by law were constitutionally inadequate to protect their rights in these proceedings and/or denied them a state court forum in which they could raise their defenses.

**A. Lack of Protections for Innocent Owners (Count III – Wilson and Bell)**

In Count III, Bell and Wilson primarily allege that Michigan's nuisance abatement law is unconstitutional (therefore, so is Wayne County's enforcement of it) because there is no innocent owner defense "except in limited circumstances." First, it is state law, and not Wayne County policy, which provides that a "lack of knowledge" of the nuisance by an owner of the property is not a complete defense to a nuisance abatement action. MCL 600.3815(2) ("[P]roof of knowledge of the existence of the nuisance on the part of 1 or more of the defendants is not required"). Wayne County thus is not a proper party to challenge the policy adopted by the State of Michigan, and the Sixth Circuit has held that local governments are not "on the hook" under a municipal liability theory for policy decisions made by the state where the source of claimed injury is the state law itself, and not any independent, separate policy devised by the local government. *See, e.g., Brotherton v. Cleveland*, 173 F.3d

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

552, 566-67 (6th Cir. 1999) (holding that when local government acts pursuant to duties established by state law, there is no "municipal policy" implicated).

An allegedly unconstitutional state law does not become an unconstitutional municipal policy merely because the state law obligates a municipality, along with everyone else, to comply with it. *See, e.g., id.* at 565. And although innocent ownership is not a "complete defense" in a nuisance abatement action, any hypothetical injury on that basis is attributable to the Supreme Court's decision in *Bennis*, which held that the State was not obligated to provide this as a per se defense in nuisance abatement actions, but it was a factor that could be taken into account and given great weight by a state court. 516 U.S. at 446-53. Again, it is not the "policy" of the WCPO to "reject" innocent owner defenses, it is a policy decision reflected in Michigan state law and upheld as constitutional by the Supreme Court.

Second, the Supreme Court has recognized that: (1) because nuisance proceedings in Michigan are "equitable," courts can fashion appropriate remedies short of abatement regarding possible "innocent owners"; (2) nuisance abatement serves a "deterrent" purpose, distinct from "punishment"; and (3) in other contexts, Michigan law imposes liability on individuals who knowingly lend a vehicle to ssomeone who negligently injures someone else. *Bennis,* 516 U.S. at 451-52. This Court previously opined that Plaintiffs were not attempting to challenge *Bennis* because they allege that Wayne County denies "innocent owners any means of

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

demonstrating their blamelessness in nuisance-abatement actions and by denying innocent owners in other types of actions any means of doing so prior to the county's initiation of civil forfeiture proceedings." (FAC ¶ 284). Plaintiffs are incorrect.

As to Bell, although the state court had discretion to consider her purported innocence as an equitable defense, she chose not to pursue it (*see* Section IV(C), *supra*). Moreover, Michigan law permits a claimant to file independent petitions in state court for the immediate return of property in nuisance abatement cases. *See Shandor v. City of Eastpointe, MI*, 2021 U.S. App. LEXIS 30977 (6th Cir. Oct. 13, 2021). Bell has not put forth any evidence that she even communicated her position as a purported innocent owner to Wayne County. Instead, she freely chose not to challenge a possible forfeiture case (during which she also could have pursued an innocent ownership defense) and requested return of her vehicle in exchange for a $900 settlement payment.

To the extent that Bell argues that the WCPO had an independent constitutional obligation to determine the veracity of any innocent owners defense, neither the Constitution nor any case law imposes a legal obligation on a prosecutor assigned to a state court civil forfeiture matter to "pre-adjudicate" claims of "innocent ownership." The WCPO, of course, is not an adjudicatory body – Michigan law provides that the courts are the forum that would determine a disputed issue of innocent ownership. *See Bennis,* 516 U.S. at 451-52 and R.114, Davis 199-

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

200. In any event, as a matter of fact, there is no evidence that Bell attempted to raise an informal "innocent owners" defense directly to the prosecutor before she chose to settle. Even if she did, the Supreme Court has determined that it is just one of the defenses that a state court may consider in fashioning an appropriate remedy under Michigan's Nuisance Abatement statute.

As to Wilson, her cars were seized pursuant to the Controlled Substances Act, which does contain an innocent owners' defense: "To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or consent." MCL 333.7521(1)(f). But Wilson chose not to assert any such defense with respect to the seizure of the Malibu, which she abandoned in lieu of contesting forfeiture. Wilson also cannot hold Wayne County responsible for a hypothetical failure to consider defense that she never presented or pursued. And in challenging forfeiture of the Ion in state court, Wilson raised an innocent owner defense (an express and complete defense under Section 7521(1)(f) of the Controlled Substances Act) and litigated that claim all the way to the Michigan Supreme Court, so it is unclear what additional protections could be required regarding alleged innocent ownership.

