**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MELISA BELL, STEPHANIE WILSON, and ROBERT REEVES, | No. 5:20-cv-10288-JEL-EAS |
| Plaintiffs, | District Judge Judith E. Levy |
| v. | Magistrate Judge Elizabeth A. Stafford |
| COUNTY OF WAYNE, | **Oral Argument Requested** |
| Defendant. | |

# PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 56, Plaintiffs move for summary judgement for all Plaintiffs on Count IV of their Amended Complaint, for Plaintiffs Melisa Ingram and Stephanie Wilson on Counts I, III, and V of the Amended Complaint, and for Plaintiff Stephanie Wilson on Count II of the Amended Complaint. Prior to filing this motion, on May 20, 2025, pursuant to Local Rule 7.1(a), Plaintiffs' counsel sought but were unable to obtain concurrence. This motion is based on the accompanying brief, exhibits, and the previously filed declarations, exhibits, and other record materials cited in the brief.[1]

---

[1] Pursuant to the Court's prior orders, Plaintiffs are filing a single consolidated brief of 89 pages in support of both their cross motion and their response in opposition to Defendants' motion. *See* ECF Nos. 115, PageID.2853; Text-Only Order of Apr. 24, 2025; Text-Only Order of June 2, 2025. The supporting briefs

There are no genuine issues of material fact regarding these claims, and Plaintiffs are entitled to judgment as a matter of law. Plaintiffs ask that the Court grant their motion and provide the following relief:

1. Declare that Defendant's policy and practice of delaying forfeiture proceedings violates Plaintiffs' Fourteenth Amendment due process rights, and permanently enjoin Defendant from enforcing the same;

2. Declare that Defendant's policy and practice of seizing and retaining vehicles without probable cause violates Melisa's and Stephanie's Fourth Amendment rights to be free from unreasonable seizures, and permanently enjoin Defendant from enforcing the same;

3. Declare that Defendant's forfeiture of Stephanie's Chevrolet Malibu, consistent with its policy and practice of forfeiting the cars of innocent people, violates her Eighth Amendment right to be free from excessive fines, and permanently enjoin Defendant from enforcing the same;

4. Declare that Defendant's policy and practice of denying procedural safeguards to innocent owners prior to its initiation of forfeiture proceedings violates

---

included in the motion and response are identical, but Plaintiffs are filing separate documents in an effort to comply with the Court's order striking and directing them to refile their Combined Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Partial Summary Judgment. ECF No. 128, PageID.3659.

Melisa's and Stephanie's Fourteenth Amendment due process rights, and permanently enjoin Defendant from enforcing the same;

5. Declare that Defendant's arbitrary and irrational seize-and-ransom policy, imposed prior to the initiation of any forfeiture action, violates Melisa's and Stephanie's Fourteenth Amendment due process rights, and permanently enjoin Defendant from enforcing the same;

6. Declare Defendant liable for Plaintiffs' individual damages claims and schedule a hearing to determine the amount of damages; and

7. Any further relief as the Court deems just and proper.

Dated: May 23, 2025

Respectfully submitted,

*/s/ Kirby Thomas West*

Kirby Thomas West
(Pa. Bar 321371)
Michael B. Soyfer
(N.Y. Bar 5488580; D.C. Bar 230366)
Christian Lansinger
(Md. Bar 221290007)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Viginia 22203
(703) 682-9320
kwest@ij.org
msoyfer@ij.org
clansinger@ij.org

Barton Morris Jr. (P54701)
LAW OFFICES OF BARTON MORRIS
801 West Beaver Road, Suite 600
Troy, Michigan 48084
(248) 541-2600
barton@bartonmorris.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MELISA BELL, STEPHANIE WILSON, and ROBERT REEVES,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF WAYNE,<br><br>Defendant. | No. 5:20-cv-10288-JEL-EAS<br><br>District Judge Judith E. Levy<br><br>Magistrate Judge Elizabeth A. Stafford<br><br>**Oral Argument Requested** |

**COMBINED BRIEF IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents


Page

Index of Authorities ........ viii

Statement of Issues Presented ........ xvi

Controlling or Most Appropriate Authority ........ xvii

Introduction ........ 1

Counterstatement of Material Facts ........ 2

Wayne County's Vehicle Forfeiture Process ........ 2

Plaintiffs' Experiences ........ 9

Procedural History ........ 14

Standard of Review ........ 17

Argument ........ 18

I. Plaintiffs' claims are justicable ........ 19

A. Plaintiffs have standing to seek prospective relief, in addition to retrospective individual damages and declaratory relief ........ 19

B. Stephanie Wilson's damages claims are justicable for both seizures ........ 25

1. Stephanie's claims as to the Malibu remain live because there is no exhaustion requirement for claims brought under 42 U.S.C. § 1983 ........ 25

2. Stephanie's claims as to the Ion are not barred by res judicata ........ 27

II. The County's policies and practices of delaying the availability of forfeiture proceedings, and using threatened delay to coerce payment of redemption fees, violated Plaintiffs' due process rights ....................30

A. The County violated Plaintiffs' rights by seizing or retaining their cars without prior notice and a hearing ....................32

B. The County violated Plaintiffs' rights by delaying the initiation of forfeiture proceedings after the seizure of their cars ....................36

C. Applying the Speedy Trial Test, the County violated Robert's and Stephanie's rights by delaying their forfeiture proceeding....................41

1. The County has a policy and practice of delaying the initiation and resolution of forfeiture proceedings for months....................42

2. The County's application of its policies and practices of delay to Plaintiffs' forfeiture matters violated their due process rights ....................44

D. The County's grab-bag of arguments related to Robert's due process claim largely rehash arguments the Court has already rejected....................50

III. The County's seizure and retention of vehicles without probable cause violated Melisa's and Stephanie's Fourth Amendment rights ....................59

A. The County lacked probable cause for the initial seizures of Melisa's and Stephanie's cars, and for the continued seizures of those cars solely to secure payment of fees ....................61

1. The County lacked probable cause to seize Melisa's car ....................61

2. The County lacked probable cause for the initial seizures of Stephanie's cars ....................63

3. The County's continued seizures of Melisa's and Stephanie's cars to coerce payment of fines and fees were unreasonable ....................65

B. The County's seizures of Plaintiffs' vehicles are consistent with its policies and practices of seizing vehicles without probable cause and retaining them to coerce payment of redemption fee ....................68

IV. The County's forfeiture of Stephanie's Chevrolet Malibu is an excessive fine in violation of the Eighth Amendment ....................70

V. The County's policy and practice of denying procedural safeguards to innocent owners before the initiation of forfeiture proceedings violated Melisa's and Stephanie's due process rights ....................74

A. The County deprived Melisa and Stephanie of their property despite their innocence, in violation of their due process rights ....................74

B. The County's arguments to the contrary are meritless ....................77

VI. The County's arbitrary and irrational seize-and-ransom policy violated Plaintiffs' Fourteenth Amendment rights ....................80

A. The County's seize-and-ransom policy shocks the conscience ....................80

B. The County's arguments to the contrary are meritless ....................84

Conclusion ....................88

# Index of Authorities

**Page(s)**

## Cases


*Adair v. Michigan*,
680 N.W.2d 386 (Mich. 2004)....................................................................28

*Allen Park Retirees Ass'n, Inc. v. City of Allen Park*,
942 N.W.2d 618 (Mich. Ct. App. 2019)......................................................29

*Alsaada v. City of Columbus*,
536 F. Supp. 3d 216 (S.D. Ohio 2021)........................................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................17

*Arrington-Bey v. City of Bedford Heights*,
858 F.3d 988 (6th Cir. 2017)...............................................................79, 80

*Asinor v. District of Columbia*,
111 F.4th 1249 (D.C. Cir. 2024).........................................................60, 84

*Baraga County v. State Tax Comm'n*,
645 N.W.2d 13 (Mich. 2002)......................................................................28

*Barker v. Wingo*,
407 U.S. 514 (1972)..............................................................................46, 47

*Barry v. Corrigan*,
79 F. Supp. 3d 712 (E.D. Mich. 2015) (Levy, J.),
*aff'd*, 834 F.3d 706 (6th Cir. 2016)......................................................23, 24

*Bd. of Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997)..............................................................................40, 45

*Beal v. Vanalstine*,
2024 WL 5482662 (6th Cir. Nov. 20, 2024).................................................85

*Bell v. County of Wayne*,
2025 WL 819120 (E.D. Mich. Mar. 13, 2025)........ 41, 45, 46, 48, 49, 50, 55, 56

*Bennis v. Michigan*,
516 U.S. 442 (1996)........................................................................68, 74, 77

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002) ......................................................................29

*Bowles v. Sabree*,
2024 WL 1550833 (6th Cir. Apr. 10, 2024)................................................57, 58

*Brewster v. Beck*,
859 F.3d 1194 (9th Cir. 2017) .......................................................60, 61, 65, 67

*Brown v. Romanowski*,
845 F.3d 703 (6th Cir. 2017) ......................................................................46

*C.J. Hendry Co. v. Moore*,
318 U.S. 133 (1943).......................................................................................34

*Cady v. Arenac County*,
574 F.3d 334 (6th Cir. 2009) ......................................................................57

*Calero-Toledo v. Pearson Yacht Leasing Co.*,
416 U.S. 663 (1974)........................................................................33, 34, 35

*Deshawn E. ex rel. Charlotte E. v. Safir*,
156 F.3d 340 (2d Cir. 1998) .......................................................................20

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).........................................................................................21

*Cleveland Branch, NAACP v. City of Parma*,
263 F.3d 513 (6th Cir. 2001) ......................................................................19

*Constantino v. Mich. Dep't of State Police*,
707 F. Supp. 2d 724 (W.D. Mich. 2010)....................................................27, 28

*Cremeans v. Taczak*,
2023 WL 5206437 (6th Cir. Aug. 14, 2023) ....................................................45

*Culley v. Marshall*,
601 U.S. 377 (2024)............................................... 17, 31, 32, 33, 36, 37, 42, 85

*DCCC v. Kosinski*,
614 F. Supp. 3d 20, 39 (S.D.N.Y. 2022) ....................................................22

*Derrick v. City of Detroit*,
425 N.W.2d 154 (Mich. Ct. App. 1988)....................................................50

*Dibrell v. City of Knoxville*,
984 F.3d 1156 (6th Cir. 2021) ....................................................................31

*Ernst v. Rising*,
427 F.3d 351 (6th Cir. 2005) (en banc) .....................................................57

*Est. of Johnson v. Meisner*,
2021 WL 3680479 (E.D. Mich. Aug. 18, 2021)..........................................30

*Florida v. White*,
526 U.S. 559 (1999)....................................................................................68

*In re Forfeiture of 2006 Saturn Ion*,
2024 WL 3503577 (Mich. July 22, 2024) ..........................................passim

*In re Forfeiture of One 1983 Cadillac*,
439 N.W.2d 346 (Mich. Ct. App. 1989).....................................40, 43, 47

*Fowler v. Benson*,
924 F.3d 247 (6th Cir. 2019) ....................................................................22

*Fox v. Saginaw County*,
2022 WL 523023 (6th Cir. Feb. 22, 2022) ..................................57, 58, 59

*Fox v. Van Oosterum*,
176 F.3d 342 (6th Cir. 1999) ...........................................................60, 61

*FRC Int'l, Inc. v. United States*,
278 F.3d 641 (6th Cir. 2002) ....................................................................50

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....................................................................................22

*Fuller v. Mich. Dep't of Transp.*,
580 F. App'x 416 (6th Cir. 2014) ..........................................................8, 9

*Gragg v. Ky. Cabinet for Workforce Dev.*,
289 F.3d 958 (6th Cir. 2002) ....................57

*Graham v. Connor*,
490 U.S. 386 (1989)....................84

*Gregory v. City of Louisville*,
444 F.3d 725 (6th Cir. 2006) ....................68

*Hagans v. Franklin Cnty. Sheriff's Off.*,
695 F.3d 505 (6th Cir. 2012) ....................79

*Hall v. Meisner*,
2022 WL 7478163 (6th Cir. Oct. 13, 2022) ....................30

*Hamann v. Charter Twp. of Van Buren*,
2021 WL 5312638 (E.D. Mich. Nov. 15, 2021)....................39

*Harrell v. City of New York*,
138 F. Supp. 3d 479 (S.D.N.Y. 2015) ....................66

*Ingram v. Wayne County*,
81 F.4th 603 (6th Cir. 2023) ....................passim

*Jones v. Shore's Ex'r*,
14 U.S. (1 Wheat.) 462 (1816) ....................37

*Kerr ex rel. Kerr v. Comm'r of Soc. Sec.*,
874 F.3d 926 (6th Cir. 2017) ....................19, 20, 23

*Kircher v. City of Ypsilanti*,
809 F. App'x 284 (6th Cir. 2020) ....................29

*Ledford v. Comm'r of Soc. Sec.*,
2022 WL 866405 (E.D. Mich. Mar. 23, 2022) (Levy, J.) ....................42

*LG Sciences, LLC v. Putz*,
511 F. App'x 516 (6th Cir. 2013) ....................30

*Lopez v. Massachusetts*,
588 F.3d 69 (1st Cir. 2009)....................57

*Maben v. Thelen*,
887 F.3d 252 (6th Cir. 2018) ....................................................................27

*Mathews v. Eldridge*,
424 U.S. 319 (1976)....................................................................................38

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
465 U.S. 75 (1984)......................................................................................29

*Mobley v. City of Detroit*,
938 F. Supp. 2d 669 (E.D. Mich. 2012) ...............................................63, 65

*Morgan v. Fairfield County*,
903 F.3d 553 (6th Cir. 2018) ...............................................................44, 45

*MV v. Lyon*,
2016 WL 4537811 (E.D. Mich. Aug. 31, 2016)............................................27

*N. Ins. Co. of N.Y. v. Chatham County*,
547 U.S. 189 (2006).............................................................................55, 56

*Nummer v. Treasury Dep't*,
533 N.W.2d 250 (Mich. 1995)....................................................................27

*The Palmyra*,
25 U.S. (12 Wheat.) 1, 15 (1827) ...............................................................34

*Paterek v. Village of Armada*,
801 F.3d 630 (6th Cir. 2015) ......................................................................81

*Patsy v. Bd. of Regents*,
457 U.S. 496 (1982)....................................................................................26

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) ......................................................................56

*Redd v. Sowders*,
809 F.2d 1266 (6th Cir. 1987) ....................................................................46

*Reed v. Presque Isle County*,
702 F. Supp. 3d 553 (E.D. Mich. 2023) ........................................65, 66, 66

*Ross v. Duggan*,
402 F.3d 575 (6th Cir. 2004) ....................................................................72, 73

*Schulkers v. Kammer*,
367 F. Supp. 3d 626 (E.D. Ky. 2019) ..............................................................78

*SEC v. Jarkesy*,
603 U.S. 109 (2024)..........................................................................................35

*Shandor v. City of Eastpointe*,
2021 WL 4775190 (6th Cir. Oct. 13, 2021) ......................................................79

*Sibron v. New York*,
392 U.S. 40 (1968).............................................................................................78

*State v. Timbs*,
169 N.E.3d 361 (Ind. 2021) ..............................................................................71

*Sumpter v. Wayne County*,
868 F.3d 473 (6th Cir. 2017) ............................................................................19

*Timbs v. Indiana*,
586 U.S. 146 (2019)...........................................................................................71

*United States v. $8,850*,
461 U.S. 555 (1983).............................................................................41, 42, 46

*United States v. Bajakajian*,
524 U.S. 321 (1998).............................................................................70, 71, 73

*United States v. Del Rosario-Acosta*,
968 F.3d 123 (1st Cir. 2020)..............................................................................65

*United States v. Harvel*,
115 F.4th 714 (6th Cir. 2024),
*cert. denied,* 2025 WL 889192 (U.S. Mar. 24, 2025)........................................37

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993).....................................................................32, 33, 35, 85

*United States v. Von Neumann*,
474 U.S. 242 (1986)...................................................................................33, 85

*Univ. of Tenn. v. Elliott*,
478 U.S. 788 (1986)....................26

*Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*,
107 F.3d 1220 (6th Cir. 1997)....................81

*VanDuinen v. State*,
2023 WL 2146609 (Mich. Ct. App. Feb. 21, 2023)....................51

**Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 3....................34

U.S. Const. art. I, § 10, cl. 1....................34

U.S. Const. art. III, § 3, cl. 2....................34

**Statutes**

Collections Act of 1789 § 36, 1 Stat. 29....................37

Collections Act of 1799 § 89, 1 Stat. 627....................37

MCL
§ 333.7521(1)(d)....................63, 64
§ 333.7521(1)(f)....................79
§ 333.7521(f)....................64
§ 333.7523....................79
§ 600.3801(1)(c)....................24
§ 600.3815(3)....................40, 43
§ 600.4703(5)....................50
§ 600.4705(2)(a)....................52
§ 600.4705(4)....................51, 52
§ 600.4706....................50
§ 600.4706(1)....................51
§ 600.4706(2)....................51, 55, 58
§ 600.4707(4)....................40, 43, 58

**Rules**

Fed. R. Civ. P. 8(c)(1)....................26

Fed. R. Civ. P. 37(c)(1)....................57

Fed. R. Civ. P. 56(a)........................................................................................17

**Other Authorities**

Kevin Arlyck, *The Founders' Forfeiture*, 119 Colum. L. Rev. 1449, 1466 (2019)........................................................................................34

Oral Argument, *Ingram v. County of Wayne*, No. 22-1262 (6th Cir. May 4, 2023)........................................................................................53

Press Release, Mich. Dep't of Att'y Gen., *Alpena Man Sentenced for Making False Claims Against MSP Troopers* (Aug. 19, 2024), https://bit.ly/3YM5ov3 ........................................................................................51

The Declaration of Independence (U.S. 1776) ........................................................34

Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547 (1999) ........................................................................................33

U.S. Dep't of Transp., Fed. Highway Admin., Highway Statistics Series: State Motor-Vehicle Registrations – 2022 (Nov. 2023), https://www.fhwa.dot.gov/policyinformation/statistics/2022/mv1.cfm/mv1.pdf........................................................................................35

## Statement of Issues Presented

1. Did the County's policy and practice of delaying forfeiture proceedings violate Plaintiffs' Fourteenth Amendment due process rights? **(Count IV)**

2. Did the County's policy and practice of seizing and retaining vehicles without probable cause violate Melisa's and Stephanie's Fourth Amendment rights? **(Count I)**

3. Was the County's forfeiture of Stephanie's Chevrolet Malibu, consistent with its policy and practice of forfeiting the cars of innocent people, an excessive fine in violation of the Eighth Amendment? **(Count II)**

4. Did the County's policy and practice of denying procedural safeguards to innocent owners prior to its initiation of forfeiture proceedings violate Melisa's and Stephanie's Fourteenth Amendment due process rights? **(Count III)**

5. Did the County's arbitrary and irrational seize-and-ransom policy, imposed prior to the initiation of any forfeiture action, violate Melisa's and Stephanie's Fourteenth Amendment due process rights? **(Count V)**

## Controlling or Most Appropriate Authority

Plaintiffs primarily rely upon:

*Alsaada v. City of Columbus*, 536 F. Supp. 3d 216 (S.D. Ohio 2021)

*Barry v. Corrigan*, 79 F. Supp. 3d 712 (E.D. Mich. 2015) (Levy, J.), *aff'd*, 834 F.3d 706 (6th Cir. 2016)

*Beal v. Vanalstine*, 2024 WL 5482662 (6th Cir. Nov. 20, 2024)

*Bennis v. Michigan*, 516 U.S. 442 (1996)

*Constantino v. Mich. Dep't of State Police*, 707 F. Supp. 2d 724 (W.D. Mich. 2010)

*Culley v. Marshall*, 601 U.S. 377 (2024)

*Derrick v. City of Detroit*, 425 N.W.2d 154 (Mich. Ct. App. 1988)

*Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999)

*Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017)

*MV v. Lyon*, 2016 WL 4537811 (E.D. Mich. Aug. 31, 2016)

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007)

*Timbs v. Indiana*, 586 U.S. 155 (2019)

*United States v. Bajakajian*, 524 U.S. 321 (1998)

## INTRODUCTION

"[Wayne] County's scheme is simply a money-making venture—one most often used to extort money from those who can least afford it." *Ingram v. Wayne County*, 81 F.4th 603, 623 (6th Cir. 2023) (Thapar, J., concurring). Plaintiffs Melisa Ingram, Stephanie Wilson, and Robert Reeves are all victims of this money-making scheme. Each had a car seized for forfeiture in Wayne County (twice, in Melisa's and Stephanie's cases), and each endured the County's unconstitutional vehicle forfeiture policies and practices. Undisputed evidence has now established that those policies and practices exist, as Plaintiffs alleged five years ago in their Amended Complaint. ECF No. 12. For instance:

- The County has routinely seized vehicles for forfeiture without probable cause to believe the owner—or, in some cases, anyone—committed a forfeitable offense.

