# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Melisa Bell, Stephanie Wilson, and
Robert Reeves,

                  Plaintiffs,

v.

County of Wayne,

                  Defendant.

_____/

Case No. 20-10288

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A.
Stafford

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RULE 56(C) OBJECTION AND DENYING DEFENDANT'S MOTION FOR LEAVE TO SUBMIT ADDITIONAL EXHIBITS [124, 142]

On May 11, 2020, Plaintiffs Melisa Bell,[1] Stephanie Wilson, and Robert Reeves ("Plaintiffs") filed an amended class action complaint against Defendant Wayne County, alleging that its policies and practices related to civil forfeiture are unconstitutional. (ECF No. 12.) Before the Court are Plaintiffs' Rule 56(c) objection to or, in the alternative, motion

---

[1] Since the case was filed, Plaintiff Melisa Ingram married and changed her name to "Melisa Bell." (ECF No. 107.) The case caption has been updated accordingly. (*Id.*)

to strike Defendant's summary judgment declarations and Defendant's motion for leave to submit additional exhibits in support of summary judgment. (ECF Nos. 124, 142.) For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' Rule 56(c) objection and denies Defendant's motion for leave to submit additional exhibits.

## I.     Background

This case concerns Defendant's alleged policy of unreasonably seizing and impounding cars and other property. (ECF No. 12.) Named Plaintiffs each had one or more vehicles seized by Wayne County. (*Id.* at PageID.13–32.) Plaintiffs argue that Defendants' seizure and forfeiture practices are unconstitutional under the Fourth, Eighth, and Fourteenth Amendments. (*Id.* at PageID.52–66.)

On April 2, 2025, Defendant filed a motion for summary judgment. (ECF No. 118.) Defendant attached two sworn declarations: one from Michigan State Police ("MSP") Captain and District Commander Philip Menna (ECF No. 118-5, PageID.3112–3115), and one from 30(b)(6) designee Charles S. Davis, the Principal Assistant Prosecuting Attorney for the Wayne County Prosecutor's Office ("WCPO") Forfeiture Unit. (ECF No. 118-6, PageID.3117–3126.) Menna's declaration discusses the

2

MSP's role in civil asset forfeiture under the Omnibus Forfeiture Act ("OFA") and its relationship to the WCPO. Davis' declaration discusses the role of the WCPO under the OFA, its relationship to the MSP, a civil forfeiture claimant's rights and remedies under Michigan law, and facts related to the seizure of Plaintiff Reeves' vehicle.

On May 22, 2025, Plaintiffs filed an objection pursuant to Federal Rule of Civil Procedure 56(c) or, in the alternative, a motion to strike Menna's and Davis' declarations. (ECF No. 124.) Plaintiffs argue that all or most of Menna's and Davis' declarations should be excluded from the summary judgment record for the following reasons: (1) Defendant failed to disclose Menna as a witness; (2) while Davis was disclosed as a witness, his declaration testimony impermissibly supplements and contradicts his prior deposition testimony; (3) both Davis and Menna largely offer inadmissible legal opinions; and (4) portions of their declarations are not based on personal knowledge. (*Id.* at PageID.3190.)

On September 26, 2025, Defendant filed a motion for leave to submit additional exhibits in support of its motion for summary judgment. (ECF No. 142.) Defendant seeks to submit two additional documents that it purports relate to questions the Court asked at a

3

September 11 hearing on the parties' cross-motions for summary judgment. (*Id.* at PageID.4107.) Specifically, Defendant seeks to submit: (1) the WCPO Case Information document relating to the January 17, 2019 seizure of Plaintiff Stephanie Wilson's Chevy Malibu; and (2) Wilson's signed consent to administrative forfeiture on March 28, 2019. (*Id.* at PageID.4112.) Defendant argues that both documents are relevant to questions asked by the Court regarding Wilson's purported efforts to contest forfeiture of the Malibu, the timing of those alleged efforts, and Wilson's ultimate abandonment of the car. (*Id.*)

## II.   Legal Standard

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking or opposing summary judgment must "cit[e] to particular parts of materials in the record" in support of its assertions "that a fact cannot be or is genuinely disputed." Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "Once an objection is

properly made, the proponent must 'show that the material is admissible as presented or . . . explain the admissible form that is anticipated.'" *Mangum v. Repp*, 674 F. App'x 531, 536 (6th Cir. 2017) (quoting Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The decision to allow a party to supplement the record with previously unsubmitted evidence is discretionary. "A district court does not abuse its discretion in denying a motion to supplement the record with previously unsubmitted evidence based on the movant's lack of diligence." *Peltier v. Macomb Cnty.*, No. 10-CV-10796, 2011 WL 4597436, at *1 (E.D. Mich. Sept. 30, 2011) (collecting cases).

### III. Analysis

#### A. Menna's Declaration

Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, Plaintiffs argue that Defendant failed to disclose MSP Captain Philip Menna as a witness because he was not named in Defendant's original or amended initial disclosures. (ECF No. 124,

PageID.3192.) Accordingly, Plaintiffs contend that Menna's declaration should be excluded in its entirety. (*Id.* at PageID.3194.)

Defendant responds that it "listed 'law enforcement officers with knowledge or information regarding the subject seizures,' as individuals likely to have discoverable information in its Amended Initial Disclosures." (ECF No. 127, PageID.3519.) Defendant also argues that Rule 26(e) only requires a party to supplement initial disclosures if new information "has not otherwise been made known to the other parties during the discovery process." (*Id.*) Here, Defendant suggests that Plaintiffs were aware that the MSP seized and had custody of Plaintiff Reeves' vehicle, and Defendant was therefore under no obligation to supplement its initial disclosures to identify Menna. (*Id.*)

As Plaintiffs point out, Defendant's identification of "law enforcement officers with knowledge or information regarding the subject seizures" is insufficient to identify *Menna* as a witness. Rule 26(a) requires parties to provide "the specific names of the individuals they might use as witnesses." 6 *Moore's Federal Practice* § 26.22. "It is not sufficient to identify them through the use of a collective description, such as 'employees or representatives of the defendant.'" *Id.*; *see also Eberline*

6

*v. Douglas J. Holdings, Inc.*, No. 14-10887, 2021 WL 2822589, at *2 (E.D. Mich. July 7, 2021) ("[L]isting generic categories of persons is insufficient to meet the requirements of Rule 26(a)(1)(A)(i).").