Finally, carrying Plaintiffs' position to its logical conclusion would be absurd. Just like potential litigants to any civil action can choose to settle a dispute before or

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

after an actual lawsuit is filed, claimants in pre-forfeiture matters can do the same. Bell and Wilson did not experience any Due Process violation because the parties resolved the forfeiture case before Due Process required that any forfeiture case be filed. Indeed, it is not as if cars – of innocent owners or other claimants – would be returned if the WCPO did not offer the option of an early settlement. Instead, every case would be adjudicated through formal process via the state court system, over which the WCPO exerts no control. *See, e.g*, R.114, Moody 73 (noting WCPO could not explain to claimants how long a contested forfeiture would take because "the court would dictate to us how the case would move along."); Hamdan 43 (explaining that when asked by claimants how long it would take to contest a forfeiture: "I tell them that's delineated by the court. You know, I can control when I file the complaint, if that's the route they choose to go, but beyond that, it's set by the court's schedule.").

Finally, municipal liability claims require an underlying violation of "clearly-established law." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-95 (6th Cir. 2017); *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (holding that "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established"). There is no case law supporting the existence of a constitutional theory that a prosecutor must provide a pre-lawsuit "forum" for

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

claimants to adjudicate their possible innocent owner defense. Any such proposed legal principle would violate *Culley* because procedural Due Process only requires a timely opportunity to contest a seizure and forfeiture in state court – and does not require a prosecutorial pre-adjudication of a disputed defense that a claimant can assert in state court.

**B. Lack of Prompt, Post-Seizure Hearing (Count IV – all Plaintiffs)**

Count IV, on its face, alleges a due process violation based on a failure to provide a post-seizure, pre-forfeiture hearing. The Supreme Court foreclosed this relief in *Culley*. *See, e.g.*, 601 U.S. at 393 ("In civil forfeiture cases, the Due Process Clause requires a timely forfeiture hearing, but does not require a separate preliminary hearing."). Since *Culley*, Plaintiffs have recharacterized the relief sought in Count IV and this Court recently held that this claim is still viable because "*Culley* reaffirmed that forfeiture claimants may bring a due process cause of action for unreasonable delays in their forfeiture proceedings." (R.116, PageID.2876). The Court also held, as to Reeves specifically, that he "did not have adequate statutory remedies" under the OFA. (PageID.2863).

Whether a delay violated due process is evaluated by the four-factor speedy-trial test laid out in *Barker v. Wingo*. *See Culley*, 461 U.S. at 564 ("The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay [between the seizure and the initiation of the forfeiture trial] here violated the

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

due process right to be heard at a meaningful time."). Under *Barker*, courts determine whether a forfeiture hearing is timely by evaluating: (1) the length of the delay; (2) the reason for the delay; (3) whether the property owner asserted his rights; and (4) whether the delay was prejudicial. 407 U.S. 514, 530 (1972).

As to Bell and Wilson, Wayne County did not delay, at all, their civil forfeiture proceedings (Section IV(C), *supra*): Bell waived her right to a hearing when she settled and Wilson pursued settlement before contesting the forfeiture.[14] Neither has Article III standing now to adjudicate any hypothetical scenario regarding the length of time that it would have taken the WCPO to file a civil forfeiture complaint.

Reeves cannot establish a municipal liability claim because he cannot establish an underlying constitutional violation. First, the WCPO did not – and could not – "unreasonably" or otherwise "delay" something over which it had no control or could not do under the OFA. Although the Court held that "Defendant participated in the delay that related to the pursuit of a criminal conviction against Reeves"

[14] Even if the Court evaluates the *Barker* factors as to Wilson, they weigh against her: (1) WCPO filed its forfeiture complaint within four months of the seizure; (2) the WCPO did not file the complaint earlier due to Wilson's admitted and consistent representations that she wished to settle rather than contest; (3) Wilson eventually asserted her rights by contesting the forfeiture; and (4) there was no prejudice to Wilson, where she ultimately prevailed in the state court forfeiture proceedings and the vehicle was returned to her. *See, e.g.*, *Culley*, 601 U.S. 377, 415 (noting that the district court found "Culley's forfeiture hearing was timely under those factors because she played a 'significant role' in delaying her own case.").