- The County would immediately return cars to those who paid steep redemption fees (ranging from $900 to $2,700). Otherwise, its policy has been to tell them their only options are to forfeit their cars without a fight or to wait months for the opportunity to get into court.

- The County has denied innocent owners any way of asserting their innocence, or regaining their cars pending a forfeiture hearing, absent the payment of fees.

- The County has delayed forfeiture proceedings by not even filing forfeiture cases, on average, until more than *four months* after the initial seizure. It has further delayed claimants' hearings by frequently requesting mandatory, repeated pre-trial conferences.

- Throughout this process, claimants have faced an impossible choice: make do without their car indefinitely or pay up to get it back now.

Rather than deny the existence of these policies and practices, the County either recharacterizes them as "voluntary settlement arrangement[s]," ECF No. 118, PageID.3004, or ducks the merits of Plaintiffs' claims by invoking a variety of purported procedural obstacles. Those arguments are unavailing, and many have already been rejected by the Court during the past five years of litigation. Plaintiffs have waited long enough for justice. Considering the undisputed evidence now before it, the Court should grant their motion for summary judgment.

## COUNTERSTATEMENT OF MATERIAL FACTS

### Wayne County's Vehicle Forfeiture Process

Wayne County has operated a vehicle forfeiture machine for years, pressuring accused and innocent owners alike to pay hefty redemption fees or lose their car—for months or permanently. There are three stages in the process: (i) the seizure stage; (ii) the Vehicle Seizure Unit ("VSU") stage; and (iii) the forfeiture stage.

#### STAGE 1: The County and the police departments with which it works have seized cars, often without probable cause or criminal charges.

The process begins when the Sheriff's Office[2] or another agency seizes a car without prior judicial process. *See* ECF No. 106-17, PageID.1806. The County's

[2] "Sheriff's Office" refers to the Wayne County Sheriff's Office and "Prosecutor's Office" refers to the Wayne County Prosecutor's Office.

30(b)(6) designee acknowledged that the County has often "seize[d] vehicles for forfeiture because they're in areas known for drug dealing" or "for prostitution activity." ECF No. 106-1, PageID.1655 (Tr. 74:16–23). He also testified that it has been policy to seize cars when the owners drive them to buy drugs for personal use, or when owners have drugs in their cars. ECF No. 109-2, PageID.1987–88 (Tr. 72:24–73:23, 74:24–75:11).

Typically, these seizures have occurred even where no one was ever convicted, charged with a crime, or even arrested. *See id.*, PageID.1975, 1979 (Tr. 25:8–26:25, 41:21–23); *id.*, PageID.2025 (Tr. 53:3–54:3) (Tanner testifying that it was "common" to seize vehicles under the nuisance abatement statute without arresting anyone, and that she personally did so in over 100 instances during her time working in vehicle seizures); *id.*, PageID.2053 (Tr. 27:7–17) (Rivers testifying that he made arrests in less than half of the cases in which he has seized cars). In the County's view, it has the right to indefinitely impound people's cars without having to go to the trouble of charging or even arresting the driver. *See id.*, PageID.1976 (Tr. 26:8–25). Nor does it matter whether the person who committed the alleged offense owned the car.[3] *See id.*, PageID.2028 (Tr. 62:8–25) (Tanner testifying that

[3] Following legislative amendments, the County can no longer seize cars in this manner under the Controlled Substances Act. But it can forfeit the same vehicles under the Nuisance Abatement statute, which lacks the same protections. *See generally* ECF No. 112, PageID.2400 (discussing the County's policies in response to the legislative amendment).

she "wouldn't need to know" who owned a vehicle in "prostitution cases"); *id.*, PageID.2073, 2083 (Tr. 107:4–7, 146:16–19) (Rivers testifying that he seized Stephanie's car, with the knowledge that she "was the registered owner of the vehicle," even though he had no "reason to believe . . . that [Stephanie] had bought any narcotics" and did not "find any evidence that [Stephanie] had bought drugs").

After seizing a car, an officer hands the driver a form from the Prosecutor's Office, entitled "Notice of Seizure and Intent to Forfeit." *See* ECF No. 106-3, PageID.1669–75. The form advises the owner to contact the Prosecutor's Office—not the seizing agency, *see id.*—after three business days, *see, e.g.*, ECF No. 12, PageID.301, 303, 305, 307; ECF No. 106-2, PageID.1660 (Tr. 96:9–20). So, as a matter of policy, all owners of seized cars have been prevented from getting them back for at least three days. *See, e.g.*, ECF No. 21-3, PageID.662 (¶ 18). After a seizure, all further communications run through the Prosecutor's Office. ECF No. 106-5, PageID.1705–06 (Tr. 55:19–56:8).

**STAGE 2: The County has kept cars impounded indefinitely unless their owners paid coercive "redemption fees."**

Following the seizure stage, the process is turned over to the Prosecutor's Office. ECF No. 109-2, PageID.2145 (Tr. 30:11–15). Seizing agencies referred cases to the VSU, a Prosecutor's Office unit that operated a window at the courthouse to

deal with owners of seized cars.[4, 5] *Id.*, PageID.2145 (Tr. 30:16–31:13). The Prosecutor's Office has given agencies three business days to submit seizure paperwork, ECF No. 106-4, PageID.1686, but they "[n]ot infrequently" have taken longer, *see* ECF No. 106-6, PageID.1725 (Tr. 168:22–24); *cf.* ECF No. 21-3, PageID.662 ("Four days after the seizure," the VSU "could not find [Stephanie's] paperwork").[6]

The VSU was staffed by clerical employees who would give claimants three options: redeem, relinquish title, or contest. ECF No. 106-4, PageID.1686; ECF No. 106-5, PageID.1704, 1707 (Tr. 52:13–23, 58:2–5). No other options have been available, even for claimants who are not in the car when it was seized. *See id.*, PageID.1707, 1710, 1711 (Tr. 58:6–7, 68:19–24, 69:3–10). The County's 30(b)(6) designee testified that VSU employees were not authorized to deviate from these

[4] Wayne County has "suspended" the VSU and its forfeiture program "until further notice," pending the outcome of this litigation. As discussed in Plaintiffs' Amended Motion for Class Certification, the County has not suggested it will not resume them, nor has it claimed voluntary cessation. ECF No. 106, PageID.1624 n.13.

[5] A subset of vehicle forfeiture cases, including those like Robert's where the seizure was pursuant to the Omnibus Forfeiture Act, have been referred directly to the Asset Forfeiture Unit and assigned to prosecutors. *See* ECF No. 109-2, PageID.2152 (Tr. 59:1–18). But most vehicle seizures—including all those related to prostitution cases, "drug nuisance cases," and Controlled Substances Act cases—were referred to the VSU. *See id.*, PageID.2151–52 (Tr. 56:20–58:4).

[6] The VSU department manager testified that these policies have been consistent over time, *see* ECF No. 109-2, PageID.2249, 2252, 2266 (Tr. 7:22–8:3, 18:4–25, 76:13–18), and that she expects her subordinates to follow them, *id.*, PageID.2257 (Tr. 38:21–39:2).

three options because "they're not a prosecutor who's been trained to the law and the facts of the case-by-case basis according to that law." ECF No. 109-2, PageID.2182 (Tr. 179:14–180:3, 180:18–25).

If the claimant wants his or her car back immediately, the only option has been to "redeem" it by paying a fee. *See* ECF No. 106-6, PageID.1721, 1726, 1727 (Tr. 31:10–12, 178:3–5, 180:9–11); ECF No. 106-5, PageID.1707–08 (Tr. 58:25–59:5); ECF No. 106-7, PageID.1734 (Tr. 50:18–51:1). The Prosecutor's Office set the fee amounts "in conjunction with agreement with the police agencies across Wayne County." ECF No. 106-6, PageID.1728 (Tr. 181:6–16). Redemption fees have ranged from $900 to $2,700 and are "**NON-NEGOTIABLE**." ECF No.106-19, PageID.1841. Since 2018, Wayne County has collected over $3 million in fees based on *just* the Sheriff's Office's seizures. *See* ECF No.106-8, PageID.1742–43. Not everyone can pay the redemption fee. Since 2018, hundreds of claimants have relinquished title. If there is other property in the car and the claimant cannot pay, the only way to get it back quickly has been to relinquish. ECF No. 106-4, PageID.1690; ECF No. 106-5, PageID.1712 (Tr. 73:18–22).

Claimants have had just 20 or 30 days to pick between the three options presented by VSU employees, reduced by the three business days Wayne County has

demanded they wait. ECF No. 106-4, PageID.1690. The VSU was only open for limited hours at times when many people are at work.[7] ECF No. 106-4, PageID.1683.

It has been the VSU's policy and practice to inform claimants that "after they contest the seizure of their car, a lawsuit would be filed within four months from the date of seizure." ECF No. 109-2, PageID.2264 (Tr. 66:10–15). A case would not move out of the VSU until someone contested the seizure. *Id.*, PageID.2152 (Tr. 58:5–9). At that point, the case would be sent to the Asset Forfeiture Unit in the Prosecutor's Office for assignment to a prosecutor. *Id.* If too many claimants contest, the VSU's policy manual states that the responsible employee will "receive additional training in interviewing claimants from the Department Supervisor." ECF No. 106-4, PageID.1689.

**STAGE 3: Wayne County has delayed forfeiture proceedings, putting pressure on car owners to settle or give up.**

Few claimants have made it past the VSU. Most pay or give up. Despite the thousands of cars seized and millions of dollars in fees collected, the Prosecutor's Office has filed just 138 forfeiture cases for cars since 2018. *See* ECF No. 106-8, PageID.1744.

Even then, most claimants have had no way to get their cars back quickly. The County's policy has let it take up to *four months*, *see* ECF No. 106-4, PageID.1689,

[7] These hours often fluctuated due to a lack of staff. *See* ECF No. 106-7, PageID.1736 (Tr. 99:1–14).

and its practice has often been to wait much longer. As Plaintiffs previously showed, its produced data shows that, between 2017 and 2020, the County took 119 days on average to file a case after the date of seizure. *See* ECF No. 106-9, PageID.1757–65.[8] Later produced data shows the County actually got *worse* in recent years. Between 2017 and 2023, it took 124 days on average. Ex. 1. All the while, claimants have had to live without their cars. *See* ECF No. 106-2, PageID.1661 (Tr. 103:12–24); ECF No. 106-5, PageID.1714–15 (Tr. 110:19–111:11).

Even the filing of a case has not gotten claimants their day in court. The County has routinely delayed through serial motions for mandatory "pre-trial conferences," where no judge has been present and prosecutors have pressured claimants to pay. *See* ECF No. 21-3, PageID.666–67 (¶¶ 43–48); ECF No. 106-6, PageID.1723–24 (Tr. 154:24–155:1); ECF No. 106-12, PageID.1783–84 (Tr. 50:19–24, 53:4–13); ECF No. 106-13, PageID.1788. In the 236 forfeiture cases Wayne County filed between 2017 and 2023, *see* ECF No. 106-11, PageID.1774–80, there

[8] Wayne County responded to an interrogatory asking for, among other things, information regarding its filing timelines by producing a list of 236 unique docket numbers. *See* ECF No. 106-10, PageID.1768–69; ECF No. 106-11, PageID.1774–80. So, Plaintiffs compiled the information themselves, as explained in the declaration attached to the exhibit.

This average time to filing was calculated by filtering to entries with a "Date of Seizure," subtracting that from the "Date Filed," and calculating an average in Microsoft Excel. Plaintiffs will convert this summary into admissible form by trial. *See Fuller v. Mich. Dep't of Transp.*, 580 F. App'x 416, 426 (6th Cir. 2014) (considering summary chart as evidence in summary judgment context).

were two or more settlement conferences in 82 (roughly 35 percent), *see id*. It took the court an additional 104 days on average to close those cases, compared to the average for all cases (396 vs. 292 days). *See id.*[9]

**Plaintiffs' Experiences**

***Melisa Ingram*.** As described by a Wayne County Sheriff's Deputy, Melisa's ex-boyfriend, Edland Turner, was "a nuisance to everything"—including Melisa herself. ECF No. 106-14, PageID.1794–95 (Tr. 172:8–11, 173:1–3). "[H]e put Melisa in jail, beat her up," and "it took a lot for Melisa and Edland to separate." *Id.*, PageID.1795 (Tr. 173:3–12). It was "a bad situation." *Id.,* PageID.1793 (Tr. 170:1).

Still, Melisa initially trusted Edland. After he lost his job, Melisa let him use her car to look for a new one. ECF No. 21-2, PageID.647 (¶ 4). Without Melisa's knowledge, he used it to pick up prostitutes. *Id.*, PageID.648 (¶ 6). The County seized the car under the Nuisance Abatement statute. ECF No. 12-2, PageID.301. But Edland was never arrested or charged. ECF No. 21-2, PageID.648 (¶ 7). Everything about this seizure was consistent with Wayne County's policies. ECF No. 106-15, PageID.1799–1800 (Tr. 57:3–13, 58:2–7).

[9] These numbers were calculated by filtering to entries with a "Date of Seizure," subtracting that from the "Date Closed," and calculating an average in Microsoft Excel for (i) all cases and (ii) cases where the number in the "Settlement Conferences" column is greater than one. Plaintiffs will convert these summaries into admissible form by trial. *See Fuller*, 580 F. App'x at 426.

Melisa went to the VSU, where the clerks told her the only way to get her car back quickly was to pay a $900 redemption fee. ECF No. 21-2, PageID.649–50 (¶¶ 16–20). They pressured her to pay, warning it would take four months to get into court. *Id.*, PageID.649 (¶¶ 17–19); ECF No. 118-2, PageID.3061 (Tr. 93:11–22).[10] Unable to live without a car, she folded and paid the fee, plus towing and storage. ECF 21-2, PageID.649–50 (¶¶ 20–21).

In June 2019, Edland again borrowed Melisa's car, supposedly to go to a barbeque. *Id.*, PageID.650 (¶ 24). Once again, Wayne County seized the car. *Id.*, PageID.650, 652 (¶¶ 24, 28–29). Once again, Edland was never arrested or charged. *Id.*, PageID.651 (¶ 27). This time, Melisa could not afford the even larger $1,800 redemption fee. *Id.*, PageID.652–53 (¶¶ 32–35). So, she waited nearly four months for Wayne County to file a forfeiture case. *See* ECF No. 106-12, PageID.1785 (Tr. 55:13–19). Meanwhile, she surrendered her car in bankruptcy proceedings. ECF No. 21-2, PageID.653, 655–56 (¶¶ 36–37, 50). Still, Wayne County forced her to attend

[10] The County notes that Melisa initially did not remember this conversation with the VSU employee at her deposition—which took place over five years later—but she then refreshed her recollection. ECF No. 118, PageID.2982 n.3. The County goes on to state that several County employees testified that VSU staff "did not, and would not, tell claimants that it would take months for a *hearing*." *Id.* (emphasis added). But the County has never identified or produced the employees who spoke to Melisa, so her account is undisputed. And it is consistent with the VSU's official, written policy to "[c]learly communicate" to claimants that "after they contest the seizure of their car, *a lawsuit would be filed* within four months from the date of seizure." ECF No. 109-2, PageID.2264 (Tr. 66:2–15) (emphasis added).

a "pre-trial conference" but refused to speak with her because she had filed an answer. *Id.*, PageID.654 (¶¶ 42–44). Months later, her attorney finally persuaded Wayne County to dismiss the case and let Melisa get her belongings from the car. *Id.*, PageID.654–55 (¶¶ 45–48).

***Stephanie Wilson.*** Stephanie is a single mother of a chronically ill child. ECF No. 21-3, PageID.659, 662–63 (¶¶ 4, 23). In 2019, her son's father, Malcolm, was homeless and addicted to heroin. *Id.*, PageID.660 (¶¶ 6, 9). Stephanie occasionally gave Malcolm rides to his mother's house. *Id.*, PageID.660 (¶¶ 7–8).