In *Labadie v. Dennis*, No. 1:07-CV-480, 2008 WL 5411901, at *2 (W.D. Mich. Dec. 23, 2008), for example, the court found it to be a "patently insufficient . . . non-disclosure" where the plaintiff listed "generic categories of persons, such as 'all members of plaintiff's family,' or 'all investigating persons.'" Similarly, in *Smith v. Pfizer, Inc.*, 265 F.R.D. 278, 283 (M.D. Tenn. 2010), the court found that the disclosure requirements of Rule 26 were not satisfied where the plaintiff listed "broad categories of witnesses" such as "friends and family of the deceased" and "[d]efendants' employees and representatives with knowledge as to the sale, promotion, and/or marketing of Neurontin." And in *Pearce v. Hazel Park Police Officer*, No. 16-11499, 2019 WL 5586965, at *1 (E.D. Mich. Oct. 30, 2019), the court found that the plaintiff had not provided sufficient notice to the defendant where the plaintiff listed "[g]eneral categories of witnesses," such as "any and all representatives, agents, current or former employees of Oakland County" and the "Oakland County Sheriff's Department."

7

Here, Defendant's "law enforcement officers with knowledge or information regarding the subject seizures" category is similar to the categories that were too broad to provide sufficient notice in *Labadie*, *Smith*, and *Pearce*. Accordingly, Defendant has not satisfied Rule 26(a). Rule 26(e) therefore required that Defendant supplement its disclosure to identify Menna. Defendant argues, however, that Rule 26(e) requires supplemental disclosure only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." (ECF No. 127, PageID.3519 (quoting Fed. R. Civ. P. 26(e)(1)(A)).)

Defendant cites *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554 (6th Cir. 2016). There, the plaintiff argued that a declaration should have been excluded from the summary judgment record because the defendants had not identified the witness in their initial disclosures. *Id.* at 567–68. Nor had the defendants supplemented their initial disclosures to identify the witness. *Id.* at 568. Nevertheless, the Sixth Circuit found that the defendants had complied with Rule 26(e) because the witness had "otherwise been made known" to the plaintiff. *Id.* Specifically, the discovery process had made it clear that the witness was a "central

8

figure" in the case who "would clearly have information relevant to the parties' claims or defenses." *Id.*

Defendant argues that the circumstances here are similar to *Baker Hughes* because "Plaintiffs were 'plainly aware' that the MSP is 'a central figure' that 'would clearly have information relevant to the parties' claims or defenses.'" (ECF No. 127, PageID.3520–3521.) In *Baker*, however, the witness himself was the obvious "central figure," explicitly identified in documents and deposition testimony "well before the discovery deadline," giving the plaintiff "ample time to depose [the witness] or otherwise seek discovery with respect to [the witness] and his records." 836 F. 3d at 568–69. Here, in contrast, the fact that the MSP were obviously involved in the seizure of Reeves' vehicle gave Plaintiffs no notice whatsoever that *Menna specifically* would be used as a witness. Accordingly, Defendant has not satisfied Rule 26(e).

"The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)); *see also* Fed. R. Civ. P. 37(c)(1)

advisory committee's note to 1993 amendment (describing the exclusion of non-disclosed evidence and witnesses as an "automatic sanction"). "[T]he advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 264 (6th Cir. 2001) (citation and internal quotation marks omitted). A harmless failure to disclose, for example, might include "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties." Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment.

In assessing whether a party's omitted or late disclosure is substantially justified or harmless, five factors are relevant: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *See Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). "District courts have broad discretion in applying these

factors and need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation and internal quotation marks omitted). The factors seek to "separat[e] honest, harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of exclusion." *Id.* (citation and internal quotation marks omitted).

Here, Defendant argues that its failure to disclose Menna was harmless (1) because "the MSP's responsibility for the Reeves seizure cannot be characterized as a 'surprise'"; (2) because even if Menna's declaration is a 'surprise,' that surprise could be cured by allowing additional, limited discovery or by Plaintiffs' opportunity to cross-examine Menna at trial; (3) because Defendant would be prejudiced by the inability to present important evidence regarding the MSP's view of the OFA; and (4) because there is a reasonable explanation for Defendant's failure to disclose Menna. (ECF No. 127, PageID.3521–3527.)

The burden is on the party that violated Rule 26(a) and (e) to prove harmlessness or substantial justification. *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 634 (6th Cir. 2019) (citing *Roberts v. Galen of Va., Inc.*, 325

11

F.3d 776, 782 (6th Cir. 2003)). Here, Defendant has not carried that burden. The first *Howe* factor—the surprise to Plaintiffs—weighs against Defendant. Defendant again argues that there is no surprise to Plaintiffs because "Plaintiffs have been aware for years of the MSP's singular role in seizing Reeves' vehicle." (ECF No. 127, PageID.3523.) But as set forth above, an awareness that the MSP seized Reeves' vehicle is not the same as an awareness that *Menna* specifically would be used as a witness. Nor does awareness that the MSP seized Reeves' vehicle provide Plaintiffs with any indication that Menna would provide the sort of testimony that appears in his declaration—testimony which, as Plaintiffs point out, "is not about the seizure of [Reeves'] car, but more broadly on the MSP's interpretation of the [OFA] and the agency's relationship with the [WCPO]." (ECF No. 129, PageID.3572–3573.) Testimony is "a complete surprise" where the opposing party has "no idea about the nature of [the witness'] anticipated testimony." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 669 (6th Cir. 2024); *see also Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003) (finding a failure to disclose "relatively harmless" where the opposing party "knew who was going to testify *and to what they were going to testify*") (emphasis added);

12

*Pullins v. NWS Michigan, Inc.*, No. 07-CV-13146, 2008 WL 11355516, at *3 (E.D. Mich. July 2, 2008) (excluding eight witnesses where plaintiff "did not disclose the nature of their testimony" prior to submitting their affidavits in support of summary judgment briefing).

Defendant is correct that the contents of Menna's declaration are not a surprise to Plaintiffs in one sense: Menna parrots Defendant's stated view that the MSP has a singular role in seizing, retaining, and returning property under the OFA, that "the MSP's obligations under the OFA are its own," and that "[t]he MSP makes its own decisions regarding the proper course of action in forfeiture matters." (ECF No. 118-5, PageID.3113–3115.) As Defendant points out, Plaintiffs have long been aware of Defendant's position that the MSP alone is responsible for any alleged violation of Reeves' due process rights. (ECF No. 127, PageID.3523) But even if Plaintiffs were aware of *Defendant's* position that it has no responsibility for the MSP's behavior under the OFA, the failure to disclose Menna deprived Plaintiffs of the opportunity to depose *Menna* regarding the relationship between the MSP and the WCPO.

The second and third *Howe* factors—the ability to cure surprise and the potential disruption to trial—also weigh against Defendant.