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

(R.116, PageID.2880), respectfully, that misconstrues the WCPO's role in OFA proceedings. Ex. D ¶¶ 7-13 and Ex. E ¶¶ 4-5, 7, 9.

Second, a procedural Due Process claim requires the lack of state remedies. In addition to the processes and defenses that claimants have under the three different Michigan civil forfeiture statutes themselves, "[s]tate tort remedies generally satisfy the post-deprivation process requirement of the Due Process Clauses." *Fox*, 176 F.3d at 349. Courts have uniformly held that where state courts and state law provide possible redress for an alleged deprivation of liberty or property interests, a procedural Due Process claim fails as a matter of law. *See, e.g.*, *Bohler v. City of Fairview*, 830 F. App'x 465, 470 (6th Cir. 2020) ("[Plaintiff] has not prove[n] the inadequacy of state remedies, for example, a post-deprivation hearing. For one thing, [plaintiff] did not even request a post-deprivation hearing, making it difficult for him to show the hearing would have been inadequate. For another thing, [plaintiff] has not demonstrated why state judicial remedies would have been inadequate to address his complaints . . .") (citations omitted).

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

1. Reeves Had Numerous State-Law Remedies He Failed to Invoke.

Procedural due process looks to the availability of state court process to remedy an allegedly unlawful deprivation of property. There can be no procedural Due Process violation if state law provides adequate post-deprivation legal process. Here, Michigan law provided Reeves at least four separate avenues to seek state

court intervention following the MSP seizure: (1) his right to seek state court relief for the return of the property from the MSP when it failed to submit a timely warrant request within 28 days of the seizure under § 4706; (2) his right to petition the state court for a probable cause hearing within 28 days of a seizure under § 4705; (3) his right to petition a state court for the return of a vehicle within 7 days because of hardship under § 4705; and/or (4) a claim and delivery action under Michigan law. All of these avenues were open to him, but Reeves failed to pursue any of them.

First, in holding that Reeves "had no remedy" for the purposes of Due Process because the 28/7 day hearings under Section 4705 could purportedly only be brought in an underlying criminal case or civil forfeiture proceedings that were never initiated, the Court disregarded Section 4706 of the OFA, which itself provides a complete and immediate remedy whereby Reeves could have demanded the return of property on the 29th day after the seizure:

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

> (1) Except as otherwise provided by law, **personal property seized under section 4703 shall be returned to the owner**, or a lien filed against real property under section 4703 or against a motor vehicle under section 4705 shall be discharged, **within 7 days after the occurrence of any of the following**:
>
> > (a) **A warrant is not issued against a person for the commission of a crime within 28 days after the property is seized or, if the property is real property, within 28 days after the lien is filed**.

Thus, under § 4706, if a seizing agency does not cause a criminal case to be initiated within the required 28 days (and also does not obtain an extension), it must return

the property to the claimant. (Ex. E ¶ 14). "If, for some reason, a police agency refuses to return the property, a claimant can file a petition or case in state court against the police agency for return of property under § 4706. This petition or case does not have to wait for any criminal proceedings or civil forfeiture case to be first filed." *Id.*

A recent decision from the Michigan Court of Appeals is instructive. In *Vanduinen v. State of Michigan*, the plaintiff directly sued the State of Michigan (over a seizure conducted by MSP) for failure to return property under Section 4706 after no charges were filed within 28 days under the OFA. 2023 Mich. App. LEXIS 120 (2023). The Court of Claims duly considered Vanduinen's claim under Section 4706 and rejected it because, in that case, a "more specific statute allows the police to retain property as long as necessary in order to produce the evidence in a future trial." *Id.*, at *5. Importantly, the Court of Claims did not hold that it was without jurisdiction to consider the argument or that the plaintiff-claimant could not invoke 4706 because no criminal or civil forfeiture case was pending. This is because there simply is no requirement that a claimant wait for anything – aside from the passage of 28 days – to invoke Section 4706.