In January 2019, Stephanie was giving Malcolm a ride when she was stopped by officers with the Sheriff's Office.[11] They found no drugs, guns, cash, or paraphernalia. *Id.*, PageID.661 (¶¶ 12–13); ECF No. 106-14, PageID.1791–92 (Tr. 111:22–112:9). No one was arrested. ECF No. 21-3, PageID.661 (¶ 14). The officers seized her car anyway and told her to call the VSU. *Id.*, PageID.661 (¶ 15).

She called the next day, but the clerks told her to wait three business days. *Id.*, PageID.662 (¶ 18). Four days later, her father took off work, and they went to the VSU. *Id.*, PageID.662 (¶ 19). But the VSU still did not have her paperwork. *Id.*,

[11] There are factual disputes about the circumstances of and reasons for this stop, including about many of the police report details included in the County's Statement of Material Facts. *Compare, e.g.*, ECF No. 118, PageID.2983 ("Wilson admitted that she drove Smith to the drug house . . . "), *with* ECF No. 118-4, PageID.3097–98 (Tr. 12:23–13:9) (Stephanie testifying that she went to pick up Malcolm when he called to ask for a ride to his mother's house).

PageID.662 (¶ 20). When she came back two weeks later, they told her it was too late. *Id.*, PageID.662 (¶ 21). Unaware of other options, she reluctantly agreed to relinquish the car. *Id.*, PageID.662 (¶ 22). After more than a month, she found a 2006 Saturn Ion she could afford. *Id.*, PageID.662–63 (¶ 23).

In June 2019, Stephanie was again giving Malcolm a ride when she was once more stopped by officers with the Sheriff's Office.[12] Police found empty syringes on Malcolm—but no drugs. *Id.*, PageID.663 (¶¶ 28–29). They seized her Saturn Ion anyway. *Id.*, PageID.664–65 (¶¶ 32–33). Officer Rivers testified that he seized Stephanie's car because he believed he saw "a hand-to-hand drug transaction" through the passenger window and because Stephanie allegedly told him that "she transported Smith to the location" to buy heroin. ECF No. 109-2, PageID.2078 (Tr. 129:15–22), PageID.2098.[13]

This time, Stephanie contested. ECF No. 21-3, PageID.665 (¶ 39). Wayne County did not file a complaint until nearly four months later. *Id.*, PageID.666 (¶ 43). Even then, prosecutors got routine orders compelling Stephanie to attend pre-

[12] There are again factual disputes as to the circumstances of this stop, which the County again ignores in its Statement of Material Facts. *Compare* ECF No. 118, PageID.2984 ("Wilson admitted that she drove Smith to the known drug house because 'he was getting sick without [heroin] and I bring him down here once a day.'"), *with* ECF No. 21-3, PageID.663 (¶ 24) (Stephanie's declaration stating that she had again gone to pick up Malcolm to give him a ride to his mother's house).

[13] Stephanie disputes Officer Rivers's statements, but not that he gave these as the official reasons for the stop in his reports.

trial conferences. *Id.*, PageID.666–67 (¶¶ 43, 46). The prosecutor's own notes reflect that she pressured Stephanie to pay during this time by threatening to seek a default judgment since Stephanie—then pro se—had not filed an answer. *See* ECF No. 106-16, PageID.1803.

The tide turned when Stephanie found a lawyer. Even crediting Officer Rivers's account that Stephanie drove Malcolm to buy drugs, the trial court held that there was no probable cause based on an alleged "hand-to-hand transaction" alone. *In re Forfeiture of 2006 Saturn Ion*, 2024 WL 3503577, at *2 (Mich. July 22, 2024). The Michigan Supreme Court affirmed, holding that Stephanie's car was not forfeitable because, even by Officer Rivers's account, it was never used to transport drugs for sale or receipt. *See id.* at *6.

***Robert Reeves.*** Robert spent thousands of dollars improving his 1991 Chevrolet Camaro. ECF No. 106-22, PageID.1866 (¶ 3). In July 2019, an on-and-off acquaintance, Javone Williams, asked Robert if he knew how to operate a skid steer. *Id.*, PageID.1867 (¶ 5). Robert worked in construction, so he did. *Id*. He drove to meet Williams and, after that, to a gas station, where officers surrounded him. *Id.* (¶ 6). They told him Williams had stolen the skid steer and seized Robert's car, cash, and cellphones. *Id*. (¶¶ 6–8). Robert was given a "Notice of Seizure and Intent to Forfeit" that told him he was "not required to do anything further" to contest the seizure, but that he could call the Prosecutor's Office "to further discuss the property

seizure and civil forfeiture matter." *Id.*, PageID.1867–68 (¶¶ 9–10); ECF No. 19-2, PageID.455.

Robert called repeatedly, but either could not get through or could not get answers. ECF No. 106-22, PageID.1868 (¶¶ 11–12). He hired an attorney, but the attorney also struggled. *Id.* (¶ 16). For over six months, Wayne County neither filed a forfeiture case nor returned his property, *id.*, PageID.1869 (¶ 17)—even though it had received all the paperwork it needed to open a forfeiture matter by August 2019, *see* ECF No. 106-5, PageID.1713 (Tr. 108:4–21). Out of options, Robert filed this case. *See* ECF No. 1. The next day, the County sent a letter to the Michigan State Police, directing them to return his property. *See* ECF No. 106-18, PageID.1815. After requesting and receiving a new letter to fix a typo, the Michigan State Police released Robert's car. *Id.*, PageID.1814.

## PROCEDURAL HISTORY

Plaintiffs filed this civil rights case challenging the County's vehicle forfeiture policies and practices over five years ago, on February 4, 2020. ECF No. 1. The three named plaintiffs, Melisa Ingram, Stephanie Wilson, and Robert Reeves, each had a vehicle (or vehicles) seized and held by Wayne County. Each suffered constitutional violations throughout the protracted seizure and forfeiture process. Because of the widespread nature of the County's vehicle seizures and forfeitures, Plaintiffs filed

the case as a putative class action representing other vehicle owners who suffered through the same constitutionally deficient process.

Plaintiffs filed an Amended Complaint on May 11, 2020. ECF No. 12. In their Amended Complaint, Plaintiffs alleged the following constitutional violations[14]:

- **Count I (4th Amendment):** The County's initial seizures of vehicles without probable cause, and continued seizures of those vehicles until full payment of a redemption fee and towing and storage fees, violate the Fourth Amendment.
- **Count II (Excessive Fines):** The County's imposition of financial penalties without regard to a vehicle owner's guilt or innocence violates the Excessive Fines Clause of the Eighth Amendment.
- **Count III (14th Amendment Innocent Owner):** The County's imposition of financial penalties without regard to a vehicle owner's guilt or innocence violates the Due Process Clause of the Fourteenth Amendment.
- **Count IV (14th Amendment Timely Process):** The County's retention of cars without a prior hearing and its delay in initiating and litigating forfeiture proceedings violate the Due Process Clause of the Fourteenth Amendment.
- **Count V (14th Amendment Arbitrary and Irrational Fines):** The County imposes arbitrary and irrational fines, and irrationally conditions release of vehicles solely on payment of those fines, both in violation of the Due Process Clause of the Fourteenth Amendment.
- **Count VI (14th Amendment Inadequate Notice):** The County provides inadequate notice of vehicle seizures, and the attendant imposition of fees, in violation of the Due Process Clause to the Fourteenth Amendment.

[14] Plaintiffs have since moved for class certification on only Counts IV and V. ECF No. 106.

Plaintiffs requested both individual damages, *see* ECF No. 12, PageID.294–95, as well as class-wide declaratory and injunctive relief against the County's policies and practices, *id.*, PageID.296–98, for each of these claims.

The County filed motions to abstain, to stay, to dismiss, and for summary judgment. ECF Nos. 18, 19, 20. On September 30, 2021, the district court granted those motions in part and denied them in part. ECF No. 54. The following claims remained after that order:

- **Stephanie:** All claims survived as to the seizure of her 2002 Chevrolet Malibu because Defendant did not move to dismiss those claims. The Court abstained as to her claims regarding a pending forfeiture case in Michigan state court, which has since concluded. *See 2006 Saturn Ion*, 2024 WL 3503577. So, all of her claims survive.

- **Melisa:** As to the first seizure of her car, claims survived under Count I (Fourth Amendment), Count III (Fourteenth Amendment Innocent Owner), Count IV (Fourteenth Amendment Timely Hearing), and Count V (Fourteenth Amendment Arbitrary and Irrational Fines), and Count VII (Melisa's Individual Claim for Damages). The Court dismissed all of Melisa's claims related to the second seizure of her car based on her settlement with Defendant.

- **Robert:** Claims survived under Count IV (Fourteenth Amendment Timely Hearing) and Count IX (Robert's Individual Damages Claim).

The Sixth Circuit granted interlocutory appeal on the district court's denial of the County's motion to dismiss Count IV and issued a published opinion on August 31, 2023. *Ingram v. Wayne County*, 81 F.4th 603 (6th Cir. 2023). The Sixth Circuit ruled for Plaintiffs, holding the County violated Plaintiffs' due process rights by denying them a prompt, post-seizure hearing. The County filed a motion for

rehearing *en banc*, which the Sixth Circuit denied. That decision was later partially abrogated by the U.S. Supreme Court in *Culley v. Marshall*, 601 U.S. 377 (2024).

On August 30, 2024, the County filed a new motion to dismiss Robert's claims. ECF No. 100. The Court denied that motion, holding that Robert had standing and that the alternative due process theories asserted in Count IV survived the Supreme Court's decision in *Culley*. ECF No. 116, PageID.2863, 2874.

Plaintiffs filed an Amended Motion for Class Certification on December 23, 2024. ECF No. 106. That motion is now fully briefed. ECF Nos. 109, 112. The County moved for summary judgment on all claims on April 2, 2025. ECF No. 118.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat . . . summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## ARGUMENT

The County spends much of its 60-page brief luring Plaintiffs and the Court into a game of whack-a-mole by invoking various perceived procedural obstacles to Plaintiffs' claims, several of which have already been rejected by this Court. The

County's obfuscation makes the case appear more complicated than it is. Multiple claims remain, but the questions now before the Court are straightforward:

1. Do Plaintiffs present justiciable claims for relief?

2. Did the County's policies and practices of impounding cars and then delaying forfeiture proceedings violate Plaintiffs' Fourteenth Amendment due process rights?

3. Did the County's policy and practice of seizing and retaining vehicles without probable cause violate Melisa's and Stephanie's Fourth Amendment rights?

4. Was the County's forfeiture of Stephanie's Chevrolet Malibu, consistent with its policy and practice of forfeiting the cars of innocent people, an excessive fine in violation of the Eighth Amendment?

5. Did the County's policy and practice of denying procedural safeguards to innocent owners before its initiation of forfeiture proceedings violate Melisa's and Stephanie's Fourteenth Amendment due process rights?

6. Did the County's arbitrary and irrational seize-and-ransom policy, imposed prior to the filing of any forfeiture action, violate Melisa's and Stephanie's Fourteenth Amendment due process rights?

Each question is addressed in turn, and the undisputed facts support answering each in the affirmative.

## I. Plaintiffs' claims are justiciable.

The County makes several arguments that Plaintiffs' claims lack justiciability. It argues that all Plaintiffs lack standing to seek prospective relief. It also asserts that Stephanie lacks standing to (and is estopped from) bringing claims related to the

seizure of her Malibu and is precluded from bringing claims related to the seizure of her Ion. These arguments all fail.

**A. Plaintiffs have standing to seek prospective relief, in addition to retrospective individual damages and declaratory relief.**

The County argues that Plaintiffs lack standing to seek prospective relief. The County continues to conflate standing with mootness by relying on post-filing developments to argue that Plaintiffs lack standing. As Plaintiffs have noted, "standing applies at the sound of the starting gun, and mootness picks up the baton from there." *Sumpter v. Wayne County*, 868 F.3d 473, 490 (6th Cir. 2017); *see* ECF No. 112, PageID.2399. In other words, standing "seeks to ensure the plaintiff has a personal stake in the outcome of the controversy *at the outset of litigation*." *Sumpter*, 868 F.3d at 490 (emphasis added) (internal citations omitted). Mootness, on the other hand, goes to "whether [a] plaintiff continues to have an interest in the outcome of the litigation." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001). And though Plaintiffs must prove standing, the County has "[t]he heavy burden of demonstrating mootness." *Kerr ex rel. Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 931 (6th Cir. 2017) (citation omitted). Plaintiffs have standing to pursue their claims for prospective relief, and the County has not met its "heavy burden" to establish mootness. *See id.*

***Standing.*** Both Melisa and Stephanie suffered repeated injuries based on formal policies and widespread practices and therefore have standing to seek

prospective relief. *See, e.g.*, *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 256 (S.D. Ohio 2021) ("The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." (cleaned up)); *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344–45 (2d Cir. 1998) (holding that plaintiffs had standing to seek prospective relief where they challenged interrogation methods that were "officially endorsed policies" and "authorized by a written memorandum of understanding"). This Court previously held that Melisa properly pleaded standing for prospective relief for three reasons[15]:

> (1) [She] in the past has not and realistically in the future cannot prevent seizure by merely following the law, (2) [she] alleged systemic vehicle forfeiture practices by Wayne County, and (3) two out of three Plaintiffs—Ingram and Wilson—have had the vehicle seized and retained twice.

ECF No. 54, PageID.1003. The Court then explained that "[u]nder these facts, [Melisa] has fulfilled the elements of standing and shown that she is 'realistically threatened by a repetition of [her] experience.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

Each of these three factors now has undisputed evidentiary support. First, neither Melisa nor Stephanie had broken the law at the time of the seizures of their

[15] The Court's ruling concerned only Melisa's prospective relief claims because the County did not move to dismiss Stephanie's claims regarding the seizure of her Chevy Malibu and the Court abstained from Stephanie's claims regarding the seizure of her Saturn Ion. As explained above, however, the Court's reasoning applies with equal force to Stephanie's claims for prospective relief.

vehicles. ECF No. 21-2, PageID.648 (¶ 6), PageID.650 (¶ 24) (Edland was driving Melisa's cars when they were seized); ECF No. 109-2, PageID.2074 (Tr. 111:13–18), PageID.2078 (Tr. 129:15–22) (Officer Rivers testifying that he seized (1) Stephanie's Malibu because she "stated that she transported Mr. Smith to purchase narcotics" and (2) Stephanie's Ion because he allegedly saw a "a hand-to-hand drug transaction" through the passenger window and Stephanie allegedly admitted that "she transported Smith to the location" to buy heroin). Second, as explained, Plaintiffs have established the existence of "systemic vehicle forfeiture practices by Wayne County." *See* ECF No. 54, PageID.1003. Finally, the County does not dispute that it seized and retained both Stephanie's and Melisa's vehicles twice. Both have standing to pursue their claims for prospective relief.

The County argues that this Court erred when it previously held that Melisa had pleaded standing for prospective relief. The County reads the Court's reference to the County's "systemic vehicle forfeiture practices" as granting Melisa standing "because she seeks to use an alleged past injury to 'vindicate' the rights of unnamed other people who may be 'harmed' in the future." ECF No. 118, PageID.3032. But this misunderstands the Court's reasoning. As already alluded to, the Court correctly reasoned that the existence of "systemic vehicle forfeiture practices"—along with the fact that she had suffered repeated injuries and had not violated any laws—make it likely that Melisa *herself* may be subject to the same injury again. These are

precisely the kinds of cases that warrant prospective relief. *See, e.g.*, *DCCC v. Kosinski*, 614 F. Supp. 3d 20, 39 (S.D.N.Y. 2022) (collecting cases).

Stephanie and Robert both have standing to seek prospective relief for the additional reason that their injuries were ongoing when this case was filed. At that time, Stephanie's forfeiture case was still open and the County had not yet returned her car. *See* ECF No. 106, PageID.1621. And Robert was still waiting for the County to either initiate forfeiture proceedings or instruct police to release his car. *See id.*, PageID.1622–23. Those "ongoing violations" establish standing because a favorable decision would have achieved their desired outcome: the return of their vehicles on the date that matters: filing day. For on that date, Stephanie and Robert each were actively suffering the alleged injuries at the hands of the County. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000); *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019).

***Mootness.*** The County's argument that Plaintiffs lack standing for prospective relief is based primarily on changed circumstances since the filing of this lawsuit. As already explained, this argument "goes to mootness, not standing." *Barry v. Corrigan*, 79 F. Supp. 3d 712, 724 (E.D. Mich. 2015) (Levy, J.), *aff'd*, 834 F.3d 706 (6th Cir. 2016). Even if the Court considers mootness despite the County's failure to argue it, its arguments fall equally short of the mark.

The County observes that because Melisa is no longer in a relationship with Edland—the man driving her cars when they were seized—there is "no evidence" that her car will ever be seized again. But Melisa's claims are based on events that are "capable of repetition yet evading review." *Barry*, 79 F. Supp. 3d at 725 (citation omitted). Under this exception to mootness, the recurrence need not be "more probable than not." *Id.* Rather, "the controversy" must simply be "*capable* of repetition." *Id.* Melisa's claims easily clear that hurdle. Melisa could again lend her car to someone who then commits, or is alleged to commit, an act rendering it subject to seizure. Or she could drive into a bad area, which, under Wayne County's policies, may also render her car subject to seizure. ECF No. 106-2, PageID.1655 (Tr. 74:16–23). The unlawful post-seizure process would take place over weeks or months, making it "far too short in duration to be fully litigated." *Kerr*, 874 F.3d at 932.