13

Defendant argues that any surprise could be cured by reopening discovery and allowing Plaintiffs to depose Menna or, even in the absence additional discovery, by Plaintiffs' opportunity to cross-examine Menna at trial. (ECF No. 127, PageID.3523–3524.) Defendant cites *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019), for the premise that the mere opportunity for cross-examination can remedy surprise. But *EQT Prod. Co.*—and *Howe*, the case it relies on—are easily distinguishable. Both involve belatedly disclosed data or calculations and not undisclosed witnesses. In *EQT Prod. Co.*, the Sixth Circuit acknowledged that the opportunity for cross-examination might remedy surprise where the data used to calculate damages was belatedly disclosed, but a witness had already been deposed regarding the calculation of damages using that data. *Id.* at 467–69. Similarly, in *Howe*, the Sixth Circuit found that the cross-examination of a witness would provide an adequate opportunity to remedy surprise where the plaintiffs belatedly changed the method they used to calculate back-pay, but the defendant had all of the data necessary to calculate back-pay in its possession and had already deposed a witness regarding the calculation method that was ultimately used. *Howe*, 801 F.3d at 748–49.

14

Here, in contrast, Menna was never disclosed or deposed. Accordingly, requiring Plaintiffs to cure their surprise through cross-examination at trial would undermine the purpose of discovery, which is to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Moreover, the opportunity to cross-examine Menna at trial does nothing to cure Plaintiffs' surprise at *this* stage in the litigation process, where the Court is considering cross-motions for summary judgment. *See, e.g.*, *Vaughn*, 18 F. App'x at 263 (finding that plaintiff's failure to disclose witnesses "prejudiced [defendants] in their preparation of dispositive motions and effective replies").

On the other hand, Defendant is correct that the opportunity to depose Menna would cure Plaintiffs' surprise. Providing Plaintiffs with the opportunity to depose Menna prior to a decision on the cross-motions for summary judgment would, however, require the Court "to perform 'major surgery on case posture' by reopening discovery, allowing [Menna] to be deposed, and presumably allowing [Plaintiffs] to update their motion for summary judgment (if necessary) . . . based on updated

15

information they receive during [Menna]'s deposition." *Kotke v. Ager*, No. 2:24-CV-11425, 2025 WL 4677129, at *6 (E.D. Mich. Aug. 12, 2025) (quoting *EQT Prod. Co.*, 2017 WL 2295906, at *4); *see also Pullins*, 2008 WL 11355516, at *4 (excluding late disclosed witnesses where curing surprise would require permitting defendant to conduct "additional depositions and submit a new summary judgment motion"). Although, as Defendant points out, a trial date has not yet been set, reopening discovery for Menna's deposition would "delay the resolution of [the cross-motions] for summary judgment and, therefore, delay trial in this case." *Kotke*, 2025 WL 4677129, at *4; *see also Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 148 (E.D. Mich. 2020) ("A trial date has not yet been set, but allowing supplementation and more discovery would further delay trial in this case . . . ."); *Wade v. United States*, No. 21-10552, 2022 WL 19001837, at *3 (E.D. Mich. Dec. 19, 2022) ("[T]he date for trial has not yet been set. But reopening discovery and resetting a dispositive motions deadline would delay trial.").

The fourth *Howe* factor is the importance of the evidence. The Sixth Circuit has noted that "this factor can cut both ways" because "[t]he more important the proof, the greater the effect of preclusion, but also the

greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220 (quoting *EQT Prod. Co.*, 2017 WL 2295906, at *5). But "courts tend to find that the more important the evidence, the more this factor favors the party disclosing the witness." *MV Louisville, LLC v. Frankenmuth Mut. Ins. Co.*, No. 3:20-CV-506-RGJ, 2022 WL 3362280, at *9 (W.D. Ky. Aug. 15, 2022) (collecting cases). Defendant argues that Menna's testimony is important because it rebuts the premise "that Wayne County may be held jointly liable with the MSP for the MSP's failure to comply with the MSP's 28-day deadline." (ECF No. 127, PageID.3526.) The Court agrees that the WCPO's relationship with the MSP under the OFA is a central issue in evaluating Reeves' claim. (*See, e.g.*, ECF No. 118, PageID.3022–3023; ECF No. 131, PageID.3651–3655.)

At the same time, as Plaintiffs point out, much of Menna's declaration consists largely of boilerplate legal conclusions regarding the OFA. (*See, e.g.*, ECF No. 118-5, PageID.3114 ("Pursuant to Michigan Compiled Laws § 600.4706, the MSP has a legal obligation to return property under its control to the owner if a warrant is not issued in the appropriate timeframe.").) Legal opinions like these—to the extent that they are even admissible—are "not particularly important evidence." *See*

*Kotke*, 2025 WL 4677129, at *5 (finding that an expert report consisting of "restate[d] general facts" and "legal conclusions" was not important evidence). Accordingly, the fourth factor is neutral.

The fifth factor—Defendant's explanation for its failure to disclose Menna—weighs against Defendant. Defendant asserts that it has "a reasonable explanation" for its failure to disclose Menna: it "did not know and could not have anticipated" that the Court, in deciding Defendant's motion to dismiss Reeves' claim, would find that Reeves' injury was traceable to the WCPO's alleged conduct. (ECF No. 127, PageID.3527.) But Defendant itself challenged Reeves' standing on the ground that Wayne County "has no relation to his alleged injury or harm." (*See* ECF No. 100, PageID.1455.) Given its own argument, the potential relevance of Menna's testimony cannot have been a surprise to Defendant. In effect, as Plaintiffs note, Defendant suggests that it was justified in failing to disclose Menna, not because the relevance of Menna's testimony was unexpected, but because it "did not anticipate that it could lose" its own motion to dismiss. (ECF No. 129, PageID.3574.) Accordingly, Defendant has not shown that its failure to disclose Menna was justified.

18

Because the Court finds that Defendant's failure to disclose Menna was neither harmless nor substantially justified, Menna's declaration will be excluded from the summary judgment record.[2] As set forth above, Defendant's omission prejudiced Plaintiffs with respect to their summary judgment motion and their response to Defendant's motion for summary judgment. Curing Plaintiffs' surprise would require not only a limited reopening of discovery but also the opportunity to update summary judgment briefing based on Menna's deposition. The Court's docket is already congested, and it will not further delay resolution of the cross-motions for summary judgment for an omission that was not substantially justified.

The same analysis does not, however, support excluding any testimony that Menna might offer at trial. The Court finds that any surprise at trial could be remedied by permitting limited additional discovery. Specifically, if Defendant intends to call Menna as a witness, Defendant must produce Menna for deposition.