Second, the OFA permits claimants/owners to petition a state court for the return of any seized property. Those statutory remedies include: (1) a state court hearing to be held within 28 days to contest probable cause for the seizure; and (2)

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

a state court hearing to be held in 7 days in cases where the deprivation of a vehicle would present a hardship. *See* MCL 600.4705(1) & (4). These motions can be filed at any time in the court that would ultimately have jurisdiction over the civil case, and claimants do not have to wait until a criminal conviction occurs or for the filing of a postconviction state court civil case to assert these rights. *See* MCL 600.4703(5) (noting that a petition or action to recover seized property cannot be maintained unless authorized by §§ 600.4705-4707). *See also Novak v. Federspiel*, 728 F. Supp. 3d 552, 574 (E.D. Mich. 2024) (dismissing procedural due process claim challenging Michigan's OFA where, as here, the plaintiff "did not seek post-deprivation process through [Section] 4705(1)."). Section 4705 remedies "can be exercised in the state district courts at any time following a seizure," and WCPO "would not oppose[] a claimant filing a motion or petition under § 4705 on the basis that it could only be filed during the 'criminal case' or the subsequent 'civil forfeiture' case. *See also* Ex. E ¶ 16.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Reeves failed to avail himself of either of these remedies; even so, this Court recently found that such processes "were inapplicable or inadequate to address his constitutionally protected interest in a timely forfeiture proceeding because there was no underlying civil forfeiture or criminal proceeding." (R.116, PageID.2888). But these remedies are not dormant or otherwise unavailable until after a criminal conviction or until a subsequent civil forfeiture case is filed. Rather, under Section

4705, the court "having jurisdiction" is the court that "would have jurisdiction" to return the property, which is the district court in the city where the property was seized, which Section 4709 confirms. *See also* Ex. E ¶ 16.

The Court's understanding that a claimant has to "wait" to invoke the 28/7remedies under Section 4705 strips important protections for claimants out of the OFA: these remedies have no value if a claimant has to wait until the conclusion of a criminal case (which may take weeks, months, or years) plus an additional 28 days after a civil forfeiture case is filed in the district court under Section 4709. *See, e.g.*, Ex. E ¶ 16 (explaining that the WCPO would not oppose any motion filed in the district court under Section 4705 and, upon information and belief, has never opposed one). Further, even if the statute is ambiguous, that does not excuse Reeves from at least attempting to invoke the remedy. Procedural Due Process is violated only when the government actually deprives process; here, that would require that Reeves attempted to invoke Section 4705 and a court rejected it. *See, e.g., Novak*, 728 F. Supp. 3d at 574.

Finally, Reeves also had multiple state-law remedies outside of the OFA, including tort remedies (e.g., conversion, trespass) or a claim and delivery action. *See also Novak*, 728 F. Supp. 3d at 573 (noting that the OFA does not preclude a claim and delivery action as an additional remedy). But Reeves did not invoke any remedy available to him, nor is there anything in the record to support that, after 28

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

days had lapsed, he requested release of his vehicle from MSP or WCPO. *See, e.g.*, Ex. E, Davis ¶ 18 and WCPO Contact Log (PageID.2296). And even if he had, that would not affect the availability of Section 4706's remedy. With respect, applying the *Barker* test to a criminal case that must precede a civil forfeiture case to determine whether a civil forfeiture case complied with procedural Due Process does not make sense because a criminal case can take weeks, months, or even years to resolve. The *Barker* test would only apply to the timing between the criminal conviction and the civil forfeiture case, which under the OFA is already limited to a time certain.

But even if the Court considers Reeves' circumstances under *Barker*, based on the record now before it, there is no genuine issue of material fact that they weigh in Wayne County's favor: (1) the length of the delay – first, there was no "delay in commencing forfeiture proceedings" attributable to Wayne County,[15] where WCPO

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

---

[15] When evaluating the *Barker* factors as to Reeves under a Rule 12 standard, the Court noted that a "deliberate" delay "should be weighted heavily against the government," and noted that "Plaintiff alleges that the delay was to prevent him from retrieving his car and to maximize revenue, since the owner pays a redemption fee, towing fee, and storage expenses to regain possession of his car." (PageID.2879).

But the record now before the Court confirms there was no such nefarious intent or incentive, where redemption fees do not increase and where there is no evidence to support that Wayne County benefits from towing or storage fees paid to independent towing companies or storage facilities. Further, "the expiration of the 28-day period without the issuance of a criminal charges as required by OFA is an absolute bar to any forfeiture of the property or any related settlement under OFA." (Ex. E ¶ 20).

could not file a civil forfeiture case until a criminal conviction had been obtained ***and then*** after response to a verified claim filed by Reeves with the MSP. Second, even if the Court holds the delay in obtaining a warrant for Reeves against Wayne County, such delay is reasonable where the record indicates that neither Reeves nor his attorney made contact with the WCPO for more than 142 days, during which time he was entitled to seek return of his car from MSP, and where WCPO was not obligated to monitor MSP's compliance with OFA nor does it assist seizing agencies to develop their warrant requests (Ex. E ¶¶ 4, 5, 7, 8, 18);[16] (2) the reason for the delay – the MSP did not timely obtain a warrant after which the MSP also did not release Reeves' car, which Wayne County could not compel the MSP to do (Ex. D ¶¶ 7-13); and (3) whether the property owner asserted his rights – Reeves did not assert any rights or remedies under the OFA, nor did he request release of his vehicle from the WCPO (or, apparently, from the MSP) after the MSP failed to timely obtain a warrant.