Wayne County argues that Stephanie's injuries likewise "could never be repeated" because the Controlled Substances Act now requires a concomitant criminal conviction to seek forfeiture under the Controlled Substances Act if the property is worth $50,000 or less. ECF No. 118, PageID.3033. But, despite this reform, the County could still take Stephanie's car under the Nuisance Abatement statute, which lacks the criminal conviction requirement. *See* MCL § 600.3801(1)(c); ECF No. 112-2, PageID.2492 (presentation explaining that police "May Proceed Using Nuisance Law" to avoid these protections). In fact, Stephanie has stated that,

on one occasion that her car was seized, the only rationale the officer gave her was that she "shouldn't be" in a "bad" neighborhood. ECF No. 21-3, PageID.664 (¶ 31). The County disputes that testimony, but it is consistent with the County's policy of seizing vehicles for forfeiture because "they're in areas known for drug dealing" or "areas known for prostitution activity." ECF No. 106-2, PageID.1655 (Tr. 74:16–23). Stephanie remains vulnerable not only to existing law and Wayne County's stated policies, but also to the risk that the County will once again take her car *in violation* of the law. *See 2006 Saturn Ion*, 2024 WL 3503577, at *1. And, just as for Melisa, if the County *does* again take Stephanie's car, the process is likely to be too short to allow full litigation. Stephanie's claims are thus likewise "capable of repetition yet evading review." *Barry*, 79 F. Supp. 3d at 715.[16]

**B. Stephanie Wilson's damages claims are justiciable for both seizures.**

**1. Stephanie's claims as to the Malibu remain live because there is no exhaustion requirement for claims brought under 42 U.S.C. § 1983.**

This Court has already squarely addressed and rejected the County's argument that Stephanie should be barred from bringing claims related to the seizure of her Malibu. ECF No. 70, PageID.1170 (denying the County's motions for reconsideration of the Court's dismissal of Stephanie's claims as to the Malibu because there is no exhaustion requirement for claims under § 1983). In fact,

[16] These arguments address only Plaintiffs' claims for prospective relief, not their claims for retrospective damages or declaratory relief for completed harms.

versions of this argument have been rejected by *both* judges before whom this case previously appeared. *See* ECF No. 54, PageID.991 (permitting Stephanie's claims regarding the Malibu to proceed[17]). Evidently hoping the third time will be the charm, the County now again argues that because Stephanie did not contest the forfeiture of her Malibu, she cannot bring any claims related to the County's seizure and forfeiture of that car. ECF No. 118, PageID.2990. It is still wrong.

As Plaintiffs have noted, the County's arguments are really exhaustion arguments. ECF No. 66, PageID.1129. The County asserts that Stephanie had a state forum for her constitutional objections and chose not to use it. But as the Court has explained:

> Even if the state forum would have been an adequate substitute for plaintiff's claims seeking *prospective declaratory and injunctive relief*, exhaustion of state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1983.

ECF No. 70, PageID.1170 (emphasis added) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982)). Stephanie does not seek to relitigate the administrative forfeiture of her Malibu. Her federal claims (and the other Plaintiffs') do not seek to reopen state administrative or judicial forfeiture proceedings; they seek to enjoin the County's unconstitutional policies and practices, including the policies that make

[17] Judge Tarnow implicitly rejected this argument by permitting the claims to go forward despite the County making a nearly identical argument to the one presented here. *See* ECF No. 35, PageID.870–71.

challenging administrative forfeitures prohibitively difficult and expensive. This Court rightly held that she has a right to bring those *forward-looking* claims without having exhausted her *backward-looking* remedies in the state forum.

Even if the Court takes the County's res judicata arguments at face value, they fail. Res judicata is an affirmative defense, Fed. R. Civ. P. 8(c)(1), so the County bears the burden. But it fails to cite a case that accords Michigan administrative forfeitures res judicata effect.[18] Nor could it. "[A]n unreviewed state administrative decision" does not "bar a plaintiff from later bringing a § 1983 claim which the administrative agency did not hear." *MV v. Lyon*, 2016 WL 4537811, at *8 (E.D. Mich. Aug. 31, 2016). The County does not argue that administrative forfeiture has any of the trappings of judicial process that would give rise to res judicata, *see Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018), nor could it since all it did was unilaterally declare Stephanie's car forfeited without any further process. So, even assuming the Michigan courts would give an administrative forfeiture preclusive effect, *but see Nummer v. Treasury Dep't*, 533 N.W.2d 250, 253 (Mich. 1995) (res judicata only applies to "adjudicatory" determinations with "a right to appeal"), the County has not borne its burden to show that it meets the preclusion requirements of

[18] The County wrongly claims that Michigan preclusion law is determinative. *See* ECF No. 118, PageID.2991. Federal common law, not Michigan law, determines the preclusive effect of state administrative decisions. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794 (1986).

federal common law. *See Maben*, 887 F.3d at 260–61. And, in any event, res judicata could not possibly prevent Stephanie from seeking prospective relief based on "future transactions that are not related in time, space, or origin" to the past forfeiture of her Malibu. *See Constantino v. Mich. Dep't of State Police*, 707 F. Supp. 2d 724, 730 (W.D. Mich. 2010).

Neither failure to exhaust nor res judicata bars Stephanie from litigating her retrospective or prospective claims for relief regarding her Malibu.

**2. Stephanie's claims as to the Ion are not barred by res judicata.**

For years, Wayne County argued that this Court must abstain from adjudicating Stephanie's claims regarding her 2006 Saturn Ion because the state forfeiture proceeding against the car was ongoing. Now, that action has concluded and the County asserts the Court is precluded from adjudicating her claims. As the County would have it, Stephanie cannot challenge the constitutionality of its forfeiture policies in federal court if she: (1) did not contest,[19] (2) is contesting,[20] or (3) has contested.[21] The County here bears "the burden of proving the applicability of the doctrine of res judicata." *See Baraga County v. State Tax Comm'n*, 645 N.W.2d 13, 16 (Mich. 2002). Because the "matter[s]" contested here were not and could not have been resolved in the state forfeiture case, it cannot carry that burden. *See Adair*

[19] ECF No. 118, PageID.2990–92.
[20] ECF No. 18, PageID.351–53.
[21] ECF No. 118, PageID.2993–96.

*v. Michigan*, 680 N.W.2d 386, 396 (Mich. 2004). Nothing about Stephanie's victory in the Michigan Supreme Court regarding her Ion implicates her claims here.

The County asks the Court to preclude Stephanie's claims because she "cannot now reassert claims or issues that could have been (and to an extent, were) brought, addressed, and fully adjudicated by Michigan's state courts." ECF No. 118 PageID.2996. But res judicata cannot possibly bar Stephanie's claims for prospective relief against future violations. *See Constantino*, 707 F. Supp. 2d at 730. Those claims "are not related in time, space, or origin to the prior [forfeiture] prosecution[]." *Id.* Rather, they are part of a putative class action broadly challenging the County's policies and practices regarding vehicle forfeiture. They span the entire forfeiture process, from initial seizure to final adjudication. Stephanie—and the other Plaintiffs—seek injunctive and declaratory relief ending the County's unconstitutional vehicle seizure and forfeiture practices. The state court could not have considered these issues in forfeiture proceedings against Stephanie's Ion.

Nor did the state courts actually adjudicate the constitutional claims that form the basis of Stephanie's request for retrospective relief. The "narrow issue," ECF No. 118 PageID.2996, the Michigan Supreme Court resolved was that Stephanie's car was not subject to forfeiture under the statute. *See 2006 Saturn Ion*, 2024 WL 3503577, at *1. As a result, the Michigan courts would not apply res judicata to prevent Stephanie from litigating her constitutional claims in a subsequent case. *See,*

*e.g.*, *Allen Park Retirees Ass'n, Inc. v. City of Allen Park*, 942 N.W.2d 618, 627 (Mich. Ct. App. 2019) (res judicata did not bar litigation of constitutional claims where court in prior appeal had "declined to decide the constitutional issue" and issue was "not decided on the merits"); *accord Kircher v. City of Ypsilanti*, 809 F. App'x 284, 298 (6th Cir. 2020). Neither should this Court. *See, e.g.*, *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State . . . .").

The preclusion cases that the County cites as presenting "the same circumstances" do not apply. *See* ECF No. 118, PageID.2994–95. In both *Blakely v. United States*, 276 F.3d 853 (6th Cir. 2002), and *LG Sciences, LLC v. Putz*, 511 F. App'x 516, 518 (6th Cir. 2013), the Sixth Circuit applied res judicata where parties were attempting to relitigate issues directly covered by consent decrees into which they had previously (and voluntarily) entered. And in *Hall v. Meisner*, the Sixth Circuit affirmed a trial court's dismissal based on res judicata where the plaintiff had filed a case in federal court pushing alternative theories of the same case he had just lost in state court. *See* 2022 WL 7478163 (6th Cir. Oct. 13, 2022); *Est. of Johnson v. Meisner*, 2021 WL 3680479 (E.D. Mich. Aug. 18, 2021). The issues presented here, on the other hand, are distinct from the issues litigated in the state forfeiture case and also seek broad-based relief that the state forfeiture courts could not provide.

Neither Stephanie's claims for retrospective nor prospective relief based on the Saturn Ion are precluded because neither could have been adjudicated in the state forfeiture proceedings.

## II. The County's policies and practices of delaying the availability of forfeiture proceedings, and using threatened delay to coerce payment of redemption fees, violated Plaintiffs' due process rights.

The County's policies and practices of delaying the initiation and resolution of forfeiture proceedings for months violate the Due Process Clause, and the Supreme Court's recent decision in *Culley v. Marshall* does not counsel otherwise. There, the Supreme Court held only two things: (1) due process does not require an interim hearing, and (2) the speedy trial test governs the timeliness of an ultimate forfeiture hearing. 601 U.S. 377, 389–90 (2024); *see also id.* at 393 (Gorsuch, J., concurring). But it "le[ft] many larger questions unresolved about whether, and to what extent, contemporary civil forfeiture practices can be squared with the Constitution's promise of due process," *id.* at 393 (Gorsuch, J., concurring); *accord id.* at 387 n.3 (majority opinion), including whether due process requires the prompt initiation of forfeiture proceedings. *See id.* at 400–01 (Gorsuch, J., concurring). Whether this Court applies history and precedent (see Section V.B below) or the speedy trial test (see Section V.C below), the County's routine, unexplained delays do not pass constitutional muster. And the County's efforts to rehash legal arguments from its recently denied motion to dismiss Robert's claims likewise fail.

Count IV of Plaintiffs' complaint alleges a violation of due process, seeking both retrospective damages and class-wide prospective relief. To survive the pleading stage, the complaint only "needed to plead *factual* allegations that impliedly established at least one viable theory" under this heading. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021) (emphasis added). Now, at summary judgment, Plaintiffs must "come forward with every legal theory" underlying their due process claim. *Id.* (citation omitted). There are three:

*First*, the County' policy and practice of seizing cars without prior notice and a hearing violates due process. Pre-seizure process has always been the due process baseline, and the County's contrary policy lacks support in history and tradition. Because this theory is foreclosed, Plaintiffs are preserving it for further review.

*Second*, the County's policy and practice of delaying the initiation of forfeiture proceedings violates historical due process requirements. History, tradition, and the Sixth Circuit's reasoning in this case all support the conclusion that due process requires initiation of forfeiture proceedings within no more than 14 days. Yet the County routinely delays for months and leverages the threat of that (actual) delay to coerce payment of redemption fees.

*Third*, the County's policies and practices of delaying initiation and resolution of forfeiture proceedings violate due process under the speedy trial test. When it comes to people's cars, delays of even a few months are oppressive. Meanwhile, the

County has had no valid justification for its across-the-board delays, except coercing payment of redemption fees. The evidence is undisputed that Plaintiffs diligently asserted their rights and suffered prejudice as their cars deteriorated in impound lots.

**A. The County violated Plaintiffs' rights by seizing or retaining their cars without prior notice and a hearing.**

Under current precedent, the government can seize property for forfeiture first and provide process later (often, much later). *See Culley*, 601 U.S. at 389. That precedent is wrong. The "general rule" is that due process requires "notice and an opportunity to be heard before the Government deprives [someone] of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *accord United States v. Von Neumann*, 474 U.S. 242, 249 n.7 (1986). That rule applies with equal force to forfeiture proceedings. *See James Daniel Good*, 510 U.S. at 48–52. When the government deprives someone of property "not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself," it must "compl[y] with [the] well-settled jurisprudence under the Due Process Clause." *Id.* at 52. In other words, "the usual due process requirement of preseizure notice and hearing." *Id.* at 49. In the civil forfeiture context, that should mean the government may not seize property until after a civil forfeiture hearing and final judgment.

"So how is it that" Wayne County has been able to confiscate people's cars "first and provide process later [if ever]?" *Culley*, 601 U.S. at 397 (Gorsuch, J.,

concurring).[22] For decades, the County has relied on in rem civil forfeiture practices with roots in admiralty, customs, and revenue law. *See id.* at 397–98. These seemingly anomalous exceptions had their own logic at the Founding, though. Ships could slip port to international waters, *see James Daniel Good*, 510 U.S. at 52, and admiralty law regarded them as "personalities," "not ordinary property," Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 605 & n.149 (1999) (collecting authorities). Customs and revenue forfeiture practices grew out of admiralty law, largely for historical reasons. *See, e.g.*, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 684 (1974); Kevin Arlyck, *The Founders' Forfeiture*, 119 Colum. L. Rev. 1449, 1466 (2019); Davies, *supra*, at 605 n.150.

The narrow scope of civil forfeiture at the Founding was no accident. Various forms of forfeiture that prevailed in England either "did not become part of the common-law tradition of this country," *Calero-Toledo*, 416 U.S. at 682, or else were expressly banned, *see id.* at 682–83; *see also* U.S. Const. art. I, § 9, cl. 3, § 10, cl. 1; *id.* art. III, § 3, cl. 2. Even those types of forfeiture that made it into American common law at the Founding relied on specialized procedures used in English courts with narrow jurisdiction. See *C.J. Hendry Co. v. Moore*, 318 U.S. 133, 139–42 (1943); *cf. The Palmyra*, 25 U.S. (12 Wheat.) 1, 15 (1827) ("Both in England and

---

[22] *See* ECF No. 109-2, PageID.1995 (Tr. 103:12–24) (County's 30(b)(6) designee testifying that its policy is to seize and hold cars pending a forfeiture hearing).

America, the jurisdiction over proceedings *in rem*, is usually vested in different Courts . . . ."). Indeed, the crown's steady expansion of the vice-admiralty courts' jurisdiction was one of the outrages that led to the Revolutionary War. *See, e.g.*, Arlyck, *supra*, at 1471–72; *see also* The Declaration of Independence para. 20 (U.S. 1776) ("For depriving us in many cases, of the benefits of Trial by Jury . . . .").

By contrast, the expansion of civil forfeiture to cars (and other property) is the result of the "proliferation of forfeiture enactments" in recent decades to "reach virtually any type of property that might be used in the conduct of a criminal enterprise." *Calero-Toledo*, 416 U.S. at 683. And that dooms the County's practice of seizing first and providing process later. Only "clear historical evidence of a different practice might warrant a departure from th[e due process] baseline," *SEC v. Jarkesy*, 603 U.S. 109, 154 (2024) (Gorsuch J., concurring), of "preseizure notice and hearing," *James Daniel Good*, 510 U.S. at 49. Here, there is none.

Nor do functional considerations justify the County's practice. Unlike a ship that jumps easily from one jurisdiction to another—and whose obscure owner may be halfway across the world, *see Calero-Toledo*, 416 U.S. at 679–80—there is nothing "extraordinary" about a car that justifies an exception to the general rule. In Michigan alone, there are 2.7 million privately owned cars,[23] virtually all registered

[23] *See* U.S. Dep't of Transp., Fed. Highway Admin., Highway Statistics Series: State Motor-Vehicle Registrations – 2022 (Nov. 2023), https://www.fhwa.dot.gov/policyinformation/statistics/2022/mv1.cfm/mv1.pdf.

to a known owner. *See Ingram*, 81 F.4th at 628 (Thapar, J., concurring). Thus, cars are more like other ordinary personal property, which, though moveable, cannot be seized without prior notice and a hearing. *James Daniel Good*, 510 U.S. at 53–54. If anything, seizing a car "produces a far greater deprivation," *id.*, than the loss of other personal property because cars "occup[y] a central place in the lives of most Americans," *Ingram*, 81 F.4th at 619 (citation omitted).

There is no dispute that the County seized Plaintiffs cars without a prior hearing. And there is no dispute that the County has had a policy and practice of doing so, otherwise its VSU would have served no purpose. That policy and practice violated Plaintiffs' rights, and thousands of other car owners' rights, too. Because precedent forecloses this argument, Plaintiffs are preserving it for further review.

**B. The County violated Plaintiffs' rights by delaying the initiation of forfeiture proceedings after the seizure of their cars.**

The core of Plaintiffs' claims under Count IV is this: due process means timely access to process. Contrary to the County's claims that the Supreme Court hollowed out that core, ECF No. 118, PageID.3013, *Culley* decided just two things. First, that due process does not require an interim hearing, and, second, that the speedy trial test governs the timeliness of an ultimate forfeiture hearing. *See Culley*, 601 U.S. at 389-90; *see also id.* at 393 (Gorsuch, J., concurring). Among other considerations, the Court cited the lack of any "[h]istorical practice" requiring interim hearings and the government's swift initiation of forfeiture proceedings in *Culley* itself, which

gave the *Culley* claimants access to a panoply of state procedures. *See id.* at 381–82, 390–92 (majority opinion). But the Court's narrow holdings "le[ft] many larger questions unresolved about whether, and to what extent, contemporary civil forfeiture practices can be squared with the Constitution's promise of due process." *Id.* at 393 (Gorsuch, J., concurring); *accord id.* at 387 n.3 (majority opinion).

In *Culley*, the government filed its forfeiture cases swiftly, just days after the seizures. *See id.* at 382 (majority opinion). So, one of the "larger questions" *Culley* left "unresolved" is whether due process requires the prompt initiation of forfeiture proceedings. *See id.* at 393, 400–01 (Gorsuch, J., concurring). History and precedent both point to the same answer: it does.

Start with history. Supreme Court and Sixth Circuit precedent both often look to history first to decide what process is due. *See, e.g.*, *United States v. Harvel*, 115 F.4th 714, 733 (6th Cir. 2024), *cert. denied,* 2025 WL 889192 (U.S. Mar. 24, 2025). Early in the nation's history, both Congress and the Supreme Court demanded prompt initiation of forfeiture proceedings. The First Congress passed a civil forfeiture statute requiring government agents to file a complaint in "the proper court having cognizance thereof," which would hold a hearing after a fourteen-day notice period. Collections Act of 1789 § 36, 1 Stat. 29, 47. Just ten years later, Congress amended the statute to require government officials "to cause suits for [forfeiture] to be commenced without delay." Collections Act of 1799 § 89, 1 Stat. 627, 695; *see*

*Jones v. Shore's Ex'r*, 14 U.S. (1 Wheat.) 462, 469 (1816). Thus, early Congresses made clear that "time was often of the essence in traditional civil forfeiture practice." *Culley*, 601 U.S. at 400 (Gorsuch, J., concurring); *accord Ingram*, 81 F.4th at 614–16. That requirement has deep roots in Anglo-American law. "[O]ld English law" and early American law both accorded speedy process to claimants facing government inaction. *See Ingram*, 81 F.4th at 614–15; *see also id.* at 626–27 (Thapar, J., concurring).