---

[2] Because the Court excludes Menna's declaration in its entirety, the Court need not analyze Plaintiffs' additional arguments that Menna's declaration contains impermissible legal conclusions and is not based on personal knowledge.

19

### B. Davis' Declaration

Unlike Menna, Davis was disclosed and deposed as Defendant's Rule 30(b)(6) designee. (ECF No. 124, PageID.3187.) Plaintiffs argue, however, that Davis' declaration (1) impermissibly supplements and contradicts his prior deposition testimony; (2) contains inadmissible legal conclusions; and (3) is not based on personal knowledge. (*Id.* at PageID.3190.)

In determining whether a declaration contains inadmissible material, "a court should use a scalpel, not a butcher knife." *Johnson v. Donahoe*, 642 F. App'x 599, 602 (6th Cir. 2016) (cleaned up). Any admissible material should be considered, and any inadmissible material should be excluded. *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).

### i. Whether Davis' Declaration Contradicts or Impermissibly Supplements Prior Testimony

Plaintiffs argue that Davis' declaration "both supplements and contradicts his deposition testimony." (*Id.* at PageID.3196.) Specifically, Plaintiffs contend that while Davis previously testified that the WCPO monitors the seizing agency's compliance with statutory obligations, his declaration now claims the opposite. (*Id.*) Plaintiffs also state that Davis

20

previously acknowledged providing training to the MSP but now claims that the WCPO does not train the MSP. (*Id.* at PageID.3197.) Finally, Plaintiffs contend that Davis now asserts "a policy of allowing claimants to file motions in non-existent forfeiture cases to seek expedited hearings." (*Id.*) Plaintiffs argue that this policy was never disclosed in interrogatory responses or Davis' deposition and that this policy contradicts Davis' deposition testimony, which set forth that it is not possible to file motions prior to initiation of a criminal case or civil forfeiture case. (*Id.* at PageID.3197–3198.)

Courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Under this "sham affidavit" doctrine, the Sixth Circuit has held that "a district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the non-moving party's prior sworn

21

testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (citing *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984)). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* (citing *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985)).

Because "[t]he sham affidavit doctrine is in tension with the principle that a court may not make credibility determinations or weigh conflicting evidence in deciding a summary judgment motion," however, "the sham affidavit rule should be applied with caution." 11 *Moore's Federal Practice* § 56.94 (3d ed. 1997). "Affidavits and declarations should not be automatically disregarded merely because they appear to contradict the witness's earlier testimony." *Id.* Rather, a court should "construe whether the affidavit directly contradicts prior deposition testimony narrowly." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 501 (6th Cir. 2021); *see also Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006) (applying "a relatively narrow definition of a contradiction"). A declaration or affidavit does not directly contradict earlier testimony, for example, when "a party who was not directly questioned about an

22

issue . . . supplement[s] incomplete deposition testimony." *Aerel, S.R.L.*, 448 F.3d at 907. But a declaration or affidavit does directly contradict earlier testimony when it contains material allegations from an individual who, at an earlier deposition, "was asked specific questions about, yet denied knowledge of, the material aspects of [the] case." *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013). Similarly, a declaration or affidavit does not directly contradict earlier deposition testimony where "the alleged inconsistency created by the affidavit existed within the deposition itself." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 593 (6th Cir. 2009) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)). But a declaration or affidavit does directly contradict earlier testimony when it is "truly in *direct* conflict with the *unequivocal* content of the earlier testimony." *Reich v. City of Elizabethtown*, 945 F.3d 968, 986 (6th Cir. 2019) (emphasis in original).

If "there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Aerel, S.R.L.*, 448 F.3d at 908 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237

23

(10th Cir. 1986)). When determining whether an affidavit or declaration constitutes an attempt to create a sham fact issue, relevant factors include "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id.* at 909 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

The sham affidavit doctrine, however, only "prevents *nonmoving* parties from creating an issue of material fact to defeat summary judgment by filing affidavits that contradict their own earlier deposition testimony." *Reed v. City of Memphis*, 735 F. App'x 192, 198 (6th Cir. 2018) (emphasis in original) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). "[T]he doctrine does not fit where the *moving* party files an allegedly contradictory affidavit with [its] motion for summary judgment." *Id.* (emphasis in original). As the Sixth Circuit has explained, "extending the sham affidavit doctrine to require courts to strike contradictory affidavits filed by moving parties is a solution without a problem," because "[i]f an affidavit conflicts with the deposition

24

testimony of a summary judgment *movant*, the opposite party receives the *benefit* of the conflict under the requirement that evidence is construed in the light most favorable to the non-moving party." *Id.* (emphasis in original) (quoting *Smith v. Cnty. of Lenawee*, No. 09-10648, 2011 WL 1150799, at *12 (E.D. Mich. Mar. 28, 2011)).

Here, Defendant filed Davis' declaration with its motion for summary judgment. Matters are complicated, however, because the parties have filed cross-motions for summary judgment, making Defendant both movant and non-movant. And while Davis' declaration was filed with Defendants' motion for summary judgment, portions of Davis' declaration—including the paragraphs at issue—are also relied upon in Defendants' briefing opposing Plaintiffs' motion for summary judgment. (*See, e.g.*, ECF No. 137, PageID.3975, 3977, 3983, 3984.) Accordingly, the Court will analyze whether Davis' declaration statements directly contradict his earlier deposition testimony. To the extent that any particular statement from his declaration directly contradicts his deposition testimony, that statement will be disregarded insofar as it might create an issue of material fact to defeat Plaintiffs'

25

summary judgment motion, but *not* insofar as it supports Defendant's motion for summary judgment.

### a. Paragraph 5

In paragraph 5 of his declaration, Davis states that "the WCPO does not monitor the seizing agency's compliance with its own statutory obligations." (ECF No. 118-6, PageID.3118.) In his earlier deposition, however, Davis testified at length about "a protocol [he instituted] for dealing with forfeiture cases." (ECF No. 109-2, PageID.2162.) Under his new protocol, the WCPO Forfeiture Unit created a "pop-up reminder notice one week from th[e twenty-eight-day] deadline" by "which an omnibus crime charge must be approved by the WCPO Warrant Unit" and "send[s] a reminder notice to the seizing agency" regarding the need to bring an omnibus crime charge within twenty-eight days of a seizure. (*Id.* at PageID.2165.) The Forfeiture Unit also conducts "a search on a weekly basis to determine if an omnibus crime charge has been approved before the deadline date 28 days." (*Id.* at PageID.2165.) Davis testified that, when conducting that search, "[t]here may have been a case or two" in which the Forfeiture Unit discovered a missed deadline, in which case

the Forfeiture Unit "would have notified [the seizing agency] immediately." (*Id.*)