2. Even if Reeves Could Establish an Underlying Constitutional Violation, He Cannot Establish a "Custom, Practice, or Policy" of Failing to Initiate Timely Criminal Proceedings in OFA Cases.

Again, municipal liability under § 1983 requires that a plaintiff: (1) establish

[16] And if there is no verified claim filed with seizing agency after a criminal conviction, then the property is administratively forfeited to the seizing agency and the WCPO again would not even have authority to initiate forfeiture proceedings. MCL 600.4707(3).



DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

that a municipal policy of custom was the "moving force" behind an alleged constitutional injury; (2) identify the policy or custom; and (3) demonstrate that the injury was incurred because of the policy or custom. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). The OFA is the policy of the State as enacted by its legislature, not a policy of Wayne County. And even if the OFA was a policy of Wayne County, Reeves cannot produce any evidence that the WCPO "purposefully delays" the institution of criminal proceedings in OFA cases, where Reeves cannot: (1) identify any written policy; (2) point to any prior incident where the WCPO instructed a seizing agency to hold property after the 28-day deadline or otherwise "failed to institute criminal proceedings" under the statutory deadline.

Here, the MSP failed to submit a timely warrant request, in violation of the OFA. (Ex. E ¶ 6). The WCPO's practice and policy is to wait for the seizing agency to submit a warrant request to the WCPO, which the latter would review. *Id.* ¶ 4. The WCPO took no part in the criminal investigation into Reeves and does not assume responsibility to police a seizing agency's compliance with statutory obligations that apply to them. *Id.* ¶¶ 4, 5. The WCPO thus did not deprive Reeves of his vehicle, never took possession of the vehicle, and never exercised dominion or control over it. Rather, it is the MSP, who admits that as the seizing agency, had "a legal obligation to return property under its control if a warrant has not been secured in the appropriate timeframe." (Ex. D ¶ 9). The Court should not adopt a theory of "co-

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

liability" between the MSP, as seizing agency, and the prosecutor, creating an unfair precedent that one government can be held liable for another's conduct. *See* R.116.

Thus, even with the benefit of the Court's generous reading of Count IV post-*Culley*, there is no genuine issue of material fact for trial and Wayne County is entitled to judgment in its favor.

3. The Eleventh Amendment Bars Reeves' Claims.

Finally, this Court should find, as a matter of first impression, that the WCPO is entitled to sovereign immunity as to Reeves' damages claim, which seeks to hold Wayne County responsible for Reeves' perceived problems with the OFA, including remedies provided for violations of that statute. In other words, Reeves seek to hold Wayne County, through its Prosecutor's Office, responsible for actions taken as an arm of the State. "The Eleventh Amendment . . . forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit." *Kerchen v. University of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024) (citations omitted).

Eleventh Amendment immunity not only applies to suits for money damages under § 1983 against the state itself, but also to municipal governments that act as "arms of the state." *Brotherton*, 173 F.3d at 566 ("[w]here county officials are sued simply for complying with state mandates that afford no discretion, they act as an

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

arm of the State"). The Sixth Circuit has long held that that a Michigan county prosecutor's office acts as an "arm of the state" when pursuing state law criminal cases and consequently are entitled to the same immunity that the State of Michigan would enjoy from claims of money damages:

> Under Michigan law, county prosecuting attorneys are charged with the duty of appear[ing] for the state or county, and prosecute or defend…all prosecutions, suits, applications and motions, whether civil or criminal, in which the state or county may be a party or interested. This formulation indicates that county attorneys in Michigan, like their counterparts in Ohio, are responsible for enforcing criminal laws on behalf of the state…We have previously determined that state criminal law represents the policy of the state. This means that [the county prosecutor] was acting as a state agent when prosecuting state criminal charges.