The *Mathews* framework points to the same result. That test considers the degree of deprivation, "the fairness and reliability of the existing . . . procedures," and "the probable value, if any, of additional procedural safeguards." *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976). The Court already knows exactly how to apply this test here because the Sixth Circuit already did so. As explained above, *Culley* said nothing about the initiation of forfeiture proceedings, and the Sixth Circuit's timeliness analysis under *Mathews* applies just the same when the "process" under consideration is prompt initiation. Even a few months is "a long time to be without something that occupies a central place in the lives of most Americans." *Ingram*, 81 F.4th at 619 (cleaned up). Meanwhile, the only "procedure[]" claimants have had in the County has been to speak to clerical employees in the Prosecutor's Office who offered them no way to challenge the seizure quickly, just the option to wait or pay. *Cf. id.* The County's interests, meanwhile, are "anything but weighty." *Id.* After all,

it rarely pursues criminal charges and immediately releases cars to those who pay. *See id.* To be sure, there is some administrative burden in requiring the County to actually file forfeiture cases, *see id.* at 620, but this burden is not especially weighty given that the County's forfeiture complaints are short and formulaic, *see, e.g.*, ECF No. 18-7, PageID.377–80; ECF No. 20-16, PageID.572–75.[24]

In short, the Sixth Circuit reached the right result for the wrong process. History and the *Mathews* test both support requiring prompt initiation of proceedings, and *Culley* does not foreclose that holding. The Court should therefore track the Sixth Circuit's analysis but hold that due process requires *initiation* of forfeiture proceedings as soon as possible, no more than fourteen days after seizure. *See Ingram*, 81 F.4th at 621–22.

If the Court accepts that legal framework, it is undisputed that the County's policy and custom of delaying initiation injured Plaintiffs. The County's own data show that it has taken more than four months on average to file forfeiture cases. *See* Ex 1. Indeed, courts in this district have found it undisputed at summary judgment that the County's policy has long been to file forfeiture complaints in four months from the date of seizure. *See Hamann v. Charter Twp. of Van Buren*, 2021 WL 5312638, at *10 (E.D. Mich. Nov. 15, 2021). Similarly, the VSU policy manual has

---

[24] *See also* ECF No. 109-2, PageID.2204, 2209 (Tr. 18:12–18, 41:5–12) (forfeiture prosecutor testifying that she uses complaint templates and that there is no reason to delay after claimant has contested).

directed employees to "[c]learly" warn claimants that they will wait for four months if they contest the seizure. *See* ECF No. 106-4, PageID.1689; ECF No. 109-2, PageID.2257, 2263–64, 2266 (Tr. 38:16–39:24, 65:19–66:15, 76:13–18).[25] Otherwise, their only options have been to relinquish their cars or pay a redemption fee. ECF No. 106-5, PageID.1707, 1711 (Tr. 58:2–7, 58:22–25, 69:3–10). Paying the fees "speed[s] up" the process and gets vehicles back "quicker," ECF No. 109-2, PageID.2145 (Tr. 31:4–7); *id.*, PageID.2262 (Tr 58:25–59:9), only because the County has been able to create leverage by waiting for months to even file a case.[26]

Since these express policies and practices "violate[] federal law," "fault and causation [are] straightforward." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Melisa agreed to pay only because she could not bear to go without her car for the months it would take the County to file a forfeiture case—and, even then, she went over two weeks without her car while scrounging up the money. ECF No. 118-2, PageID.3042, 3044–45, 3061 (Tr. 14:4–5, 24:14–25:18, 26:22–27:2, 93:1–22).

[25] The County claims that its employees never told claimants "that it would take months for a *hearing*," ECF No. 118, PageID.2982 (emphasis added), but that just ignores the undisputed testimony and documents cited in the text above proving that it had a policy and practice of telling claimants that they would wait four months for the County to *initiate* proceedings.

[26] Contrary to the County's claim of arm-of-the-state immunity, nothing in Michigan law *requires* such delays; if anything, it required the County to move faster than it does. *See, e.g.*, *In re Forfeiture of One 1983 Cadillac*, 439 N.W.2d 346, 349 (Mich. Ct. App. 1989) (drug forfeiture cases should be filed "promptly," within "days"); *see also* MCL § 600.3815(3) (90 days); *id.* § 600.4707(4) (56 days).

Stephanie's undisputed testimony shows that the County unilaterally declared her car administratively forfeited after she had spent at least three weeks trying to figure out how to get it back. *See* ECF No. 118-3, PageID.3083–84 (Tr. 20:1–20). When she challenged the seizure of her Ion, Wayne County followed its customary practice of waiting about four months to file. *See* ECF No. 109-2, PageID.2215 (Tr. 65:16–24). Finally, the County followed this same practice as to Robert, ignoring his attempts to get his car back and stalling for over six months. *See* ECF No. 106-22, PageID.1867–69 (¶¶ 8–20).

The common thread among all three Plaintiffs is that the County seized their cars and failed to promptly initiate forfeiture proceedings. This was consistent with the County's unlawful policy of delaying and threatening to delay initiation of forfeiture proceedings. And that alone is sufficient for the Court to enter summary judgment on Count IV.

**C. Applying the Speedy Trial Test, the County violated Robert's and Stephanie's rights by delaying their forfeiture proceedings.**

The undisputed record shows that the County's forfeiture policies and practices violated Robert's and Stephanie's rights under the speedy trial test.[27] This

[27] As explained in the preceding section, Plaintiffs believe the Court should use a more stringent standard. If the Court disagrees, then it should apply the speedy trial test to delayed initiation, even where forfeiture proceedings are never initiated. *See Bell v. County of Wayne*, 2025 WL 819120, at *8 (E.D. Mich. Mar. 13, 2025). Melisa's remaining claim and Stephanie's claim related to the first seizure, however, do not map neatly onto the speedy trial factors. Thus, if the Court concludes that the

test is a "flexible" one. *United States v. $8,850*, 461 U.S. 555, 564–65 (1983). It "involves a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 564. "[N]one of these factors is a necessary or sufficient condition for finding unreasonable delay." *Id.* at 565. The test is context-dependent and the factors are mere "guides" for "balancing the interests of the claimant and the Government." *Id.* Applying the test here requires considering the unique features of civil forfeiture, *Culley*, 601 U.S. at 414 n.4 (Sotomayor, J., dissenting), especially the hardship claimants suffer when forced to go without essential property for months on end, *see id.* at 396–97 (Gorsuch, J., concurring).

This subsection proceeds in two parts. At the outset, it identifies the relevant County policies and practices that have led to across-the-board delays in forfeiture proceedings. All of these policies and practices are effectively undisputed because Wayne County simply ignores what its own forfeiture data and court records show. Then, this section applies the speedy trial test to Robert's claim and Stephanie's claim related to the second seizure.[28]

speedy trial test is the only test for *initiation*, Plaintiffs concede that Melisa's remaining claim and Stephanie's first-seizure claim would not survive under the speedy trial test.

[28] Despite moving for summary judgment on this theory, the County devotes scant briefing to it—just one paragraph about Robert and a footnote about Stephanie. ECF No. 118, PageID.3014 n.1, 3020–21. That alone warrants denial of the County's motion for summary judgment as to this theory, even if the Court does not grant

**1. The County has a policy and practice of delaying the initiation and resolution of forfeiture proceedings for months.**

The undisputed evidence shows that Wayne County has policies and practices of delaying the initiation and resolution of forfeiture proceedings. Starting right at the seizure, the County's standard forms have advised the owner to wait three business days before contacting the VSU, *see* ECF No. 106-3, PageID.1669–73, 1675, 1677, whose employees refused to speak to claimants who reach out early, *see* ECF No. 106-4, PageID.1686; ECF No. 109-2, PageID.2000 (Tr. 125:15–22). If the claimant contested, the VSU policy has been to "[c]learly communicate" that they would have to wait up to four months for the Prosecutor's Office to file a forfeiture case. ECF No. 106-4, PageID.1689; ECF No. 109-2, PageID.2264 (Tr. 66:2–15). The only way to avoid the wait has been to pay a redemption fee. ECF No. 106-5, PageID.1707, 1710–11 (Tr. 58:2–7, 68:19–69:10).

Wayne County has typically followed through on its threat. Its own data, combined with public forfeiture dockets, show that the County took ***124 days*** on average to file a case after the date of seizure between 2017 and 2023. *See* Counterstatement of Material Facts at 8. So, just as Plaintiffs alleged, it has "usually" taken the County "four to six months" just to file cases. *See Ingram*, 81 F.4th at 606, 619. Nothing in Michigan law *requires* this. Instead, Michigan law has required the

---

summary judgment in Plaintiffs' favor (which it should). *See, e.g.*, *Ledford v. Comm'r of Soc. Sec.*, 2022 WL 866405, at *7 (E.D. Mich. Mar. 23, 2022) (Levy, J.).

County to act promptly, sometimes within "days." *In re Forfeiture of One 1983 Cadillac*, 439 N.W.2d 346, 349 (Mich. Ct. App. 1989); *see also* MCL § 600.3815(3) (90 days); *id.* § 600.4707(4) (56 days). Its routine delays of four months or more reflect its own policies and practices.

The undisputed evidence also bears out Plaintiffs' allegation that the County has routinely delayed forfeiture proceedings through serial requests for extrajudicial, pre-trial conferences. *See Ingram*, 81 F.4th at 606. The County's Rule 30(b)(6) and other witnesses admitted that it routinely requested such conferences using a "template motion" that "was filed with every complaint." ECF No. 106-6, PageID.1723–24 (Tr. 154:14–155:1); *accord* ECF No. 106-12, PageID.1784 (Tr. 53:4–11). Because these conferences have happened just once a month, ECF No. 109-2, PageID.2176 (Tr. 156:18–21); PageID.2214 (Tr. 58:1–5), each additional conference would delay proceedings an extra month. The County's own data, combined with public forfeiture dockets, shows that it requested two or more settlement conferences in ***82 cases***. *See* Counterstatement of Material Facts at 8–9. Plaintiffs were able to find a date of seizure for 53 of these cases. On average, those cases took an additional ***104 days*** to reach a conclusion, compared to the average for all cases (396 vs. 292 days). *See id* at 9. And these data include only the conferences listed on the public docket sheets; the County acknowledged that some were not. ECF No. 109-2, PageID.2176 (Tr. 156:10–21).

Thus, the County has both written policies and actual practices of delaying the initiation and ultimate resolution of forfeiture proceedings.

**2. The County's application of its policies and practices of delay to Plaintiffs' forfeiture matters violated their due process rights.**

Those across-the-board delays caused Robert's and Stephanie's injuries. "[W]hen an injury is caused by the straightforward carrying out of a municipal policy or custom, the determination of causation is easy." *Morgan v. Fairfield County*, 903 F.3d 553, 566 (6th Cir. 2018). As explained below, Robert and Stephanie each experienced a "straightforward carrying out of" the County's dilatory policies and practices. And, in each case, these policies and practices were the "moving force" behind Plaintiffs' injuries. *See Bd. of Cnty. Comm'rs*, 520 U.S. at 404.

***Robert.*** The undisputed evidence tracks what Robert alleged and confirms that the Court's ruling on the County's Rule 12(c) motion was right. The length of the delay, reason for the delay, diligence, and prejudice all weigh heavily in his favor.

*First*, the County did not initiate proceedings or return his car for more than six months, even though it had everything it needed to open a forfeiture matter by August 2019. *Cf.* ECF No. 19-2, PageID.455; ECF No. 106-5, PageID.1713 (Tr. 108:4–21); ECF No. 106-18, PageID.1815. The Court has already held as a matter of law that this delay counts against the County. *See Bell v. County of Wayne*, 2025 WL 819120, at *8 (E.D. Mich. Mar. 13, 2025) (citing *Cremeans v. Taczak*, 2023 WL 5206437, at *5 (6th Cir. Aug. 14, 2023)).

*Second*, the County has never explained the delay. It cannot claim it was unaware that the Michigan State Police had seized his car. Robert contacted the forfeiture unit in July 2019, the Michigan State Police sent all the paperwork the County needed the next month, and the Michigan State Police sent a warrant request the month after that. *See* ECF No. 19-5, PageID.465; ECF No. 109-2, PageID.2274 (Tr. 108:4–21). Meanwhile, Robert repeatedly called and visited the forfeiture unit, to no avail. ECF No. 106-22, PageID.1868–69 (¶¶ 11–17). The only explanation for the delay, then, is that the County followed its across-the-board policy and practice of delaying forfeiture proceedings. This type of "[u]nexplained delay is weighed against" the County. *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987) (collecting cases); *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017).

*Third*, Robert diligently asserted his rights. *See Bell*, 2025 WL 819120, at *8. He called Wayne County dozens of times during those six months and even went in person several times. ECF No. 106-22, PageID.1868–69 (¶¶ 11–17). The County is aware of at least seven of those attempts. *See* ECF No. 19-4, PageID.461 (¶ 3). And it cannot dispute that it may have missed some calls outside the VSU's very limited and fluctuating business hours. ECF No. 109-2, PageID.2256, 2272 (Tr. 36:9–15, 100:15–101:20). Those repeated efforts to assert his rights weigh in his favor. *See Bell*, 2025 WL 819120, at *8.

*Fourth*, Robert was prejudiced because his car sat deteriorating in an impound lot while the County delayed. The Supreme Court adopted the speedy trial test in the civil forfeiture context by "analogy . . . to a defendant's right to a speedy trial." *$8,850*, 461 U.S. at 564. In that context, courts assess "[p]rejudice" based, in part, on the need to "prevent oppressive pretrial incarceration" and "minimize anxiety and concern." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). Like incarceration, the loss of a car can entail a loss of freedom, "loss of a job," and anxiety. *Cf. id.* at 532–33; *Ingram*, 81 F.4th at 620 ("When a person loses a personal vehicle needed for transportation, there is an associated loss of liberty."). And a car "is a wasting asset whose value diminishes when it is impounded," even as the owner "continue[s] to make payments" on it. *One 1983 Cadillac*, 439 N.W.2d at 349.[29] So, like incarceration, pre-hearing impoundment of a car should weigh against the government. Because Robert's car sat wasting in an impound for six months, this final factor weighs against Wayne County, too. *See* ECF No. 118-7, PageID.3132–33 (Tr. 18:9–21, 23:1–7) (Robert testifying about the damage to his car and his ongoing insurance payments).

[29] Because the question is how the delay prejudiced Robert in *state forfeiture proceedings*, the Court should defer to this Michigan precedent recognizing prejudice where a car sits in an impound lot pending forfeiture proceedings.

Based on the undisputed evidence, all four speedy trial factors weigh heavily against the County when it comes to Robert's case. The Court should therefore grant summary judgment to Robert on this theory.

***Stephanie.*** The factors point in the same direction for Stephanie's second seizure.

*First*, the length of the delay in Stephanie's case was nearly two years. The County initially waited four months to file a forfeiture complaint, consistent with the County's policies. *See* ECF No. 109-2, PageID.2215-16 (Tr. 65:12–24, 68:8–17). Then, the prosecutor immediately obtained a routine order for a settlement conference, followed by two more. *See id.*, PageID.2217 (Tr. 70:21–71:9); ECF No. 21-3, PageID.666–67 (¶¶ 43–46). All in all, it ended up taking "just shy of two years after the seizure for the final judgment" in Stephanie's case. ECF No. 109-2, PageID.2219 (Tr. 78:9–25). Even then, Stephanie still did not get her car back for nearly two more weeks because Wayne County defied a court order to return it. *See* ECF No. 112-3, PageID.2508. This nearly-two-year delay falls squarely in the range of delays that "weigh in favor of the property owner." *Bell*, 2025 WL 819120, at *8.

*Second*, Wayne County has no valid reason for the delay. The prosecutor simply followed the County's usual practice of delaying initiation of proceedings by four months. There was nothing complex about Stephanie's case, and the prosecutor admitted that her usual practice was just to use "[c]omplaint templates." *See* ECF

No. 109-2, PageID.2204, 2208, 2215–16 (Tr. 18:12–18, 35:2–5, 65:21–24, 68:8–17); *see also* ECF No. 18-7 (less-than three-page forfeiture complaint consisting mostly of boilerplate). At the settlement conferences, prosecutors did nothing other than pressure Stephanie to pay, ECF No. 21-3, PageID.666–67 (¶¶ 45–46), by threatening to seek a default against her, as the lead prosecutor's own handwritten notes reflect, *see* ECF No. 106-16, PageID.1803 ("Contact Stephanie, need date of when she will have $. Otherwise, don't know that office is going to hold off b/c she hasn't defended."). But the County has no valid interest in delaying forfeiture proceedings just to coerce the payment of fees. *See Bell*, 2025 WL 819120, at *8. After all, if the County's true interest was in making its streets safe, why would it be so willing to release the car if Stephanie just paid the fee? "To ask the question is to answer it." *Ingram*, 81 F.4th at 623 (Thapar, J., concurring). So, this factor favors Stephanie, too.

*Third*, Stephanie diligently asserted her rights. She "follow[ed] the [VSU's] procedures carefully." ECF No. 21-3, PageID.665 (¶ 35). She went in person to the VSU to demand a court date. *Id.* (¶ 39). When the County failed to file a case by the date when it promised she would get a hearing, she called repeatedly to ask when the County would "start a case against [her] car." *Id.*, PageID.666 (¶ 42). She attended multiple settlement conferences with prosecutors. *Compare id.*, PageID.666–67 (¶¶ 43–47), *with* ECF No. 18-4, PageID.369 (¶¶ 5, 9). When the

County failed to return her car even after she won the case, she went to Court to get an order forcing it to do so. *See* ECF No. 112-3. In sum, she diligently took advantage of every informal procedure and "state remed[y]" she had available. *See Bell*, 2025 WL 819120, at *8.

*Fourth*, prejudice weighs in Stephanie's favor for the same reason it weighs in Robert's favor. Her car sat in an impound lot for years, where it suffered "extensive damage." ECF No. 118-4, PageID.3103 (Tr. 33:6–13).

As with Robert, the speedy trial factors strongly favor Stephanie, and the Court should enter summary judgment for her based on this theory.

### D. The County's grab-bag of arguments related to Robert's due process claim largely rehash arguments the Court has already rejected.

The County fails to engage with these legal theories and instead focuses most of its procedural due process argument on ancillary defenses to *Robert's* claim. But the Court has already rejected most of these arguments in some form, and the rest fail to hold water.