Plaintiffs argue that this former testimony directly conflicts with Davis' present assertion that the WCPO does not monitor a seizing agency's compliance with the law. (ECF No. 124, PageID.3196–3197.) Because the Court must "construe whether the [declaration] directly contradicts prior deposition testimony narrowly," however, the Court finds that Davis' declaration does not directly contradict his prior deposition testimony. *See Johnson*, 13 F.4th at 501. This is not a case where the declaration testimony is "in *direct* conflict with the *unequivocal* content of the earlier testimony." *Reich*, 945 F.3d at 986. Rather, it is possible to read Davis' deposition testimony as describing a protocol through which the Forfeiture Unit monitors its *own* obligations, and communicates with the MSP insofar as its obligations intertwine with the those of the Forfeiture Unit, but does not actively monitor the MSP's compliance. (*See, e.g.*, ECF No. 109-2, PageID.2162 (describing his improved forfeiture protocol as motivated by a desire "to hopefully ensure that no mistakes were ever made again as far as *our office* keeping track of cases" (emphasis added)).)

In addition, to the extent that the Forfeiture Unit's protocol *is* inconsistent with the statement that it does not monitor seizing agencies' compliance with the law, that inconsistency "existed within the deposition itself." *O'Brien*, 575 F.3d at 593. At deposition, as in his declaration, Davis insisted that "we don't control, supervise, or administer, or in any other way have any involvement in the operations of law enforcement officers." (ECF No. 109-2, PageID.2144.) "The internal inconsistencies in [Davis'] testimony mean that the [declaration does] not directly contradict the prior deposition testimony." *O'Brien*, 575 F.3d at 593.

For similar reasons, the Court finds that paragraph 5 of Davis' declaration does not constitute an attempt to create a sham fact issue. When insisting that the Forfeiture Unit does not monitor a seizing agency's compliance with the law, Davis "d[oes] not claim to raise a new or distinct matter." *See Baer v. Chase*, 392 F.3d 609, 625 (3d Cir. 2004). The question of whether and to what extent the WCPO monitors the MSP "was appropriately raised by the deposition even without consideration of the [declaration]." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980). And Davis' deposition testimony on that question was not

28

"unequivocal"—he described a protocol that *could* be read as involving the monitoring of seizing agencies, but he also insisted that the Forfeiture Unit does not do so. Davis' declaration is in accord with the latter view and might reasonably be seen as an attempt to "explain[] certain aspects of his deposition testimony that caused confusion." *Baer*, 392 F.3d at 625. Whether that explanation is convincing is a "question[] of credibility which require[s] jury resolution." *Kennett-Murray Corp.*, 622 F.2d at 895; *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) ("A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence."). Accordingly, the Court will not exclude or strike paragraph 5 of Davis' declaration for contradicting his prior deposition testimony.

### b. Paragraph 9

In paragraph 9 of his declaration, Davis states that the WCPO "does not train . . . the law enforcement officers of any law enforcement agency, including those of the MSP, and does not direct any law enforcement agency, including the MSP, in the exercise of law enforcement duties under OFA." (ECF No. 118-6, PageID.3120.) In his earlier deposition,

29

however, Davis admitted to conducting "educational seminars" with law enforcement agencies, including "one for MSP," in which he discussed "our belief about what the law is, and requires." (ECF No. 109-2, PageID.2184.)

Plaintiffs argue that Davis' prior testimony directly conflicts with his declaration statement that the WCPO does not train or direct law enforcement officers in their duties under the OFA. Here too, however, "the alleged inconsistency created by the [declaration] existed within the deposition itself." *O'Brien*, 575 F.3d at 593. In the same deposition testimony in which Davis admits to providing educational seminars to law enforcement agency, he also explicitly disclaims that those seminars were "trainings." (*See* ECF No. 109-2, PageID.2184 ("So you say trainings, and I have to say no to trainings, because we don't train law enforcement officers to be law enforcement officers as such.").)

Davis appears to be drawing a distinction between, on the one hand, educating law enforcement officers in the WCPO's view of the OFA and "what would be a good case" and, on the other hand, training law enforcement officers in their own duties. (*See id.* (explaining that the educational seminar "contains our belief about what the law is, and

30

requires. And how we would want to look at it, and what would be a good case").) The latter, in Davis' view, involves an element of supervision or control, while the former doesn't. (*See id.* ("[I]t's educational only, and not per se training because, again, we don't control law enforcement . . . we don't have any ability to supervise, or anything like that.").) Whether that distinction is persuasive is a "question[] of credibility which require[s] jury resolution." *Kennett-Murray Corp.*, 622 F.2d at 895. Accordingly, the Court will not exclude or strike paragraph 9 of Davis' declaration for contradicting his prior deposition testimony.

### c. *Paragraphs 14–16*

In paragraphs 14 through 16 of his declaration, Davis describes ways in which an individual might seek the return of seized property under the OFA, even in the absence of a criminal case or civil forfeiture case. (ECF No. 118-6, PageID.3121–3123.) Specifically, Davis testifies that: (1) if a police agency does not return property as required under § 4706, "a claimant can file a petition or case in state court against the police agency for return of property," and the claimant "does not have to wait for any criminal proceedings or civil forfeiture case to be first filed"; (2) "if no criminal charges are issued . . . claimants can file a claim and

31

delivery civil case in state court against the seizing agency"; and (3) "remedies contained in § 4705 can be sought at any time after a seizure and do[] not require either the existence of a criminal case or a civil forfeiture case." (*Id.* at PageID. 3121–3122.)

Plaintiffs argue that Davis' declaration directly conflicts with his prior deposition testimony discussing the difficulties of seeking an extension of the OFA's twenty-eight-day deadline for bringing a crime charge. (ECF No. 124, PageID.3197–3198.) At deposition, Davis explained that although "the statute allows for an extension to be sought . . . the statute does not implement a procedure by which that extension can be . . . requested," because "if there's no criminal charges yet" and "no civil case in front of any court," then "[h]ow does our office walk into court and ask the courts for an extension of something that doesn't exist in the court's jurisdiction yet?" (ECF No. 109-2, PageID.2165–2166.) In Plaintiffs' view, that deposition testimony contradicts the idea that individuals can bring a claim for the return of seized property in the absence of a preexisting criminal or civil forfeiture case. (ECF No. 124, PageID.3198.) Defendant argues that there is no contradiction between Davis' deposition testimony "regarding how a *prosecutor* would seek an

32

extension under the OFA" and Davis' declaration testimony regarding "the WCPO's understanding of how a *claimant* pursues remedies under the OFA." (ECF No. 127, PageID.3530.) The Court agrees with Defendant. Accordingly, the Court will not strike or exclude paragraphs 14 through 16 of Davis' declaration for contradicting his prior deposition testimony.