*Cady v. Arenac County*, 574 F.3d 334, 342-43 (6th Cir. 2009) (citations and quotation marks omitted). Post-*Cady*, both the Sixth Circuit and district courts within it have repeatedly held in a variety of contexts that Eleventh Amendment immunity bars claims for money damages both against both prosecutors named in their official capacities and against the entity itself where the claims arise from the performance of prosecutorial functions. *See, e.g.*, *Stampone v. Michigan Supreme Court*, 2024 U.S. App. LEXIS 17857, *6 (6th Cir. July 17, 2024) ("[T]he district court properly dismissed [the plaintiff's] claims against the Kent County Prosecutor's Office because it is entitled to sovereign immunity") (citation omitted); *Lamb v. Wallace*, 2017 U.S. App. LEXIS 16591, *4 (6th Cir. July 13, 2017) ("[T]he Eleventh Amendment entitles the Warren County Attorney's Office to immunity from suit")

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

(internal citations omitted); *Gavitt v. Ionia County*, 67 F. Supp. 3d 838, 859 (E.D. Mich. 2014) ("Accordingly, the claims asserted against each of the Ionia County Prosecutors in their official capacity are deemed to be claims against the state and are thus barred by the Eleventh Amendment. [The plaintiff's] attempts to distinguish *Cady* are not persuasive. The rationale and holding in *Cady* govern the result here"); *Desandre v. County of Oscoda*, 2022 U.S. Dist. LEXIS 198059, *40-41 (E.D. Mich. Oct. 31, 2022) ("[H]ere, 'the entity' is the State of Michigan, not Oscoda County…[a]nd suits seeking monetary relief from a state are barred by sovereign immunity") (internal citations omitted).

Last year, the Sixth Circuit confirmed that county treasurers are entitled to sovereign immunity in the context of property tax foreclosure, because county officials "sometimes wear multiple hats, acting on behalf of the county and the State." *Bowles v. Sabree*, 2024 U.S. App. LEXIS 8879, *6 (6th Cir. Apr. 10, 2024), *quoting Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015). In such setting, "immunity hinges on whether the officer represents the State in the particular area or on the particular issue in question." *Id.* The WCPO similarly wears multiple hats, and in civil forfeiture proceedings, it represents the State. *See, e.g.,* R.114, Davis 13 (confirming that the WCPO prosecutes matters on behalf of the State of Michigan). In this context, the WCPO acts "as an arm of the State, not the county.'" *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (quotations omitted). *See*

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

*also Bowles*, at *6-7, *citing Brotherton*.

Thus, as with the criminal laws at issue in *Cady*, here the WCPO acts for the State when enforcing Michigan's forfeiture laws. "The initiation and prosecution of a lawsuit on behalf of the government fall squarely within prosecutorial functions…As do actions that are preliminary to the initiation of a prosecution and apart from the courtroom. This includes preparing and filing a public nuisance complaint [and] pre-trial negotiations." *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x. 508, 514 (6th Cir. 2019) (recognizing that absolute prosecutorial immunity applies to a prosecutor pursuing a civil forfeiture case). Reeves' claims are premised on fundamental prosecutorial functions identical to those employed when prosecuting state law crimes – deciding when, whether, and how to bring civil forfeiture cases – and because the WCPO acts as an "arm of the state" when prosecuting such cases, the Eleventh Amendment should bar any claims for money damages under § 1983 against Wayne County.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## VI. <u>There Is No Genuine Issue of Material Fact Relating to Plaintiffs' Substantive Due Process Claim (Count V – Wilson and Bell)</u>.

Bell and Wilson claim that Wayne County violated the Fourteenth Amendment's prohibition on "arbitrary and irrational fees" for purported innocent owners, which would be considered a substantive Due Process claim. A substantive Due Process claim requires that the government action "shock the conscience." *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 724 (6th Cir. 1996)

(citation omitted). Additionally, Plaintiffs must establish that that the conduct was "arbitrary and capricious because it does not advance a legitimate government interest and . . . constitute[s] an unreasonable means of advancing that interest." *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997) (citation omitted). Again, to prevail on a municipal liability claim Plaintiffs must prove a County "custom, practice, or policy" that violated clearly-established law. No court has ever held that settling a contemplated civil forfeiture action implicates Fourteenth Amendment rights or has "shocks the conscience." Even so, Plaintiffs characterize Wayne County's settlement schedule a "seize-and-ransom policy" that "requires innocent owners to pay fees and fines based on the actions of others. (FAC ¶ 312). Plaintiffs also allege that Wayne County's settlement practices are "arbitrary and irrational" and "driven by a desire to raise revenue." *Id.* ¶¶ 318, 320.