***First***, the County rehashes its argument that Robert failed to use the state-law remedies available to him. The Court already rejected most of these arguments as a matter of law. *See Bell*, 2025 WL 819120, at *9–10.[30]

[30] The County tries to recast its legal arguments as factual assertions by presenting them in declarations. These declarations are inadmissible, *see* ECF No. 124, and, in any event, just recite legal conclusions that the Court can disregard, *see, e.g.*, *FRC Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002).

To be sure, the County identifies two new remedies. The first is a "claim and delivery action." ECF No. 118, PageID.3019. But the Omnibus Forfeiture Act precludes "any other action to recover personal property." MCL § 600.4703(5). And that language "clear[ly] and unambiguous[ly]" "precluded [a] claim and delivery action." *See Derrick v. City of Detroit*, 425 N.W.2d 154, 155 (Mich. Ct. App. 1988). The other is some sort of never-before-used "petition" or maybe "case" (the County cannot say which) under MCL § 600.4706. As the County concedes, though, that section only creates an obligation for police or the "prosecuting attorney" to "return the property," *see id.* § 600.4706(1), (2)—not a personal right, let alone a cause of action, for the owner to demand return. All it can muster in support of its argument is an unpublished Michigan case where the court never even addressed the availability of relief under § 4706 because police had a valid warrant to seize the property as evidence. *See VanDuinen v. State*, 2023 WL 2146609, at *1, *3 (Mich. Ct. App. Feb. 21, 2023). (Not to mention, the plaintiff was a pro se litigant[31] later convicted of a felony.[32]) That unpublished case cannot bear the weight the County places on it.

[31] *See* https://www.courts.michigan.gov/c/courts/coa/case/358981.

[32] *See* Press Release, Mich. Dep't of Att'y Gen., *Alpena Man Sentenced for Making False Claims Against MSP Troopers* (Aug. 19, 2024), https://bit.ly/3YM5ov3.

That leaves the County with the Omnibus Forfeiture Act remedies that the Court rightly held were unavailable to Robert. Even if these remedies were available, they would not have been adequate.

The Omnibus Forfeiture Act's seven-day hearing provision lets an owner regain possession only if "it is necessary for him or her or his or her family to use the vehicle pending the outcome of the forfeiture action." MCL § 600.4705(4). But Robert could not have made that showing because the seized car was a spare car that he planned to sell. *See* ECF No. 106-22, PageID.1866 (¶ 3); ECF No. 118-7, PageID.3132–33 (Tr. 20:1–18, 23:16–22). Even then, he would only have gotten the car back "pending the outcome of the [*non-existent*] forfeiture action," subject to payment of a bond and a law enforcement lien. MCL § 600.4705(4). That is a far cry from a forfeiture proceeding, where Robert would be able to get the car back free and clear.

The 28-day hearing likewise would not have gotten Robert his car back. That provision just requires the government to show "[p]robable cause." MCL § 600.4705(2)(a). And the County's longstanding position has been that it planned to charge Robert with a crime all along, ECF No. 19-5, PageID.466–67 (¶ 12)—it even tried to do so *twice* after this case was filed, ECF No. 106-22, PageID.1870–71 (¶¶ 26–29). Its belated claim that it would have allowed him to seek relief under this provision rings hollow.

In any event, neither provision would have gotten Robert into Court on the timeline due process requires. He would first have had to wait until the 35-day period to return his car expired. Then, assuming he filed the very next day, he would have gotten into court within 43 or 64 days, not fourteen days.

All of the County's proposed alternative remedies are illusory and inadequate.

***Second***, the County claims Robert cannot prove that it had a policy of delaying the filing of criminal proceedings. But that argument misses the mark. This case challenges the County's undisputed policy and practice of delaying *forfeiture proceedings* by more than four months on average. Both the Sixth Circuit and this Court have rightly rejected the County's efforts to slice the case into discrete statutory challenges. Judge Gibbons stated the point well: "There's a commonality in Wayne County's conduct with respect to the administration of these laws." Oral Argument at 4:08, *Ingram v. County of Wayne*, No. 22-1262 (6th Cir. May 4, 2023), https://bit.ly/3FjU1ng. Wayne County has pointed to no admissible evidence that Omnibus Forfeiture Act cases have been an exception to that general practice, and Robert's case demonstrates they have not been.

At bottom, this argument asks for reconsideration of the Court's prior ruling that Robert had standing. But the contrary "evidence" the County cites is inadmissible and largely consists of conclusory legal assertions. *See* ECF No. 124. Disregarding this inadmissible evidence, the undisputed summary judgment record

shows that the County both participated in the delay and failed to exercise its influence over the Michigan State Police:

- The County has trained the Michigan State Police and other law enforcement agencies on Michigan forfeiture law. ECF No. 109-2, PageID.2184 (Tr. 188:9–19).
- Davis testified as the County's 30(b)(6) designee that the County has monitored seizing agencies' compliance with the Omnibus Forfeiture Act's deadlines. ECF No. 109-2, PageID.2162–66 (Tr. 98:3–100:25, 105:20–115:8). Indeed, in 2020, he tried "to make sure that those -- that tracking was -- we had protocols in place to do that better than we had *before*, or more certain than we had *before*." *See id.*, PageID.2162 (Tr. 98:3–100:25) (emphasis added). And he testified that the County has been able to "help" Omnibus Forfeiture Act claimants by "[c]all[ing] the [officer in charge]." *Id.*, PageID.2186 (Tr. 194:3–5).
- The County knew about the seizure of Robert's car by July 30, 2019, and had received all the paperwork it needed to open a forfeiture matter by August 19, 2019. ECF No. 106-5, PageID.1713 (Tr. 108:4–15).
- The County also received a warrant request from the Michigan State Police on September 5, 2019, and asked the Michigan State Police for more detail. ECF No. 19-5, PageID.465 (¶ 3).

- That same day, Robert's attorney "filed an appearance" with the forfeiture unit to dispute the seizure. ECF No. 19-4, PageID.462 (¶ 4).
- Robert continued to ask the County about his car after that. *See id.*; ECF No. 106-22, PageID.1869 (¶ 17).
- For over six months, the County did nothing. On February 5, 2020, after this lawsuit had been filed, it issued a "PROPERTY RELEASE LETTER" to the Michigan State Police advising that "the seized property should be returned/released" pursuant to certain statutes. ECF No. 106-18, PageID.1815.[33]
- While arranging for the release of property, the Michigan State Police noticed a minor typo and requested a corrected letter. *See id.*, PageID.1814. Promptly after receiving the corrected letter, it returned Robert's property. *See* ECF No. 106-22, PageID.1869 (¶¶ 19–21).

These undisputed facts perfectly track the Court's findings when it resolved the County's "factual attack" on Robert's standing. *See Bell*, 2025 WL 819120, at *2–3. The delay in Robert's case is consistent with the County's undisputed,

[33] Although the letter advises the Michigan State Police that the property "should" be returned and uses the word "Please" in directing it to release the property to Robert, this language does not render the letter merely advisory or its directive optional. In fact, the Prosecutor's Office uses similar language in release letters to the *Sheriff's Office*, which has no option but to obey the Prosecutor's Office. *See* Ex. 2 at 1 ("The 2006 Jeep Commander *should* be returned to the Claimant . . . ."); *id.* at 2–5 ("[T]his office respectfully requests the release and/or return . . . .").

common policy and practice of delaying forfeiture proceedings four months or more. And the undisputed evidence shows that this policy and practice caused Robert's injury. The County "knew about the seizure," "monitors and makes records of seizures," handled communications with Robert, was "cooperating with and able to motivate the Michigan State Police's conduct," and was empowered to act under the Omnibus Forfeiture Act by either seeking an extension or returning the property. *See id.* at *5–6; *see also* MCL § 600.4706(2). Its issuance of a property release letter had a "'determinative' impact" on the Michigan State Police, which took it "seriously enough to request [a] corrected cop[y]" and promptly release Robert's car upon receiving the corrected copy. *See Bell*, 2025 WL 819120, at *6.

In other words, the undisputed facts show that the County was the "moving force" behind Robert's injury. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). "But for" its failure to act, Robert would have gotten his property back far sooner. *See id.* The Court should not, as the County urges, "presume . . . that, had the" County "advised the [Michigan State Police] that the Constitution [or statute] forbids the" retention of cars, "that the [Michigan State Police] would have ignored this command." *Id.* at 609. And the consequences of the County's Actions on the Michigan State Police's conduct were "reasonably foreseeable." *See id.* at 609–10. Property release letters are routine, and the Michigan State Police promptly released Robert's property upon receipt of one. *See Bell*, 2025

WL 819120, at *6. Robert has more than proved that the County's common policy of delay across forfeiture cases caused the unconstitutional delay in his case.

The Court should therefore hold that the County is liable for applying its policy and practice of delay to Robert's case.

***Third***, the County claims arm-of-the-state immunity. The Supreme Court "has repeatedly refused to extend sovereign immunity to counties," even when they "exercise a 'slice of state power.'" *N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193–94 (2006) (collecting cases). Its "clear preference" is "denying counties sovereign immunity." *Fox v. Saginaw County*, 2022 WL 523023, at *5 (6th Cir. Feb. 22, 2022). Thus, the County is not "categorically . . . an 'arm of the state.'" *Bowles v. Sabree*, 2024 WL 1550833, at *3 (6th Cir. Apr. 10, 2024) (citation omitted). To determine whether a county is eligible for "arm of the state" immunity, rather, courts consider (i) the state's liability for any judgment, (ii) how state law characterizes and regulates the entity, (iii) whether state or local officials appoint the entity's leaders, and (iv) whether the entity's functions are traditionally state or local. *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc). This is an affirmative defense, *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002)—one that is "fact-specific," *Lopez v. Massachusetts*, 588 F.3d 69, 81 (1st Cir. 2009).

Yet the County fails to identify *facts* that support this affirmative defense[34] or engage with "the governing standard in this circuit." *See Bowles*, 2024 WL 1550833, at *3. Instead, it just cites case law holding that county *prosecutors* act as arms of the state. ECF No. 118, PageID.3024–25; *see, e.g.*, *Cady v. Arenac County*, 574 F.3d 334, 342–45 (6th Cir. 2009) (affirming dismissal of claim against county prosecutor in his official capacity). But the County elides that the Sixth Circuit has expressly distinguished counties from their "individual officers." *Fox*, 2022 WL 523023, at *5.

Even if the Court considers each of the factors, despite the County's failure to prove them, "Wayne County is not entitled to sovereign immunity." *Bowles*, 2024 WL 1550833, at *3.[35] As to "the foremost factor," "[t]here is no information that indicates that the state would incur any liability." *Fox*, 2022 WL 523023, at *5; *cf.* ECF No. 19-3, PageID.458–59 (¶ 4) (a portion of Omnibus Forfeiture Act proceeds goes to the County); ECF No. 109-2, PageID.2237, 2239 (Tr. 20:14–21:6, 26:9–27:15) (redemption fees are part of the County's budget and offset salaries). The remaining factors all "weigh against sovereign immunity" because Michigan counties "maintain a significant amount of autonomy." *Fox*, 2022 WL 523023, at *5.

[34] Even if it could identify supporting facts, it would be precluded from doing so because it failed to identify them in response to a contention interrogatory. *See* ECF No. 106-8, PageID.1740–41; Fed. R. Civ. P. 37(c)(1).

[35] The County explains that *Bowles* held that county treasurers can be entitled to sovereign immunity but omits that the Sixth Circuit then held that "Wayne County is not entitled to sovereign immunity." *Compare Bowles*, 2024 WL 1550833, at *3, *with* ECF No. 118, PageID.3025.

No forfeiture statute required the County to create a Vehicle Seizure Unit, extort car owners for redemption fees, or delay forfeiture proceedings for months. Those policies and practices were "entirely voluntary." *Id.* at *6; *see Bowles*, 2024 WL 1550833, at *3. If anything, Michigan law *prohibited* many of them. In Robert's case, the County did not do the *one* thing the statute *required* it to do: comply with the filing deadline, seek an extension, or return the car. *See* MCL §§ 600.4706(2), .4707(4). In other words, "[b]ecause it is clear that the count[y] 'could have opted to act differently, or not to act,' [it] did not act as an arm of the State of Michigan." *Fox*, 2022 WL 523023, at *6 (citation omitted).

The Court should therefore grant summary judgment in Plaintiffs' favor as to the County's arm-of-the-state defense.

* * *

To sum up: Plaintiffs have three remaining procedural due process theories. One, challenging the County's policy and practice of seizing cars prior to a hearing, is foreclosed by precedent. But the Court should grant summary judgment to Plaintiffs on the other two. The Court should hold that the County violated Plaintiffs' rights by failing to initiate forfeiture proceedings within fourteen days. And the Court should hold that the County violated Robert's rights and Stephanie's rights (as to the second seizure) by delaying initiation and resolution of their forfeiture

proceedings for months, based on the speedy trial test. Finally, the Court should reject the County's arguments for avoiding liability on Robert's due process claim.

### III. The County's seizure and retention of vehicles without probable cause violated Melisa's and Stephanie's Fourth Amendment rights.

The County's policy and practice of unreasonably seizing and retaining vehicles violates the Fourth Amendment. First, it seizes vehicles without probable cause. Then, it retains the same vehicles for months to solely to coerce owners into forking over money to the County. As the Court recognized at the motion-to-dismiss stage, and as the summary-judgment record confirms, this scheme cannot be squared with the Fourth Amendment's guarantee against unreasonable seizures.

In this circuit, a plaintiff has a valid Fourth Amendment claim for the *continued* seizure of property where the government also lacked probable cause for the *initial* seizure. *See Fox v. Van Oosterum*, 176 F.3d 342, 350–52 (6th Cir. 1999). Applying *Fox*, this Court previously held that Melisa plausibly alleged that the County violated her Fourth Amendment rights because she "complain[ed] about both an illegal initial seizure of the vehicle *and* an illegal refusal to return it without paying a redemption fee." ECF No. 54, PageID.1006 (emphasis added). Because the County allegedly lacked probable cause to believe Melisa committed any wrongdoing both at the time of the seizure and when it continued to retain her vehicle solely to secure full payment of a redemption fee, the Court held that her claims were consistent with this Sixth Circuit precedent. *Id.*, PageID.1005–06.

Even though discovery bore out Plaintiffs' allegations, the County now seeks to relitigate that ruling.[36] But on the Court's plain articulation of the legal standard, undisputed facts establish that the initial seizures *and* continued retention of Melisa's and Stephanie's vehicles violated the Fourth Amendment. They have further established that those seizures and retentions followed directly from the County's policy and practice of seizing and holding vehicles without probable cause. The Court should grant summary judgment for both on their Fourth Amendment claims.

**A. The County lacked probable cause for the initial seizures of Melisa's and Stephanie's cars, and for the continued seizures of those cars solely to secure payment of fees.**

"The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). As this Court has explained, a plaintiff in this circuit can establish a Fourth Amendment violation where there is both "an illegal initial seizure [of property]" and "an illegal refusal to return it." ECF No. 54, PageID.1006 (quoting *Fox*, 176 F.3d at 350–52). Both Melisa

[36] The County acknowledges that this Court has already rejected its interpretation of *Fox*. ECF No. 118, PageID.2998 n.12. It nevertheless argues once again that "[o]nce a seizure is completed, any remedies lay with procedural Due Process, not the Fourth Amendment." *Id.*, PageID.2998. Among the other reasons that the Court should stand by its original ruling, other circuits have actually gone a step further and held that continued retention of property can be illegal even when the initial seizure was lawful, partially rejecting *Fox*'s reasoning. *See, e.g.*, *Asinor v. District of Columbia*, 111 F.4th 1249 (D.C. Cir. 2024); *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017). Plaintiffs expressly preserve for appeal the argument that the continued retention of Plaintiffs' vehicles was unlawful independent of the initial seizure.

and Stephanie have established that the initial seizures and ongoing retentions of their vehicles were illegal.

**1. The County lacked probable cause to seize Melisa's car.**

In its order on the County's various motions to dismiss and abstain, this Court explained that Melisa's Fourth Amendment claim survived in part because:

> Plaintiff does not contest whether the officers had probable cause as it relates to [Edland] Turner's activities, but rather Plaintiff alleges that the County's seizure of the car without probable cause that it is connected to a crime committed by Ingram, the owner, amounts to a Fourth Amendment violation, which she has plausibly alleged.

*Id.*, PageID.1005. The evidence undisputedly supports Melisa's allegation that, when the County seized her car in 2018, it lacked "probable cause that it [was] connected to a crime committed by Ingram, the owner." *Id.* Although law enforcement can (and routinely does) learn the registered owner of a vehicle by running a search on the license plate number, Officer Sheri Tanner—who seized Melisa's car—left blank the box on the seizure notice titled "Ownership Interest." *See* ECF No. 109-2, PageID.2028 (Tr. 62:8–63:11); PageID.2042. Officer Tanner testified that she did not even ask Edland Turner if he owned the vehicle when she interrogated him during the stop. *Id.*, PageID.2024 (Tr. 48:23–24). This failure to record, or even inquire about, who owned the vehicle was deliberate. Officer Tanner explained that she "wouldn't need to know" who owned a vehicle in "prostitution cases." *Id.*, PageID.2028 (Tr. 62:23–25). That is because, according to Officer

Tanner, "it does not matter if the [registered owner] knows . . . that a person is out there picking up a prostitute." *Id.*, PageID.2024 (Tr. 49:13–15). Officer Tanner's testimony confirms Melisa's allegation that the County seized her vehicle "without probable cause that it is connected to a crime committed by . . . the owner." ECF No. 54, PageID.1005. Melisa thus meets the first requirement for establishing the Fourth Amendment violation, as previously described by this Court.

**2. The County lacked probable cause for the initial seizures of Stephanie's cars.**

Stephanie has likewise established that the County seized her vehicles without probable cause. First, as to the January 2019 seizure of Stephanie's Chevy Malibu, Officer Rivers recorded on the seizure form that Stephanie "was the registered owner of the vehicle." ECF No. 109-2, PageID.2073 (Tr. 107:19–22). He also testified that he had no "reason to believe . . . that [Stephanie] had bought any narcotics." *Id.*, PageID.2073 (Tr. 107:4–7). Likewise, for the seizure of the Saturn Ion in June 2019, Officer Rivers testified that he did not recall "find[ing] any evidence that Ms. Wilson had bought drugs." *Id.*, PageID.2083 (Tr. 146:16–19). So, as in Melisa's case, the seizing officer lacked probable cause to believe that the owner had engaged in any criminal activity both times he seized the car.