Plaintiffs also argue that paragraphs 14 through 16 describe WCPO policies that were not previously disclosed in interrogatory responses verified by Davis or in Davis' deposition testimony. (ECF No. 124, PageID.3195, 3197.) In response, Defendant argues that paragraphs 14 through 16 "describe WCPO's understanding of claimants' available remedies under the OFA, as opposed to any WCPO 'policy' regarding those remedies." (ECF No. 127, PageID.3530.) Here too, the Court agrees with Defendant. Accordingly, the Court will not strike or exclude paragraphs 14 through 16 of Davis' declaration for impermissibly supplementing prior disclosures.

### ii. Whether Davis' Declaration Contains Impermissible Legal Opinions

A declaration submitted in support of a motion for summary judgment "must . . . set out facts that would be admissible in evidence."

33

Fed. R. Civ. P. 56(c)(4). Legal opinions are generally not admissible because they "invade[] the province of the court to determine the applicable law and to instruct the jury as to that law." *United States v. Mooney*, 135 F.4th 486, 496 (6th Cir. 2025) (quoting *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)). Plaintiffs argue that the Court should exclude or strike paragraphs 2, 5, 9, 11–12, 14–16, and 19–21 of Davis' declaration because they state inadmissible legal opinions. (ECF No. 124, PageID.3203.) Defendant argues that the paragraphs at issue contain "factual testimony regarding WCPO procedure" and permissibly "outline WCPO's understanding with respect to civil forfeiture under the OFA." (ECF No. 127, PageID.3533–3534.)

Paragraphs 14 and 15 are plainly inadmissible legal opinions. Both simply interpret Michigan law.[3] The same is true of the second sentence

---

[3] Paragraph 14 states:

> Under § 4706, if a police agency does not secure the initiation of a criminal case within the required 28 days, and does not ask a prosecutor to secure an extension of time, it must return the property to the claimant on the 35th day. If, for some reason, a police agency refuses to return the property, a claimant can file a petition or case in state court against the police agency for return of property under § 4706. This petition or case does not have to wait for any criminal proceedings or civil forfeiture case to be first filed.

34

of paragraph 5.[4] Accordingly, the Court will disregard paragraphs 14 and 15 and the second sentence of paragraph 5. *See, e.g.*, *Leitch v. White*, No. 1:23-CV-93, 2024 WL 5365039, at *3 (W.D. Mich. Nov. 22, 2024), *aff'd*, No. 24-2088, 2025 WL 2409172 (6th Cir. Aug. 20, 2025) (excluding from the summary judgment record the portion of an affidavit "offer[ing] a legal conclusion concerning the proper interpretation of Michigan statutes"); *Caton v. Salamon*, No. 1:22-CV-345, 2024 WL 4226930, at *4 (S.D. Ohio Sept. 18, 2024) (excluding witness "from testifying on the application and meaning of statutes").

---

(ECF No. 118-6, PageID.3121.)

> Paragraph 15 states:
>
> It is the WCPO's understanding that in addition to the remedy contained in § 4705 and § 4706, a claimant has other remedies that he or she can exercise at any time after the seizure. For instance, under Michigan law, if no criminal charges are issued during the time period prescribed under § 4706 (i.e., 28 days from date of seizure, plus the possibility for an additional 28 days via court order) claimants can file a claim and delivery civil case in state court against the seizing agency.

(ECF No. 118-6, PageID.3122.)

[4] The second sentence of paragraph 5 states that "[n]o statutory or case law places any legal obligation on state, county, or city prosecutors to monitor the seizing agency for its compliance with its own statutory deadlines." (ECF No. 118-6, PageID.3118.)

35

Other disputed portions of Davis' declaration, however, contain factual statements regarding the WCPO's general forfeiture practices—and Reeves' case specifically—rather than legal opinions. Paragraph 2, for example, certainly implicates—and comports with—the WCPO's stated understanding of the OFA, but it is phrased as a factual description of the WCPO's and seizing agencies' practices.[5] The same is true of paragraphs 9, 11, and 12.[6] Similarly, the first sentence of

---

[5] Paragraph 2 states:

> Under the OFA, the WCPO does not seize, retain, exercise custody and control over, or dispose of property seized by a state, county, or local police department. When a police agency seizes property under the OFA, the seizing agency retains exclusive custody and control over the property and makes the ultimate decisions regarding its disposition.

(ECF No. 118-6, PageID.3117–3118.)

[6] Paragraph 9 states:

> The WCPO expects police agencies to follow their own statutory obligations and adhere to the governing law and their own policies when seizing property and when seeking forfeiture under OFA. The WCPO does not train, control, or have authority over the law enforcement officers of any law enforcement agency, including those of the MSP, and does not direct any law enforcement agency, including the MSP, in the exercise of law enforcement duties under OFA. While, in its role as attorney in an OFA case, the WCPO Forfeiture Unit may offer advice to a police agency regarding an eventual civil forfeiture case (which could only occur after a state court order of conviction in a criminal case), police agencies are under no obligation to follow any advice and each

paragraph 5 is a factual statement regarding the WCPO's general practices, and the last sentence is a factual statement regarding the WCPO's behavior following the MSP's seizure of Reeves' vehicle.[7]

----

> have their own attorneys who work for, or are retained by, their units of government that they can consult.

(ECF No. 118-6, PageID.3120.)

> Paragraph 11 states:

> > If a claimant chooses not to contest forfeiture after a criminal case, or if a state court enters a judgment of forfeiture at the conclusion of a civil case, the police agency, and not the WCPO, auctions or otherwise disposes of the forfeited property. Under § 4708(1), after certain third parties are compensated, the seizing police agency retains the proceeds, not the WCPO or Wayne County generally (unless perhaps the Wayne County Sheriff's Office was the seizing agency). The seizing agency may reimburse the WCPO for its filing costs and court fees in prosecuting the case.

(*Id.* at PageID.3120–3121.)

> Paragraph 12 states that "[t]o my knowledge, WCPO never offered a settlement to a claimant if the state court did not issue criminal charges within the 28-day time period in § 4706, nor would it be legal to do so." (*Id.* at PageID.3121.)

[7] The first and last sentence of paragraph 5 state:

> While a police agency may choose to notify the WCPO that it has seized property under the OFA, the WCPO does not monitor the seizing agency's compliance with its own statutory obligations . . . In the case of Reeves, no one at the WCPO actively monitored whether the MSP complied with its obligations under § 4706.

(ECF No. 118-6, PageID.3118.)