First, Sixth Circuit and Supreme Court precedent "precludes reliance on substantive due process standards when evaluating claims covered by explicit constitutional protections." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012), *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (discussing the Supreme Court's instruction [in *Albright v. Oliver*, 510 U.S. 266, 273 (1994)] that when a specific amendment "provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Here, Bell

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

and Wilson's complaints about Wayne County's settlement practices are "covered" by procedural due process and the Eighth Amendment (both claims also asserted by Bell and Wilson). *See, e.g.*, *Ross*, 402 F.3d at 588-89 (holding that procedures in Michigan's nuisance abatement law satisfy procedural Due Process and the settlements offered did not offend the Eighth Amendment's "excessive fines" prohibition). The Sixth Circuit's binding holding in *Ross*, that settlement amounts offered in civil forfeiture matters do not violate the Eighth Amendment's "excessive fines" prohibition, is dispositive of attempts by Bell and Wilson to claim that this same conduct violates substantive Due Process. Indeed, a procedural Due Process analysis is appropriate where Michigan law already protects the rights of innocent owners in both nuisance abatement and drug asset forfeiture matters. Such claims are analyzed through the lens of available state remedies and the *Barker* factors. *See* Section V(B), *supra*. The substantive due process claim, therefore, is improperly duplicative of Wilson and Bell's other claims.

Second, the WCPO's policy of offering settlements in certain cases to resolve contemplated forfeiture actions derives from its status as a civil litigant and claimants are under no obligation to settle these cases. Indeed, Wilson chose not to settle and thus could not have been harmed by any settlement. Instead, she abandoned the Malibu and contested the forfeiture of the Ion (prevailing in state court). Although the Controlled Substances Act provides an innocent owner's

defense (MCL 333.7521(f)), Wilson waived this defense as to the Malibu when she abandoned that vehicle but in fact raised it when she contested forfeiture of the Ion – she cannot now argue that her cars were held without recourse and thus cannot prevail on a substantive due process claim.

Third, Bell alleges Wayne County's settlement practices force purported innocent owners to choose between gaining access to their cars quickly or waiting through forfeiture proceedings. But, again, claimants in pre-forfeiture matters can choose to settle a dispute or reject a pre-forfeiture settlement offer – just like potential litigants to any civil action. If the WCPO did not offer the option of an early settlement, every case would be adjudicated through formal process via the state court system, over which the WCPO exerts no control. In other words, absent the WCPO's settlement policy, all claimants, including purported innocent owners, would continue with forfeiture proceedings at whatever pace the state court could address them.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

And there is no support whatsoever that the WCPO's forfeiture settlement process, which claimants are free to reject, is "driven by a desire to raise revenue." Rather, Wayne County's budget (and sworn testimony) confirm that settlement funds make up minuscule portions of Wayne County's financial resources and the loss of those fees would not meaningfully impact budget or operations. *See* R.114, Essak at 27 ("**Q**: If the redemption fees completely disappeared, would that leave a

budget deficit? **A**: It will not."). *Compare* PageID.1770 (indicating the adopted budget for FY 2022-2023 is $63,424,485 for the Prosecutor's Office and $172,007,778 for the Sheriff's Office), *with* PageID.1742-43 (indicating that Wayne County collected $455,650 in 2022 and $354,750 in 2023 in settlement fees). And the settlement schedule has not changed in over three decades. (R.114, Davis 181, 209, 213). The same certainly cannot be said for just about anything else, including officer and prosecutor pay, overhead, administrative, and healthcare costs. If the motivation for vehicle seizure was to induce settlements to "raise revenue" and bolster Wayne County's budget, the fee schedule certainly would need to increase (even once) over the past 35 years, at least at the pace of inflation. Similarly, every County representative or employee who was asked confirmed that there never, ever was a quota (imposed or implied) for seizures, settlements, or lawsuits. (R.114, Berri 36, Rivers 33-34, Tanner 87, Davis 36-37, Hamdan 109, Puckett 132).

Finally, Wayne County was not the proximate cause of Bell's purported damages. Turner, her boyfriend, was caught engaging in sexual activity with prostitutes on multiple occasions. He did so in Bell's car, his own car, and others' cars. Turner, a "nuisance to everything," is the reason the WCSO seized Bell's car. Bell chose to pay $900 to get her car back but did not ask Turner for help, to pay her back, or otherwise seek any recourse against him. Instead, she let him borrow her car again, with the same result.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Because there is no genuine issue of material fact as to Plaintiffs' substantive due process claim, Wayne County is entitled to judgment in its favor on Count V.

## VII. Plaintiffs Lack Standing to Seek Prospective Relief.

Plaintiffs seek a (classwide) injunction, but

> [t]o obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them. ***To carry that burden, the plaintiffs must proffer evidence that the defendants' allegedly wrongful behavior would likely occur or continue***.

*Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (internal quotations omitted, emphasis added and in original). *See also Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (confirming a plaintiff must establish past injury and "real and immediate threat of future injury"). The threat must be "actual and imminent, not conjectural and hypothetical." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Hypothetical harm – a vague, nebulous possibility that Plaintiffs' vehicles might be seized – is not the concrete threat of imminent harm required for a classwide injunction. *See, e.g.*, *McMorris v. Carlos Lopez & Assocs.*, 995 F.3d 295, 303 (2d Cir. 2021) (finding that without a "substantial risk of future identity theft" based solely on the fact that a data breach occurred, then any damages incurred to "protect[] themselves against this speculative threat cannot create an injury" and Plaintiffs lack standing.). "This notion stems from the Supreme Court's guidance in *Clapper [v. Amnesty Int'l USA*, 568 U.S. 398 (2013)], where it noted that plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

their fears of hypothetical future harm that is not certainly impending.'" *Id.*; *Buchholz v. Tanick*, 946 F.3d 855, 865 (6th Cir. 2020) ("[A] plaintiff cannot create an injury by taking precautionary measures against a speculative fear.").

Here, there is no evidence of any actual, specific wrongdoing by Wayne County, let alone that it will happen again. And Plaintiffs have not demonstrated an "actual and imminent" threat that their vehicles might be seized by the WCSO in the future. It is undisputed, for example, that Bell's vehicles were seized on two occasions due to specific circumstances that no longer exist: she was once involved in a romantic relationship with Turner, who engaged in prostitution-related activities in vehicles in and around Wayne County. Bell now concedes that Turner was "a nuisance to everything" (PageID.1618) and she has, during the pendency of this lawsuit, married someone else. (R.107).

Even so, in evaluating Wayne County's preliminary Rule 12 Motions, this Court ruled that "[Bell]'s allegations support the conclusion that she cannot avoid injury by following the law. The fact that [Bell] is no longer in a relationship with her ex-boyfriend does not preclude her from having standing to bring her claims, particularly where she alleges systemic vehicle forfeiture practices[.]" (R.70, PageID.1166). But, under Article III principles, Bell does not acquire standing simply because she seeks to use an alleged past injury to "vindicate" the rights of unnamed other people who may be "harmed" in the future – any future "risk" of

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

seizure for a prostitution-related incident now that Bell is no longer involved with Turner would be the same as any person operating a vehicle within Wayne County. For the purposes of standing, the legal assumption is that a plaintiff will not engage or participate in future criminal activity. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Indeed, it has been more than six years since the seizures of Bell's vehicle, and, upon information and belief, no additional seizures have occurred. *See id.* at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional"); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not do").

Wilson's circumstances, too, could never be repeated. At the time of her seizures, Michigan law did not require a concomitant criminal conviction to seek forfeiture under the Controlled Substances Act. But the Michigan Legislature, in August 2019, amended the Act, which now requires a predicate criminal conviction to seek forfeiture of property worth $50,000 or less. *See* MCL 333.7521a(1) and R.114, Davis at 93 (confirming that after the 2019 amendment, "push off was no longer a viable process for seizing vehicles."). It is beyond dispute that Wilson

cannot demonstrate she faces an "actual and imminent" likelihood of the same alleged injury ever again.

Finally, in the context of civil forfeiture, the Sixth Circuit has held as a matter of law that a past seizure does not provide standing for prospective relief without a showing that a similar seizure would occur in the future: "The seizure of Plaintiffs' assets has already been perfected, therefore this past injury has no continuing, present adverse effects. Furthermore, any threat that injury to Plaintiffs will be repeated is only speculative at this point." *Blakely*, 276 F.3d at 874. So too here. Because Plaintiffs have an obligation to establish they face an "actual," "non-conjectural," and "imminent" threat of vehicle seizure and because there is nothing in the record that would sustain this evidentiary burden, they are not entitled to injunctive relief.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

## CONCLUSION AND RELIEF REQUESTED

Wayne County respectfully requests that the Court grant its Motion and dismiss Plaintiffs' claims with prejudice.

Dated: April 2, 2025

Respectfully submitted,
**DYKEMA GOSSETT PLLC**

By: */s/ Nasseem S. Ramin*

Nasseem S. Ramin (P73513)
*Attorneys for Defendant*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800
nramin@dykema.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all counsel of record and by email.

/s/ Nasseem S. Ramin

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243