If anything, the lack of probable cause for the seizures of Stephanie's cars was even more egregious because Officer Rivers lacked probable cause that they could even be forfeited. "[T]o seize a vehicle . . . , police officers must have probable cause

to believe that the vehicle is . . . subject to forfeiture under the statute." *Mobley v. City of Detroit*, 938 F. Supp. 2d 669, 681 (E.D. Mich. 2012). Relevant here, the Michigan Supreme Court has held that MCL § 333.7521(1)(d) authorizes forfeiture only where the vehicle is used to transport "illicit property . . . for the purpose that the property be sold or received." *2006 Saturn Ion*, 2024 WL 3503577, at *4. It does not permit forfeiture where a vehicle is used "to transport an individual to a location to sell or receive illicit property" or where it is used for "transportation of property without an intent that it be sold or received." *Id.* at *5.

Yet even if accepted as true for summary judgment purposes,[37] that is all that Officer Rivers's testimony shows. He testified that he seized Stephanie's Malibu because her passenger "admitted that he had purchased ten dollars' worth of heroin" and because "[Stephanie] stated that she transported Mr. Smith to purchase narcotics." ECF No. 109-2, PageID.2074 (Tr. 111:13–18). Similarly, he seized Stephanie's Ion because he believed he saw a "a hand-to-hand drug transaction" through the passenger window of the vehicle and because Stephanie allegedly told him that "she transported Smith to the location" to buy heroin. *Id.*, PageID.2078 (Tr. 129:15–22). Neither circumstance amounts to probable cause that the vehicle is

[37] If this Court believes there was probable cause to seize the cars solely to pursue forfeiture based on Officer Rivers's version of events, it still should not grant summary judgment for the County. Stephanie has testified to a very different version of events, creating a genuine dispute of material fact as to what precipitated the seizure. *See* ECF No. 21-3, PageID.660–61, 663–64 (¶¶ 10–14, 24–29).

subject to forfeiture because, as the Michigan Supreme Court explained when it affirmed the return of Stephanie's Ion, "there was no point in time where a reasonable fact-finder could have concluded that all of the required elements of MCL 333.7521(1)(d) were present."[38] *2006 Saturn Ion*, 2024 WL 350377, at *6. Officer Rivers thus did not have probable cause to seize Stephanie's Malibu or Ion for forfeiture simply because he allegedly saw her give someone a ride to buy drugs for personal use. *See United States v. Del Rosario-Acosta*, 968 F.3d 123, 129 (1st Cir. 2020); *Mobley*, 938 F. Supp. 2d at 683.

**3. The County's continued seizures of Melisa's and Stephanie's cars to coerce payment of fines and fees were unreasonable.**

In addition to establishing that the initial seizures of Melisa and Stephanie's cars were illegal, the undisputed evidence shows that their continued detention also violated the Fourth Amendment. "[A] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force." ECF

---

[38] Citing a lone dissenting justice, the County argues that Stephanie's Ion was nevertheless forfeitable under MCL § 333.7521(f), giving Officer Rivers probable cause to seize it. That provision covers "thing[s] of value that [are] furnished or intended to be furnished in exchange for a controlled substance . . . or that [are] used or intended to be used to facilitate any violation of this article including, but not limited to, money, negotiable instruments, or securities." But the County presented the argument to the Michigan Supreme Court, which declined to adopt it. *2006 Saturn Ion*, 2024 WL 350377, at *6 n.4. And for good reason. The canon of *ejusdem generis* counsels against broadening that list of items used as currency in drug transactions to include the highly dissimilar object of vehicles used to transport someone to purchase drugs.

No. 54, PageID.1007 (quoting *Brewster*, 859 F.3d at 1197). Once that initial justification is gone, "the government must cease the seizure or secure a new justification." *Brewster*, 859 F.3d at 1197. And the burden is on the government to show that the new justification is valid. After all, "[w]arrantless seizures are *per se* unreasonable and violate the Fourth Amendment." *Reed v. Presque Isle County*, 702 F. Supp. 3d 553, 567 (E.D. Mich. 2023). So, the County "bears the burden of demonstrating an exception to the warrant requirement applies." *Id.* The County has not explained—and cannot explain—which exception to the warrant requirement justifies seizing cars until their owners (who have not been arrested and against whom no judgment has been entered) agree to pay up.

Whatever rationale the County might offer for taking Melisa's and Stephanie's cars off the road—without any evidence they committed forfeitable offenses—certainly dissipated by the time it agreed to release the cars back to them if they paid the redemption fee. It is undisputed that the County would have released Melisa's and Stephanie's cars if they had simply paid. In fact, Melisa made "many" visits to the VSU to try to "make partial payments in order to get" her car back, but the County refused to release it until she paid in full. ECF No. 118-2, PageID.3044 (Tr. 24:17–25:21). Once she did, it "gave [her] a release ticket." *Id.* (Tr. 24:1–5). That is because, regardless of the offense alleged, the County's undisputed policy has been to release any car seized for forfeiture and referred to the VSU upon payment of the

redemption fee and towing and storage fees. ECF No. 106-4, PageID.1686. Because payment is all that stands between an owner and her car, the County cannot argue that it has any rationale for continuing a seizure other than securing the payment of a fee. No recognized exception to the Fourth Amendment's warrant requirement licenses a shakedown. *Cf. Harrell v. City of New York*, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015) (a municipality "cannot . . . , consistent with the Fourth Amendment, . . . summarily seize property to deter future violations from an *alleged* violator and hold the property as leverage to ensure payment of a penalty").

The County next argues that the continued seizure of Plaintiffs' cars was reasonable in part because there was no "untimely delay." Specifically, it argues that it was not responsible for the long delay in returning Stephanie's Ion and that its delay in returning Melisa's car after she paid the redemption fee was relatively brief. ECF No. 118, PageID.3004. But this misunderstands Plaintiffs' *Fourth* Amendment claim. That claim is based on the County's lack of probable cause for *any* continued warrantless retention of vehicles solely to coerce full payment of a redemption fee. The length Wayne County's actual or threatened delay is relevant to Plaintiffs' *Fourteenth* Amendment claim, but what matters for Plaintiffs' Fourth Amendment continued-seizure claim is when the original rationale for the seizure dissipated. Once securing payment of a fee becomes the only remaining reason for the seizure,

the County violates the Fourth Amendment by refusing to release the car—even for a few days or weeks. *See Brewster*, 859 F.3d at 1197.

Nor, in cases where no arrests were made, can the County's continued seizure have been justified by its intent to pursue forfeiture proceedings if the redemption fee is not paid. Without any arrest or criminal prosecution associated with the allegedly intended forfeiture, the County's only interest is securing payment of a redemption fee—that is, seeking to gain the property of a person never arrested or charged with a crime. No exception to the Fourth Amendment's warrant requirement protects naked pecuniary interest by the government. Nor does it save the County even if the vehicles are forfeitable "contraband" under relevant forfeiture statutes. After all, "[t]he Fourth Amendment does not concede any talismanic significance to use of the term 'contraband' whenever a legislature may resort to a novel forfeiture sanction in the interest of law enforcement, as legislatures are evincing increasing ingenuity in doing." *Florida v. White*, 526 U.S. 559, 567 (1999) (Souter, J., concurring) (citing, in part, *Bennis v. Michigan*, 516 U.S. 442, 443–46 (1996)).[39]

[39] Justice Souter's citation of *Bennis* is notable because it involved the same forfeiture scheme that the County used to seize Melisa's car. *Compare Bennis*, 516 U.S. at 444, *with* ECF No. 20-6, PageID.521, *and* ECF No. 20-8, PageID.527.

**B. The County's seizures of Plaintiffs' vehicles are consistent with its policies and practices of seizing vehicles without probable cause and retaining them to coerce payment of redemption fees.**

The seizures of Melisa's and Stephanie's cars were typical for the County's vehicle seizure scheme, rendering the County liable for their claims. *See, e.g., Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights."). The County has routinely seized vehicles without probable cause to believe the vehicle owner had done anything wrong. *See* ECF No. 109-2, PageID.2028 (Tr. 62:17–25) (Tanner testifying that she "wouldn't need to know" who owned a vehicle in "prostitution cases"); *id*., PageID.2073, 2083 (Tr. 107:4–7, 146:16–19) (Rivers testifying that he seized Stephanie's car, with the knowledge that she "was the registered owner of the vehicle," even though he had no "reason to believe . . . that [Stephanie] had bought any narcotics" and did not "find any evidence that [Stephanie] had bought drugs"). And Wayne County's Rule 30(b)(6) designee testified that its policy has been to seize cars when they were "in areas known for drug dealing," the owner drove them to buy drugs for personal use, or the owner used drugs inside the car. ECF No. 109-2, PageID.1987–88 (Tr. 72:24–73:23, 74:16–75:11). Yet the Michigan Supreme Court has squarely held that none of those circumstances make a car forfeitable. *See 2006 Saturn Ion*, 2024 WL 3503577, at *5. Thus, the County has had unlawful policies

and practices of seizing vehicles without probable cause that the (1) owner had committed a forfeitable offense (as in Melisa's case) and (2) vehicle was forfeitable (as in Stephanie's case).

Likewise, the County's continued seizures of Melisa's and Stephanie's cars were exactly in line with Wayne County's policies and practices. The County's policy has been to release any car upon payment of a "non-negotiable" redemption fee. ECF No. 109-2, PageID.2262, 2279 (Tr. 60:3–22, 127:16–22). The same redemption fee schedule has applied regardless of the alleged offense for which a car is referred to the VSU. *Id.,* PageID.2182 (Tr. 179:14–180:3). And VSU employees have not sought (nor could they have sought) any information about the circumstances of that alleged offense or details about the alleged offender, prior to accepting redemption fee payments and releasing the car. *Id.* (Tr. 180:18–181:2). Further, the County has routinely seized cars for intended forfeiture—as it did here—without making any arrests for the allegedly criminal activity that led to the seizure. *See id.*, PageID.1975, 1979 (Tr. 25:8–26:25, 41:21–23); *id.*, PageID.2025–26 (Tr. 53:3–54:3) (Tanner testifying that it was "common" to seize vehicles under the nuisance abatement statute without arresting anyone, and that she personally did so in over 100 instances); *id.*, PageID.2053 (Tr. 27:7–17) (Rivers testifying that he made arrests in less than half of the cases in which he seized cars). Thus, the unlawful

continued retention of Melisa's and Stephanie's cars was in line with the County's policy to retain cars to secure full payment of fees.

## IV. The County's forfeiture of Stephanie's Chevrolet Malibu is an excessive fine in violation of the Eighth Amendment.[40]

The County's forfeiture of Stephanie's Chevrolet Malibu violates the Eighth Amendment's Excessive Fines Clause. Under *United States v. Bajakajian*, a forfeiture may not be "grossly disproportional" to the owner's offense. 524 U.S. 321, 336–37 (1998). Here, the County's policy and practice of forfeiting cars is grossly disproportionate in cases like Stephanie's, where no forfeitable offense even occurred. *See 2006 Saturn Ion*, 2024 WL 3503577, at *5.

The County argues that Stephanie lacks standing to pursue an Eighth Amendment claim as to her Malibu because "she did not ever pay anything to Wayne County for return of a vehicle." ECF No. 118, PageID.2996. But the Eighth Amendment applies to civil *in rem* forfeitures as well as monetary fines. *Timbs v. Indiana*, 586 U.S. 146, 155 (2019). The administrative forfeiture of Stephanie's Malibu and the County's imposition of redemption fees must both adhere to the demands of the Eighth Amendment.

The undisputed evidence shows that it does not. Applying the Excessive Fines Clause, Courts must compare "the amount of the forfeiture to the gravity of the

---

[40] Because Stephanie's Ion was ultimately returned, she moves for summary judgment only as to the Malibu on her Eighth Amendment claim.

defendant's offense." *Bajakajian*, 524 U.S. at 336–37. "If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 337. Here, the undisputed evidence shows that no forfeitable offense had occurred at all when the County seized Stephanie's Malibu. And for this non-offense, Stephanie suffered the loss of her car—property which several courts, including the Sixth Circuit, have highlighted as particularly important. The County's forfeiture of Stephanie's Malibu was grossly disproportional in violation of the Excessive Fines Clause. *Cf. State v. Timbs*, 169 N.E.3d 361, 373–76 (Ind. 2021) (forfeiture of $35,000 car was disproportionate even where defendant received a six-year prison sentence for felony drug dealing), *on remand from Timbs*, 586 U.S. 146. It was also consistent with the County's policy and practice of forfeiting the vehicles of innocent people. The Court should grant summary judgment for Stephanie on her Eighth Amendment claim.

This Court previously dismissed Melisa's Eighth Amendment claim challenging the imposition of redemption fees on innocent owners before the initiation of any forfeiture action. ECF No. 118, PageID.2996. The Court held that, under Sixth Circuit precedent, "fines under $2,000 to release impounded vehicles are not unconstitutionally excessive" where they are "validated" by "deterrence and punishment." *See* ECF No. 54, PageID.1010 (citing *Ross v. Duggan*, 402 F.3d 575, 582 (6th Cir. 2004)). The Court further interpreted *Ross* as "implicitly rejecting" an

argument that punishment of an innocent owner is "per se grossly disproportionate." *Id.* It therefore dismissed Melisa's Eighth Amendment claim regarding the redemption fee she paid for the return of her car.

*Ross*, however, does not foreclose Stephanie Wilson's claim under the Excessive Fines Clause. The plaintiffs in *Ross* were arrested during prostitution stings and their vehicles were subsequently impounded. *Ross*, 402 F.3d at 578–79. They had "*conceded* that the challenged arrests were supported by probable cause," thereby giving rise to probable cause to seize the vehicles. *Id.* at 586 (emphasis in original). In this context, the Sixth Circuit held that forfeiture of the cars of "even . . . unfortunate innocent and unknowing owner[s]" could be justified by "elimination of the offending property for future use as a public nuisance, and discouragement of future uses of similar property for similar illegal activities." *Id.* at 582.

Like Melisa's case, Stephanie's case is distinct from *Ross* in that nobody was arrested when the vehicle was seized. But Stephanie's case differs in another crucial respect. It is now clear that no forfeitable offense had occurred at all when her car was seized. *See 2006 Saturn Ion*, 2024 WL 3503577, at *5. So, the vehicle was never used as a "public nuisance" or for "illegal activities." *Ross*, 402 F.3d at 582. This grossly disproportional punishment of a wholly innocent person cannot square with *Ross* and violates the Excessive Fines Clause. *See, e.g.*, *Bajakajian*, 524 U.S. at 334

("The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.").

Stephanie's claim is also distinct from Melisa's—and from *Ross*—in that she challenges the forfeiture of her car, rather than the imposition of a fee. Courts have acknowledged the unique hardship involved in the loss of vehicles, which "are a mode of transportation, sometimes the means to earn a livelihood, and often a person's 'most valuable possession.'" *Ingram*, 81 F.4th at 619 (citation omitted). This was certainly true for Stephanie. When the County forfeited her Malibu, she went without a car for a month. ECF No. 21-3, PageID.662–63 (¶ 23). During that month, Stephanie had to "rel[y] on [her] parents for transportation for [herself] and [her] diabetic child, who requires regular visits to the doctor." *Id*. Particularly considering the burden on Stephanie, the County's forfeiture of the Malibu was grossly disproportional to any alleged offense. And it was certainly disproportional to an "offense" that turns out not to have been a forfeitable offense at all. *See 2006 Saturn Ion*, 2024 WL 3503577, at *5.

## V. The County's policy and practice of denying procedural safeguards to innocent owners before the initiation of forfeiture proceedings violated Melisa's and Stephanie's due process rights.

### A. The County deprived Melisa and Stephanie of their property despite their innocence, in violation of their due process rights.

The County's policy and practice of forfeiting innocent owners' cars without any procedural safeguards violates Melisa's and Stephanie's due process rights.

Though the Supreme Court previously upheld Michigan's nuisance abatement-law against a similar due process challenge, *Bennis*, 516 U.S. at 453, Plaintiffs' narrowly target the County's *own* policies and practices of implementing the state's forfeiture laws without providing its employees any "remedial discretion" towards innocent owners. *Id.* The County's failure to offer any mechanisms to lessen the property deprivation of innocent owners pushes beyond the strict "limits on *what* property can be forfeited as a result of what wrongdoing." *See id.* at 455 (Thomas, J., concurring).[41]

In Count III of their Amended Complaint, Plaintiffs alleged that the County's lack of protections for innocent owners violated Plaintiffs' due process rights. In this claim, Plaintiffs did not challenge the U.S. Supreme Court's holding in *Bennis*, but the County's policy and practice of denying "innocent owners any means of demonstrating their blamelessness in nuisance-abatement actions and [of] denying innocent owners in other types of actions any means of doing so prior to the county's initiation of forfeiture proceedings." ECF No. 12, PageID.285 (¶ 284). This claim does not challenge the Michigan statute at issue in *Bennis*, but the County's denial of due process while it deprives innocent owners of their property—either their car or their money—prior to the filing of forfeiture actions. Undisputed evidence

[41] Alternatively, if this Court reads *Bennis* as establishing that innocence is not constitutionally relevant in forfeiture cases, Plaintiffs expressly preserve their argument that *Bennis* should be overruled.

establishes that this has been Wayne County's policy and practice, and that Melisa and Stephanie both suffered deprivations because of it. The Court should grant summary judgment for both on this claim.

When Melisa's and Stephanie's vehicles were seized, they were referred to the VSU, a division of the Wayne County Prosecutors' Office. Although the County's 30(b)(6) deponent testified that, in his view, "[j]ustice requires that each case receive its own due particular professional judgment," ECF No. 109-2, PageID.2147 (Tr. 38:9–10), the VSU was staffed only by clerical employees who "can't conduct investigations that would matter" because "they're not a prosecutor who's been trained to the law and the facts of the case-by-case basis according to the law." *Id.*, PageID.2182 (Tr. 180:21–25). Far from making "settlement offers" that consider individual circumstances, including allegations of innocence, these employees were authorized only to impose the County's "non-negotiable" redemption fee schedule. *Id.* (Tr. 179:14–180:3, 180:18–25); *id.*, PageID.2262 (Tr. 60:8–22); ECF No. 106-19, PageID.1841. Nor did they affirmatively offer claimants an opportunity to make a case for the release of their vehicle. Rather, as a matter of policy, the only options offered to claimants have been to "redeem," "relinquish," or "contest." ECF No. 106-4, PageID.1686; ECF No. 106-5, PageID.1704, 1707 (Tr. 52:13–23, 58:2–5). The VSU Policy Manual has stated that, under the last option, the County will file a forfeiture case "within 4 months," and directs employees to convey that information

to claimants. ECF No. 106-4, PageID.1689. These were the options offered to Melisa and Stephanie,[42] both innocent owners. ECF No. 21-2, PageID.649–50 (¶¶ 17–19); ECF No. 118-4, PageID.3100–01 (Tr. 24:10–12, 25:11–25). Wayne County was indifferent to their innocence as a matter of policy, and subjected both to deprivations without offering meaningful avenues to assert their innocence to someone with authority to acknowledge it.