37

Accordingly, the Court will not disregard paragraphs 2, 9, 11, and 12, or the first and last sentence of paragraph 5.

Paragraphs 19 through 21 are more complicated. All three paragraphs contain explanations of the OFA. Reading the three paragraphs as a whole, however, those explanations provide necessary context for factual testimony regarding, as Defendant puts it, "how the OFA works in practice." (ECF No. 127, PageID.3536.) Paragraph 19's statement that "there is no possibility of a forfeiture proceeding" following expiration of the 28-day period, for example, provides necessary context for paragraph 20's factual testimony that the "WCPO receives no advantage, tactical, financial, or otherwise, when there is a delay in issuing criminal charges." (ECF No. 118-6, PageID.3125.) Similarly, paragraph 21 explains that, under § 4706, courts are responsible for "the decision and final order for either an extension or return of the seized property." (*Id.*) That explanation of § 4706 provides necessary context for paragraph 21's subsequent factual testimony regarding how, in practice, a return of seized property occurs. (*Id.* at PageID.3125–3126.) Accordingly, the Court will not disregard paragraphs 19, 20, and 21 for containing inadmissible legal opinions.

Paragraph 16 is somewhat similar. The first sentence of paragraph 16 explains that "[t]he WCPO's position has been that the 28-day probable cause and 7-day vehicle hardship remedies contained in § 4705 can be sought at any time after a seizure and does not require the existence of a criminal case or a civil forfeiture case subsequent to a conviction." (ECF No. 118-6, PageID.3122.) This explanation of how the WCPO has interpreted § 4705 provides necessary context for the factual testimony, in the last sentence of the paragraph, that "the WCPO has never opposed . . . a claimant filing a motion or petition under § 4705 on the basis that it could only be filed during the 'criminal case' or the subsequent 'civil forfeiture' case." (*Id.* at PageID.3122–3123.) On the other hand, the intervening sentences—which consist of statutory interpretation justifying the WCPO's position regarding § 4705 remedies—are legal opinions that are not necessary for the Court to understand any subsequent factual testimony.[8] Accordingly, the Court will disregard all but the first and last sentence of paragraph 16.

---

[8] In its entirety, paragraph 16 reads:

> The WCPO's position has been that the 28-day probable cause and 7-day vehicle hardship remedies contained in § 4705 can be sought at any time after a seizure and does not require either the existence of a

### iii. Whether Davis' Declaration Is Based on Personal Knowledge

A declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). Plaintiffs argue that "much of Davis' declaration consist[s] of conclusions, hearsay, or summaries of discovery," rather than personal knowledge. (ECF No. 124, PageID.3204.) Plaintiffs contend that the Court should strike or exclude paragraphs 3, 4, 6, 8, 13, 18(a)–(e), and 21 of Davis' declaration. (*Id.* at PageID.3207.) Defendant argues that Davis'

---

criminal case or a civil forfeiture case subsequent to a conviction. When § 4705 discusses the court "having jurisdiction," it essentially means "would have jurisdiction." Section 4709 states that the state district court for the municipality in which the property was seized has the jurisdiction to hear any matter related to the forfeiture, including any § 4705 motion or petition. The court in which the criminal case is pending does not have "jurisdiction" to return any seized property because § 4709 states that the state district courts are the exclusive jurisdiction for the "forfeiture" and "related proceedings." Thus, the relevant § 4705 remedies can be exercised in the state district courts at any time following a seizure. To my knowledge, the WCPO has never opposed, and, upon information and belief, would not oppose, a claimant filing a motion or petition under § 4705 on the basis that it could only be filed during the "criminal case" or the subsequent "civil forfeiture" case.

(*Id.* at PageID.3122–3123.)

declaration is based on personal knowledge and "his personal review of WCPO records." (ECF No. 127, PageID.3537–3538.)

Davis' declaration expressly states that it is "based upon personal knowledge and a thorough review of records kept in the normal course of business by the WCPO." (ECF No. 118-6, PageID.3117.) Because Davis is the Principal Assistant Prosecuting Attorney for the Forfeiture Unit in the WCPO, it is reasonable to assume that Davis' declaration testimony regarding forfeiture laws and the general practices of the Forfeiture Unit is based on personal knowledge. See, e.g., *Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 329 (6th Cir. 2015) (admitting portions of witnesses' testimony "reflect[ing] general knowledge about day-to-day operations of their jobs and knowledge about . . . policies and procedures"). Accordingly, the Court will not disregard paragraph 21, which consists of general testimony regarding the forfeiture process.

The other paragraphs challenged by Plaintiffs, however, largely involve the specific facts of Reeves' forfeiture case. As Plaintiffs point out, Davis was not personally involved in the investigation that led to the seizure of Reeves' car. (ECF No. 124, PageID.3206.) Nor was Davis involved in Reeves' communications with the WCPO. (*Id.*) Accordingly,

41

Davis' testimony regarding Reeves' case is, as Defendant freely admits, based on the review of WCPO records. (*See* ECF No. 127, PageID.3538.)

Plaintiffs suggest that Davis' testimony based on the review of WCPO records is necessarily not based on personal knowledge. (ECF No. 124, PageID.3205–3206.) It is true that "[a]n affiant lacks personal knowledge of information obtained from the depositions of others or during discovery." *Antunes v. Gerdau MacSteel, Inc.*, No. 22-1805, 2023 WL 3479401, at *1 (6th Cir. May 16, 2023) (citing *Stipkala v. Am. Red Cross*, 215 F.3d 1327, 2000 WL 712378, at *6 (6th Cir. 2000)). On the other hand, "[p]ersonal knowledge can derive from a review of business records." *United States v. Nugent*, No. 5:16-CV-380-JMH, 2017 WL 4249775, at *4 (E.D. Ky. Sept. 25, 2017) (collecting cases). This is especially true where, as here, the declarant is a Rule 30(b)(6) designee. *See Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. 2016) (explaining that when an individual speaks for a corporation or organization, "[t]he personal knowledge requirement works differently"). A corporation has "'no obligation to select a person with personal knowledge of the events in question,' so long as the corporation 'proffer[s] a person who can answer regarding information known or reasonably

available to the organization.'" *Id.* A 30(b)(6) designee can thus present facts known only from a review of corporate records without "run[ning] afoul of the personal knowledge requirement." *Id.*