Nor does *Bennis* counsel otherwise. There, the U.S. Supreme Court acknowledged the "considerable appeal" of the argument that "the Michigan forfeiture statute is unfair because it relieves prosecutors from the burden of separating *co*-owners who are complicit in the wrongful use of property from innocent co-owners." *Bennis*, 516 U.S. at 453 (emphasis added). It nevertheless found that the innocent co-owner's due process rights had not been violated in part because the trial court handling the forfeiture case allegedly had "remedial discretion." *Id.* While the VSU has authority over the process, on the other hand, nobody has the discretion to ease the burden of property deprivation that punishes innocent owners. ECF No. 109-2, PageID.2182 (Tr. 180:18–25); PageID.2259–60, 2262 (Tr. 48:18–49:23, 51:5–19, 60:8–22). Punishment of innocent owners pushes the limits on "*what* property can be forfeited as a result of what wrongdoing"

[42] There is a factual dispute as to whether the VSU employee informed Stephanie of her option to contest the seizure of her Malibu, but that is not relevant to this claim.

consistent with due process. *See Bennis*, 516 U.S. at 455 (Thomas, J., concurring). Concurring, Justice Thomas cautioned against pushing these limits where, as here, "they are the sole restrictions on the state's ability to take property from those it merely suspects, *or does not even suspect*, of colluding in crime." *Id.* (emphasis added).

**B. The County's arguments to the contrary are meritless.**

The County's response to Count III is largely to shift blame to the state. It argues in part that Michigan law—upheld in *Bennis*—does not and need not contain an innocent owner defense in nuisance-abatement cases. ECF No. 118, PageID.3009. But Plaintiffs challenge "[t]he County's application of the absence of any innocent-owner protection in Michigan's nuisance-abatement law . . . to deny innocent owners an opportunity to regain possession of their vehicles (or other property) by demonstrating they did not know about or consent to the alleged misuse of their property." ECF No. 12, PageID.236 (¶ 28(h)). Nothing in the Michigan law compelled the County to deny innocent owners a chance to get their cars back in a voluntary VSU process of the County's own creation. Nor could it: The County has a constitutional obligation to provide due process of law to anyone it seeks to deprive of property, regardless of state law. *See Schulkers v. Kammer*, 367 F. Supp. 3d 626, 643 (E.D. Ky. 2019) ("It . . . is of no import that state statutes, regulations, or procedures may afford [government] workers greater latitude. Such enactments

cannot displace the protections of the United States Constitution . . . .” (citing *Sibron v. New York*, 392 U.S. 40, 60–61 (1968)); *see also Sibron*, 392 U.S. at 60–61 (observing that state and local authorities are free to make laws about when a person’s property can be seized, but their actions must still comport with the Constitution). Regardless of what Michigan law does or does not require, the Constitution compels the County to respect the commands of the Due Process Clause in its *own* policies and processes.

The County further argues that Michigan law provides sufficient process for innocent owners to secure the return of their property. This argument errs for two reasons. First, again, the County focuses on process that is not available until *after* a forfeiture case has been set into motion. It takes Wayne County an average of four months to get that ball rolling, and Plaintiffs’ claim focuses on the deprivations before that time. Second, the County’s citations do not actually support their contention that Melisa and Stephanie could have sought the release of their property as innocent owners even after that time.[43]

[43] *Shandor v. City of Eastpointe* offers only one passing reference to a “petition for the release of [a] car.” 2021 WL 4775190 (6th Cir. Oct. 13, 2021). The statute that allegedly provides that option to petition does not cover seizures under the nuisance abatement law and does not, in fact, offer an option for owners to petition for the release of their vehicles. *See* MCL § 333.7523. Likewise, the innocent owner defense allegedly available to Stephanie under MCL § 333.7521(1)(f) involves a provision different from that under which Stephanie’s was seized. *See 2006 Saturn Ion*, 2024 WL 3503577, at *5. There is no support for the County’s contention that this subsection—which covers “thing[s] of value” like “money, negotiable

Finally, the County argues that "municipal liability claims require an underlying violation of 'clearly-established law,'" which they argue Plaintiffs cannot prove. ECF No. 118, PageID.3012. The authorities the County cites in support of that assertion, however, deal with "failure-to-train" claims under § 1983. *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 511 (6th Cir. 2012). Plaintiffs' claims, on the other hand, are based on the County's unconstitutional policies and practices. Unlike failure-to-train claims, these claims "arise[] directly from a municipal act," so "the violated right need not be clearly established." *Arrington-Bey*, 858 F.3d at 994–95. It is enough for Plaintiffs to establish, as they have here, that the County's policies violated their constitutional rights. There is no further requirement that Plaintiffs must provide previous case law dealing with identical violations of others' constitutional rights.

**VI. The County's arbitrary and irrational seize-and-ransom policy violated Plaintiffs' Fourteenth Amendment rights.**

Count V of Plaintiffs' Amended Complaint alleged that the County's seize-and-ransom policy "shocks the conscience" and is thus arbitrary and irrational in violation of the Fourteenth Amendment. Undisputed evidence now supports the

---

instruments, or securities" that are used to buy drugs or otherwise facilitate violations of the controlled substances act—offers an avenue for relief to innocent owners whose cars were seized under a different provision, which expressly focuses on the forfeiture of vehicles.

allegations on which this Court previously relied in holding that Plaintiffs had plausibly alleged their claims under that count. The County offers a variety of reasons why the Court should nevertheless reject them. Each lacks merit and the Court should grant summary judgment for Melisa and Stephanie on Count V.

**A. The County's seize-and-ransom policy shocks the conscience.**

Denying the County's motion to dismiss Count V of Plaintiffs' Amended Complaint, this Court previously explained that:

> To succeed on this substantive due process claim, Plaintiff must allege that "(1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action."

ECF No. 54, PageID.1019 (quoting *Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir. 2015)). The Court elaborated that "[w]here government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience," it will survive a substantive due process challenge "so long as it is rationally related to a legitimate state interest." *Id.*, PageID.1019–20 (quoting *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)). The Court then held that Melisa had sufficiently pleaded such a claim because she had "shown that her property interest in her vehicle was, at least in part, deprived on condition of paying fines and fees unrelated to the Government's purported interest in deterring and punishing crime." *Id.*, PageID.1020. The factual allegations on which this Court then

relied to find that Melisa had "sufficiently alleged a fine[s] and fees scheme that shocks the conscience," *id.*, are now amply supported by evidence. And that evidence applies equally to Stephanie's claim under Count V. The Court should now grant summary judgment for Melisa and Stephanie on that claim.

*First*, it is undisputed that Melisa was deprived of her property interest in her vehicle until she paid the redemption fee. The County did not—and as a matter of policy does not—release vehicles before the initiation of forfeiture proceedings unless a vehicle owner pays the redemption fee. *See* ECF No. 106-6, PageID.1721, 1726, 1727 (Tr. 31:10–13, 178:3–5, 180:9–11); ECF No. 106-5, PageID.1707–08 (Tr. 58:25–59:5); ECF No. 106-7, PageID.1734 (Tr. 50:18–51:1); ECF No. 21-2, PageID.649–50 (¶¶ 16–22). Likewise, Stephanie was permanently deprived of her property interest in her Malibu because she could not pay the redemption fee. ECF No. 118-4, PageID.3100 (Tr. 24:13–20). And she was deprived of her property interest in the Ion during the nearly four months it took the County to file a forfeiture complaint against it only because she did not pay the redemption fee. *See* ECF No. 21-3, PageID.665–66 (¶¶ 38, 42).

*Second*, Plaintiffs have established that vehicle owners like Melisa and Stephanie have had to "consider the government's settlement offers under coercive circumstances that force innocent owners to choose between gaining access to their cars now or waiting months [for] forfeiture proceedings." ECF No. 54, PageID.1020.

The County's 30(b)(6) deponent, as well as seizing officers, have testified that cars have been seized for forfeiture from owners who have not committed any offense. ECF No. 106-1, PageID.1655 (Tr. 74:16–23); ECF No. 109-2, PageID.2024 (Tr. 48:23–24) (Tanner); *id.*, PageID.2073, 2083 (Tr. 107:4–7, 146:16–19) (Rivers). Further, though the County denies that VSU employees provided estimates on how long the forfeiture process could take overall, the VSU supervisor testified that it has been VSU policy to "Clearly communicate" to claimants that "after they contest the seizure of their car, a lawsuit would be filed within four months from the date of seizure." ECF No. 109-2, PageID.2264 (Tr. 66:2–15). And, in fact, it has taken Wayne County an average of more than four months after seizures to file forfeiture suits. *See* Counterstatement of Material Facts at 8.

*Finally*, Plaintiffs have established that "they [had] no innocence defense" during the time prior to the filing of a forfeiture complaint during which they were subject to the County's coercive redemption fee scheme. *See* ECF No. 54, PageID.1020. VSU employees who handled the County's "settlement offers" did not—and have never been authorized to—deviate from the standard redemption fee schedule, regardless of the alleged offense or the identity of the alleged offender. ECF No. 109-2, PageID.2182 (Tr. 179:14–180:3, 180:18–25); *id.*, PageID.2262 (Tr. 60:8–22). The VSU policy manual describes the schedule as "**NON-NEGOTIABLE.**" ECF No.106-19, PageID.1841. That fee schedule is irrationally

unrelated to the seriousness of the particular alleged offense or the vehicle owner's culpability or to any legitimate governmental interest. After all, "the County is happy to return . . . cars as soon as it gets paid. That practice proves the County's scheme is simply a money-making venture—one most often used to extort money from those who can least afford it." *Ingram*, 81 F.4th at 623 (Thapar, J., concurring).[44]

Discovery has confirmed each of the facts under which this Court previously held Plaintiffs had "sufficiently alleged a fine[s] and fees scheme that shocks the conscience." ECF No. 54, PageID.1020. Plaintiffs are now entitled to summary judgment on that claim.

**B. The County's arguments to the contrary are meritless.**

The County cannot dispute any of the facts under which this Court previously held Plaintiffs could establish a substantive due process claim for Count V. It instead offers a variety of alternative reasons why the Court should now reject that claim.[45] None are availing.

*First*, Plaintiffs' Fourteenth Amendment claim in Count V is not "improperly duplicative" of other claims. *See* ECF No. 118, PageID.3028. It is true that courts

---

[44] *See also id.* ("Does this sound like a legitimate way of cleaning up Wayne County? Or does it sound like a money-making scheme that preys on those least able to fight it? To ask the question is to answer it.").

[45] In addition to the arguments addressed in this subsection, the County again asserts that "Plaintiffs must prove a County 'custom, practice, or policy' that violated clearly-established law." ECF No. 118, PageID.3027. For the reasons previously discussed, this conflates "policy and practice" and "failure-to-train" *Monell* claims.

should not apply the "generalized notion of 'substantive due process'" when the Constitution "provides an explicit textual source of [] protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). That is not to say, however, that plaintiffs may *never* allege substantive due process claims in conjunction with other constitutional claims. On the contrary, plaintiffs routinely file cases with multiple claims, which courts address on the merits, given that overlapping constitutional safeguards may apply to the same set of facts. *See, e.g.*, *Asinor*, 111 F.4th at 1259 ("[T]he question whether this case implicates procedural due process, substantive due process, or the Takings Clause is irrelevant to the question whether it also implicates the Fourth Amendment.") As long as those claims do not "fully overlap," a plaintiff may assert a substantive due process claim alongside claims asserting other constitutional violations. *See Beal v. Vanalstine*, 2024 WL 5482662, at *5 n.5 (6th Cir. Nov. 20, 2024) (citation omitted).

Contrary to the County's argument that Plaintiffs' substantive due process is "covered" by their procedural due process and Eighth Amendment claims, ECF No. 118, PageID.3028, Count V does not "fully overlap" with either of those claims. *See Beal*, 2024 WL 5482662, at *5, n.5. Plaintiffs' procedural due process claim in Count IV invokes the Due Process Clause's guarantee of a "timely" hearing in the context of civil forfeitures, *see Culley*, 601 U.S. at 386, and its general rule that notice and hearing precede seizure and retention of property. *James Daniel Good*, 510 U.S. at

48; *accord Von Neumann*, 474 U.S. at 249 n.7. Plaintiffs' Eighth Amendment claim in Count II invokes that provision's protection against excessive fines—here imposed in the form of the redemption fee and vehicle forfeitures. But Plaintiffs' substantive due process claim in Count V challenges the *arbitrary and irrational manner* in which the County sets and collects redemption fees.[46] *See* ECF No. 12, PageID.291–92 (¶¶ 310–21). Specifically, Plaintiffs alleged that "the county irrationally determines whether vehicles (and other property) should be seized and impounded, not on public safety concerns, but on whether the owner of the property pays substantial fines and fees to the county." *Id.* (¶ 315). These arbitrary and irrational fees deprived Plaintiffs of property rights based on the threat of delayed forfeiture proceedings *and* the "non-negotiable" redemption fee schedule, working together. It was this combination of "coercive circumstances" that this Court previously found to "shock[] the conscience." ECF No. 54, PageID.1020.

***Second,*** the County contends Plaintiffs' claim must fail because "claimants are under no obligation to settle these cases." ECF No. 118, PageID.3028. But this Court rejected that argument in deciding the motions to dismiss. ECF No. 54 PageID.1020. It nevertheless found that, even if "individuals are under no obligation

---

[46] As alleged, Count V also differs from Plaintiffs' Eighth Amendment claim (which is limited to innocent owners) by alleging that the "seize-and-ransom policy irrationally prioritizes revenue from fines and fees over both public safety and the rights of the accused and innocent owners alike." ECF No. 12, PageID.292 (¶ 316).

to agree to its settlement offers," Plaintiffs had alleged "coercive circumstances" rising to a Fourteenth Amendment violation. *Id.* As explained above, the evidence now proves the existence of those "coercive circumstances." *Cf. Ingram*, 81 F.4th at 622 (Thapar, J., concurring) ("The County has been seizing cars, holding them for months, and denying hearings to anyone bold enough to ask for them. There's only one surefire way to get your car back: pay up.").

***Third***, the County also argues that it cannot be liable on Count V because "if the [Prosecutor's Office] did not offer the option of an early settlement," then "every case would be adjudicated through formal process via the state court system, over which the [Prosecutor's Office] exerts no control." ECF No. 118, PageID.3029. But the County understates its controls over the *process challenged in Count V*. The County *could* release cars before the initiation of forfeiture proceedings without requiring payment of a redemption fee. *See* ECF No. 109-2, PageID.2190 (Tr. 210:9–211:12, 213:3–9). It *could* adapt the redemption fee schedule to accommodate individual circumstances. *See id.*, PageID.2189–90 (Tr. 208:24–210:8); PageID.2129 (Tr. 100:18–23). It *could*, in its discretion, choose not to subject innocent owners to the coercive seize-and-ransom policy (either by not seizing their

cars in the first place or by offering them post-seizure alternatives). The policy challenged in Count V, then, is wholly within the County's control.[47]

*Finally*, the County argues that its seize-and-ransom policy cannot have been profit-driven because redemption fees "make up minuscule portions of Wayne County's financial resources." ECF No. 118, PageID.3029.[48] But the percentage of the budget redemption fees comprise is not a dispositive element of Plaintiffs' substantive due process claim. The County's policy has long been not to release a vehicle seized from any person for any alleged offense if the claimant has not paid a redemption fee. But the County *has* been willing to release a car to any person, no matter how serious the alleged offense, if the claimant has paid the fee. In other words, "the County is happy to return . . . cars as soon as it gets paid." *Ingram*, 81 F.4th at 623 (Thapar, J., concurring). "That practice proves the County's scheme is simply a money-making venture—one most often used to extort money from those who can least afford it." *Id*. The County's disregard for individual circumstances

[47] The County also includes a brief argument—completely unsupported by any citations to case law—that "Wayne County was not the proximate cause of Bell's purported damages" because Edland Turner committed the alleged forfeitable offenses. ECF No. 118, PageID.3030. But, for all the reasons already explained, undisputed facts show that the challenged seize-and-ransom scheme is a creature of Wayne County policy, not Edland Turner's actions.

[48] Although it is true that Wayne County's budget is much larger than the amount it collects in redemption fees, its Rule 30(b)(6) designee acknowledged that it incorporates the fees into its budget and uses them to "offset salaries," which are the Prosecutor's Office's "largest expenditure." ECF No. 109-2, PageID.2235, 2237, 2239 (Tr. 13:22–14:5, 20:14–24, 27:5–20).

contradicts any "purported interest in deterring and punishing crime" and renders its assessment of redemption fees arbitrary and irrational. ECF No. 54, PageID.1020.

## CONCLUSION

The Court should grant summary judgment for all Plaintiffs on Count IV of their Amended Complaint, for Plaintiffs Melisa Ingram and Stephanie Wilson on Counts I, III, and V of the Amended Complaint, and for Plaintiff Stephanie Wilson on Count II of the Amended Complaint. The Court should enter declaratory and injunctive relief on these Counts and further declare Defendant liable for Plaintiffs' individual damages claims.[49] Plaintiffs respectfully request a hearing to determine the appropriate amount of damages.

[49] There is a pending motion for class certification in this case. ECF No. 106. If the Court grants class certification, the class is entitled to judgment as a matter of law.

Dated: May 23, 2025

Respectfully submitted,

*/s/ Kirby Thomas West*
Kirby Thomas West
(Pa. Bar 321371)
Michael B. Soyfer
(N.Y. Bar 5488580; D.C. Bar 230366)
Christian Lansinger
(Md. Bar 221290007)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Viginia 22203
(703) 682-9320
kwest@ij.org
msoyfer@ij.org
clansinger@ij.org

Barton Morris Jr. (P54701)
LAW OFFICES OF BARTON MORRIS
801 West Beaver Road, Suite 600
Troy, Michigan 48084
(248) 541-2600
barton@bartonmorris.com