While it is clear that the review of business records *can* satisfy the personal knowledge requirement, it is less clear that 56(c)(4) is satisfied by the mere *assurance* that testimony is based on business records. Some courts have found 56(c)(4) to be satisfied where affiants or declarants simply state that their testimony is based on the review of business records. *See, e.g.*, *Stevenson v. Brennan*, No. 06-CV-15182, 2017 WL 714357, at *5 (E.D. Mich. Feb. 23, 2017) (finding personal knowledge where a declarant averred in her declaration that "her testimony [wa]s based on review of regularly kept business records"); *HBJD Corp. v. LeChner*, No. 21-cv-12120, 2023 WL 7170651, at *2 (E.D. Mich. Apr. 27, 2023) (finding personal knowledge where an affiant averred that his affidavit was based on a review of business records). In *Fambrough*, however, the Sixth Circuit indicated that testimony based on the review of business records was *not* based on personal knowledge where those business records were not properly authenticated. 611 F. App'x at 329–30. Following *Fambrough*, some courts have held that when a declarant

bases his testimony on a review of business records, "those records must be properly authenticated under the business records exception in Rule 803(6) of the Federal Rules of Evidence." *Hall v. Chambers-Smith*, No. 2:21-cv-01135, 2024 WL 3510870, at *3 (S.D. Ohio July 23, 2024) (citing *Fambrough*, 611 F. App'x at 326). On this view, declaration testimony based on unauthenticated business records is based on inadmissible hearsay and should be stricken. *Id.* at *3–4.

In light of *Fambrough*, the Court is convinced that the proper approach is to disregard declaration testimony based on unauthenticated records. Here, paragraphs 3, 4, 6, 8, 13, and 18(a)–(e) of Davis' declaration are based on records "that are neither identified nor authenticated." *Id.* at *3. Accordingly, the Court will disregard paragraphs 3, 4, 6, 8, 13, and 18(a)–(e).

### C. Defendant's Motion for Leave to Submit Additional Exhibits

Defendant moves for leave to submit two additional exhibits that were not attached to its earlier motion for summary judgment. (ECF No. 142.) In support of its motion, Defendant primarily relies on *Eberline v. Douglas J. Holdings, Inc.*, 629 F. Supp. 3d 640, 648 (E.D. Mich. 2022), a case where this Court permitted the defendants to file a supplemental

44

brief following a hearing on the defendants' renewed motion for summary judgment. There, the defendants had moved "for leave to file a supplemental brief regarding whether *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) describes the applicable standard for evaluating whether an employment relationship exists under the FLSA when there are issues of fact to be considered under *Laurelbrook*'s primary beneficiary factors." *Id.* In requesting leave to file a supplemental brief, the defendants explained that there was "good cause for supplemental briefing to address this important issue because *Fegley* was not discussed in the parties' initial briefing." (Case No. 14-CV-10887, ECF No. 145, PageID.6197.)

Defendant also cites *Allstate Ins. Co. v. Everest Nat'l Ins. Co.*, No. 16-CV-12473, 2018 WL 3915335, at *1 (E.D. Mich. Aug. 16, 2018), a case where this Court permitted both parties to submit supplemental briefing following oral argument on a motion for summary judgment. There, the Court ordered "supplemental briefing to address whether, under the standard set forth in *Oade v. Jackson Nat. Life Ins. Co. of Mich.*, 465 Mich. 244 (2001), the materiality of a misrepresentation is a question of law or fact." (Case No. 16-CV-12473, ECF No. 32, PageID.725.)

45

As Plaintiffs point out, both cases are largely irrelevant to the Court's decision because both involve the filing of supplemental *briefing* on narrow legal issues, rather than the filing of additional *exhibits*. In addition, in *Allstate Ins. Co.*, the Court requested supplemental briefing on a legal issue "[p]er the agreement of the parties." (*Id.*) Here, in contrast, Defendant seeks to submit two additional exhibits in support of its motion for summary judgment, both of which were available prior to its original summary judgment briefing and both of which Plaintiffs oppose. (*See* ECF No. 142, PageID.4112 ("Both of these documents were produced by Wayne County during discovery . . . .").)

A more on-point case is one cited by Plaintiffs. In *Stevenson v. Brennan*, No. 06-15182, 2018 WL 1250477, at *1 (E.D. Mich. Mar. 12, 2018), the plaintiff filed a motion seeking leave to supplement the record with three additional exhibits after the court had held a hearing on the defendant's summary judgment motion. The court granted leave to file one exhibit because it was an exhibit that the plaintiff cited in his original response to the defendant's summary judgment motion and simply inadvertently omitted. *Id.* at *4–5. But the court denied leave to file the other two exhibits, both of which the plaintiff sought to file because they

related to issues raised at the summary judgment hearing. *See id.* at *3, 5. As to one exhibit, the court explained that "there is adequate evidence in the record on this issue, and . . . no reason that any additional evidence on it could not have been proffered in the parties' summary judgment briefing." *Id.* at *3.

Similar reasoning applies here. As Plaintiffs point out, Defendant has not identified good cause for failing to file these documents earlier. Rather than suggesting that anything prevented it from filing the documents with its motion for summary judgment, Defendant simply indicates that the documents address questions raised by the Court at the September 11 hearing on the parties' cross-motions for summary judgment. The questions Defendant is referencing—"those related to Wilson's purported efforts to contest forfeiture of the Malibu, the timing of those alleged efforts, and Wilson's ultimate abandonment of the car"— were not particularly unpredictable. In fact, unlike *Eberline*—where supplemental briefing was permitted because the summary judgment hearing raised an issue of law not addressed in the original summary judgment briefing—Defendant did address Wilson's abandonment of the

47

Malibu repeatedly in its original summary judgment briefing. (*See, e.g.*, ECF No. 118, PageID.2983, 2990.)

This case also resembles *Peltier v. Macomb County*, No. 10-CV-10796, 2011 WL 4597436 (E.D. Mich. Sept. 30, 2011). There, the court denied the plaintiff's motion for leave to submit additional evidence in response to the defendants' motion for summary judgment. *Id.* at *1. The court also denied the plaintiff's motion for reconsideration, explaining that the plaintiff "had more than ample opportunity to submit evidence in support of her opposition to Defendants' Motion for Summary Judgment and, in fact, submitted several hundred pages of exhibits in support of her original response brief." *Id.* at *2. Similarly, here, Defendant had the opportunity to submit the newly proffered evidence in its motion for summary judgment, to which it attached over one hundred pages of exhibits. (*See* ECF Nos. 118-2, 118-3, 118-4, 118-5, 118-6, 118-7.) Because Defendant has not identified good cause for failing to file these documents earlier, Defendant's request for leave to submit additional exhibits is denied.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Rule 56(c) objection and DENIES Defendant's motion for leave to submit additional exhibits. (ECF Nos. 124, 142.)

IT IS SO ORDERED.

Dated: July 23, 2026          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 23, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager